*45*

United States District Court
Southern District of Texas
FILED

MAY 2 5 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CANDELARIO DE LEON | § | |
| | § | COMPLAINT FOR DAMAGES FOR |
| | § | VIOLATIONS OF CIVIL RIGHTS |
| | § | UNDER COLOR OF STATE LAW |
| VS. | § | (42 U.S.C. §§ 1983, 1985, 1988) |
| | § | |
| | § | CIVIL ACTION NO. CV-B-00-192 |
| CITY OF BROWNSVILLE, TEXAS; | § | |
| BENIGNO REYNA, INDIVIDUALLY AND | § | |
| IN HIS OFFICIAL CAPACITY AS | § | |
| CHIEF OF POLICE FOR THE CITY OF | § | |
| BROWNSVILLE; CITY OF BROWNSVILLE | § | |
| POLICE OFFICER ANDRE S. TORRES, JR., | § | |
| INDIVIDUALLY AND IN HIS OFFICIAL | § | |
| CAPACITY; CITY OF BROWNSVILLE | § | |
| POLICE OFFICER HENRY JUAREZ, | § | |
| INDIVIDUALLY AND IN HIS OFFICIAL | § | |
| CAPACITY; AND CITY OF | § | |
| BROWNSVILLE POLICE OFFICER | § | |
| ALEX ORTIZ, INDIVIDUALLY AND IN | § | |
| HIS OFFICIAL CAPACITY | § | |

## MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Plaintiff in the above styled and numbered cause of action, and files his

motion for leave to file his Third Amended Complaint, a copy of which is attached hereto as Exhibit

"A", and in support thereof would show the Court the following:

1.      Plaintiff wishes to amend his Second Amended Complaint to reflect the Court's

ruling at the Status Conference of May 8, 2001, striking Plaintiff's claims under 42 U.S.C. §§ 1985

and 1986.

2.      Plaintiff no longer desires to bring suit against the police officers involved in the

incident made the basis of this suit, nor against the Chief of Police in his individual capacity.

Pursuant to an agreement with counsel for the CITY OF BROWNSVILLE, TEXAS, these parties have been dismissed.

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiff, Carol P. Lomax, has conferred with Ryan Henry, counsel for the Brownsville Defendants, and both mutually agree to the changes outlined in Paragraph 2, above.

WHEREFORE, Plaintiff prays for leave to file his Third Amended Complaint, as indicated above, and for such other and further relief to which he may show himself entitled.

Respectfully submitted,

By: _____

CAROL P. LOMAX
State Bar No. 12509100
Federal I.D. No. 13464
BRANTON & HALL, P.C.
One Riverwalk Place, Suite 1700
700 North St. Mary's Street
San Antonio, Texas 78205
(210) 224-4474
(210) 224-1928 (Fax)

COUNSEL FOR PLAINTIFF

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been forwarded by certified mail return receipt requested, on this _____ 23 _____ day of _____ May _____, 2001, to:

Ryan Henry
WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
Brownsville, Texas 78521

ATTORNEYS FOR DEFENDANTS,
CITY OF BROWNSVILLE AND
CHIEF OF POLICE, BENINGO REYNA

Tyler Scheuerman
UZICK & ONCKEN, P.C.
8200 IH 10 West, Suite 208
San Antonio, Texas 78230

ATTORNEYS FOR DEFENDANTS,
STAT PHYSICIANS, P.A. and
JOAO DOVALE, M.D.

William Gault
Paul Fourt
BRIN & BRIN, P.C.
1325 Palm Blvd., Suite A
Brownsville, Texas 78520

ATTORNEYS FOR DEFENDANTS
COLUMBIA VALLEY HEALTHCARE
SYSTEM, L.P. D/B/A VALLEY
REGIONAL MEDICAL CENTER AND
HCA-THE HEALTHCARE COMPANY

CAROL P. LOMAX

\\Bh_1\BH_DATA\WPFILES\FILES CLT\D\DEL9827\PLEAD\3AMNDCOM MOT

MOTION TO FILE THIRD AMENDED COMPLAINT – PAGE 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CANDELARIO DE LEON, | § | |
| | § | COMPLAINT FOR DAMAGES FOR VIOLATIONS |
| Plaintiff, | § | OF CIVIL RIGHTS UNDER COLOR OF STATE |
| | § | LAW (42 U.S.C. §§ 1983, 1985, 1988) |
| VS. | § | |
| | § | CIVIL ACTION NO. CV-B-00-192 |
| CITY OF BROWNSVILLE, TEXAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW comes CANDELARIO DE LEON, hereinafter referred to as Plaintiff, and files his Third Amended Complaint, and brings this action for compensatory and punitive damages against CITY OF BROWNSVILLE, TEXAS, BENIGNO REYNA IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE FOR THE CITY OF BROWNSVILLE, HCA– THE HEALTHCARE COMPANY, COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P. D/B/A VALLEY REGIONAL MEDICAL CENTER, JOAO DOVALE, M.D. and STAT PHYSICIANS, P.A. for causes of action, and would respectfully show the Court the following:

1.      This action is brought pursuant to 42 U.S.C. §§1983 and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Plaintiff also brings claims under state law and invoke the doctrine of pendent jurisdiction.

2.      Plaintiff has complied with all notice requirements, including the requirements of TEX. REV. CIV. STAT. ANN. art. 4590i, § 4.01 (Vernon Supp. 2000), commonly known as the Texas Medical Liability and Insurance Improvement Act. Defendants  HCA– THE HEALTHCARE

COMPANY, COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P. D/B/A VALLEY REGIONAL MEDICAL CENTER, JOAO DOVALE, M.D., and STAT PHYSICIANS, P.A. were served with notice by certified mail return receipt requested, as required by article 4590i, Section 4.01(a) of the Texas Medical Liability and Insurance Improvement Act.

3.     Venue is proper in the United States District Court for the Southern District of Texas, Brownsville Division, the district in which the claim arose, pursuant to 28 U.S.C. § 1391(b)and (e). All causes of action asserted herein arose in whole or in part in Brownsville, Cameron County, Texas.

4.     Plaintiff CANDELARIO DE LEON is a citizen of the United States and a resident of the State of Texas.

5.     Defendant CITY OF BROWNSVILLE, TEXAS (the "CITY"), a municipal corporation situated in Cameron County, Texas, a home rule city under the provisions of Article XI, Section 5 of the Constitution of the State of Texas operating pursuant to the Constitution and the laws of the State of Texas, has been served with process and has answered herein, such that no further service is necessary at this time.

6.     BENIGNO REYNA IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE FOR THE CITY OF BROWNSVILLE ("CHIEF REYNA"), Chief of Police for the City of Brownsville at the time of the occurrence complained of, has been served with process and has answered herein, such that no further service is necessary at this time.

7.     Defendant HCA–THE HEALTHCARE COMPANY, a foreign corporation, has been served with process and has answered herein, such that no further service is necessary at this time.

8.      Defendant COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P. D/B/A VALLEY REGIONAL MEDICAL CENTER, a foreign corporation, has been served with process and has answered herein, such that no further service is necessary at this time.

9.      Defendant JOAO DOVALE, M.D., a resident of Hidalgo County, Texas, has been served with process and has answered herein, such that no further service is necessary at this time.

10.      Defendant STAT PHYSICIANS, P.A., a partnership maintaining an office in Austin, Texas, has been served with process and has answered herein, such that no further service is necessary at this time.

11.      On or about December 24, 1998, Plaintiff CANDELARIO DE LEON sustained serious spinal cord injuries in an automobile accident. After he was transported by EMS to the emergency room of VALLEY REGIONAL MEDICAL CENTER of Brownsville, Texas, where he was met by two police officers with the CITY OF BROWNSVILLE, TEXAS. Despite Plaintiff's repeated statements to the officers that he could not stand, the officers insisted that Plaintiff had sustained only minor injuries and was refusing to stand and cooperate because he was intoxicated.

12.      While in the emergency room of the Defendant Hospital, COLUMBIA VALLEY REGIONAL MEDICAL CENTER, Plaintiff was examined with normal findings documented for the heart, lungs and abdomen. There were no findings recorded for a neurological examination or an examination of his extremities despite adamant complaints of "numbness from the neck down" by Plaintiff. There were no cervical spine films ordered. He received treatment for a minor forehead laceration and was discharged into the custody of the police officers. (See expert's report attached hereto as Exhibit "A.")

13.      Despite his pleas for further medical assistance, Plaintiff was handcuffed with his hands behind his back, forced into a wheelchair and thrown onto the back seat of a police vehicle

for transport to the CITY OF BROWNSVILLE, TEXAS jail. Upon his arrival at the jail, CANDELARIO DE LEON continued to tell officers he could not stand and that he was seriously injured. These officers not only ignored his pleas for medical assistance, but pulled him up by his arms from the wheelchair, threw him on the floor of the jail cell and covered him with a blanket for the night.

14.     Plaintiff was a victim of CITY OF BROWNSVILLE's police procedure, custom and policy that included an unauthorized series of events that violated the laws of the United States of America, the laws of the State of Texas and common law, and caused Plaintiff to sustain permanent, debilitating and disabling injuries and damages.

15.     It was only on December 25, 1998, after checking Plaintiff as he continued to plead with the officers for medical assistance, that the officers transported CANDELARIO DE LEON to the Brownsville Medical Center emergency room where his serious spinal cord injuries were diagnosed.

<u>COUNT I: CLAIMS PURSUANT TO 42 U.S.C. SECTION 1983</u>

Paragraphs 1 through 15 are incorporated herein by reference for all purposes.

16.     Defendants CITY OF BROWNSVILLE, TEXAS and CHIEF REYNA, acting under color of state law, deprived Plaintiff of his rights, privileges and immunities secured by the United States Constitution, specifically those rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

17.     The conduct of THE CITY and CHIEF REYNA's officers in handcuffing Plaintiff's hands behind his back, shoving him into a wheelchair, lifting him by his arms from the wheelchair onto the seat of the police vehicle, and then lifting him by his arms back into the wheelchair, lifting him by his arms from that wheelchair once again and then throwing him on the floor of the jail cell

constituted wanton, reckless, willful and malicious disregard for Plaintiff's safety and subjected Plaintiff to unreasonable excessive force and great bodily injury. Plaintiff suffers from irreparable spinal cord injuries as a proximate result of these unlawful and malicious acts, all committed under color of their authority as agents, servants and employees of THE CITY under the supervision of CHIEF REYNA. The actions of the officers were a grossly disproportionate use of force under the circumstances and clearly unreasonable. Their acts violated Plaintiff's civil rights, including the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

18.      Defendants THE CITY and CHIEF REYNA failed to provide adequate training and supervision regarding the use of excessive force for the circumstances. This deliberate indifference was a proximate cause of the injuries and damages sustained by plaintiff. The use and methods of arrest and restraint for persons in the custody of THE CITY's Police Department is a policy, regulation, and/or decision officially adopted or promulgated by THE CITY. The failure to provide proper training and supervision regarding use of force with persons requiring medical attention, assistance or aid which are in their custody amounts to a deliberate indifference and deprivation of the safety and care of the citizens of THE CITY and Plaintiff. These Defendants were acting under color of state law.

COUNT II: MEDICAL NEGLIGENCE CLAIMS

Paragraphs 1 through 18 are incorporated by reference for all purposes.

19.      At all times material hereto, Defendants HCA-THE HEALTHCARE COMPANY and COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P. d/b/a VALLEY REGIONAL MEDICAL CENTER held themselves out to the community in general, and to Plaintiff as being health care providers having adequate facilities and employing careful, competent staff. The Defendant Hospital represented that its employees were its agents and thereby caused Plaintiff to justifiably rely upon

their care and skills. The Defendant Hospital is subject to liability to Plaintiff for the harm caused by the lack of care or skill of the employees appearing to be its servants or agents. Plaintiff submitted himself to the care and/or protection of the Defendant Hospital in response to an invitation from it to enter into such relationship. The Defendant Hospital created the appearance, if not true in effect, that the employees were agents of the hospital, would provide medical care and that its medical care providers would exercise ordinary care in the treatment of Plaintiff and were skilled, competent and duly licensed to provide same, thus creating agency by estoppel.

20.    The Defendant Hospital is vicariously liable for the negligent acts of its employees who were at all pertinent times acting within the course and scope of their employment. The Defendant Hospital exerted actual control and authority, as well as the right to control the activities of its employees at all pertinent times.

21.    The Defendant Hospital, by and through its actual and ostensible agents, employees, vice principals, and borrowed servants, failed to use ordinary care in providing treatment for Plaintiff CANDELARIO DE LEON that a reasonable and prudent hospital of the same or similar level of certification would have employed under the same or similar circumstances, as follows:

A.    Failure to complete a neurologic examination at the time of initial presentation;

B.    Failure to follow appropriate policies and procedures with regard to the assessment and treatment of emergency room patients presenting with circumstances and complaints strongly suggestive of the necessity to assess a possible cervical cord injury;

C.    Failure to provide the appropriate personnel to carry out the policies and procedures of the emergency room; and

D.    Failure to properly provide adequate care and treatment for Plaintiff.

Each of the foregoing acts or omissions constitutes a proximate cause of the injuries and damages set forth below.

22.     At the time of the incident in question, Plaintiff CANDELARIO DE LEON was taken to COLUMBIA VALLEY REGIONAL MEDICAL CENTER emergency room by the City of Brownsville EMS.  Plaintiff was seen by Defendant JOAO DOVALE, M.D., who failed to complete any a neurologic examination of him or provide adequate care and treatment to him, and simply discharged him to the custody of the police, whereupon spent the night in jail.  (Please see Exhibit "A".)

23.     At the time of the incident in question, Defendant JOAO DOVALE, M.D. was employed by Defendant STAT PHYSICIANS, P.A. as a contract employee for Columbia Valley Regional Medical Center, now known as VALLEY REGIONAL MEDICAL CENTER..

24.     Plaintiff alleges that Defendant JOAO DOVALE, M.D. was in the course and scope of his employment with Defendant STAT PHYSICIANS, P.A. on the occasion in question, and that STAT PHYSICIANS, P.A. is, therefore, liable for the negligent acts and/or omissions of Defendant JOAO DOVALE, M.D. under the doctrine of *respondeat superior*.

25.     At all times material hereto, Defendant, JOAO DOVALE, M.D. held himself out to the community in general and to Plaintiff as being a medical doctor possessing the ordinary skills of a physician, and owed Plaintiff a duty to exercise ordinary care in the diagnosis and treatment of Plaintiff's condition.

26.     Defendant JOAO DOVALE, M.D. was negligent in the course of his care and treatment of Plaintiff and deviated from the standard of care on the occasion in question, as follows:

     A.    Failure to conduct a neurologic examination or at the time of initial presentation;

     B.    Failure to conduct an examination of Plaintiff's extremities;

     C.    Failure to follow appropriate policies and procedures with regard to the assessment and treatment of emergency room patients presenting with circumstances and complaints strongly suggestive of the necessity to assess

a possible cervical cord injury; and

D.      Failure to provide adequate care and treatment for Plaintiff.

Each of the foregoing acts or omissions constitutes a proximate cause of the injuries and damages set forth below.

COUNT III: RECOVERY OF DAMAGES

Paragraphs 1 through 26 are incorporated by reference for all purposes.

27.     As a result of the acts and negligence of Defendants as described above, Plaintiff has suffered severe, debilitating injuries, including quadriplegia. Plaintiff has sustained permanent bodily impairment, disfigurement, a loss of earnings, and a loss of earning capacity, all in the past and, in reasonable probability, he will continue to sustain such damages in the future. Plaintiff has experienced great physical pain and mental anguish, and will in all reasonable probability, continue to do so in the future by reason of the nature and severity of his injuries.

28.     Plaintiff has incurred reasonable hospital, doctor, medical and nursing expenses for treatment related to injuries sustained in this incident and will, in all reasonable medical probability, continue to incur doctor, medical and nursing expenses in the future for the rest of his life.

29.     The acts and omissions on the part of the Defendants HCA-THE HEALTHCARE COMPANY, COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P. d/b/a VALLEY REGIONAL MEDICAL CENTER, JOAO DOVALE, M.D. and STAT PHYSICIANS, P.A., as set forth above, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiff, and of which they had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff. Such malice resulted in Plaintiff's injuries set out herein, and it is on the basis of such malice that Plaintiff hereby seeks an award of exemplary damages in an amount of at least $5,000,000.00.

30.     Attached hereto as Exhibit "A" is the expert report of Jeremy D. Slater, M.D., and as Exhibit "B" that of Nick Peters, M.D., pursuant to TEX. REV. CIV. STAT. art. 4590i, § 13.01(a)(3) (Vernon Supp. 1997).

### COUNT IV: ATTORNEYS' FEES

Paragraphs 1 through 30 are incorporated herein for all purposes.

31.     Pursuant to 42 U.S.C. § 1988, Plaintiff requests this Court award Plaintiff reasonable and necessary attorneys' fees and expenses which Plaintiff has incurred and will continue to incur during all trial and appellate court proceedings.

### JURY TRIAL REQUESTED

32.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury.

WHEREFORE, Plaintiff respectfully prays that upon final trial of this cause, Plaintiff recovers:

a.     Judgment against Defendants, jointly and severally, for general and specific damages in the amount of at least $10,000,000.00;

b.     Exemplary damages in the amount of at least $5,000,000.00 as set forth herein;

c.     Pre-judgment interest;

d.     Post-judgment interest at the highest rates permitted by law;

e.     Reasonable attorneys' fees to the extent recoverable by law;

f.     All costs of court expended herein; and

g.     All other relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

By: _____

CAROL P. LOMAX
State Bar No. 12509100
Federal I.D. No. 13464
BRANTON & HALL, P.C.
One Riverwalk Place, Suite 1700
700 North St. Mary's Street
San Antonio, Texas 78205
(210) 224-4474
(210) 224-1928 (Fax)

COUNSEL FOR PLAINTIFF


PLAINTIFF HEREBY DEMANDS TRIAL BY JURY

CltdPDF - www.fastio.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been forwarded by certified mail return receipt requested, on this _____23_____ day of _____May_____, 2001, to:

Ryan Henry
WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
Brownsville, Texas 78521

ATTORNEYS FOR DEFENDANTS,
CITY OF BROWNSVILLE, TEXAS and
BENIGNO REYNA IN HIS OFFICIAL CAPACITY
AS CHIEF OF POLICE FOR THE CITY OF BROWNSVILLE

Tyler Scheuerman
UZICK & ONCKEN, P.C.
8200 IH 10 West, Suite 208
San Antonio, Texas 78230

ATTORNEYS FOR DEFENDANTS,
STAT PHYSICIANS, P.A. and
JOAO DOVALE, M.D.

William Gault
Paul Fourt
BRIN & BRIN, P.C.
1325 Palm Blvd., Suite A
Brownsville, Texas 78520

ATTORNEYS FOR DEFENDANTS
COLUMBIA VALLEY HEALTHCARE
SYSTEM, L.P. D/B/A VALLEY
REGIONAL MEDICAL CENTER AND
HCA-THE HEALTHCARE COMPANY

_____
CAROL P. LOMAX

\\Bh_1\BH_DATA\WPFILES\FILES CLT\D\DEL9827\PLEAD\DEL9827 OA3



# Smith-Glynn-Callaway Medical Building

January 4, 2001

Carol P. Lomax
Branton & Hall
737 Travis Park Building
711 Navarro, Suite 737
San Antonio, Texas 78205-1787

      Re:    Patient: Candelario DeLeon
             File Number: 9827

Dear Ms. Lomax:

I, Jeremy D. Slater, M.D., am a licensed physician, Board Certified in Neurology,
Clinical Neurophysiology and Sleep Medicine. I have reviewed the records of Candelario
DeLeon. These include the following:
1. Emergency room records from Columbia Valley Regional Medical Center, dated
   12/24/98.
2. Hospital records from the Brownsville Medical Center, dated 12/25/98 through
   1/7/99.
3. EMS ambulance activity records from the City of Brownsville, dated 12/24/98
   through 1/29/99.

**Case Summary:**

Candelario DeLeon is a 58 year old male with an essentially negative past medical
history, who was brought to the Columbia Valley Regional Medical Center emergency
room on 12/24/98 by the City of Brownsville EMS ambulance after a motor vehicle
accident. The patient was found, sitting in the driver's seat, unrestrained. According to
the EMS notes, "Pt. Smelled highly of ETOH and stated he had been drinking but
unknown what or how much". A cervical collar was placed and the patient was extricated
through the driver's door onto a backboard (10 PM). On route, the patient complained of
"numbness from the neck down".

Upon arrival in the emergency room (10:05 PM), the ER physician notes document that
the patient is "obviously drunk – awake". Normal exam findings are documented for the
heart, lungs and abdomen, with no findings recorded for the neurological examination or



## Smith-Glynn-Callaway Medical Building

extremities. Nursing notes document the absence of CSF or blood in the ear canals, and the absence of Battle's sign, or periorbital ecchymoses. The presence of the cervical collar is noted. The patient received one staple to a forehead laceration and was then discharged to the custody of the police. No cervical spine films were ordered – there is no documentation regarding if or when the collar was removed.

The patient then spent the night in the city jail. Waking the next morning, he complained of being unable to move. When the EMS service arrived, he complained of pain in his arms and numbness throughout his body. At that time, no cervical collar was in evidence. The patient was placed on a backboard, secured with straps and transported to the Brownsville Medical Center emergency room.

Upon arrival in the emergency room, the patient was assessed and underwent X-rays of the cervical spine. Once these were completed, because of clinical suspicion of a cord compression, he received high-dose Solumedrol intravenously, 30 mg/kg. A Foley catheter was placed, and 400 cc of urine drained. Spine X-rays were completed including cervical, thoracic and lumbar, all of which were read as normal. A neurology consultation was obtained. The neurologist, on the basis of the clinical examination, suspected a low cervical cord compression, and ordered an MRI of the cervical spine. This was completed, and demonstrated no hematoma, moderate changes of cervical spondylosis with spinal canal stenosis in the mid to lower cervical spine. Neurosurgical consultation was ordered. A subsequent MRI of the thoracic spine was unremarkable, as was a CT scan of the brain.

Through the remaining hospitalization the patient received supportive therapies, and at the time of discharge to a nursing home, the patient remained quadraparetic, with a T8 sensory level.

**Conclusions:**

It is my professional opinion that the emergency room physician at Columbia Valley Regional Medical Center deviated from the standard of care by failing to complete a neurologic examination on Mr. DeLeon at the time of his initial presentation. The circumstances of the patient's injury, in addition to his complaints to the EMS personnel of numbness from the neck down, are both strongly compelling reasons to assess for possible cervical cord injury. Had he completed a neurological examination at that time, he might have discovered clinical evidence suggesting the presence of a cord compression. Early treatment with high-dose intravenous steroids could have been initiated, possibly reducing the level of longterm neurologic deficit.

3231 South National Avenue • Springfield, Missouri  65807-7396 • 417-883-7422

*A member of the Sisters of Mercy Health System—St. Louis*

CMPDF - www.fasiio.com



# Smith-Glynn-Callaway Medical Building

**Deviations:**

Based on a reasonable degree of medical certainty, it is my opinion that the physician did not use such care as reasonably prudent healthcare providers practicing in the same field in the same or similar locality would have provided under similar circumstances. It is my opinion that the breach in care caused a lost opportunity for a medical intervention that may have significantly reduced the patient's longterm deficits.

Signed,

Jeremy D. Slater, M.D.

3231 South National Avenue • Springfield, Missouri  65807-7396 • 417-885-7422
*A member of the Sisters of Mercy Health System–St. Louis*

**Nick Peters, MD**
**2300 Marie Curie Rd**
**Garland, Texas 75042**
**(972) 562-8541**

November 10, 2000

Carol Lomax
Branton & Hall
737 Travis Park Plaza Building
711 Navarro, Suite 737
San Antonio, Texas 78205

Re: Candelario DeLeon  9827

Dear Ms Lomax,

I, Nick Peters am a licensed physician Board Certified in Emergency Medicine. I have
reviewed the medical records sent from your office relating to the care of Mr. DeLeon.
Specifically, I have reviewed the records of two different emergency department visits
with paramedic transportation records for December 24, 1998 and December 25,
1998. Also, I was provided the inpatient hospital  records for his admission from his
December 25, 1998 arrival to his discharge on January 6, 1999. Mr. DeLeon was
brought back for other medical problems on January 8 and was discharged on
January 29, 1999.

As you know, Mr. DeLeon was a 57 year old male involved in a motor vehicle collision
in the evening of December 24, 1998.  Paramedics found him unable to get out of the
car.  The paramedics placed him in spinal precautions including a cervical spine
collar, head immobilization and strapped to a back board.  On arrival to the emergency
department at Columbia Valley Regional Medical Center it was reported the patient
complained of numbness from the neck down.  Dr. Dovale Joao examined the patient
and stapled a facial laceration.  The patient was cleared from spinal precautions and
Dr. Joao noted the patient was "obviously drunk". The patient was discharged from the
emergency department to police custody to go to jail after approximately 30 minutes at
2030.

On December 25, 1998 Mr. DeLeon was brought to Brownsville Medical Center
emergency department with" back pain",  "numbness in body" and "can't move legs".
Paramedics brought him from the jail to the hospital on a backboard without a cervical
spine collar. Dr. Nagarjun Narra  applied a C-collar but when the patient returned from
x-ray the collar had been removed.  Later the cervical collar was replaced.  After



CtrlPDF - www.fastio.com

Carol Lomas
Re: DeLeon
Nov. 10, 2000
page 2

multiple x-rays were performed including cervical, dorsal and lumber spine, CT and MRI a diagnosis of acute spinal cord injury, cervical cord compression was made. The patient was admitted for further care and evaluation of his quadriplegia.

He was discharged from the hospital for supportive care and therapy, to be brought back 2 days later on January 8, 1999 for an infection and was later discharged again on January 29, 1999.

After my review of the records available, I believe several times the medical care rendered to Mr. DeLeon fell below expected standards. The incidences and reasons for my opinion are as follows:

1.   On the first emergency department encounter the  patient was removed from spinal precautions prematurely.  To safely remove a patient from such precautions, he must be awake, alert with no distracting injuries and no mind altering substances substances in the patient's system. Then the physician can access spinal stability after a careful normal neurological and spinal exam. Often needed are x-rays and occasionally special studies or consulting opinions . Dr. Joao did not document a neurological examination, or a spinal exam.  The patient had a mind altering substance in his system as noted by the physician as "obviously drunk".  No x-rays where done to even attempt to find the cause of  the patient's compliant of numbness.  In my opinion this gross negligence was a major contributing cause of Mr. DeLeon's spinal cord injury.

2.   When the paramedics arrived to care for Mr. DeLeon at the jail on December 25, 1999, they put him on a back board, but no cervical collar.  With his cervical spine unstabilized he was at high risk of further unnecessary injury while being transported.  This deviation from the standards of care was a contributing cause of Mr. DeLeon's quadriplegia.

3.   When the patient arrived to emergency on December 25, 1999 Dr. Narra appropriately placed a cervical collar on Mr. DeLeon.  Unfortunately when he returned from having his x-rays done the collar was off.  Later it was put back on.  Even with normal cervical spine x-rays, the spinal precautions must not be removed if their is evidence of a neurological deficit.  At this time Mr. DeLeon had obvious signs of injury with decreased motor and  sensory function.  The removal of the collar at this point was a departure from acceptable medical standards demonstrating  negligence and could have contributed to his ultimate spinal injury.

Carol Lomas
Re: DeLeon
Nov. 10, 2000
page 3

In summery, it is my professional opinion the care for Mr. DeLeon fell substantially below standards of care several times by various caretakers. Reasonable care would have protected the spine from further injury. As a result of these breeches in the standard of medical care Mr. DeLeon did not have the opportunity to minimize or even possibly eliminate any long term paralysis, and other sequela.

Please do not hesitate to contact me if there are additional records for review or if there are additional questions which need to be addressed.


Sincerely,

Nick Peters, MD