75

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 2 8 2001

| | | |
|---|---|---|
| CANDELARIO DE LEON | § | Michael N. Milby |
| | § | Clerk of Court |
| VS. | § | |
| | § | CIVIL ACTION NO. CV-B-00-192 |
| | § | JURY DEMANDED |
| | § | |
| CITY OF BROWNSVILLE, | § | |
| TEXAS, ET AL | § | |
| | § | |

## DEFENDANTS COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P. D/B/A VALLEY REGIONAL MEDICAL CENTER and HCA-THE HEALTHCARE COMPANY'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center and HCA-The Healthcare Company and file this Motion for Summary Judgment and respectfully move this Court to grant them a Summary Judgment pursuant to Federal Rules of Civil Procedure 56 and would respectfully show the Court as follows;

I.

## SUMMARY OF ISSUES TO BE RULED ON BY COURT

Defendant HCA-The Healthcare Company is entitled to summary judgment as a matter of law because Plaintiff's Third Amended Complaint makes no specific allegation against it and Plaintiff has not produced any evidence nor designated any experts or provided any expert opinions that imply liability of this Defendant.

Defendant Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center is entitled to a summary judgment as a matter of law because :

1)      Plaintiff has produced no competent evidence as to this Defendant's negligence or

DELEON/VRMC: MSJ-PLT
PAGE 1

that its negligence has proximately caused Plaintiff's injuries;

2)     The acts of Co-defendant Dr. Dovale are not and cannot be attributable to this Defendant as he is an independent contractor.

Plaintiff has alleged medical negligence against Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center. Plaintiff's experts reports that have been produced do not contain a report from a licensed medical doctor that addresses any violation of the standard of care of Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center. The only expert that addresses this is a hospital administrator expert that has a Master's of Business Administration degree. He is not qualified to testify as to whether or not any of the care given proximately caused any of the Plaintiff's injuries.

Plaintiff's claims against these two Defendants do not rise to the level needed to sustain a medical negligence case.

II.

## SUMMARY JUDGMENT EVIDENCE

These Defendants would rely upon and incorporate herein the following summary judgment evidence;

1)     Plaintiff's Third Amended Petition which is on file with the Court;

2)     Defendant HCA-The Healthcare Company's Answer to Plaintiff's Second Amended Complaint which is on file with the Court;

3)     Defendant Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center's Answer to Plaintiff's Second Amended Complaint which is on file with the Court;

4)     Plaintiff's Designation of Expert Witnesses which is attached hereto as Exhibit 1;

5)     Plaintiff's Supplemental Designation of Expert Witnesses which is attached hereto as

Exhibit 2; and

      6)     Plaintiff's Objections and Answers to Defendant Columbia Valley Healthcare System,

L.P. d/b/a Valley Regional Medical Center's Interrogatories, Interrogatory 16 and its answer which is

attached hereto as Exhibit 3.

III.

<strong><u>SUMMARY OF FACTS</u></strong>

      On December 24, 1998 Plaintiff was driving a car and rear-ended the vehicle in front of him.

Because of the circumstances of the accident and the smell of alcohol on his breath, Plaintiff was

arrested for driving while intoxicated. Since he requested medical assistance, he was taken by

Brownsville Emergency Medical Services to Valley Regional Medical Center, the nearest hospital

to the scene of the accident. At the hospital, the Plaintiff was seen by a nurse and Dr. Joao Dovale

(one of the defendants in this case). The Plaintiff's only injury was a one-half centimeter cut to his

forehead which took one staple to suture. The Plaintiff was released to the custody of the

Brownsville Police Department and two of its officers (defendants in this case who have been sued

for violating Plaintiff's civil rights). Later the Plaintiff developed swelling in his spinal canal which

caused his nerve injuries.

      The Plaintiff initiated this case solely against the City of Brownsville and its officers. Shortly

before the two-year and 75-day statute of limitations (in a medical malpractice case the case is tolled

75 days if a claim letter is sent to the Defendants before the 2-year statute of limitations), the Plaintiff

added Valley Regional Medical Center, HCA and Dr. Dovale as additional Defendants.

      The Plaintiff has designated expert witnesses in the case (see Exhibits 1 & 2) [1]. Of the seven

---

[1]

  The reports of the Plaintiff's experts have been produced as evidence in this Motion for Summary
Judgment. The undersigned has requested depositions of Plaintiff's experts on numerous occasions,

expert witnesses that the Plaintiff has designated, four of them do not address healthcare liability issues. Mr. Bagwell and Dr. Willingham are damage experts only. Dr. Garriott is a toxicologist that speaks of the alcohol that was consumed by the Plaintiff and its physiological effects on his behavior. He does not have any opinions concerning the standard of care of the healthcare providers. Mr. Rodriguez is the Plaintiff's expert that states that the City of Brownsville and its officers acted reasonably and the Plaintiff does not have a valid claim against them.

The three remaining experts discuss healthcare liability. Dr. Peters discusses Dr. Joao's (Dr. Dovale's) conduct and also criticizes the conduct of follow-up medical providers that have not been sued. Dr. Slater only makes statements in his report that the ER doctor (Dovale) deviated from the standard of care. The one remaining Plaintiff's expert is Mr. Ross, a hospital administrator whose highest education is a Master's of Business Administration degree. His report discusses whether or not trauma policies and procedures were followed in treating Mr. De Leon who presented with a cut to his forehead that was 1/5 of an inch long. Mr. Ross' report also discusses whether or not the possibility of early treatment would have decreased the plaintiff's long term deficit. However, Mr. Ross is not legally or medically qualified by education or training to discuss the propriety of medical or nursing treatment that should be given to the Plaintiff or whether or not it caused the outcome of this case. He does not have any scientific basis for medical opinions. He is not qualified under the law as an expert witness in areas of medicine or nursing and therefore his opinions would merely be based on junk science.

---

the depositions of Dr. Peters, Dr. Slater and Mr. Ross, the Plaintiff's liability experts have not been obtained. They had been previously scheduled, but at the request of the Co-defendant and Plaintiff's counsel, they were postponed and no further dates have been provided to us. Therefore, these Defendants must rely upon the reports that were provided in responses to discovery.

The allegations against Defendants Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center and HCA-The Healthcare Company should be dismissed.

IV.

## SUMMARY OF ARGUMENT

A.   SUMMARY JUDGMENT STANDARD

Summary Judgment evidence is viewed in the light most favorable to the nonmovant. *Eastman Kodak v. Image Tecnical Servs.*, 504 U.S. 451, 456-58 (1992). Summary judgment is proper only when it appears that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C). An alleged factual dispute will not defeat a motion unless it is genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "material" if it involves a fact that might affect the outcome of the suit under governing law. *Douglass v. United Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). Once the movant establishes the absence of a factual dispute, the burden shifts to the nonmovant to show that summary judgment is inappropriate.

The nonmoving party may not rest upon the mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256. Instead, the nonmovant must "make a showing sufficient to establish the existence of each essential element of its case." *Celotex Corp. v. Catrett*, 477 U.S.317, 322 (1986). This evidence must do more than create a metaphysical doubt. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.574, 585-87 (1986). Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *Anderson*, 477 U.S. at 256.

B.   MEDICAL MALPRACTICE BURDEN OF PROOF

In a medical malpractice case, negligence and proximate cause must be proven, as a general

rule, by expert medical testimony. The trial court is barred from giving any weight to lay testimony. Courts and juries are not supposed to be conversant with what is peculiar with the science and practice of the profession of medicine and surgery. *Kieswetter v. Central Pavilion Hospital*, 662 S.W.2d 24, 27 (Tex.App.-Houston, 1983 no writ). Liability cannot turn upon speculation or conjecture and it is essential that the evidence show at least a reasonable probability that the plaintiff's complications were caused by the Defendant's negligence. *Lenger v. Physicians General Hospital*, 455 S.W.2d 703, 706 (Tex. 1970). The plaintiff must show at least a reasonable probaility that his complications were caused by such negligence. *Kieswetter, supra.*, p.29. It is not enough for the plaintiff to show that he is injured, but he is required to show that his injuries were caused by the hospital's negligence. *Hilzendager v. Methodist Hospital*, 596 S.W.2d 284, 287 (Tex.Civ.App.-Houston [1st], 1980, no writ).

C.     OSTENSIBLE AGENCY CLAIMS

Plaintiff has made a claim that the hospital is liable because Dr. Dovale is an ostensible agent of the hospital. The Defendant has filed a verified denial denying the plaintiff's claims. See answer filed by Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center, paragraph 29 and the verification attached to it.. Furthermore, Plaintiff's answer to Interrogatory 16 attached as Exhibit 3 indicates that he did not choose the hospital that he was taken to.

Under a theory of ostensible agency, the plaintiff must show (1) he had a reasonable belief that the physician was the agent or employee of the hospital, (2) such belief was generated by the hospital affirmatively holding out the physician as its agent or employee or knowingly permitting the physician to hold himself out as the hospital's agent or employee, and (3) he justifiably relied on the representation of authority. *Baptist Memorial Hospital System v. Sampson*, 969 SW 2d 945, 949 (Tex.1998). In this case, the plaintiff did not choose the hospital and was not relying upon any

representations of the hospital in seeking healthcare. Also, there is no evidence that the hospital held out the doctor as its employee or permitted the doctor to hold himself out as a hospital employee.

### V.

### SUMMARY OF THE ARGUMENT

Plaintiff has not made any medically sufficient, legally competent direct liability claim against these two Defendants alleging that their acts or omissions violated a specific standard of care and because of that violation of the standard of care, it caused the Plaintiff's injuries. The Plaintiff has not provided any medical evidence that would support that claim.

Concerning indirect liability claims, Defendants would rely upon and incorporate herein their verified denials that the emergency room doctor was an agent of the hospital and furthermore, Plaintiff has not produced any evidence to support such an allegation or to contradict Defendants' verified denial.

### VI.

### CONCLUSION

Defendants HCA-The Healthcare Company and Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center move that Plaintiff's claims against these two Defendants be dismissed. Defendants request the Court award these Defendants their court costs. Defendants request the Court to sever Plaintiff's claims against these two Defendants into its own cause number so that the summary judgment will become final.

Respectfully submitted,

By: _____

William Gault
Federal I.D. No. 14685
State Bar No. 07765050
Brin & Brin, P.C.
1325 Palm Blvd., Suite A
Brownsville, Texas 78520
(956) 544-7110
(956) 544-0607 Telecopier

Of Counsel:

Brin & Brin, P.C.
1325 Palm Blvd., Suite A
Brownsville, Texas 78520
(956) 544-7110
(956) 544-0607 Telecopier

ATTORNEYS FOR DEFENDANTS
COLUMBIA VALLEY HEALTHCARE
SYSTEM, L.P. D/B/A VALLEY
REGIONAL MEDICAL CENTER AND
HCA-THE HEALTHCARE COMPANY

## CERTIFICATE OF SERVICE

This is to certify that the above and foregoing instrument has been forwarded to counsel as indicated below on this the 28th day of December, 2001.

Ms. Carol Lomax                     VIA CM# Z 474 210 238
Branton & Hall, P.C.
One Riverwalk Place, Suite 1700
700 N. St. Mary's Street
San Antonio, Texas 78205

Mr. Ryan Henry                      VIA REGULAR MAIL
Willette & Guerra, L.L.P.
3505 Boca Chica Boulevard, Suite 460
Brownsville, Texas 78521

Mr. Tyler Scheuerman                VIA REGULAR MAIL
Uzick & Oncken, P.C.
Fountainhead One Building
8200 IH-10 West, Suite 208
San Antonio, Texas 78230

_____
William Gault

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

CANDELARIO DE LEON       §

VS.       §

§    **CIVIL ACTION NO. CV-B-00-192**
§    **JURY DEMANDED**

CITY OF BROWNSVILLE, §
TEXAS, ET AL      §

## ORDER GRANTING DEFENDANTS COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P. D/B/A VALLEY REGIONAL MEDICAL CENTER and HCA-THE HEALTHCARE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND SEVERANCE

On this the _____ day of _____, 2002 came on to be considered Defendants Columbia

Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center and HCA-The Healthcare

Company's Motion for Summary Judgment in the above entitled and numbered cause. The Court,

having considered the documents on file, is of the opinion that such Motion should be granted.

It is therefore ORDERED ADJUDGED AND DECREED that Defendants Columbia Valley

Healthcare System, L.P. d/b/a Valley Regional Medical Center and HCA-The Healthcare Company's

Motion for Summary Judgment is hereby granted and the Court enters a judgment in favor of Defendants

Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center and HCA-The

Healthcare Company and against Plaintiff Candelario De Leon. The Court assesses court costs against

the Plaintiff. Plaintiff's claims against Defendants Columbia Valley Healthcare System, L.P. d/b/a

Valley Regional Medical Center and HCA-The Healthcare Company are severed into Cause Number

_____ so that this judgment shall become final.

SIGNED AND ENTERED, this the _____ day of _____, 2002.

_____
**JUDGE PRESIDING**

COPIES TO:
Ms. Carol Lomax, Branton & Hall, P.C., One Riverwalk Place, Suite 1700, 700 N. St. Mary's Street, San Antonio, Texas 78205
Mr. William Gault, Brin & Brin, P.C., 1325 Palm Blvd., Suite A, Brownsville, Texas 78520
Mr. Ryan Henry, Willette & Guerra, L.L.P., 3505 Boca Chica Blvd., Suite 460, Brownsville, Texas 78521
Mr. Tyler Scheuerman, Uzick & Oncken, P.C., Fountainhead One Building, 8200 IH-10 West, Suite 208, San Antonio, Texas 78230

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CANDELARIO De LEON, | § | COMPLAINT FOR DAMAGES FOR VIOLATIONS |
| | § | OF CIVIL RIGHTS UNDER COLOR OF STATE |
| Plaintiff, | § | LAW (42 U.S.C. §§ 1983) |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. CV-B-00-192 |
| CITY OF BROWNSVILLE, TEXAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S DESIGNATION OF EXPERT WITNESSES

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Plaintiff in the above styled and numbered cause of action, and pursuant to

the Court's Scheduling Order, files designates his expert witnesses as follows:

1. Jose Luis Ayola, M.D.
   500 Paredes Line Road, Suite 4
   Brownsville, Texas 78520
   (956) 456-4119
   *Dr. Ayola has treated and continues to treat plaintiff Candelario DeLeon as a result of injuries sustained in the incident occurring on or after December 24, 1998. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

2. Dan Bagwell, R.N.
   Rehabilitation Professional Consultants, Inc.
   5101 Medical Drive
   San Antonio, Texas 78229
   (210) 615-7772
   *Mr. Bagwell is a nurse retained by plaintiff, who specializes in the preparation of life care plans. He will assist Dr. Willingham in the preparation of a life care plan for Candelario De Leon. He will assess the activities of daily living and medical needs of Candelario De Leon for the rest of his life expectancy. The Life Care Plan compiled by Alex C. Willingham, M.D. and Dan Bagwell is attached. The curriculums vitae and fee schedule of Alex C. Willingham and Dan Bagwell are attached.. Publications by this expert are contained in his curriculum vitae. A list of deposition and trial testimony for the past four years is attached.*

3.      James L. Branton, P.C.
        Branton & Hall, P.C.
        One Riverwalk Place, Suite 1700
        700 N. St. Mary's Street
        San Antonio, Texas 78205
        (210) 224-4474
        *Plaintiff's attorney who may be called to testify regarding the reasonableness and necessity
        of attorneys' fees incurred by plaintiff as a result of the negligence of defendants.*

4.      Agents, employees, representatives,
        healthcare providers and
        custodian of records of
        Brownsville Medical Center
        1048 West Jefferson Street
        Brownsville, Texas 78520
        (956) 544-1400
        *These witnesses may be called to testify regarding the injuries and damages sustained by
        plaintiff as a result of subject incident.  They may also be called to testify regarding the
        reasonableness and necessity of treatment rendered and to be rendered to plaintiff in the
        future as a result of injuries sustained in subject incident.  They may also be called to testify
        regarding the authenticity of their business records.*

5.      Agents, employees, representatives,
        officers, and custodian of records of
        City of Brownsville
        Brownsville Police Department
        600 East Jackson Street
        Brownsville, Texas
        (956) 548-7000
        *These witnesses may be called to testify regarding their knowledge of subject incident and
        the injuries and damages resulting therefrom.  They may also be called to testify regarding
        the authenticity of their business records, including photographs, videotapes, and all other
        evidence created by or for this agency as a result of the detainment and arrest of Candelario
        De Leon.*

6.      Agents, employees, representatives,
        healthcare providers and
        custodian of records of
        City of Brownsville E.M.S.
        954 East Madison Street
        Brownsville, Texas 78520
        (956) 541-9491

*Provided emergency medical treatment to plaintiff. These witnesses may be called to testify regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity of their business records, and the reasonableness and necessity of treatment rendered.*

7.  Agents, employees, representatives,
    healthcare providers and
    custodian of records of
    Columbia Valley Regional Medical Center
    now referred to as Valley Regional Medical Center
    100 A. E. Alton Gloor
    Brownsville, Texas
    (956) 350-7000
    *These witnesses may be called to testify regarding treatment rendered to Candelario De Leon while a patient at their facility. They may also be called to testify regarding the authenticity of their business records and the reasonableness and necessity of treatment rendered.*

8.  Joao Dovale, M.D.
    1102 West Trenton Road
    Edinburg, Texas
    *Defendant who provided treatment to plaintiff while a patient at Columbia Valley Regional Medical Center who will be called to testify regarding that treatment.*

9.  Jesus Dovalina
    Dovalina & Fernandez, P.C.
    P.O. Drawer 1209
    Del Rio, Texas 78840
    (956) 774-5252
    *Attorney who may be called to testify regarding the reasonableness and necessity of attorneys' fees incurred by plaintiff as a result of the negligence of defendants.*

10. S. Fonseca, EMT
    City of Brownsville E.M.S.
    954 East Madison Street
    Brownsville, Texas 78520
    (956) 541-9491
    *Provided emergency medical treatment to plaintiff. This witness may be called to testify regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity of business records, and the reasonableness and necessity of treatment rendered.*

11.  Luis Gayton, M.D.
     2137 East 22nd Street
     Brownsville, Texas 78520
     (956) 548-7400
     *Dr. Gayton has treated and continues to treat plaintiff Candelario DeLeon as a result of injuries sustained in the incident occurring on or after December 24, 1998. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

12.  James C. Garriott, Ph.D., Forensic Toxicologist
     16031 Oak Grove
     San Antonio, Texas 78255
     (210) 695-9520
     *Dr. Garriott is a forensic toxicologist retained by plaintiff to testify as to the blood alcohol level of Candelario De Leon at the time of subject incident and the effects the alcohol would have on his physical and mental capacity. His report is attached. His curriculum vitae and fee schedule are also attached. Publications for the past ten years by this expert are contained in his curriculum vitae. A list of depositions and trial testimony for the past four years will be supplemented.*

13.  James Henson, EMT
     City of Brownsville E.M.S.
     954 East Madison Street
     Brownsville, Texas 78520
     (956) 541-9491
     *Provided emergency medical treatment to plaintiff. This witness may be called to testify regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity of business records, and the reasonableness and necessity of treatment rendered.*

14.  Agents, representatives, employees and
     custodian of records of
     Internal Revenue Service
     Austin, Texas
     (exact address & phone unknown)
     *These witnesses may be called to testify regarding the authenticity of tax records relating to plaintiff.*

15.  Victor Leal, M.D.
     30 North Park Place
     Brownsville, Texas 78520
     (956) 542-9118

*Dr. Leal has treated and continues to treat plaintiff Candelario DeLeon as a result of injuries sustained in the incident occurring on or after December 24, 1998. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

16.  Carol P. Lomax
     Branton & Hall, P.C.
     One Riverwalk Place, Suite 1700
     700 N. St. Mary's Street
     San Antonio, Texas 78205
     (210) 224-4474
     *Plaintiff's attorney who may be called to testify regarding the reasonableness and necessity of attorneys' fees incurred by plaintiff as a result of the negligence of defendants.*

17.  G. Mendoza, E.M.T.
     City of Brownsville E.M.S.
     954 East Madison Street
     Brownsville, Texas 78520
     (956) 541-9491
     *Provided emergency medical treatment to plaintiff. This witness may be called to testify regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity of business records, and the reasonableness and necessity of treatment rendered.*

18.  Nagarjun Narra, M.D.
     Brownsville Medical Center
     1048 West Jefferson Street
     Brownsville, Texas 78528
     (956) 544-1400
     *Dr. Narra diagnosed and treated plaintiff Candelario DeLeon for his spinal cord injuries. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

19.  Philip Onghai, M.D.
     Brownsville Medical Center
     1048 West Jefferson Street
     Brownsville, Texas 78520
     (956) 544-1400

or

Medical Billing Services
302 Kings Highway, Suite 210
Brownsville, Texas 78521
(956) 982-0400

*Dr. Onghai diagnosed and treated plaintiff Candelario DeLeon for his spinal cord injuries. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

20.     Officer Alex Ortiz
        c/o Brownsville Police Department
        600 East Jackson Street
        Brownsville, Texas 78520
        (830) 548-7000

*This officer was one of the investigating and/or arresting officers involved in the detainment and arrest of plaintiff. He may be called to testify regarding the scene of the accident, injuries and damages resulting therefrom, the detainment, transfer and treatment of plaintiff while under detainment by the City of Brownsville. He may also be called to testify regarding the authenticity of business records, photographs and other demonstrative evidence originated by or for defendants as a result of subject incident.*

21.     Nick Peters, M.D.
        2300 Marie Curie Road
        Garland, Texas 75042
        (972) 562-8541

*Dr. Peters is a board certified Emergency Medicine physician retained by plaintiffs to review the medical treatment provided to Candelario De Leon while a patient at Columbia Valley Regional Medical Center. His mental impressions and opinions are contained in his report of November 10, 2000, as attached. His curriculum vitae and fee schedule are also attached. Lists of publications for the past ten years and testimony, whether by deposition or trial for the past four years, have been requested and will be supplemented.*

22.     Chief Beningo Reyna
        c/o Brownsville Police Department
        600 East Jackson Street
        Brownsville, Texas 78520
        (956) 548-7000

*Chief Reyna as Chief of Brownsville Police Department may be called to testify regarding the experience and training of officers involved in the arrest and detainment of Candelario De Leon and the policies and procedures for arrest and detainment of suspects, including suspects who are injured. He may be called to testify regarding the Brownsville Police*

-6-

*Department's use of force policies and procedures. He may also be called to testify regarding the authenticity of business records, photographs and other demonstrative evidence originated by or for defendants as a result of subject incident.*

23.   Commander Albert Rodriguez
      11017 Crossland
      Austin, Texas 78726
      (512) 424-2218
      Commander Rodriguez is Director of Training for the Texas Department of Public Safety and has been retained as an expert to testify regarding the police officers' actions during the arrest and detainment of Candelario De Leon beginning on December 24, 1998. His mental impressions and opinions are contained in his report as attached. His curriculum vitae is also attached. Lists of his publications of the last ten years and testimony at deposition and trial for the past four years have been ordered and will be supplemented upon receipt.

24.   P. Rojas, EMT
      City of Brownsville E.M.S.
      954 East Madison Street
      Brownsville, Texas 78520
      (956) 541-9491
      *Provided emergency medical treatment to plaintiff. This witness may be called to testify regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity of business records, and the reasonableness and necessity of treatment rendered.*

25.   Rey Rosat, EMT
      City of Brownsville E.M.S.
      954 East Madison Street
      Brownsville, Texas 78520
      (956) 541-9491
      *Provided emergency medical treatment to plaintiff. This witness may be called to testify regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity of business records, and the reasonableness and necessity of treatment rendered.*

26.   Zeff Ross, FACHE
      10213 Capri Street
      Cooper City, Florida 33026-4637
      (954) 433-7199
      *Mr. Ross is a retained expert who is a certified healthcare executive and Fellow in the American College of Healthcare Executives. He is currently the Administrator of a hospital in Florida. Mr. Ross will be called to testify regarding hospital policies and procedures to ensure healthcare providers meet the standard of care in the treatment of its patients. His curriculum vitae and fee schedule are attached. His report is attached which contains his mental impressions and opinions as it relates to the treatment and care provided to plaintiff,*

-7-

*Candelario De Leon, while a patient Columbia Valley Regional Medical Center. He may also testify regarding Stat Physicians and the hospital's policies and procedures for selecting and hiring physicians. His fee schedule is attached. Lists of publication for the past ten years and testimony for the past four years, both by deposition and trial, will be supplemented.*

27.   Homayon Sidiq, M.D.
      2137 East 22nd Street
      Brownsville, Texas 78521
      (956) 548-7400
      *Dr. Sidiq diagnosed and treated and continues to treat plaintiff Candelario DeLeon for his spinal cord injuries. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

28.   Jeremy Slater, M.D.
      St. John's Physicians & Clinics
      3231 South National Avenue
      Springfield, Missouri 65807-7396
      (417) 883-7422
      *Dr. Slater is a Board Certified Neurologist retained by plaintiffs. His mental impressions and opinions are contained in his report as attached. His curriculum vitae and fee schedule are attached. Lists of his publications for the past ten years and testimony, by deposition and at trial for the past four years, have been ordered and will be supplemented.*

29.   Khalid R. Solija, M.D.
      109 East Price Road
      Brownsville, Texas 78520
      (956) 546-5237
      *Dr. Solija has treated and continues to treat plaintiff Candelario DeLeon as a result of injuries sustained in the incident occurring on or after December 24, 1998. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

30.   Andre S. Torres, Jr.
      c/o Brownsville Police Department
      600 East Jackson Street
      Brownsville, Texas 78520
      (830) 548-7000

*This officer was one of the investigating and/or arresting officers involved in the detainment and arrest of plaintiff. He may be called to testify regarding the scene of the accident, injuries and damages resulting therefrom, the detainment, transfer and treatment of plaintiff while under detainment by the City of Brownsville. He may also be called to testify regarding the authenticity of business records, photographs and other demonstrative evidence originated by or for defendants as a result of subject incident.*

31.    Maria C. Uribe, M.D.
       Brownsville Medical Center
       1048 West Jefferson Street
       Brownsville, Texas 78528
       (956) 544-1400
       *Dr. Uribe diagnosed and treated plaintiff Candelario DeLeon for his spinal cord injuries. She may be called to testify regarding plaintiff's injuries and damages. She may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. She or her custodian of records may also be called to testify regarding the authenticity of his business records.*

32.    Anant Utturkar, M.D.
       Brownsville Medical Center
       1048 West Jefferson Street
       Brownsville, Texas 78528
       (956) 544-1400
       *Dr. Utturkar diagnosed and treated plaintiff Candelario DeLeon for his spinal cord injuries. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

33.    Agents, employees, representatives,
       healthcare providers and
       custodian of records of
       Valley Grande Manor Nursing Home
       901 Wild Rose Lane
       Brownsville, Texas 78520
       (956) 546-4568
       *These witnesses may be called to testify regarding the care required by plaintiff Candelario De Leon as a result of injuries he sustained in subject incident. They may also be called to testify regarding the reasonableness and necessity of treatment rendered and to be rendered in the future plaintiff. They may be called to testify regarding the authenticity of their business records.*

34.    Jose Luis Villalobos, M.D.
       864 Central Boulevard
       Brownsville, Texas 78520
       (956) 546-3595
       *Dr. Villalobos has treated and continues to treat plaintiff Candelario DeLeon as a result
       of injuries sustained in the incident occurring on or after December 24, 1998. He may be
       called to testify regarding plaintiff's injuries and damages. He may be called to testify
       regarding the reasonableness and necessity of past and future medical treatment rendered
       and to be rendered to plaintiff as a result of subject incident. He or his custodian of records
       may also be called to testify regarding the authenticity of his business records.*

35.    Alex C. Willingham, M.D.
       Rehabilitation Professional Consultants, Inc.
       5101 Medical Drive
       San Antonio, Texas 78229
       (210) 615-7772
       *Dr. Willingham is a Physical Medicine and Rehabilitation physician, retained by plaintiff
       to prepare a Life Care Plan for Candelario De Leon. He has assessed the activities of daily
       living and medical needs of Candelario De Leon for the rest of his life expectancy. His
       report, curriculum vitae and fee schedule are attached. Publications for the past ten years
       by this expert are contained in his curriculum vitae. A list of depositions and trial testimony
       for the past four years is attached.*

       Plaintiff reserves the right to call all expert witnesses previously and subsequently designated

by all parties to this lawsuit.

                                        Respectfully submitted,

                                        By: _____
                                            CAROL P. LOMAX
                                            State Bar No. 12509100
                                            Federal I.D. No. 13464
                                            BRANTON & HALL, P.C.
                                            One Riverwalk Place, Suite 1700
                                            700 North St. Mary's Street
                                            San Antonio, Texas 78205
                                            (210) 224-4474
                                            (210) 224-1928 (Fax)

                                        COUNSEL FOR PLAINTIFF

                                        -10-

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been forwarded by certified mail return receipt requested, on this ___2nd___ day of ___July___, 2001, to:

Ryan Henry
WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
Brownsville, Texas 78521

ATTORNEYS FOR DEFENDANTS,
CITY OF BROWNSVILLE AND
CHIEF OF POLICE, BENINGO REYNA

Tyler Scheuerman
UZICK & ONCKEN, P.C.
8200 IH 10 West, Suite 208
San Antonio, Texas 78230

ATTORNEYS FOR DEFENDANTS,
STAT PHYSICIANS, P.A. and
JOAO DOVALE, M.D.

William Gault
Paul Fourt
BRIN & BRIN, P.C.
1325 Palm Blvd., Suite A
Brownsville, Texas 78520

ATTORNEYS FOR DEFENDANTS
COLUMBIA VALLEY HEALTHCARE
SYSTEM, L.P. D/B/A VALLEY
REGIONAL MEDICAL CENTER AND
HCA-THE HEALTHCARE COMPANY

CAROL P. LOMAX

-11-

# Dan M. Bagwell *Curriculum Vitae*

## Education:

**1978**   Undergraduate Work
Bachelor of Science in Nursing (With Honors).  The University of Mississippi School of Nursing.

**1983-1984** Graduate Studies
University of Texas at San Antonio, School of Business. 18 Semester Hours Completed.

**1998**   Post-Graduate Studies
Life Care Planning for Advanced Catastrophic Case Management. The University of Florida Department of Rehabilitation Counseling and The Rehabilitation Training Institute.

## Licensure/Certifications:

1.    **Registered Nurse  May 1978**
Board of Nurse Examiners for the State of Texas
Box 430, Austin, TX 78767
*License # - 503852  Exp. June 2001*

2.    **Certified Life Care Planner**
Commission on Disability Examiner Certification
13325 Queensgate Rd.
Midlothian, VA  23113

3.    **Certified Case Manager**
Commission For Case Management Certification
1835 Rohlwing Rd., Suite D
Rolling Meadows, IL  60008
*Certification # - M-01157   (Cert. Date 03/2000)*

4.    **Certified Disability Management Specialist**
Certification of Disability Management Specialist Commission
1835 Rohlwing Rd., Suite E
Rolling Meadows, IL  60008
*Certification # I04124  (Cert. Date 1988)*

5.    **Diplomate & Senior Analyst, American Board of Disability Analysts**
American Board Of Disability Analysts
Park Plaza Medical Building
325 24th Ave North
Suite 200
Nashville, TN 37203-1520
*Certification # 4556-97 (Cert. Date 1997)*

## Faculty Positions:

University of Florida Department of Rehabilitation Counseling and Intelicus (May 1999 - Present)
Advanced Curriculum Faculty

## Positions Held:

**October 2, 1998 - Present**
   Chief Executive Officer
   Rehabilitation Professional Consultants, Inc., San Antonio, Texas.

**November 1996 to April 1999**
   President
   LifeCare Personal Living Centers, Inc., Austin, Texas.

**April 1987 - Present**
   President
   Dan Bagwell and Associates, San Antonio, Texas.

**February 1992 - April 1998**
   Vice President and Co-founder
   MediSys Rehabilitation, Inc., Austin, Texas.

**March 1988 - March 1992**
   Medical Management Staff Analyst.
   Home Office Casualty Claims Staff
   United Services Automobile Association, San Antonio, Texas.

**November 1987 - February 1988**
   Vice President of Operations.
   Health Benefit Management, San Antonio, Texas.

**December 1984 - April 1987**
   Consultant in Charge, San Antonio, Texas.
   Medical Services Consultant,  San Antonio, Texas and Tampa, Florida
   Crawford and Company, Health and Rehabilitation Consulting Services

**May 1983 - January 1985**
   Staff Nurse, Intensive Care
   Medical Personnel Pool of San Antonio
**May 1980 - May 1983**
   *Captain, USAF Nurse Corps*
   United States Air Force: Wilford Hall USAF Medical Center, Lackland AFB, Texas.

**May 1978 - May 1980**
   Staff Nurse, Intensive Care and General Surgery at the University of Mississippi Medical Center and the
   Veterans Administration Hospital, Jackson, Mississippi.

## Additional Experience:

**1978 - 1980**

     Flight Nurse/Medical Crew Director: Aeromedical Evacuation Flight.
     Mississippi Air National Guard

**July 1983 - May 1986**

     Flight Nurse/Medical Crew Director
     USAF Reserves
     Kelly AFB, 34th Aeromedical Evacuation Squadron
     MacDill AFB, 37th Aeromedical Evacuation Group

## Other Professional Training Programs:

Critical Care School - USAF;
Flight Nurse School - USAF;
Vocational/Medical Consultant Program - Crawford and Company;
Branch Managers Program - Crawford and Company; and
Numerous Management, Personal and Professional Development Programs Offered through USAA
Management Training.

## Presentations; Lectures:

Organ Transplantation, Accessibility & the Role of the Life Care Planner: Presented at the 5th Annual Life Care Planning Conference in association with the University of Florida and Intelicus. Orlando, FL., October 6, 2000.

Life Care Planning for Organ Transplantation: Advanced Curriculum in Life Care Planning (Track 9). University of Florida and Intelicus. Scheduled October, 2001, New Orleans, LA.

Tort Reform In the United States; How Will It Impact the Demand For Life Care Planning: Presented at the 3rd Annual Life Care Planning Conference in association with the University of Florida and Intelicus. November 21, 1998.

Life Care Planning: Methodology to Enhance Credibility and Reliability: Continuing Education Series for Case Managers, Social Workers, and Insurance Claims Representatives. Warm Springs Rehabilitation Hospital, San Antonio, TX, Oct. 1998.

Team Approach to Life Care Planning: *American Board of Disability Analysts* - Presented at the 2ND International Conference - Cancun, Mexico, October 1997.

Life Care Planning for Catastrophic Cases :Traumatic Brain Injury Seminar: *Lorman Education Services* - Dallas, TX, August 27, 1997.

Team Approach to Life Care Planning: Developing a Blueprint of Care for Spinal Cord Injury - *American Congress of Rehabilitation Medicine, 73rd Annual Meeting* - Chicago, IL, October, 1996.

Introduction To Life Care Planning: *Texas Department of Insurance.* Course No. 23764CA020. Approved Course Credit 2 Hours, September, 1997.

Utilization Review in Texas - *Legal Nurses Association*, Texas Chapter, Houston, 1993.

Overview of Neurological Anatomy - *USAF* - Medical Technicians Critical Care School.

The Role of the Case Manager. *Quality Care National Managers Conference*, Tampa, FL, 1985.

*United Services Automobile Association 1988 - 1992*:

    Total Quality Management in the 90's;
    Developing Long Range Medical Projections;
    Effective Report Writing;
    Managing and Developing the New Employee;
    The Birth of Managed Care.

## publications:

Bagwell D, Willingham A, Harrell T. Life care planning: the interdisciplinary team approach, In *Disability Analysis In Practice*, Kendall/Hunt Publishing Co., Dubuque, IA; Dec. 1999: Chapter 1: 1-20.

Harrell T, Bagwell D, Coupland M. A team approach to life care planning: Developing a blueprint for care following birth injury. *Continuing Care,* July/August 97; 16(7): 26-32.

## Professional Societies (Current & Past):

> American Board Of Disability Analysts;
> Case Management Society of America;
> National Association of Rehabilitation Professionals in the Private Sector;
> Officer - Texas Association of Rehabilitation Professionals in the Private Sector;
> Case Management Society of South Texas;
> Brain Injury Association;
> Legal Nurses Association.

## CONTINUING EDUCATION
## DAN M. BAGWELL

1988-1992   112 Contact Hours in Nursing & Case Management

Case Manager Society of South Texas, Current Issues in Case Management: Tapping into your Resources, San Antonio, TX, March 4, 1993                                                                          6.2 contact hours

Rehabilitation Institute of San Antonio (RIOSA), Introduction to the Minnesota Multiphasic Personality Inventory (MMPI), San Antonio, TX, June 28, 1993                                                1 contact hours

Individual Case Management Association, Medical Case Management Conference VI, San Diego, CA, October 16-19, 1994                                                                                               15 contact hours

Northwestern University Medical School, Cerebral Palsy: Building on the Past, Projecting to the Future, Chicago, IL, June 25, 1996                                                                               15 contact hours

> The Development Disabilities Paradigm

> Medical Problems That Impact Rehabilitation

> Feeding, Swallowing, Nutrition and Growth Issues in Cerebral Palsy

Seizure Management - What's New?

Case Presentations, Problem Solving, Rehabilitation Planning

The Adult with Cerebral Palsy

Therapeutic Interventions: Physical Therapy

Abling the Disabled Through Technology

The Power of Power: Controversial Interventions

Gait Analysis For Children with Cerebral Palsy

What Does Botox Hold for the Cerebral Palsy Population?

Orthopedic Management of Children with Cerebral Palsy

Neurosurgical Options for Children with Cerebral Palsy

Sports and the Arts: Developing Community Resources for Individuals with Cerebral Palsy

American Congress of Rehabilitation Medicine - 73rd Annual Meeting, <u>Rehabilitation Across the Continuum: Managing the Challengers</u>, Chicago, IL, October 12-14, 1996                    16 contact hours

Successful Hospitals: Competing on Cost and Discipline

Positioning Rehabilitation in the Integrated Healthcare System

Medical Rehabilitation Effectiveness and Outcomes Research: State of the Science

Team Approaches to Life Care Planning: Developing a Blueprint for Care Following Spinal Cord Injury - PRESENTER

Patient Participation as an Outcome: Enhancing the Cost-Effectiveness of Rehabilitation

Disability Across the Life Span: The "Continuum of Care" Philosophy, Reality, and Resources

Evolving Partnerships in Rehabilitation: Strategies for Success

University of Florida - Brain Injury Association - 15th Annual National Symposium, <u>Designing Managed Care Pathways: Standards, Systems, and Outcomes</u>, Austin, TX,  November 2-5, 1996
                                                                                        9.75
contact hours

 <u>..antitative Assessment of Minimally Responsive Patients: Evaluating Rehabilitation Readiness</u>

 <u>Botox Injection Training Workshop</u>

 <u>Creating the American Academy for Certification of Brain Injury Specialists</u>

 <u>Outcome-Based Rehabilitation</u>

 <u>Designing and Implementing Pediatric Critical Care Pathways</u>

 <u>The Fourth Annual Paul Spanbock Family Lecture</u>

 The Clubhouse Concept and Long Term Community Support

 Musculoskeletal Disorders Following Traumatic Brain Injury

 Effectiveness of Rehabilitation Services on Survival Roles Following Traumatic Brain Injury

 International Brain Injury Association Workshop

 Prospects for Improving Outcome by Research

 Medical Complications and TBI

 Aspen Conference Guidelines: A Discussion of Their Implications for Brain Injury Treatment and Recovery

 Assessment and Treatment of Neurobehavioral Issues in Pediatric Brain Injury Rehabilitation

 Depression Following Traumatic Brain Injury


American Board of Disability Analysts, Second International ABDA Conference - Cancun, Mexico, October 24-26, 1997                                                                                                    10
contact hours

   Disability Evaluations: Integral Part of Family Practice in the 90's

   Team Approaches to Life Care Planning - **PRESENTER**

   Managing a Successful Worker's Compensation Early Return to Work Program

   Psychiatric Disability, Employability Analysis and Vocation Evaluation

   Development of a Quantifiable Functional Capacity Evaluation

   Psychometrics of Functional Capacity Evaluations

   Multiple Chemical Sensitivity

   Do You See What I Say? Visual Aspects of Language

   Disability and Depression

Issues in the Diagnosis of Psychiatric Disabilities in Individuals of Minority Origins

Psycho-Biotics: A 21st Century Holistic Forensic Healing Approach

Texas Riviera Association of Case Managers, <u>The Changing Tides of Case Management</u>, November 7 & 8, 1997        7.4 contact hours

The University of Florida, <u>Module 1: Tenets & Methodology of Life Care Planning</u>, New Orleans, LA, January 22-23, 1998        16 contact hours

The University of Florida, <u>Module 2: Assessment Issues Affecting Life Care Planning & Psychological Assessment Issues</u>, New Orleans, LA, January 24-25, 1998        18 contact hours

The University of Florida, <u>Module 3: Multiple Disabilities</u>, Los Angeles, CA, March 12-13, 1998        16 contact hours

The University of Florida, <u>Module 4: Forensic Rehabilitation</u>, Los Angeles, CA, March 14-15, 1998        16 contact hours

The University of Florida, <u>Module 5: Spinal Cord Injuries,</u> Orlando, FL, April 17, 1998        16 contact hours

The University of Florida, <u>Module 6: TBI & Pediatric Brain Damage</u>, Orlando, FL, April 19, 1998        16 contact hours

University of Florida - 3rd Annual Life Care Planning Conference, <u>The Cutting Edge: Moving Life Care Planning to the Next Level</u>, Atlanta, GA, November 20-21, 1998        16 contact hours

Searching the Cure: Reality vs. Hope Advances & Interventions in the field of TBI

Pain Management: New Advances in Technology

Neonatal Trauma - Update

Future Trends In Assistive Housing and Technology

Life Care Planning Panel Discussion Advancing the Practice of Life Care Planning

Advanced Research in Spinal Cord Injuries

Disqualifying Another Witness: What Caused Them and What a Life Care Planner Can Do

Geriatric Rehab:  New Opportunities in Life Care Planning

Transplantation: Issues for Life Care Planning

Resources for the 90's: Accessing Information in Non-Traditional Ways

Tort Reform in the United States:  How Will it Impact the Demand for Life Care Planning - **PRESENTER**

University of Florida - 4th Annual Life Care Planning Conference, New Orleans, LA, November 5-6, 1999                                                                                        16
contact hours

Life Care Planning for Catastrophic Cases: Avoiding Legal Quicksand

Day in the Life and Settlement Video

Traumatic/Acquired Brain Injury: Cognitive Dysfunction and Remediation Approaches for Individuals with Dementia

Trusts: What Life Care Planners Need to Know

Role of Economics in Life Care Planning Evaluations

Chronic Pain Disorders: Cutting Edge Approaches to Managing Pain & Associated Costs

PVS: Diagnosis, Prognosis & Cost Ramifications for Life Care Planning

New Studies in Spinal Cord Injuries

Considerations in the Development of Life Care Plans for the Neonate

Daubert: How it Impacts the Expert Witness/An Actual Case Demonstration

Disease State Management - Rheumatic Diseases, Fibromyalgia & Arthritis

Patient Compliance

Case 1:00-cv-00192   Document 75   Filed in TXSD on 12/28/2001   Page 32 of 177

University of Florida - 5th Annual Life Care Planning Conference, Orlando, FL.
October 6-7, 2000 (Speaker/Presenter)
contact hours

16

Traumatic Brain Injury/Pediatric Brain Damage: Trends in the next millennium

Differential Diagnosis of Presumptive Mild TBI

SEX: Advances in Restoring Function & Reproduction

Life Expectancy Issues for the Catastrophically Injured

Organ Transplantation, Accessibility & the Role of the Life Care Planner **(PRESENTER)**

Outcomes Research and Predictive Validity

Psycho-Dynamics of Painful Health Communications

Giving Expert Testimony: Legal Liability Issues

Spinal Cord Injury: New Research

How to Work Effectively with the Insurance Industry

What Jury Consultants Do in Personal Injury Litigation

Life Care Planning Summit Results

# DEPOSITION SUMMARY – Dan M. Bagwell

| File Opened | Def / Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 6/9/00 | | Berry, Thelma Joyce | Jack Robinson | 169-CV-6-99 | 6th District Court, Red River County, Texas; Patricia Sheffield v. Gary Neil Carroll and Red River Trucking Company. |
| | | Black, Anita | Kugle, Byrne & Alworth | | |
| | | Bostic, Megan | Haskins Law Firm | | |
| 11/27/98 | | Bouwell, Charles | Jack Robinson, Jr. | 57,281 | Charles Houston Boutwell and Shakone Rupp vs. Harrison, Walter and Harper, Inc. in the 354th Judicial District Court of Hunt County, TX. |
| 6/22/98 | | Boyd, Roger J. | White, Craig L. | 97-CI-13427 | Julie and Roger Boyd Individually and as Next Friends of Roger Boyd, Jr., a Minor Child vs. Carol E. Wratten, MD in the 224th Judicial District Court of Bexar County, TX. |
| 7/29/99 | | Castillo, Rick | Haskins Law Firm | No. 4336 | Teresa and Rick Castillo, Individually and as Parents and Next Friends of Rick Castillo, Jr., Minor v. Eliud Acevedo, M.D., et al.; In the 49th Judicial District Court of Zapata County, TX. |
| 5/21/97 | | Cooper, Mathew | Talaska Law Firm | 96-21569 | Millie Glenn, Individually, and as Parent and Next Friend of Matthew Cooper, a minor vs. Blanchard Tucker Hollins, MD. and Hermann Hospital, in the District Court of Harris County, Texas 189th Judicial District Court |
| /15/99 | | Cordill, June Christine | Law Office of Skip Simpson | DV98-4767 | June Christine Cordill, by and through her next friend, James E. Marshall v. Gayle Gutierrez, M.D.; in the 191st Judicial District Court of Dallas County, Texas |
| 3/28/00 | | Curtis, Terry | Pasqual & Chumbley | 2000-CI-023936 | Terry L. Curtis v. William E. Drew, M.D.: in the 408th Judicial District Court of Bexar County, TX. |
| 6/8/99 | | Flores, Maria | Zavaleta Law Firm | C-802-98-D | Noe Tijerina Individually and as Personal Representative of the Estate of Maria Flores AKA Maria Flores De Ojeda, and as Next Friend of Joshua and Jennifer Tijerina, Minor Children & Juan Ojeda, Individually and on Behalf of Juan Miguel Ojeda, Minor Child vs. Samuel Garcia, Jr., MD., McAllen Medical Center, Inc. Jointly and Severally with Lawrence R. Gelman, MD., McAllen |

# DEPOSITION SUMMARY – Dan M. Bagwell

| File Opened | Def/ Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| | | | | | Anesthesia Consultants, P.A., monte Baylor, CRNA, Prakash Palinuer, MD, & Rahul K. Chaligadii, MD; In the 206th Judicial District Court of Hidalgo County, TX. |
| 8/7/98 | | Floyd, Aricia R. | Talaska Law Firm | 96-44521 | Arthur and Freddie Floyd, Individually vs. Theresa Robinson, MD, Wenzer's Hospital; In the 151st District Court of Harris County, TX. |
| *1/14/94 | D | Garcia, Flor R. | Rodriguez, Colvin & Chaney | 93-03-1354-A | Juan and Alma Alvear, Individually and on Behalf of and as Next Friends of Thelma Alvear, Minor, et al vs. Leonard Electric Products Company, et al, In the 107th Judicial District Court of Cameron County, Texas. |
| 6/12/00 | | Goggans, Patricia | Jack Robinson, Jr. | 99-543 | Patricia K. Goggans, et vir v. James Stanley Sulser, et al; in the 402nd District Court of Wood County, Tx. |
| 11/14/94 | D | Guerrero, Genevieve | Rodriguez, Colvin & Chaney | 93-03-1354-A | Juan and Alma Alvear, Individually and on Behalf of and as Next Friends of Thelma Alvear, Minor, et al vs. Leonard Electric Products Company, et al, In the 107th Judicial District Court of Cameron County, Texas. |
| 11/14/94 | D | Gutierrez, Andres Kino | Rodriguez, Colvin & Chaney | 93-03-1354-A | Juan and Alma Alvear, Individually and on Behalf of and as Next Friends of Thelma Alvear, Minor, et al vs. Leonard Electric Products Company, et al, In the 107th Judicial District Court of Cameron County, Texas. |
| 4/6/99 | | Gutierrez, Eva | Martha Kott | 99-3-53-224-B | Eva Gutierrez vs. Clyde Walrod, M.D., Emcare Holdings, Inc. and Emcare, Inc., In the 135th District Court of Victoria County, TX. |
| | | Hernandez, Michael N. | Boyd Waggoner | 99-04707-L | Michael Nicholas Hernandez, et al v. Balfour Beatty Construction, Inc., et al, State of Texas and Texas Department of Transportation in the 193rd Judicial District Court of Dallas County, TX. |
| 1995 | | Huffman, Kevin | Haskins Law Firm | | |
| 2/8/01 | | Joaquin, Abdun | Law Offices of Stephen Malouf | DV99-10127 | Abdon Joaquin vs. Bluebonnet Waste Control, Inc. HCB Contractors, Ltd. vs. Managed Comp/Houston General Insurance Company |
| 1993 | | Kindle, Robbyn | Pat Moloney | 93-000535 | Robby Kindle a/k/a Robbyn Keys vs. Nolami Hospitals of Texas, Inc. d/b/a Denton Regional Medical Center, J. Hampton Miller, MD, and John F. Dulemba, MD, T… |

# DEPOSITION SUMMARY – Dan M. Bagwell

| File Opened | Def/ Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| | | | | | Attubury, RN., J. Fisher, RN., Evelyn Fischer, RN., C. Medler, RN., I. Sobieski, RN., and Mahlon Freeman, MD., In the 61st Judicial District Court of Harris County TX. |
| 3/3/98 | | Kitchens, Ginger | Pasqual & Chumbley | 96-11-749 | Candice Kitchens, Individually and as Natural Mother and Next Friend of Ginger Kitchens and Darryl Austin, Individually and as Natural Father of Ginger Kitchens, A Minor vs Brownwood Regional Hospital D/B/A Brownwood Regional Medical Center; and F. Michael Schultz, MD. and Brownwood Emergency Physicians, P.L.L.; In the 35th Judicial District Court of Brown County, TX. |
| 7/13/94 | | Lalley, Paul | Kugle, Byrue & Alworth | | Paul Lalley and Linda Lalley, Individually and as Next Friends of Brian Lalley and Sean Lalley, Minors vs. City of San Antonio, by and through its agent, City Public Service Board of San Antonio; Rollins Outdoor Advertising, Inc.; Heritage Creative Outdoor Services, Inc.; and Reagan National Advertising, Inc.; In the 45th Judicial District Court of Bexar County, TX. |
| | | Leal, Nicholas | Haskins Law Firm | 86-010180-00-00-G | Rosa Maria Vega and Joe Leal, Individually and as Parents and Next Friends of Nicholas Leal, a Minor vs. Charles Ray Kirkham, M.D., Corpus Christi Women's Clinic, and Columbia Doctors Regional Medical Center |
| 4/1/98 | | Loftis, John | James Keene | 96-CI-12672 | John Loftis v. Carston Weber, Linda Porter, EQR-The Lodge (Texas) Vistas, Inc., D/B/A The Lodge Apartments, Gallagher Bassett Services, Inc., In the 225th Judicial District Court, Bexar County, TX. |
| 2/23/00 | | Lott, Derika | Haskins Law Firm | 99-22867 | Felicia Lott and Derrick Lott, Individually and as Parents and Next Friends of Derika Lott, a Minor v. Paul Cook, MD and Tenet Healthcare, Ltd. d/b/a Park Plaza Hospital, In the 133rd Judicial District Court of Harris County, TX. |
| 11/14/94 | D | Luiton, Dante | Rodriguez, Colvin & Chaney | 93-03-1354-A | Juan and Alma Alvear, Individually and on Behalf of and as Next Friends of Thelma Alvear, Minor, et al vs. Leonard Electric Products Company, et al, In the 107th Judicial District Court of Cameron County, Texas. |

Forms\DEPOSITION SUMMARY-DMB          Updated 06/27/01

# DEPOSITION SUMMARY – Dan M. Bagwell

| File Opened | Def/Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 9/22/99 | | Maddox, Ron | Jack Robinson | 32558 | Ron Bartley Maddox v. Supreme Beef Packers, Inc., In the 6th District Court, Fannin County, Texas |
| 8/9/99 | | Martinez, Rodrigo | Noteboom & Gray | 141-170634-97 | Rodrigo Martinez vs. Linbeck Construction Corporation; Sundance East Partners, L.P.; Fine Line Diversified Realty, Inc. and HKS, Inc.; In the 141st Judicial District Court of Tarrant County, TX. |
| '995 | | Mena, Rolando | Fidel Rodriguez | | |
| 2/20/98 | | Moore, Gaberial | Haskins Law Firm | 96-166476-96 | Roddria Wilson, Individually, and As Parent and Next Friend of Gaberial Moore, a Minor vs. Gary A. Meyer, D.O., et al; In the Judicial 96th District Court of Tarrant County, Texas |
| 9/13/99 | | Moore, Letiah | Talaska Law Firm | 172,792-C | Letty Moore and Robin Moore, Individually and as Next Friend of Letiah Moore vs. Metroplex Health Care Corporation and Ann Baylor MD.; In the 169th Judicial District Court of Bell County, TX. |
| 5/15/00 | | Moore, Shannon | Waltman & Grisham | 26294 | Stacks v. Philip Morris Companies, Inc., et al; In the 18th District Court of Johnson County, TX. |
| 2/18/99 | | Raney, Megan | Haskins Law Firm | | Sandra Hanley and Douglas Raney, Individually and as Parents and Next Friends of Megan Raney, A Minor vs. Lillian M. Abbott, MD, and Columbia Clear Lake Regional Medical Center, In the 151st Judicial District Court, Harris County, Texas |
| 23/99 | | Resendez, Jonathan | Haskins Law Firm | 98-3828-F | Jennifer A. Resendez and Larry Resendez, Jr., Individually and as Parents and Next Friends of Jonathan Resendez, Minor, v. Jaime Pena, M.D., Ronald Woodson, M.D., Corpus Christi Women's Clinic, P.A., and Bay Area Healthcare Group, LTD. D/B/A Columbia Doctors Regional Medical Center, In the 214th Judicial District Court of Nueces County, TX. |
| 4/2/98 | | Rice, Christopher | Haskins Law Firm (Canley & Hanger, L.L.P.) | 141-157935-95 | Rodney and Gina Rice, individually and as Parents and Next Friends of Christopher Rice, A Minor vs. James Atteberry, MD., Petr Saktovich, MD., and HCA Health Services of Texas, Inc., d/b/a North Hills medical Centr; in the 141st District Court of Tarrant County, Texas. |

Forms\DEPOSITION SUMMARY-DMB           Updated 06/27/01

# DEPOSITION SUMMARY – Dan M. Bagwell

| File Opened | Def / Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 11/16/00 | | Rivera, Joshua/ Hernandez, Christian | Whitehurst, Harkness, Ozmun & Archuleta, P.C. | C.A. A00CA308SS | Martha Rivers, Individually and as Next Friend of Joshua Rivera, a Minor; Jesse H. Rivera, Individually; Vidal and Irma Hernandez, Individually and as Next Friends of Christian Hernandez, a Minor, Plaintiffs, V. General Motors Corporation, Defendant. In the United States District Court for the Western District of Texas Austin Division |
| 1/14/94 | D | Robles, Alexandra | Rodriguez, Colvin & Chaney | 93-03-1354-A | Juan and Alma Alvear, Individually and on Behalf of and as Next Friends of Thelma Alvear, Minor, et al vs. Leonard Electric Products Company, et al, In the 107th Judicial District Court of Cameron County, Texas. |
| 8/7/00 | | Rodriguez, Kimberly | Whitehurst & Harkness, Ozmun & Archuleta | 99-10991 | Mauricio Rodriguez and Maria Alvarado Individually and as Next of Friends of Kimberly Rodriguez, Their Minor Daughter vs. Clark W. Craig, M.D.; Mark Maunder M.D., Locus & Associates; and Travis County Medical Society Foundation f/k/a Central Texas Medical Foundation; In the 345th Judicial District Court of Travis County, TX. |
| 1/18/99 | | Selvin, Sunshine | Lyons & Rhodes | 98-CI-18303 | Joseph Edward Selvin and Sunshine Selvin v. E.E. Hood & Sons, Inc., and Bexar County, TX; In the 37th Judicial District Court, Bexar County, TX. |
| 4/24/00 | | Stephens, Sherilyn | Jack K. Robinson | 2:00CV62 | Earl B. Stephens, Individually and as Administrator of the Estate of Mary L. Stephens, and Sherilyn Stephens v. Intz Joseph Tates and Tristn Specialized Carriers, Inc., filed in the United States District Court of the Eastern District of Texas, Marshal Division |
| 06/10/99 | | Stewart, Stephanie | Haskins & Gregan | CIV 97-67 | Tony Stewart, Individually and as Parent, Next Friend and Natural Guardian of Stephanie Stewart, a Minor, and Carolyn Stewart, Individually and as Parent, Next Friend and Natural Guardian of Stephanie Stewart, a Minor v St. Paul Fire and Marine Insurance Company, Reginald Allen Lucas, M.D.; Ralph Wayne Herbert, M.D. and Steven Whaley, M.D. |
| 12/3/97 | | Tenuta, Anthony L. | Ken Lutt Law Office | 153-16735G-97 | Michael and Vivian Tenuta, Individually and as Next Friends of Anthony Leo Tenuta, A Minor vs. Harris Methodist H-E-B and Mark Brennan Reimer, MD; In the |

Forms\DEPOSITION SUMMARY-DMB      Updated 06/27/01

# DEPOSITION SUMMARY – Dan M. Bagwell

| File Opened | Def / Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 1995 | D | Trevinio, Michael | Womble and Spain | | 153rd Judicial District Court of Tarrant County, TX. |
| 3/11/99 | | Turner, Raymond | Kugle Law Firm | 98-05-396 | Raymond Turner and Dale Mikkelson vs. Bright Truck Leasing Corporation, Alcoa Fujikura Ltd., and Wayne West, In the 345th Judicial District Court of Travis County, TX. |
| 1/19/97 | | Vasquez, Bethany | Talaska Law Firm | | |
| 11/14/94 | | Vasquez, Vianca | Rodriguez, Colvin & Chaney | 93-03-1354-A | Juan and Alma Alvear, Individually and on Behalf of and as Next Friends of Thelma Alvear, Minor, et al vs. Leonard Electric Products Company, et al, In the 107th Judicial District Court of Cameron County, Texas. |
| 12/17/98 | | Vitela, Christina J. | Haskins Law Firm | 97-56600 | Christina Johnson-Vitela and Jesus Vitela. Jr., Individually and as Parents and Next Friends of Trini Vitela. Minor v. Enrique Vargas, M.D. and Pasadena Bayshore Hospital, Inc., d/b/a Columbia Bayshore Hospital; In the 129th Judicial District Court of Harris County, Texas. |
| 3/15/00 | | Weger, Michael T. | Shields & Rusk | 342-180401-99 | Michael Todd Weger, individually and as next friend of Austin Weger, a Minor vs. Next Proteins International, a Division of Next Nutrition, Inc.; IPP, Inc. d/b/a Innovative Food Processors; and Daniel R. Duchaine; In the District Court of Tarrant County; 342nd Judicial District; Tarrant County, Texas. |

# TRIAL SUMMARY – Dan M. Bagwell

| File Opened | Def / Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 06/21/01 | | Wilkerson, Ernest & Kaylynn | Charlton Hornsby | D160335 | Wilkerson vs. Spadaccini Trucking in the 136th District Court, Jefferson County |
| 10/20/00 | | Ashcraft, Ruby | George Mauze | 2000 CI 12590 | David Ashcraft et al vs. Marleen Sanchez MD & Steven Fisher MD in Bexar County, Texas |
| 6/16/98 | | Baker, Haley | Haskins Law Firm | CV-97-6789 | Kimberly and Christopher Baker, Individually and as Parents and Next Friend of Haley Baker, A Minor vs. James Tanner, MD. |
| | | Black, Anita | Kugle, Byrne & Alworth | | |
| 6/22/98 | | Boyd, Roger J. | White, Craig L. | 97-CI-13427 | Julie and Roger Boyd Individually and as Next Friends of Roger Boyd, Jr., a Minor Child vs. Carol E. Wratten, MD in the 224th Judicial District Court of Bexar County, TX. |
| 6/8/99 | | Flores, Maria | Zavaletta Law Firm | C-802-98-D | Noe Tijerina Individually and as Personal Representative of the Estate of Maria Flores aka Maria Flores De Ojeda, and as Next Friend of Joshua and Jennifer Tijerina, Minor Children & Juan Ojeda, Individually and on Behalf of Juan Miguel Ojeda, Minor Child vs. Samuel Garcia, Jr., MD., McAllen Medical Center, Inc. Jointly and Severally with Lawrence R. Gelman, MD., McAllen Anesthesia Consultants, P.A. monte Baylor, CRNA, Prakash Palimar, MD. & Rahul K. Challapalli, MD.; In the 206th Judicial District Court of Hidalgo County, TX. |
| 1999 | D | Guerra, Jacquelyn | Rodriguez, Colvin & Chaney | C-4118-97-B | Bruce S. Sperling et al v. Volkswagen Aktiengesellschaft; Volkswagen of America, Inc., et al.; In the 93rd Judicial District Court of Hidalgo County TX. |
| | | Hernandez, Michael N. | Boyd Waggoner | 99-04707-L | Michael Nicholas Hernandez, et al v. Balfour Beatty Construction, Inc., et al, State of Texas and Texas Department of Transportation in the 193rd Judicial District Court of Dallas County, TX. |
| 11/15/94 | D | Jolley, Cole | Luther, Anderson, Cleary & Ruth | | Jolley v. Century, |

# TRIAL SUMMARY – Dan M. Bagwell

| File Opened | Def/ Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 9/2/98 | | Maddox, Ron | Jack Robinson Law Office | 32558 | Ron Bartley Maddox vs. Supreme Beef Processors, Inc. and Supreme Beef Packers, Inc.; In the 6th Judicial District Court of Fannin County, TX. |
| 11/7/00 | | Orsonio, Rae Lene D. | Howie & Sweeney, LLP | 2-00CV36-TJW | Rae Lene Davis Orsonio v. Ford Motor Co., et al |
| 3/7/00 | | Suggs, Judy | Bradley T. Steele, P.C. | 27,474 | Judy Suggs and Charles Suggs vs. Tracy Duane Henderson, Steve Raulston Logging, East Texas Mack Leasing, Larry Alan Fitch, Arrow Trucking, Dennis Eugene Marc and Builders Transport, Inc. |
| 9/13/97 | | Wolf, Jack | Law Offices of George W. Mauze, II | 97-CI-00911 | Jesse & Sharon Wolf, Individually and as Next Friends for Jack Wolf, a minor v. James Paine, MD., et al. |

# JAMES C. GARRIOTT, PH.D., D-ABFT
## TOXICOLOGIST
*16031 Oak Grove*
*San Antonio, Texas 78255*
*(210) 695 9520; FAX (210) 695 9520*

**PRELIMINARY REPORT**

June 27, 2001

Carol P. Lomax
Branton & Hall
One Riverwalk Place, Suite 1700
700 N. St. Mary's Street
San Antonio, Texas 78205

RE:  Candelario De Leon
     D.O.A.:   December 24, 1998
     File No. 9827

Dear Ms. Lomax:

You have sent to me certain records concerning an accident in which Candelario de Leon was the driver of one of the vehicles involved. You nave asked me to review these records and to provide a toxicology interpretation and opinion regarding alcohol consumption.  I have seen and reviewed the following records:

1-Texas Peace Officer's report of accident of December 24, 1998;
2-Medical records of Columbia valley Regional Medical Center;
3-Medical records of Brownsville Medical Center;
4-City of Brownsville Medical Center;
5-Report of Nick Peters, M.D.;
6-Report of Jeremy Slater, M.D.

According to these records, I understand that Mr. Candelario DeLeon was involved in a motor vehicle collision at approximately 7:35 pm on December 24, 1998.  He was found by paramedics unable to get out of his vehicle and complaining of numbness from the neck down.  He was transported to Columbia Valley Regional Medical Center, where he was treated in the emergency department and then released to police custody at approximately 8:30 pm.  Dr. Dovale Joao noted the patient was "obviously drunk".  After spending the night in jail, he was taken to Brownsville Medical Center emergency department the next day with complaints of back pain, numbness and inability to move his legs.  It has been represented to me that Mr. DeLeon's blood alcohol was 0.08 g/dL.

A blood alcohol level of 0.08 g/dL is consistent with Stage 2 of alcoholic influence/intoxication, which is termed "Euphoria".  At this stage, effects such as mild euphoria, talkativeness, some decreased inhibitions, and some diminution of attention, judgment and control would be expected to be present.  Most individuals do not appear obviously intoxicated at this stage.  To an observer,

CAROL LOMAX; RE: CANDELARIO DELEON
June 27, 2001
P. 2

alcohol may be detectable on the breath, and some behavioral signs of alcohol use may occur as stated above. However, many individuals do not exhibit any obvious signs of intoxication until levels reach 0.10 g/dL and greater. The symptoms of intoxication are largely dependent on the individual's tolerance to alcohol as determined by the frequency of drinking.

It is my opinion that, if Mr. DeLeon had only a blood alcohol level of 0.08 g/dL on the evening of December 24, 1998, then this would not have induced symptoms of numbness, instability and immobility, nor any of the symptoms of severe alcohol intoxication. Symptoms of paralysis or loss of sensation in the limbs do not occur with alcohol except at extremely high levels, which may be life-threatening.

Thank you for asking me to review this case. Should additional information become available, I would reserve the right to review this information and to reconsider or modify the above opinions if necessary.

Sincerely yours,

James C. Garriott, Ph.D.

# CURRICULUM VITAE

## JAMES C. GARRIOTT, Ph.D., D-ABFT

**Present Address:**    16031 Oak Grove
San Antonio, TX 78255-1128

**Phone/FAX:**    (210) 695-9520
**E-Mail:**    **JCGARRIOTT@satx.rr.com**

**Education:**    Louisville Male High School
Louisville, Kentucky
1956 (Graduated)

Hanover College
Hanover, Indiana
1956 - 1958

University of Louisville
Louisville, Kentucky
1958 - 1960 (BA)

Indiana University Medical Center
Indianapolis, Indiana
1963 - 1967 (Ph.D)

**Positions:**    Toxicology Chemist
Indiana University Medical Center
Indianapolis, Indiana
1961 - 1963

Predoctoral Fellow
Indiana University Medical Center
Indianapolis, Indiana
1963 - 1967

Research Associate
Institute für Gerichtliche Medizin
Tübingen, Germany
1967

Postdoctoral Fellow
University of Miami
Institute of Marine Science
Miami, Florida
1967 - 1968

Toxicologist
State of Connecticut
Hartford, Connecticut
1968 - 1970

Chief Toxicologist
Southwestern Institute of Forensic Sciences
Dallas, Texas

1970 - 1982

Instructor in Forensic Sciences
Departments of Pathology and Pharmacology
University of Texas Southwestern Medical
School, Dallas, Texas
1970 - 1976

Consulting Staff
Parkland Memorial Hospital
Dallas, Texas
1972 - February 1982

Consultant
Veterans Administration Hospital
Dallas, Texas
1973 - 1980

Assistant Professor
Forensic Sciences
Departments of Pathology and Pharmacology
University of Texas Southwestern Medical      School,
Dallas, Texas

1976 - 1981

Associate Professor
Forensic Sciences
Departments of Pathology and Pharmacology
University of Texas Southwestern Medical
School, Dallas, Texas
1981 - 1982

Adjunct Faculty (Chemistry)
East Texas State University
Commerce, Texas
1976 - 1980

Chief Toxicologist
Bexar County Forensic Science Center
7337 Louis Pasteur Dr.
San Antonio, Texas 78229
February 1982 - July 1997 (Retired)

Affiliate Member
Medical - Dental Staff
Bexar County Hospital District
San Antonio, Texas
July 1982 - 1998

**(Positions continued)**

Associate Professor

Departments of Pathology and Pharmacology
University of Texas Health Science Center
San Antonio, Texas
August 1982 - 1996

Professor
Departments of Pathology and Pharmacology
University of Texas Health Science Center
San Antonio, Texas
September, 1996 - 1998

Professor (Adjunct)
Department of Allied Health Sciences
University of Texas Health Science Center
San Antonio, Texas
September 1998 - present

## Society Memberships:

International Association of Forensic Toxicologists

American Academy of Forensic Sciences
  1969 Fellow
  1974 Toxicology Section Membership Chairman
  1975 Toxicology Section Program Chairman
  1976 Section Secretary
  1980 - 1981 Toxicology Section Chairman
American Assoc. for the Advancement of Science

California Association of Toxicologists
American Chemical Society
American Academy of Clinical Toxicology        (Fellow)
Southwestern Association of Toxicologists
  1990 - 91 --President
Society of Toxicology
Society of Forensic Toxicologists
Texas Academy of Sciences

## Certification:

Diplomate, American Board of Forensic Toxicology,Inc., 1976
Requalification:
1981, 1985, 1990, 1995, 2000.

## Consulting:

U.S. Environmental Protection Agency.
Consultant on Toxic Waste, 1980 - 1982

U.S. Dept. of Health and Human Services;
PHS, National Institutes on Drug Abuse,
Contract Review Consultant, 1979, 1982

Center for Human Toxicology - FDA Projects,
Assessment of Propoxyphene, 1978, 1979, 1981,        1985,
1989

College of American Pathologists

Consultant, Toxicology Resource Committee
1982 - 1988
Survey Referee, 1982-1995

North Texas Poison Center
Parkland Memorial Hospital
Dallas, Texas
Board of Consultants
1987 - present

U.S. Department of Transportation, Drug and Alcohol
Compliance Office, consultant in National Laboratory
Certification Program/Direccion General de Proteccion y
Medicina Preventiva en el Transporte, July, 1998

**Editorial Boards:**  Journal of Toxicology, Clinical Toxicology
Marcel Dekker, Inc., Publisher
1982 - 1998

Journal of Analytical Toxicology
Preston Publications
1977 - 1998

American Journal of Forensic Medicine and Pathology,
Publication of the National Association of Medical
Examiners, Raven      Press, Publisher, 1991 - present

Toxic Substances Journal
John A. Thomas, Editor
Taylor & Francis, Publisher
1993 - 1999

**Committee Member:**  Alamo Area Council of Governments,
Regional Alcoholism and Drug Abuse,
San Antonio, Texas
Advisory Committee,
November 1986 - December 1988

Injury Control Advisory Board
Poison Subcommittee
San Antonio Metropolitan Health Department
San Antonio, Texas
1990 - 1997

Director, American Board of Forensic
Toxicology, Inc., 1980 - 1986

Member, Institutional Safety Committee, subcommittee
for Chemical Safety.
The University of Texas Health Science Center at San
Antonio, San Antonio, TX
Aug. 1994 - 1998

**Awards:**        Alexander O. Gettler Award for Outstanding    Analytical
Achievements in Forensic                        Toxicology.

American Academy of Forensic Sciences, February, 1992.

## BIBLIOGRAPHY

**James C. Garriott**

(Books, chapters in books, invited articles, other miscellaneous material)

1967        James Clark Garriott. "Synthesis and Pharmacologic
            Investigation of Some Cannabinol and
            Tetrahydrocannabinol Analogs", PhD. Thesis, Indiana
            University, Indianapolis, Indiana, June, 1967.

1971        J.C. Garriott and W.Q. Sturner.  Fatal Ethchlorvynol
            Intoxication, Bull. Int. Assoc. Forensic Tox.,
            8(1):4, 1971.

            J.C. Garriott and W.Q. Sturner.  Chlordiazepoxide
            (Librium) Intoxication, Bull. Int. Assoc. Forensic
            Tox., 8(2):8, 1971.

            Amphetamine (or methamphetamine, phenylpropanolamine          **and**
related drugs) Type B Procedure in CRC Manual of
            Analytical Toxicology, Ed. Irving Sunshine, The
            Chemical Rubber Co., Cleveland, OH, pp. 20-23, 1971.

            Cannabis, Nicotine and Alcohol Compared.  (Letter to
            Editor) NEJM, 285(14):806-807, 1971.

            Toxicology - Choice of Specimens, Drug Distribution and
            Metabolism, Forensic Science Gazette, 2(3):1-3, (1971).

1972        Drug and Chemical Deaths - Dallas County, Forensic Sci.
            Gazette, 3(1):3-4, 1972.

1973        Drug and Chemical Deaths - Dallas County, Forensic Sci.
            Gazette, 5(5):9-10, 1973.

1974        Caffeine Concentrations in Blood of Subjects after
            Consumption of Coffee, Coca Cola or Caffeine, Forensic
            Science Gazette, 5(3):2, 1974.

            Therapeutic and Toxic Concentrations of Common Drugs
            and Poisons, Forensic Science Gazette, 5(3):3-4, 1974.

            The Expert Witness from the Laboratory - Scientist or
            Accuser, (Editorial) Forensic Science Gazette,
            5(4):2-3, 1974.

1975 Diazepam - Type B Procedure, CRC Methodology for
            Analytical Toxicology, Ed. Irving Sunshine, The
            Chemical Rubber Co. Press, Cleveland, OH, 1975, pp.
            119-123.

Choice of Specimens for Toxicology Testing, Forensic        Sci. Gazette, 6(2):4-7, 1975.

Caffeine - Type C Procedure, CRC Methodology for Analytical Toxicology, Ed. Irving Sunshine, The Chemical Rubber Co. Press, pp. 58-60, Cleveland, OH.1975.

Diazepam in Blood after Therapeutic Administration, Forensic Sci. Gazette, 6(1):2-3, 1975.

1977 Garriott, J.C.  Drugs Plus Alcohol - A Lethal Combination, The Dallas Medical Journal, 63(1):17-20, 1977.

1979 Lowry, W.T. and Garriott, J.C.  Forensic Toxicology: Controlled Substances and Dangerous Drugs.  Plenum Press: NY, 1979.

Garriott J.C. and Ruff, R.M.  Phencyclidine Detection        in Medical Examiner Autopsies, Forensic Science        Gazette, 10(4):1, 1979.

Daniel, D. and Garriott, J.C.  Phencyclidine Detection in Two Clinical Intoxication Cases, For. Sci. Gazette, 10(4):1-2, 1979.

Garriott, J.C., Juarez, L., Foerster, E. and Curoe, J. Toluene Detection in Cases of Inhalant Abuse, Forensic Science Gazette, 10(4):2-3, 1979.

1980 Curran, McGarry and Petty, eds., "Forensic Toxicology: General Considerations", Chapter in Modern Legal Medicine, Psychiatry and Forensic Medicine.  F.A. Davis Co., Philadelphia, 1980, pp. 1051-1056.

McAnalley, B.H., Gardiner, T.J. and Garriott, J.C. Cyanide Concentrations in Blood after Amygdalin (Laetrile) Administration in Rats, Vet. and Hum. Toxicol., 22(6):400-402, 1980.

DiMaio, V.J.M. and Garriott, J.C.  A Fatal Case of Lead Poisoning Due to a Retained Bullet, Vet. and Human Toxicol., 22(6):390-391, 1980.

1982      Garriott, J.C.  "Forensic Toxicology", Chapter in    Survey of Contemporary Toxicology, Volume 2, John Wiley & Sons, New York, 1982, pp. 82-122.

1983      Garriott, J.C.  Interpretive Toxicology, in Clinics in Laboratory Medicine, 3(2):367-384, W.B. Saunders, Phil., PA, June 1983.

Garriott, J.C.  Forensic Aspects of Ethyl Alcohol, Clinics in Laboratory Medicine, 3(2):385-396, W.B. Saunders, Phil, PA, June 1983.

1985      DiMaio, V.J.M. and Garriott, J.C.  How Valid is the          0.10
Percent Alcohol Level as an Indicator of     Intoxication? <u>Pathologist</u>, 39
(3):31-33, March 1985.

1986      Garriott, J.C.  Drug Analysis in Postmortem Toxicology,
          Chapter in <u>Ultratrace Analysis of Pharmaceuticals and</u>
          <u>Other Compounds of Interest</u>.  S. Ahuja, ed., John Wiley
          & Sons, Inc., New York, pp. 353-376, July 1986.

          Sedgwick, P. and Garriott, J.C.  Medical Staff Drug
          Abuse, A Case History, News and Views, A Forum for
          Forensic Toxicologists, 11:1, July 1986.

1987      Rodriguez, R., Garriott, J.C. and Bousser, J.E.  A          Urine
Screening Procedure for the Detection of 11-nor-      9-carboxy-delta-9-
THC by HPTLC and GC/MS, Southwestern
          Association of Forensic Scientists, 9(1):21-27.

1988      Garriott, J.C., editor and chapters author, <u>Medicolegal Aspects</u>
          <u>of Alcohol Determination in Biological Specimens</u>.  PSG Publishing
          Co., Inc., Littleton, Mass, 1988.

          Garriott, J.C., Rodriguez, R. and Castorena, J.L.
          Cocaine Metabolites after Ingestion of "Health Inca
          Tea", J. Southwestern Association of Forensic
          Scientists, 10(2):19-20, 1988.

1992      Garriott, J.C. Death Among Inhalant Abusers, In
          <u>Inhalant Abuse: A Volatile Research Agenda</u>, Charles
          Sharp, Fred Beauvais, and Richard Spence, eds., NIDA
          Research Monograph 129, U.S. Dept. of Health and Human
          Services, Public Health Service, National Institutes of
          Drug Abuse, Rockville, MD, 1992.

1993      Garriott, J.C., editor, <u>Medicolegal Aspects of Alcohol</u>
          <u>Determination in Biological Specimens</u>, 2nd ed. Lawyers and Judges
          Publishing Co., Tucson, AZ, 1993.

1994      Garriott, J.C.  Forensic Toxicology for the General
          Pathologist, in <u>Advances in Pathology and Laboratory</u>
          <u>Medicine</u>, vol. 7, 1994, Mosby-Year Book, Inc., pp. 313-      358.

1996      Garriott, J.C., editor, <u>Medicolegal Aspects of Alcohol</u>, 3rd ed.
          Lawyers and Judges Publishing Co., Tucson, AZ, July, 1996.

1997      Kurt, T., Foerster, E., and Garriott, J.C. Interpretation and
          Extrapolation of Blood Alcohol Results, MRO Update, October 1997
          issue, pp 1-4.

1999      Garriott, J.C. Alcohol Testing, Chapter 39. <u>In Modern Scientific</u>
          <u>Evidence</u>,  Suppl. Vol. 3, by D. Faigman, D. Kaye, M. Saks, and J.
          Sanders, West Group; St. Paul MN, 1999.

**Investigative Reports Published in Journals with Editorial Review**
**James C. Garriott**

1967 Garriott, J.C., Richards, A.B., Hughes, F.W. and
    Forney, R.B.  Acute Ethanol Toxicity in the Dog,
    J. Forensic Sciences, 12(1):8-18, 1967.

    Garriott, J.C., King, L.J., Forney, R.B. and Hughes, F.W.
Effects of Some Tetrahydrocannabinols on
    Hexobarbital Sleeping Time and Amphetamine Induced
    Hyperactivity, Life Sciences, 6:2119-2128, 1967.

1968 Garriott, J.C., Forney, R.B. and Hughes, F.W.
    Pharmacologic Properties of Some Tetrahydrocannabinol and
Cannabinol Derivatives, Arch. Int. Pharmacodyn.
    Therap., 171(2):425-434, 1968.

1969 Garriott, J.C. and Lane, C.E.  Some Autonomic Effects
    of Physalia Toxin, TOXICON, 6:281-286, 1969.

1971 Garriott, J.C. and Stolman, A.  Detection of Some
    Psychotherapeutic Drugs and Their Metabolites in Urine.
    Clinical Toxicology, 4(2):225-243, 1971.

1972 Sturner, W.Q. and Garriott, J.C.  L-Dopa Poisoning,
    J. Forensic Sci., 17(3):440-443, 1972.

1973 Sturner, W.Q. and Garriott, J.C.  Deaths Involving
    Propoxyphene:  A Study of 41 Cases over a Two-Year
    Period.  JAMA, 223(10):1125-1130, 1973.

    Garriott, J.C., Sturner, W.Q. and Mason, M.F.
    Toxicologic Findings in Six Fatalities Involving
    Methadone, Clin. Tox., 6(2):163-173, 1973.

    Garriott, J.C. and Spruill, F.G.  Detection of
    Methamphetamine in a Newborn Infant, J. Forensic Sci.,
    18(4):434-436, 1973.

    Garriott, J.C. and Sturner, W.Q.  Morphine
    Concentrations and Survival Periods in Acute Heroin
    Fatalities, NEJM, 289:1276-1278, December, 1973.

1974 DiMaio, V.J.M. and Garriott, J.C.  Lethal Caffeine
    Poisoning in a Child, Forensic Science, 3:275-278,
    1974.

DiMaio, V.J.M. and Garriott, J.C.  A Fatal Overdose of Paraldehyde During Treatment of a Case of Delirium Tremens, Journal of Forensic Science, 19(4):755-758, 1974.

Sturner, W.Q., Spruill, F.G. and Garriott, J.C.  Two Propylhexedrine Associated Fatalities:  Benzedrine[R] Revisited, Journal of Forensic Science, 19:572-574,     1974.

1975    DiMaio, V.J.M., Garriott, J.C. and Putman, R.  Digoxin Concentrations in Postmortem Specimens after Overdose and Therapeutic Use.  Journal of Forensic Science, 20(2):340-347, 1975.

Garriott, J.C.  Propylhexedrine - A Dangerous Drug, Clin. Toxicol. 8:665, 1975.

Sturner, W.Q. and Garriott, J.C.  Comparative Toxicology in Vitreous Humor and Blood, Forensic Science, 6:31-39, 1975.

Sturner, W.Q. and Garriott, J.C.  Comparative Toxicology in Vitreous Humor and Blood, Can. Soc. Forens. Sci. J., 8:(4):126-131, 1975.

Lowry, W.T. and Garriott, J.C.  On the Legality of Cannabis:  The Responsibility of the Expert Witness. Journal of Forensic Science, 20(4):624-628, 1975.

1976    Garriott, J.C. and Latman, N.  Drug Detection in Cases of "Driving Under the Influence", Journal of Forensic Sci., 21(2):398-415, 1976.

1977    Garriott, J.C., DiMaio, V.J.M., Zumwalt, R.E. and Petty, C.S.  Incidence of Drugs and Alcohol in Fatally Injured Motor Vehicle Drivers, Journal of Forensic Sci., 22(2):383-389, 1977.

DiMaio, V.J.M. and Garriott, J.C.  Intravenous Abuse of Propylhexedrine, J. of Forensic Sci., 22(1):252, 1977.

Lundberg, G.D., Garriott, J.C., Reynolds, P.C., Cravey, R.H. and Shaw, R.F.  Cocaine Related Death, J. of For. Sci., 22(2):402-408, 1977.

1978    DiMaio, V.J.M. and Garriott, J.C.  Four Deaths Resulting from Abuse of Nitrous Oxide, Journal of For. Sci., 23(1):169-172, 1978.

Foerster, E., Hatchett, D. and Garriott, J.C.  A Rapid, Comprehensive Screening Procedure for Basic Drugs in Blood or Tissues by Gas Chromatography, J. Anal. Tox., 2(2):50-55, 1978.

McCloskey, K.L., Garriott, J.C. and Roberts, S.M. Quinine Concentrations in Blood Following the Consumption of Gin Tonic Preparations in a Social Setting, J. Anal. Toxicol., 2:110-112, 1978.

1979    DiMaio, V.J.M. and Garriott, J.C.  Four Deaths due to Intravenous Injection of Cocaine, Forensic Science, 12(2):119-125, 1979.

Blaw, M.E., Adkisson, M.A., Levin, D., Garriott, J.C. and Tindall, R.S.A.  Poisoning with Caroline Jessamine, J. of Pediatrics, 94(6):998-1001, 1979.

Levin, D.L., Mills, L.J., Parkey, J., Garriott, J.C. and Campell, W.  Constriction of the Fetal Ductus Arteriosus after Administration of Indomethacin to the Pregnant Ewe, J. of Pediatrics, 94(4):647-650, 1979.

Foerster, E.H., Dempsey, J. and Garriott, J.C.  A Gas Chromatographic Screening Procedure for Acid and Neutral Drugs in Blood, J. Anal. Tox., 3(3):87-91, 1979.

Oliver, R.D. and Garriott, J.C..  The Effects of Acetone and Toluene on Breathanalyzer Results, J. Anal. Tox., 3(3):99-101, 1979.

McAnalley, B.H., Lowry, W.T., Oliver, R.D. and Garriott, J.C.  Determination of Inorganic Sulfide and Cyanide in Blood Using Specific Ion Electrodes: Application to the Investigation of Hydrogen Cyanide and Sulfide Poisoning, J. Anal. Tox., 3(3):111-114, 1979.

Horne, M.K., Waterman, M.R., Simon, L.M., Garriott, J.C. and Foerster, E.H.  Methemoglobinemia from Sniffing Butyl Nitrite, Ann. Int. Med., 9(3):417-8, 1979.

Lowry, W.T., Lomonte, J.M., Hatchett, D. and Garriott, J.C.  Identification of Two Novel Cocaine Metabolites in Bile by Gas Chromatography/Mass Spectrometry in a Case of Acute Intravenous Overdose, J. Anal. Tox, 3(3):91-95, 1979.

Anderson, R.J., Garza, H.R., Garriott, J.C. and DiMaio, V.J.M.  Intravenous Propylhexedrine (Benzedrex[R]) Abuse and Sudden Death, Amer. J. Med., 67:15-20, 1979.

1980    Garriott, J.C. and Petty, C.S.  Death from Inhalant Abuse:  Toxicological and Pathological Evaluation of 34 Cases, Clin. Tox., 16(3):305-315, 1980.

Yadlowski, J., Tu, A.T., Garriott, J.C. and Norton, L.E. Investigation of a Case of Suicide by Snake Venom

Injection, J. of Forensic Sci., 25(4), October 1980.

Latman, N.S. and Garriott, J.C.  An Analysis of Biorhythms and their Influence on Motor Vehicle Fatalities. Acid. Anal. & Prev., 12:383-386, 1980.

Ellman BA, Green CE, Eigenbrodt,E, Garriott, JC,Curry,TS.Renal infarction with absolute ethanol. Invest Radiol, 1980, 15:318-322.

1981    Horadam, V.W., Sharp, J.G., Smilack, J.D., McAnalley, B.H., Garriott, J.C., Stephens, M.K., Prati, R.C., Brater, D.C.  Pharmacokinetics of Amantadine Hydrochloride in Subjects With Normal and Impaired Renal Function, Ann. Int. Med., 94 (Part I):454-458, 1981.

Daniel, D.R., McAnalley, B.H. and Garriott, J.C. Isopropyl Alcohol Metabolism after Acute Intoxication       in Humans, Anal. Tox., 5(3):110-112, 1981.

Finkle, B.S., Ph.D., Caplan, Y.H., Ph.D., Garriott, J.C., Ph.D., Monforte, J.R., Ph.D., Shaw, R.F., B.S. and Sonsalla, P.K., M.S.  Propoxyphene in Postmortem Toxicology 1976-1978, Journal of Forensic Sciences, 26(4):739-757, 1981.

Garriott, J.C., Foerster, E., Juarez, L., DeLaGarza, F., Mendiola, I., Korman, M. and Curoe, J.  Measurement of Toluene in Blood and Breath in Case of Solvent Abuse, Clin. Tox., 18(4):471-9, 1981.

Foerster, E.H. and Garriott, J.C.  Analysis for Volatile Compounds in Biological Samples, Journal of Analytical Toxicology, 5:241-244, 1981.

1982    Norton, L.E., Garriott, J.C. and DiMaio, V.J.M.  Drug Detection at Autopsy:  A Prospective Study of 247 Cases, Journal of Forensic Sciences, 27(1):66-71, 1982.

Garriott, J.C., DiMaio, V.J.M., Petty, C.S.  Death by Poisoning: A Ten-Year Survey of Dallas County, Journal of Forensic Sciences, 27(4), Oct. 1982.

Kurt, T.L., McAnalley, B.H., and Garriott, J.C.  Lead Encephalopathy from Gasoline Sniffing:  Successful Treatment with Chelation, Texas Medicine, 78:52-54, 1982.

Anderson, R.J., Reed, W.G., Hillis, L.D., Morgan, C.D. and Garriott, J.C.  History, Epidemiology, and Medical Complications of Nasal Inhaler Abuse, Journal of Toxicology-Clinical Toxicology, 19(1):95-108, 1982.

1983    Garriott, J.C. and DiMaio, V.J.M.  Death in the Dental Chair:  Three Drug Fatalities in Dental Patients,

Journal of Toxicology-Clinical Toxicology, 3(9):987-995, 1983.

Norton, L.E. and Garriott, J.C.   Detection of Marihuana Use by GC/MS Analysis of Mouth Swabs, The American Journal of Forensic Medicine and Pathology, 4(2), June 1983.

DiMaio, V.J.M., DiMaio, S.M., Garriott, J.C., Simpson, P.   A Fatal Case of Lead Poisoning due to a Retained Bullet, The Amer. J. of For. Med. and Path., 4(2):165, 1983.

Nielsen, H.C., Wiriyathian, S., Rosenfeld, R., Leveno, K., Garriott, J.C.   Chlorpromazine Excretion by the Neonate Following Chronic In Utero Exposure, Pediatric Pharmacol, 3(1):1-5, 1983.

1984    Lewis, Gail D., Alan K. Laufman, J.D., M.D., McAnalley, Bill H., Ph.D., and Garriott, James C., Ph.D. Metabolism of Acetone to Isopropyl Alcohol in Rats and Humans, J. of For. Sci., 29(2):541-549, April 1984.

Garriott, James C., Rodriguez, Robert and DiMaio, Vincent J.M. A Death from Fentanyl Overdose, J. of Anal. Tox., Vol. 8, Nov/Dec 1984.

Garriott, James C. Ph.D., Rodriguez, Robert, B.S., Norton, Linda, M.D.   Two Cases of Death Involving Dicyclomine in Infants - Measurement of Therapeutic and Toxic Concentrations in Blood, Clin. Tox., 22(5):455-462, 1984.

1985    Garriott, James C., and Simmons, Lisa M., B.S.   Five Cases of Fatal Overdose from Caffeine-Containing "Look-Alike" Drugs, J. of Anal. Toxicol. Vol. 9, May/June 1985.

Watson, William A., Garrelts, J.C., Zinn, Philip D., Garriott, J.C., McLemore, T.L., and Clementi, W. A. Chronic Acetazolamide Intoxication, J. Toxicol. Clin. Tox., 22(6):549-563 1985.

1986    Watson, William A., Godley, Paul J., Garriott, James C., Bradberry, J. Chris and Puckett, Jan D.   Blood Phenobarbital Concentrations during Thiopental Therapy, Drug Intelligence and Clin. Pharmacy, 20:283-286, 1986.

Garriott, James C., Ph.D., DiMaio, Vincent J.M., M.D. and Rodriguez, Robert, B.S.   Detection of Cannabinoids      in Homicide Victims and Motor Vehicle Fatalities, J. of For. Sci., 31(4):1274-1282, Oct. 1986.

1987    Castorena, J.L., Garriott, J.C., Barnhardt, F.E. and Shaw, R.F.   A Fatal Poisoning from Nicotiana Glauca,

J. Toxicol. Clin. Toxicol., 25:429-435, 198..

1988    Meatherall, R.C. and Garriott, J.C.  A Sensitive Thin-Layer
        Chromatographic Procedure for the Detection of
        Urinary 11-nor-delta-9-tetrahydrocannabinol-9-carboxylic acid, J.
        Anal. Tox., 12:136-140, 1988.

1989    Watson, William A., Leighton, Johnathon, Guy, Jill,
        Bergman, Randy and Garriott, James.  Recovery of Cyclic
        Anti-Depressants with Gastric Lavage, The J. of Emerg.
        Med., 7:373-377, 1989.

        Klein-Schwartz, W., Gorman, R.L., Oderda, G.M.,
        Massaro, B.D., Kurt, T.L. and Garriott, J.C.  Three
        Fatal Sodium Azide Poisonings, Med. Toxicol. Adverse
        Drug Exp., 4:219-227, 1989.

1990    Chen, N.W., Cody, J.T., Foltz, R., Garriott, J.C., and
        Peat, M.A.  Report of 1988 Ad Hoc Committee on Forensic
        GC/MS:  Recommended Guidelines, J. Forensic Sci.,
        35(2):236-242, 1990.

1991    Garriott, James C.  Skeletal Muscle as an Alternative
        Specimen for Alcohol and Drug Analysis, Symposium
        Honoring Charles S. Petty.  J. Forens. Sci., 6(1):60-
        69, 1991.

        Schwartz, J.G., Somerset, J.S., Harrison, J.M.,
        Garriott, and Castorena, J.L. Eye Injuries With Metal
        Missiles Presenting to an Emergency Center: A Three        Year
Study. American Journal of Emergency Medicine,
        9(4):313-317, 1991.

        Joe, George W., Garriott, James C., and Simpson, D.
        Dwayne. Physical Symptoms and Psychological Distress
        Among Inhalant Users. Hispanic Journal of Behavioral
        Sciences, 13(3):297-314, 1991.

1992    Watson, W.A. and Garriott, J.C. Alcohol and Motorcycle
        Riders: A comparison of Motorcycle and Car/Truck
        DWI's. Vet. Hum. Toxicol. 34(3): 213-215 (1992).

1993    Zivot, U., Castorena, J.L., and Garriott, J.C. A Case of Fatal
        Ingestion of Malathion. Am. J. Forens. Med.
        Pathol. 14(1):51-53 (1993)

        Garriott, J.C. Drug Use Among Homicide Victims.
        Changing Patterns.  Am. J. Forens. Med. Pathol. 14
        (3):234-237 (1993)

1994    Schwartz, J.G., Garriott, J.C., Somerset, J.S., Igler, E.J.,
        Rodriguez, R.R., and Orr, M.D.  Measurements of Fentanyl and
        Sufentanil in Blood and Urine after Surgical Application;
        Implication in Detection of Abuse, Am. J. Forens., Med. Pathol.
        15(3):236-241 (1994)

1998       Hagan, L.L., Goetz, D.W., Revercomb, C.H., and Garriott, J.C. Sudden Infant Death Syndrome: a search for allergen hypersensitivity. Ann. Allergy, Asthma, & Immunology 80:227-231 (1998)

## ABSTRACTS

1965       Garriott, J.C., Forney, R.B., Hughes, F.W. and Richards, A.B. Acute Ethanol Toxicity in Dogs, Toxicol.and Applied Pharmacol., 7(3) (Abstract).

Garriott, J.C., Forney, R.B., Hughes, F.W. and Richards, Effects of Acute Ethanol Intoxication in the Dog, Proceedings of the Fourth International Conference on Alcohol and Road Traffic at Bloomington, Dec. 1965.

1968       Garriott, J.C. and Lane, C.E. Some Effects of <u>Physalia</u> Toxin on the Cardiovascular System of the Rat. Federation Proceedings, 27(2), March-April 1968.

1974       Petty, C.S., Stone, I.C., Hutson, T.A., Garriott, J.C. FLAME: Computer Communications Among Procedures of Forensic Sciences, Dallas, TX, Feb. 1974.

1975       Sturner, W.Q., Garriott, J.C. and Bushee, R. The Comparison of Antemortem and Postmortem Specimens in Road Accident Fatalities. Presented at the Vth International Conference of the International Association for Accident and Traffic Medicine, and the 3rd International Conference on Drug Abuse of the International Conference on Alcohol and Addictions, London, Sept. 4, 1975.

Garriott, James C. Driving Under the Influence of Drugs - Toxicologic and Case Findings in an 18-month Study. Presented at the Vth International Conference of the International Association for Accident and Traffic Medicine and the 3rd International Conference on Drug Abuse of the International Council on Alcohol and Addition, London, England, September 4, 1975.

Garriott, J.C. and Sturner, W.Q. Comparative Toxicology in Vitreous Humor and Blood. Presented at the Seventh International Meeting of Forensic Sciences, Zurich, Switzerland, Sept. 10, 1975.

1979       Gardiner, T.J., McAnalley, B.H., Garriott, J.C. and Lowry, W.T. Analysis of Blood Cyanide Levels after Amygdalin Administration in Rats, Fed. Proc., #2381, Vol. 38, 1979.

1981       Lewis, G.D., Laufman, A.K., Garriott, J.C. and

McAnalley, B.H. (Abstr)  Metabolism of Acetone to
Isopropyl Alcohol in Rats and Humans.  Fed. Proc.,
March 1981.

Garriott, J.C.  Biological Monitoring of Volatile
Substances.  Presented at the American Industrial
Hygiene Conference, May 24-29, 1981, Portland, OR

1982    Rodriguez, R., Simmons, L., Castorena, J. and
Garriott, J.C.  A Comprehensive Procedure for Narcotics
in Blood and Tissue, presented at Southwestern Assoc.        of
Toxicologists meeting, Nov. 13, 1982, Austin, TX.

1984    Watson, W.A., Garrelts, J.C., Zinn, P., Garriott, J.C.,
Clementi, W.A.  Chronic Acetazolamide Intoxication.
(Abstr)  American College of Clinical Pharmacy,
5th Annual Meeting, San Diego, CA, June 26-29, 1984.

Garriott, J.C., Simmons, L and Poklis, A.  Three Cases
of Death from "Look-Alike" Stimulant Medications,
presented at Southwestern Association of Toxicologists,
Inc. and Society of Forensic Toxicologist, Inc. Joint
Meeting, St. Louis, MO, Oct. 9-12, 1984.

1985    Watson, W.A., Garriott, J.C. and Godley, P.  Two Cases
of Elevated Pentobarbital Concentration during Thiopental
Infusion.  Southwestern Association of Toxicologists, Inc.,
Shreveport, LA, May 10, 1975.

Castorena, Joe L., Garriott, J.C. and Shaw, R.  A Fatal
Poisoning by Nicotiana Glauca, Southwestern Association        of
Toxicologists, Inc., Shreveport, LA, May 11, 1985.

Watson, W.A., Leighton, G.J., Garriott, J.C. and
Bergman, R.N.  Lavage Fluid Volume and Drug Recovery in        Anti-
depressant Overdoses, 1985/AACT/AAPCC/ABMT/CAPCC
Annual Scientific Meeting, Kansas City, MO, Aug. 4-9,
1985.

1986    DiMaio, V.J.M. and Garriott, J.C.  "Experiences with
Detection of Cannabinoids in Motor Vehicle Accident and
Homicide Victims", American Academy of Forensic Sciences, New
Orleans, LA, Feb. 15, 1986.

1987    Watson, W.A., Barlow, J., Johnson, G., Hibit, J. and
Garriott, J.C.  Pentobarbital Blood Concentrations                after
Induction of Anesthesia with Thiopental,                presented at the
Spring Meeting of the American Society        for Clinical Pharmacology and
Therapeutics, Orlando,        FL, 1987.

1988    Garriott, J.C., Rodriguez, R.G. and Castorena, J.L.
"Cocaine Metabolites in Urine and Blood after Ingestion
of Herb Inca Tea", Spring Meeting of the Southwestern
Association of Toxicologists, Baton Rouge, LA,
April 29, 1988.

1989  Garriott, J.C.   Choice of Specimens in Evaluation of
      Postmortem Alcohol, presented at the 41st Annual   Meeting of
the American Academy of Forensic Sciences,   Las Vegas, NV, Feb. 17,
1989.

      Garriott, J.C.   Detection of Heroin Metabolites, Cocaine and Two
      Metabolites in Blood and Vitreous Humor
      at Autopsy, Presented at the 41st Annual Meeting of the
      American Academy of Forensic Sciences, Las Vegas, NV,
      Feb. 17, 1989.

1992  Garriott, J.C.   Forensic Toxicology Aspects of Inhalant Abuse,
      Presented at the fall meeting of the Southwestern Association of
      Toxicologists, San Angelo, TX, Nov. 14, 1992.

1993  "Traffic Safety by Drug Recognition Evaluation?", Symposium
      Drogenkontrolle in der heutigen Gesellschaft, Forensische Chemie,
      Deustsche Gesellschaft für Toxicologie, Neckarelz-Mosbach,
      Germany, 17 April, 1993.

      "Toxicology of Opiates and Cocaine in Blood, Vitreous Humor,
      Urine and Hair", Presented at the National Association of Medical
      Examiners/AAFS 46th Annual Meeting, San Antonio, TX, Feb. 14-19,
      1994

      "The Pharmacological Basis of DRE", presented at the Southwestern
      Association of Toxicologists Fall Meeting, San Angelo, TX Nov.
      13, 1999.

## WORKSHOPS AND INVITED LECTURES

ASCP Medical Technology Training Institute, University of Texas
Health Science Center at Dallas, Dallas, TX, June 5-7, 1972,
(Faculty).

ASCP Med. Tech. Symposium - Section Director, Toxicology,
April 16-17, 1974.

ASCP: Chicago, September, 1974 - "Interpretative Toxicology",
(Faculty).

Invited to consult and participate in symposium "Drug Involved
Death Conference", NIMH Project, University of California at
Irvine, CA, Nov. 1974.

Invited speaker, California Association of Toxicologists -
November, 1974, San Diego - DUID (Driving under the influence of
drugs).

Invited speaker, Institute of Clinical Toxicologists - December,
1974, "Quality Control in the Toxicology Laboratory".

ASCP: Washington, March, 1975 - "Interpretive Toxicology"
(Faculty).

CAP Forensic Pathology Seminar, Washington, D.C., April 3-5, 1975, Faculty, (Lecturer).

Invited Lecturer: Pittsburgh Spectroscopic Conference, April, 1975, Cleveland, "Interpretive Toxicology".

Invited Seminar Speaker: University of Texas Health Science Center at San Antonio, Pharmacology Dept., June 27, 1975.

ASCP: Medical Technologists Workshop - Baylor Hospital, Dallas, Texas, August, 1975, "Toxicology and Pharmacology of Narcotics and Alcohol".

ASCP: 1976 Spring Meeting, Dallas, Texas, March 22. Workshop, "A Day In The Crime Laboratory", Charles S. Petty, Director, Southwestern Institute of Forensic Sciences. Faculty.

ASCP: Chicago, January 1976 - "Role of Toxicology in Death Investigations", (Faculty).

ASCP: Spring Meeting, Dallas, TX, March 19-25, 1976, Tucson, January, 1977, "Decision-Making in Forensic Toxicology", (Faculty).

American Society of Clinical Pharmacology and Therapeutics, 78th Annual Meeting, "Application of GC/MS to Misadventures", March 24, 1977, Dallas, TX.

Centro Mexicano de Estudios en Farmacodependencia - Annual Meeting in Mexico City, Invited Speaker, August, 1977, "The Hallucinogens; Chemistry; Pharmacology and Analysis".

Drugs and Driving Workshop, Dept. of Transportation - Highway Safety Research Institute, University of Michigan, March 5-7, 1978, Invited Participant.

ASCP: Chicago, April, 1978, Basic Forensic Pathology II; Workshop (Faculty), "Toxicology and Pharmacology of Alcohols".

Traffic Institute, Northwestern University, Homicide and Major Crime Scene Investigation course, August 16, 1978, Dallas, TX, Invited Lecturer.

Alaska Dept. of Public Safety, Anchorage, AK, Death Investigation Seminar, Lecturer, September, 1978.

NIDA, March 22, 1979 (National Institute on Drug Abuse) Symposium on Inhalants Abuse (Invited Participant).

ASCP: Advanced Forensic Pathology Workshop, April 10, 1979, "Advanced Toxicology Techniques and Interpretation", Dallas, TX.

ASMT: Workshop, June 20, 1979, Las Vegas, NV, Invited Lecturer,"Radio-immunoassay in Toxicology".

ASCP: Basic Forensic Pathology, Salt Lake City, September 27, 1979, "Forensic Toxicology" (Faculty).

National Institutes on Drug Abuse (NIDA):  Technical Review on Inhalant Abuse, March 22, 1979, Bethesda, MD.  Participant)

Texas Safety Association (American Association of Industrial Hygienists), March 18, 1979, Dallas, TX, Invited Lecturer, "Toxic Effects of Heavy Metals".

AOAC:  Workshop, St. Louis, April 4, 1980, Invited Lecturer, "Gas Chromatographic Analysis for Basic Drugs".

American Lung Association:  Current Issues in Occupational Health, June 7, 1980, Dallas, TX, Invited Lecturer, "Toxic Effects of Industrial Agent Combinations".

International Association for Accident and Traffic Medicine, II International Seminar, March 23-27, Toluca, Mexico, "Drug and Alcohol Involvement in Traffic Accidents and Fatalities", Invited Lecturer.

Texas Section AACC, Arlington, TX, April 11, 1981, Invited Speaker and Session Chairperson, "Vapor-Phase Analysis of Toluene in Blood and Breath Samples".

ASCP:  Charleston, SC, April 14, 1981, (Faculty), "Toxicology-Pertaining to Comprehensive Death Investigation".

ASCP:  Key West, FL, May 25, 1982, (Faculty), Advanced Forensic Pathology Seminar, Interpretative Toxicology.

University of Texas Health Science Center at Dallas, Pathology Dept., Automobile Crash Seminar, Oct. 2, 1982, Dallas, TX (Faculty).

New Orleans Chromatography Analytical Discussion Group, 13 Annual Symposium, May 13-14, 1982, Featured Speaker.

NOSOTROS - Worden School of Social Services, Invited Lecturer on "Medical Aspects of Inhalants", Feb. 22, 1983, San Antonio, TX.

Seminario Nacional Sobre Identificacion de Drogas de Abuso, Sponsored by the Attorney Generals of the Mexican Republic and the Federal District, Mexico City, Mexico, Invited Lecturer on Abuse Drugs Identification - Hallucinogens and Amphetamines, March 14 and 15, 1983.

Current Concepts in Analytical, Clinical and Forensic Toxicology, Course sponsored by Dept. of Pathology, University of Texas Health Science Center at San Antonio, Faculty, Lecturer on "Current Problems in Forensic Toxicology and Heavy Metals Toxicology", March 17 & 18, 1983.

Worden School of Social Services - NOSOTROS, Invited Lecturer on "Medical Aspects of Inhalants", Nov. 23, 1983, San Antonio College, San Antonio, TX.

Governor's Task Force on Inhalant Abuse, Texas Employment Commission, Rm. 304, 12th and Trinity Sts., Austin, TX, Invited Lecturer on "Inhalants:  What Are They and What Are The Effects?" March 16, 1984.

Texas Dept. of Community Affairs, Inhalants Abuse Conference, Invited Lecturer on "Chemical, Physiological, Medical Aspects of Inhalant Abuse", April 26, 1984, Houston, TX.

The Bexar County Juvenile Probation Dept. and the Texas Council on Crime and Delinquency, Invited Lecturer on "Substance Abuse" at the Barbara Jordan Community Center, 2803 E. Commerce, San Antonio, TX, May 16, 1984.

Participant in Inservice Seminar on Inhalant Abuse sponsored by the City of San Antonio, May 17, 1984, Lectured on "Toxicology Effects of Inhalants".

Governor's Task Force on Inhalant Abuse, Mexican American Unity Council, 2300 W. Commerce, San Antonio, TX, Invited Lecturer on "Deaths by Location", June 20, 1984.

Association of Official Analytical Chemists (AOAC) 10th Annual Spring Training Workshop, April 8-11, 1985, Lectured on "GC/MS Analysis of Cannabis Metabolites in Autopsy Cases, Meeting held in Dallas, TX.

Pathology Residents and Laboratory Section, Wilford Hall, Lackland AFB, TX, Lectured on "Forensic Toxicology", April 3, 1985.

Forensic Toxicology Drug Testing, Laboratory Manager's Conference, sponsored by Brooks AFB, TX, Sept. 10-12, 1985, Invited lecturer on "Courtroom Implications of GC/MS Testing of Cannabinoids in Biological Specimens", Sept. 11, 1985, at El Tropicano Hotel, San Antonio, TX.

Lecture:  "Medical Aspects of Inhalant Abuse", Nosotros, Inc., Statewide Inhalant Abuse Conference, April 3, 1986, St. Anthony Inter-Continental Hotel, at San Antonio, TX.

Workshop Coordinator:  The Cannabinoids:  Current Methodology and Interpretation, 38th Annual Meeting of the American Academy of Forensic Sciences, New Orleans, LA, Feb. 10-15, 1986.

"Correlation of Drug Levels in Muscle and Blood", Charles S. Petty, M.D. Scientific Symposium.  University of Texas Southwestern Medical Center, Dallas, TX, Nov. 17-18, 1989.

Society of Forensic Toxicologists, Inc., Conference on Analysis of Hair for Drugs of Abuse, May 28-29, 1990, Washington, D.C. (Panelist).

Participant, NIDA Inhalant Abuse Research Symposium, Medical Center Hilton Hotel, Houston, Texas, June 26, 1990.

"The Chemistry of Crime Solving", San Antonio Section, American Chemical Society, San Antonio, Texas, September 18, 1990.

Symposium on Forensic Chemistry, American Chemical Society, 47th Southwest Regional Meeting, San Antonio, TX., October 4, 1991. Symposium organizer, moderator.

Workshop presenter, "Effects of Alcohol", Joint meeting of the Southwestern Association of Toxicologists, Southwestern Association of Forensic Scientists and Southern Association of Forensic Scientists. Shreveport, LA,

April 8-11, 1992.

"Forensic Toxicology", San Antonio Section, American Chemical Society.  May 27, 1992.

"The Role of the Laboratory in Forensic Medicine", The San Antonio Society for Medical Technology, UTHSC, October 28, 1992.

"Back to Basics" Workshop Presenter, 45th Annual Meeting of the American Association of Forensic Sciences, Boston, MA, February 16, 1993.

"Forensic Drug Analysis in Hair", Texas Section American Association of Clinical Chemists, Galveston, Texas, March 26, 1993.

"Traffic Safety by drug Recognition Evaluation", presented to the Ministry of the Interior and Chiefs of Police, Saarbrücken, Germany, April 14, 1993; Ministry of the Interior, München, Germany, April 19, 1993.

"Drugs and Human Performance", Workshop Moderator, Annual Meeting of the Society of Forensic Toxicologists, Phoenix, Arizona, October 13, 1993.

"Forensic Toxicology", Representative of The Committee on Liaison with the American Academy of Forensic Sciences, 24th Annual Meeting of The American Association of Psychiatry and the Law, Paso del Rio Hilton Hotel, San Antonio, Texas, October 23, 1993.

"Pharmacology of Ethyl Alcohol; Effects on the Body", Workshop presentation, Current Approaches in Forensic Toxicology, Society of Forensic Toxicologists/International Association of Forensic Toxicologists, Tampa, Florida, Oct. 31, 1994.

"Legal and Medical Alcohol", Plenary Lecture, presented at *Advances in Clinical and Forensic Toxicology II*, CME Program, Medical College of Wisconsin, Milwaukee, Wisconsin, May 11-12, 1995.

"Forensic Toxicology-Science After Death", presented at *Toxicology: Tradition Meets the Future*, The South Texas Poison Center and the University of Texas Health Science Center at San Antonio, Annual Conference, Hyatt Regency, San Antonio, Texas, August 24, 1996.

"La Function del Lab oratorio de Toxicological", presented at the *1a Reunion Centro Americana de Cadencies Foresees*, San Salvador, El Salvador, C.A., November 6-8, 1996.

"Interpretation de loss Resulted de Toxicological Forensic", presented at the *1a Reunion Centro Americana de Cadencies Foresees*, San Salvador, El Salvador, C.A., November 6-8, 1996.

"Drugs Imported from Mexico-Analytical Approach and Case Histories", presented at the Quarterly Meeting of the California Association of Toxicologists, Oakland, CA, February 8, 1997.

"Pharmacology and Toxicology of Alcohol", presented at annual meeting of SOFT in Workshop, *Fundamentals of Alcohol Testing and Interpretation*, October 5, 1997, Snowbird, Utah.

·"Pharmacology of Alcohol", presented at AAFS/CAT seminar *The Effects of Alcohol and Drugs on Human Performance and Behavior*, UCLA Conference Center, Los Angeles, CA, August 20-22, 1998.

"Herbs of the Curanderos", workshop presented at the annual meeting of the Society of Forensic Toxicology, Albuquerque, NM, October 6-10, 1998.

"The role of Alcohol in Accidents", presented at Traffic Accident Reconstruction & Litigation Seminar, Lawyers & Judges Publishing Co., Tucson, AZ, Nov. 6, 1998.

"The Pharmacology Basis of DRE" Presented at the DRE (Drug Recognition Expert) Workshop, Meeting of the Southwestern Association of Toxicologists, San Angelo, Texas Nov. 11, 1999.


**JAMES C. GARRIOTT, PH.D., D-ABFT**
**TOXICOLOGIST**
*16031 Oak Grove*
*San Antonio, Texas 78255*
*(210) 695 9520; FAX (210) 695 9520*
*e-Mail: JCGARRIOTT@satx.rr.com*

January, 2000
**Toxicology Consulting--James C. Garriott, Ph.D.**
**Statement of current fees:**

Consulting time (office, phone); research; reports, etc.:
$ 200.00/Hr

Deposition testimony; court testimony:
$ 300.00/Hr

Daily rate (out of town testimony, depositions, etc.); expenses not included, basic travel expenses required in advance:
$ 2000.00/Day

Court setting/standby alert for testimony (if canceled):
$ 250.00

Retainer required for case acceptance:
$ 1000.00

James C. Garriott, Ph.D.
Tax id/SS #: 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

**Nick Peters, MD**
**2300 Marie Curie Rd**
**Garland, Texas 75042**
**(972) 562-8541**

November 10, 2000

Carol Lomax
Branton & Hall
737 Travis Park Plaza Building
711 Navarro, Suite 737
San Antonio, Texas 78205

Re: Candelario DeLeon  9827

Dear Ms Lomax,

I, Nick Peters am a licensed physician Board Certified in Emergency Medicine. I have reviewed the medical records sent from your office relating to the care of Mr. DeLeon. Specifically, I have reviewed the records of two different emergency department visits with paramedic transportation records for December 24, 1998 and December 25, 1998. Also, I was provided the inpatient hospital records for his admission from his December 25, 1998 arrival to his discharge on January 6, 1999. Mr. DeLeon was brought back for other medical problems on January 8 and was discharged on January 29, 1999.

As you know, Mr. DeLeon was a 57 year old male involved in a motor vehicle collision in the evening of December 24, 1998. Paramedics found him unable to get out of the car. The paramedics placed him in spinal precautions including a cervical spine collar, head immobilization and strapped to a back board. On arrival to the emergency department at Columbia Valley Regional Medical Center it was reported the patient complained of numbness from the neck down. Dr. Dovale Joao examined the patient and stapled a facial laceration. The patient was cleared from spinal precautions and Dr. Joao noted the patient was "obviously drunk". The patient was discharged from the emergency department to police custody to go to jail after approximately 30 minutes at 2030.

On December 25, 1998 Mr. DeLeon was brought to Brownsville Medical Center emergency department with" back pain", "numbness in body" and "can't move legs". Paramedics brought him from the jail to the hospital on a backboard without a cervical spine collar. Dr. Nagarjun Narra  applied a C-collar but when the patient returned from x-ray the collar had been removed.  Later the cervical collar was replaced. After

Carol Lomas
Re: DeLeon
Nov. 10, 2000
page 2

multiple x-rays were performed including cervical, dorsal and lumber spine, CT and MRI a diagnosis of acute spinal cord injury, cervical cord compression was made. The patient was admitted for further care and evaluation of his quadriplegia.

He was discharged from the hospital for supportive care and therapy, to be brought back 2 days later on January 8, 1999 for an infection and was later discharged again on January 29, 1999.

After my review of the records available, I believe several times the medical care rendered to Mr. DeLeon fell below expected standards. The incidences and reasons for my opinion are as follows:

1.  On the first emergency department encounter the patient was removed from spinal precautions prematurely. To safely remove a patient from such precautions, he must be awake, alert with no distracting injuries and no mind altering substances substances in the patient's system. Then the physician can access spinal stability after a careful normal neurological and spinal exam. Often needed are x-rays and occasionally special studies or consulting opinions . Dr. Joao did not document a neurological examination, or a spinal exam. The patient had a mind altering substance in his system as noted by the physician as "obviously drunk". No x-rays where done to even attempt to find the cause of the patient's compliant of numbness. In my opinion this gross negligence was a major contributing cause of Mr. DeLeon's spinal cord injury.

2.  When the paramedics arrived to care for Mr. DeLeon at the jail on December 25, 1999, they put him on a back board, but no cervical collar. With his cervical spine unstabilized he was at high risk of further unnecessary injury while being transported. This deviation from the standards of care was a contributing cause of Mr. DeLeon's quadriplegia.

3.  When the patient arrived to emergency on December 25, 1999 Dr. Narra appropriately placed a cervical collar on Mr. DeLeon. Unfortunately when he returned from having his x-rays done the collar was off. Later it was put back on. Even with normal cervical spine x-rays, the spinal precautions must not be removed if their is evidence of a neurological deficit. At this time Mr. DeLeon had obvious signs of injury with decreased motor and sensory function. The removal of the collar at this point was a departure from acceptable medical standards demonstrating negligence and could have contributed to his ultimate spinal injury.

Carol Lomas
Re: DeLeon
Nov. 10, 2000
page 3

In summery, it is my professional opinion the care for Mr. DeLeon fell substantially below standards of care several times by various caretakers. Reasonable care would have protected the spine from further injury. As a result of these breeches in the standard of medical care Mr. DeLeon did not have the opportunity to minimize or even possibly eliminate any long term paralysis, and other sequela.

Please do not hesitate to contact me if there are additional records for review or if there are additional questions which need to be addressed.


Sincerely,

Nick Peters, MD

# Nick Paul Peters, MD
# 30 Secretariat Lane
# McKinney, Texas 75069
# (972) 562-8541

## PERSONAL

| | |
|---|---|
| Born: | Fairfield, California |
| Health: | Excellent |
| DOB: | October 22, 1964 |
| Marital Status: | Single |

## CERTIFICATION AND LICENSING

Diplomate of the American Board of Emergency Medicine
Texas Medical License      J7627

## CURRENT EMERGENCY MEDICINE PRACTICE

Baylor Medical Center at Garland
Garland, Texas

Full time staff Emergency Physician
Over 40,000 visits/ year.  Involves
teaching in residency program.
1994 to present

Texoma Medical Center
Denison, Texas

Part-time Staff Emergency Physician
1995 to present

Baylor Medical Center at Richardson
Richardson, Texas

Part-time Staff Emergency Physician
1995 to present

Baylor Medical Center at Grapevine
Grapevine, Texas

Part-time Staff Emergency Physician
1996 to present

## PAST EMERGENCY MEDICINE PRACTICE EXPERIENCE

Sierra Vista Community Hospital
Sierra Vista, Arizona

Staff Emergency Physician
1994

Raymond Bliss Army C Hospital
Fort Huachuca, Arizona

Staff Emergency Physician
1994

Mt. Graham Community Hospital
Safford, Arizona

Staff Emergency Physician
1994

Orthopaedic Hospital
Los Angeles, California

Staff Emergency Physician
1993

Nick Paul Peters, MD                    page 2

EDUCATION

| Residency-Emergency Medicine | Location | Degree/Date |
|---|---|---|
| University of Arizona | Tucson, Arizona | 1993-4 |

| Internship/Residency-Emergency Medicine | | |
|---|---|---|
| UCLA King/Drew Medical Center | Los Angeles, California | 1991-3 |

| Medical School | | |
|---|---|---|
| Creighton University School of Medicine | Omaha, Nebraska | MD 1991 |

| Colleges and Universities | | |
|---|---|---|
| University of San Francisco | San Francisco, California | BS 1987 |
| Sacramento City College | Sacramento, California | |
| Consumnes River College | Sacramento, California | |

ADMINISTRATIVE EXPERIENCE (outside of medicine)

| Animal Laboratory Manager | Institute of Chemical Biology | 1984-7 |
|---|---|---|
| Orientation Chairman | University of San Francisco | 1986-7 |

UNIVERSITY SERVICE

| Residency Admission's Committee | University of Arizona |
|---|---|
| Medical College Recruitment Program | Creighton University |
| Committee for Orientation, Advising and Registration | University of San Francisco |

PROFESSIONAL ORGANIZATIONS

American College of Emergency Physicians
Texas College of Emergency Physicians
American Medical Association

RESEARCH AND PUBLICATIONS

Chang, Enders, Sprengel, Peters, Varmus, Ganum: Expression of the precore region of an avian hepatitis B virus is not required for viral replication. Journal of virology Oct 1987.

Abstracts
Prediction of the severity of acute pancreatitis. Annals of Emergency Medicine Feb 94.

Medical control of mass gatherings: can paramedics perform without physicians on-site? Annals of Emergency Medicine May 94.

HOBBIES AND INTERESTS

Raising horses, running, fishing, and clarinet.

# PRELIMINARY LAW ENFORCEMENT EXPERT REPORT OF ALBERT RODRIGUEZ

**REFERENCE:**       **CANDELARIO DE LEON; CAUSE NO. B-00-192**

My name is Albert Rodriguez.  I am presently employed as the Commander of the Training Academy for the Texas Department of Public Safety.  I was employed by the Texas Department of Public Safety (DPS) as a patrol officer in 1977, and was a Highway Patrol Trooper for approximately five (5) years.  In 1982, I was promoted to the rank of Training Officer at the Training Academy.  I served in that position for two (2) years.  I was then promoted to Staff Development Specialist I and served in that capacity until 1989.  In 1989, I was promoted to the rank of Lieutenant in the Training Academy.  In March of 1993, I was promoted to Commander of the DPS Training Academy in Austin, Texas and presently hold that position.  I have been employed by the DPS as a law enforcement officer for over twenty-four (24) years.  I am a licensed Texas Peace Officer and have met all of the standards for licensure set out by statute and by the Texas Commission on Law Enforcement Officer Standards and Education.

After being hired by the DPS and prior to becoming commissioned as a peace officer, I attended an eighteen- (18) week law enforcement course at the DPS Training Academy.  After graduating from the academy, I was assigned to work in the Highway Patrol Service.  I worked with a senior DPS trooper for one (1) year as additional training.  Every two (2) years, each member of the DPS returns to the academy for an additional forty (40) hour refresher course that includes training in new legislation, policies, and procedures.  I have followed this course of training.  I hold a Bachelors Degree in Education from Texas A&M in Kingsville, Texas.  I also hold Advanced, Instructors', and Masters' certifications from the Texas Commission on Law Enforcement Officer Standards and Education.  I am a certified Emergency Medical Technician through the Texas Department of Health.

I have been certified for over fifteen (15) years as a Texas Commission on Law Enforcement Officer Standards and Education Instructor, Defensive Tactic's Instructor, and Firearms' Instructor. I am certified by the Federal Bureau of Investigation (FBI) as use of force and defensive tactic's instructor. I have attended over six thousand (6,000) hours of various law enforcement seminars and schools throughout the United States. In my career with the DPS, I have studied and attended seminars on the issues of policies and procedures, use force, use of deadly force, police pursuits, police emergency response, probable cause, police supervision, law enforcement training internal affairs patrol procedures, and officer safety. I have also instructed classes in the areas of patrol procedures, police pursuits, police emergency response, defensive tactics, officer safety, arrest procedures, use of force, use of deadly force, internal affairs, law enforcement policies and procedures, firearms, police supervision, first aid and many other law enforcement subjects.

I have been qualified in Federal and State courts as an expert witness in the areas of police pursuits and emergency response, patrol procedures, use of force, use of deadly force, policies and procedures, probable cause, arrest procedures, driving procedures, police supervision, firearms, officer safety, Texas criminal laws, Texas traffic laws, law enforcement training, and police investigations.

**ADDITIONAL QUALIFICATIONS AND MEMBERSHIPS**

I am a member of the FBI National Academy Graduates Association, Texas Police Association, Texas State Troopers Association, Texas Department of Public Safety Officer's Association, Texas Sheriff's Association, and the American Society of Law Enforcement Trainer's Association. I also serve on the Southwest Texas State University Criminal Justice Advisory Board and the Austin Community College Law Enforcement Advisory Board. I have instructed at the FBI Academy in Quantico, Virginia; Northwest University in Jacksonville, Florida; Texas Attorney General's Annual Law Enforcement Conferences in Austin, Texas; and various other locations throughout the United States and Mexico. The attached resume contains a more complete listing of my training and qualifications and is provided for reference of my experience, education, training, and skills.

**RESEARCH AND ASSESSMENT**

My opinions in this report are based on having reviewed and researched the following documents: 1) Accident Report prepared by Brownsville Police Officer Andres S. Torres, Jr., 2) Medical Report prepared by Doctor Jeremy D. Slater, 3) Medical Report prepared by

Doctor Nick Peters, 4) City of Brownsville EMS Ambulance Report, Narrative, and Charge Slip dated 12/24/98, 5) City of Brownsville EMS Ambulance Report, Narrative, and Charge Slip dated 12/25/98, 6) City of Brownsville EMS Ambulance Report, Narrative, and Charge Slip dated 01/06/98, 7) City of Brownsville EMS Ambulance Report, Narrative, and Charge Slip dated 01/08/98, 8) City of Brownsville EMS Ambulance Report, Narrative, and Charge Slip dated 01/09/98, 9) Columbia Valley Regional Medical Center Emergency Room Medical Records of Candelardio De Leon, 10) Brownsville Medical Center's Medical Records of Candelardio De Leon, 11) Texas Code of Criminal Procedure, 12) Texas Penal Code, 13) Texas Commission on Law Enforcement Officer Standards and Education Basic Peace Officer Training Curriculum, 14) Graham vs. Conner, and 15) Saucier vs. Katz.

## CONCLUSIONS & OPINIONS

It is my professional opinion that on December 24, 1998, Officer Andres Torres' actions were objectively reasonable. Any reasonable and well-trained law enforcement officer could have taken the same or similar actions that Officer Torres took when presented with the same or similar circumstances.

Officer Torres followed law enforcement protocol by responding to the reported motor vehicle collision. Officer Torres appropriately investigated the motor vehicle collision and allowed the Brownsville Emergency Medical Services to treat and transport Candelario De Leon to Columbia Valley Regional Medical Center for further medical treatment.

Upon completing the collision investigation, Officer Torres conducted the customary follow up by going to the Columbia Valley Regional Medical Center to check on the status of Candelario De Leon.

Medical personnel and/or a physician at Columbia Valley Regional Medical Center labeled Candelario De Leon as "obviously drunk" and released him to Officer Torres. Any reasonable and well-trained law enforcement officer could have believed that Columbia Valley Regional Medical Center had properly assessed and medically treated Candelario De Leon. Law enforcement officers are trained to understand that medical personnel and/or physicians possess the knowledge and training to appropriately treat patients.

Officer Torres followed his law enforcement training by taking custody of Mr. De Leon upon his release from the emergency room. Officer Torres transported Mr. De Leon the Brownsville jail and incarcerated him due to the probable cause that existed regarding the traffic infractions.

3

In conclusion, in my twenty-four years of law enforcement experience and over fifteen years of experience as an Emergency Medical Technician, I have yet to witness a person in need of extensive care attention to law enforcement personnel without having provided the proper medical care. In the law enforcement community it is understood that if a medical facility and/or physician releases a patient without specific instructions regarding incarceration or care, then the person is to be incarcerated if probable cause exist. Officer Torres simply followed the accepted law enforcement practice of heeding to the specialized medical training and/or standards of medical care that medical facilities and/or physicians should possess and/or provide.

I reserve the right to amend my opinions should additional information be forthcoming.


ALBERT RODRIGUEZ

# ALBERT RODRIGUEZ

*11017 Crossland*
*Austin, Texas 78726*

*Age:* 48 years
*Wife:* Terry Rodriguez
*Children:* Steven Alberto
*Height:* 6'0"
*Weight:* 210 lbs.

## E D U C A T I O N

**Emergency Medical Technician;** 13 Semester Hours; 1991; Austin Community College, Austin, Texas
**Graduate Credit in Criminal Justice;** 16 Semester Hours; 1986; University of Virginia, Quantico, Virginia
**B.S. in Education;** May 1975; Texas A&I University, Kingsville, Texas
**High School Diploma;** 1971; Falfurrias High School, Falfurrias, Texas

## P R O F E S S I O N A L   E X P E R I E N C E

| | |
|---|---|
| 1993 to present | **Commander, Director of Training,** Texas Department of Public Safety - Supervise one captain, three lieutenants, seven sergeants, 35 non-commissioned employees, and all training activities at the Texas Department of Public Safety Training Academy. Instruct in a variety of courses at several TCLEOSE accredited academies throughout the State of Texas. |
| 1985 to present | **Expert Witness** in law enforcement related issues. |
| 1982 to 1993 | **Staff Lieutenant** - Texas Department of Public Safety - Supervise two staff sergeants and two civilian employees; coordinate Recruit Schools (last Recruit School was March 31 to August 31, 1990); and coordinate In-Service Schools for Traffic Law Enforcement and Criminal Law Enforcement Divisions. RangeMaster: Instruct firearms courses, oversee all Department firearms issues, repair firearms, develop shooting courses, etc. Instructor in a variety of courses including Use of Force, General Patrol Procedures, Arrest Procedures, Subject Control Tactics, Gun-smithing, etc. |
| 1981 to 1982 | **Training Officer** - Texas Department of Public Safety Academy - Physical Training, Officer Survival and Subject Control Tactics, Patrol Procedures, Use of Force, Arrest Procedures, etc. |
| 1977 to 1981 | **Texas Highway Patrol** - Pearsall, Pleasanton, and Austin, Texas. |
| 1975 to 1977 | **Coach and Teacher** - San Antonio Independent School District - Thomas Jefferson High School. |
| 1974 | **Neighborhood Youth Counselor** - Counselor for high school students (May to July). |

## S P E C I A L I Z E D   T R A I N I N G

- **Americans for Effective Law Enforcement; Police Civil Liability,** September 1996, Las Vegas, Nevada
- **State and Provincial Police Academy Director's Conference;** June 1995; Williamsburg, Virginia
- **Public Agency Training Council - Use of Force/High Speed Police Pursuit;** June, 1995; San Antonio, Texas
- **American Society of Law Enforcement Trainers;** January 1995; Anchorage, Alaska
- **Attorney General's Criminal Law Enforcement Conference;** 1995; Austin, Texas
- **Southwestern Texas State University Leadership Development Conference;** August - September, 1994; Austin, Texas
- **U.S. Department of Justice Municipal/Civil Liability Conference;** June 1994; Laredo, Texas

*Albert Rodriguez*

## SPECIALIZED TRAINING (Continued)

- **Professional Development Conference**; 1994; Texas Department of Public Safety; Austin, Texas
- **Attorney General's Criminal Law Enforcement Conference**; 1994; Austin, Texas
- **American Society of Law Enforcement Trainers**; January 1993; Washington, D.C
- **Police Civil Liability**; 1993; Las Vegas, Nevada
- **Accidents Involving Petroleum Gas Division**; September 6, 1991; Austin, Texas
- **Use of Force Symposium**; June 23 - 27, 1991; Federal Law Enforcement Training Center; Glynco, Georgia
- **Emergency Medical Technician**; June 14, 1991; Austin, Texas
- **Tactical Baton Instructor**; May 21 - 22, 1991; Austin, Texas
- **Smith and Wesson Revolver Armorers' Course**, April 1991, Lubbock, Texas
- **Pistol Smithing Course**, Semi-automatic; April 17 - 18, 1991; Austin, Texas
- **Spanish for Law Enforcement Instructor Training**; March 19 - 23, 1990; Austin, Texas
- **Japanese Karate**; 1989 to 1990; Austin, Texas
- **Texas Department of Public Safety Firearms Instructors' Course**, November, 1985
- **Manager of Managers Program**; April 16 - 20, 1989; New Braunfels, Texas
- **High Performance Management**; February 28, 1989; Austin, Texas
- **American Society of Law Enforcement Trainer's Workshop**; January 3 - 7, 1988; New Orleans, Louisiana
- **United States Secret Service Dignitary Protection School**; January, 1987
- **Federal Bureau of Investigation, National Academy**; October 1986 - December 1986; 147th Session; Quantico, Virginia
- **Deadly Force and the Peace Officer**; September, 1986; Northwestern University, Evanston, Illinois
- **State Police and Highway Patrol Training Director's Seminar**; March 25 - 29, 1985; Jacksonville, Florida
- **Confrontation and Stress Management**; April 20, 1984; Texas A&M University; College Station, Texas
- **Police Defensive Tactics**; March 11, 1984; Smith & Wesson Academy; Springfield, Massachusetts
- **First Level Management Training**; December 1, 1983; Governor's Council, State of Texas; Lago Vista, Texas
- **International Non-Lethal Weapons Association Academy**; September 19, 1983; Instructor's Certificate Number 0606
- **Advanced Officer Survival Seminar**; August 10, 1983; Police Marksman Association: New Orleans, Louisiana
- **Officer Tear Gas Training**; July 26, 1983; Federal Laboratories, Inc.; Austin, Texas
- **Federal Laboratories Tear Gas Seminar**; July 1983; Austin, Texas
- **Licensed, Emergency Medical Technician**; February 11, 1983; Health Resource Center; San Marcos, Texas
- **Police Instructors' Baton Training**; January 17 to 21, 1983; Texas Department of Public Safety; Austin, Texas
- **Advanced Accident Investigation Course**; October 25 - November 12, 1982; Texas A&M University; College Station, Texas
- **Psycho-Motor Skill Design - Instructor Training Seminar**; October 3 - 9, 1982; Justice System Association; Chicago, Illinois
- **Street Survival Seminar**; September 7 - 8, 1982; North Texas Police Chiefs Association; Arlington, Texas
- **FBI Instructors' Course**; August 30 - September 3, 1982; Federal Bureau of Investigation (FBI); Austin, Texas
- **Advanced Instructors' Course**; May 10 - 14, 1982; Texas Police Association; Austin, Texas
- **Police Physical Fitness Trainers' Course** - Certificate of Proficiency; March 13, 1982; Des Moines, Iowa
- **Police Fitness Instructors' School**; March 8 - 12, 1982; The Institute for Aerobic Research
- **Police Photography School**; January 5 - 7, 1982; Texas Department of Public Safety; Austin, Texas
- **Physical Fitness Program**; November 9 - 13, 1981; International Association of Chiefs of Police; Dallas, Texas
- **Arts of Self Defense School**; October 5 - 12, 1981; Robinette Academy of Personal Protection; Austin, Texas
- **Techniques of Group Instruction School**; August 31 to September 4, 1981; Texas Department of Public Safety; Austin, Texas
- **Officer Survival School**; July 1981; Houston Police Department; Austin, Texas
- **Breathalyzer Operator Course**; November , 1977; Texas Department of Public Safety, Training Academy; San Antonio, Texas
- **Texas Department of Public Safety Training Academy**, 1,100 hours; 1977; Austin, Texas
- **Americans For Effective Law Enforcement, Police Civil Liability**, September 1997. Las Vegas, Nevada
- **Highway Patrol In-Service Training** 1978, 1980, 1982, 1984, 1986, 1988, 1990, 1992, 1994, 1996, 1998, 2000
- **Investigation of Homicides and Violent Crimes**, July 2000, Department of Public Safety Training Academy
- **Defensive Tactics School/Takedowns**, August 2000, Las Vegas, Nevada

- **TCLEOSE's Academy Coordinators' Workshop**, September 2000, Corpus Christi, Texas
- **Gang Seminar, (Kim Ogg),** November 2000, Texas Department of Public Safety Training Academy, Austin, Texas
- **Lewis Grigg's Cultural Diversity Program,** June 2000, Texas Departmentof Public Safety Training Academy; Austin, Texas
- **Mastering Performance Leadership,** May 2000, Texas Department of Public Safety Training Academy, Austin, Texas
- 

# C E R T I F I C A T I O N S

- **Texas Commission on Law Enforcement Officer Standards and Education**
- Masters' Certificate
- Instructor's Certificate
- Advanced Certificate
- Intermediate Certificate
- Basic Certificate
- **The Aerobic Research Center**
- Physical Fitness for Police Officers
- Certificate of Proficiency
- **Federal Bureau of Investigation Instructor Certification**
- **Emergency Medical Technician** - Certificate No. 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
- **American Society of Law Enforcement Trainers** - Certification No. 006573
- **Cardiopulmonary Resuscitation Certified**; May 17 - 18, 1982; American Red Cross; Austin, Texas
- **Radar Operator Certification**; December 1980; Texas Department of Public Safety; Austin, Texas

# S U B J E C T S   T A U G H T

- **3,000 plus Civilian Concealed Handgun Instructors**, Austin, Texas
- **FBI Use of Force Instructor's Course**; Quantico, Virginia
- **Mexico State Police Training Courses**:
- Officer Survival
- Patrol Procedures
- Defensive Tactics
- Probable Cause
- Arrest Procedures
- Firearms
- **International Non-Lethal Weapons Association Seminar**; Clearwater, Florida
- **Officer Survival and Defense Tactics Training Officer's Course**; Northwest University Police Institute; Jacksonville, Florida
- **Officer Survival and Defensive Tactics State Police Director's Course**; Northwest University Police Institute; Jacksonville, Florida
- **Survival and Defensive Tactics Course**; Austin, Texas
- **Officer Survival Course**; Medina County; Hondo, Texas
- **Rape Crisis Course**; Austin, Texas
- **Defensive Tactics Course**; Federal Police; Chihuahua City, Chihuahua, Mexico
- **Attorney General's Criminal Law Enforcement Conference** - Use of Force; Austin, Texas
- **Attorney General's Criminal Law Enforcement Conference** - Police Pursuits; Austin, Texas
- **Arkansas Narcotics Officers Association**, August 1996, Little Rock, Arkansas
- **Oklahoma Narcotics Officers Association**, October 1996, Oklahoma City, Oklahoma
- **United States Attorney's Law Enforcement Coordinating Conference**, May 1997, Corpus Christi, Texas

*Albert Rodríguez*

## SUBJECT TAUGHT (CONTINUED)

- **Texas Defensive Tactic's Instructors' Association**, August 1997, Austin, Texas
- **Agencies throughout the State of Texas**:
- Patrol Procedures
- Use of Force
- Firearms
- Police Emergency Driving
- Police Pursuit DrivingProbable Cause
- Arrest, Search and Seizure
- Arrest Procedures
- Texas Criminal Laws
- Texas Traffic Laws

## MEMBERSHIPS AND ASSOCIATIONS

- Texas Police Association
- Texas Sheriff's Association
- Texas State Troopers Association
- Department of Public Safety Association
- FBI National Academy Graduates Associates
- American Society of Law Enforcement Trainer's Association
- U. S. Karate Federation
- Police Marksman Association
- Texas State Rifle Association
- 1480 Shooter's Club
- Governor's "top twenty"
- Southwest Texas State University Criminal Justice Advisory Board
- Austin Community College Law Enforcement Advisory Board
- Texas Alcohol Beverage Commission Law Enforcement Advisory Board\
- Texas Department of Public Safety Law Enforcement Advisory Board

Zeff Ross, FACHE
10213 Capri St.
Cooper City, FL   33026-4637

June 28, 2001


Ms. Carol P. Lomax
Branton & Hall
One Riverwalk Place
700 N. St. Mary's St., Ste. #1700
San Antonio, TX   78205

RE:  Candelario De Leon

Dear Ms. Lomax:

I, Zeff Ross, am a Certified Healthcare Executive and Fellow in the American College of
Healthcare Executives and I am currently the Administrator of Memorial Hospital West in
Florida.  With regard to the above referenced matter, I have reviewed the following information:

- Texas Peace Officer's Report of the accident - December 24, 1998
- The Medical Records of Columbia Valley Regional Medical Center
- The Medical Records of Brownsville Medical Center
- The City of Brownsville EMS Reports
- The Report of Nick Peters, M.D.
- The Report of Jeremy Slater, M.D.


Mr. Candelario De Leon is a 57 year old male who was brought to the Columbia Valley Regional
Medical Center emergency department on December 24, 1998 by the City of Brownsville EMS
ambulance after a motor vehicle accident.   According to the ambulance report, the patient was
found sitting on the driver's seat of a small red car which had sustained moderate damage to the
front end.  The EMS notes states, "Per patient, he was the driver, unrestrained with no loss of
consciousness."  The narrative notes from EMS indicate "Patient smelled highly of alcohol and
stated he had been drinking but unknown what or how much".  The patient was alert and oriented
x 1, possibly due to alcohol.  The patient received neck spine immobilization, was extricated and
placed on a backboard and while on route to the hospital, the patient complained of numbness
from the neck down.  The emergency department record indicates that the ER physician
documented that the patient was "obviously drunk - awake and alert".  The examination findings
documented for the eyes, heart, lung and abdomen were normal with no findings recorded for the

Ms. Carol P. Lomax
June 28, 2001

-2-

neurological examination or extremities. The patient received one staple to a forehead laceration and was then discharged to the custody of the police. No further testing, including cervical spine x-rays, CT or MRI were performed. The patient then spent the night in the city jail. The following morning, the patient was brought to Brownsville Medical Center complaining of the inability to move. According to the Ambulance Activity Report dated December 25, 1998 back pain was suspected with the patient complaining of the pain to arms and numbness throughout the body. Patient stated he was unable to walk due to the numbness in his body. He was transported to Brownsville Medical Center for further evaluation and under the History and Physical examination, it was noted that the patient was apparently in a motor vehicle accident last night at 9:00 p.m. The patient was brought in this morning from jail as he was complaining of the inability to move. He spent all night on the cold, concrete floor complaining of pain to his back. Patient states he was unable to get out of his car and felt numb since last night, that he "can't move legs". Patient had a c-collar applied, put onto the backboard, x-rays were performed, and when the patient returned from x-ray, it was noted that the c-collar was off per the x-ray technician and then reapplied. Later that day an MRI was also performed.

According to the consultant's notes, it was noted that immediately after the accident, the patient complained of having numbness in both extremities. He was seen at Valley Regional Medical Center and was incarcerated afterwards for drunk driving. During the whole night, the patient complained of decreased movements of his lower extremities and on waking up this morning, felt more weakness, including the upper extremities. The patient was sent to Brownsville Medical Center from jail to be evaluated. Spinal x-rays were performed including cervical, thoracic, lumbar and all reported normal by the radiologist. The neurologist requested a neurosurgical consult and an MRI was also performed.

It is my opinion, as an expert in hospital administration and after reviewing the information previously noted, and based on a reasonable degree of hospital administrative certainty, that Columbia Valley Regional Medical Center deviated from the standard of care by failing to provide for a complete neurological examination on Mr. De Leon at the time of his initial presentation to their facility. The mechanism of injury indicated a high index of suspicion for the type of injury he received. In addition, the EMS personnel noting the patient's complaints of numbness from the neck down were relatively clear indications to not only fully assess the patient for possible cervical cord injury, but as well to consider activating a trauma alert, which according to the hospital's definition, is a "potentially life threatening injury with vital signs presently stable." However, this was not done and as such, the possibility of early treatment of his injuries, which could have decreased any long term neurological deficit, was lost.

Ms. Carol P. Lomax
June 28, 2001

-3-

Based on a reasonable degree of hospital administrative certainty, it is my opinion that the hospital did not implement such policy and procedures as any reasonably prudent facility would have done under similar circumstances.

I reserve the right to review additional emergency department/trauma policies and procedures, as well as medical staff bylaws and rules and regulations to help further formulate my opinion in the future.

Should you require additional information or have questions regarding any of the above, please feel free to contact me.

Sincerely,

Zeff Ross, FACHE

ZR/laf

### Zeff Ross, FACHE

10213 Capri Street
Cooper City, Florida  33026-4637
(954) 433-2525 (Home)
(954) 433-7199 (Work)

<u>EXPERIENCE:</u>

**April 1991**     **ADMINISTRATOR**
**- Present**      **Memorial Hospital West (110 Beds), Pembroke Pines, Florida**

Major Accomplishments include:

**I.**    <u>**Development & Operations**</u>:

- Planned for, operating and managing the hospital since its inception.

- Coordinated recruitment activities for management staff and over 300 employees in preparation of opening.  Implemented orientation and guest relations programs for all staff.  Expanded staff to over 700 FTE's.

- Operated the hospital from opening day without using any agency nurses.

- Implemented patient-focused care by incorporating Patient Assistant Liaisons (PALS) to help provide increased continuity of care to patients with crosstraining of many employees; implemented open visitation hours for patients.

- Successfully implemented and continually support the Memorial 21st Century Excellence Program for total quality management.

- Patient satisfaction statistics indicate during the latest year of operations of 99.0% outpatient satisfaction, 98.5% inpatient satisfaction and approximately 95% emergency department satisfaction rate.

- Successfully completed the 1997 Joint Commission on Accreditation of Healthcare Organization survey receiving a grid score of 98 and a full three year accreditation with Commendation, a distinction which places Memorial Hospital West within the top 6% of hospitals.

- Proactively implemented a reengineering program to cost effectively meet the challenges of the future in providing quality care with high patient satisfaction.

- Implemented the following new services/programs: diagnostic cardiac catheterization;  invitro fertilization; diabetes center; Level II Neonatal ICU; child care program through an affiliation with the City of Pembroke Pines; cable television via satellite dishes; ambulatory surgical facility; radiation therapy center; and a women's center..

- Purchased the medical office building located on the hospital's campus.  Successfully increased the occupancy rate from 83% to 100%.

- Implemented activities to secure additional medical office space offsite from the campus of Memorial Hospital West in an effort to integrate primary care offices with the hospital.

- Participated in the development, implementation and operation of the Memorial Integrated Healthcare System (IPA's), Medical Management Services Organization (MSO), and Physician Hospital Organization (PHO).

- Completed the first Employee Opinion Survey of Memorial Hospital West after two years of operation with Administration receiving high accolades from the employees for our commitment to quality patient care, to the employees, to the volunteers, and to the community.

Established a community network providing educational seminars, health screenings, and community health fairs; Partner in Education with local schools, member of civic and community organizations.

.    Exceeded the operating budget each year with regard to number of admissions, births, surgeries, patient revenues, payor mix, outpatient procedures, emergency department visits, and excess of revenues over expenses. Exceeded established fiscal objectives each year by greater than 20%/yr. for initial four years of operation.

## II.  Medical Staff Organization:

.    Development of the medical staff organization, committee structure and credentialing activities.

.    Developed, with medical staff input, the initial medical staff bylaws, rules and regulations, individual department rules and regulations, as well as the specified health professional rules and regulations.

.    Implemented critical pathways developed by the medical staff and created new programs for the medical staff to help reduce resource consumption (ie. dissemination of reimbursement and cost information as compared to other physicians in the same specialty with the same DRG's).

.    Recruitment of primary and specialty medical staff to the hospital. Increased medical staff membership from the initial 461 physicians to over 700 physicians in the third year, and greater than 900 in the fifth year. Developed a physician orientation book for new physician members of the Medical Staff.

## III.  Construction:

Coordinated efforts to ensure construction of the 100-bed facility was completed on time and within budget.

.    Completed five year master site facility plan and began implementation of Phase I building activities (totaling $20 million dollars) which includes: the expansion of the outpatient, emergency, maternity, laboratory and pharmacy departments and the construction of a Same Day Surgery Center, helistop, fitness & rehabilitation center, a 16-bed observation unit, a radiation therapy center, and a women's center

**July 1985**        **Humana, Inc., 500 West Main Street, Louisville**
**- April 1991**      **Kentucky  40201**

**July 1990**        **EXECUTIVE DIRECTOR**
**- April 1991**      **Humana Hospital - Palm Beaches (250 Beds), West Palm Beach, Florida**

Accomplishments at this 250 bed short-term acute care hospital with 88 psychiatric beds, included:
Recruited both solo and specialty group practitioners to the hospital's market area.
Reduced annual operating expenses by $250K and payroll expenses by $400K without adverse impact on operations.
Coordinated $3.5M renovation project. Initiated building of a medical office building on the hospital campus.
.    Significantly increased patient satisfaction response through the initiation of product line management and patient relations program

**October 1987**     **EXECUTIVE DIRECTOR**
**- July 1990**       **Humana Hospital - South Broward (256 Beds), Hollywood, Florida**

Accomplishments included:
.    Formulated and implemented short and long range strategic plans and objectives which resulted in increased market share and maximized margin; implemented board of trustees self-evaluation measurement survey.
Obtained $1.5M additional revenue as a result of innovative changes to reimbursement systems.
.    Increased gross revenue by $700K through business cooperation with private practitioners.
Exceeded established fiscal objectives by more than 35%.
.    Increased patient census by 20% with a decrease of 12% in the length of stay

**August 1986**      **ASSOCIATE EXECUTIVE DIRECTOR**
**- October 1987**    **Humana Hospital - Biscayne (458 Beds), Miami, Florida**

 **OHNS**

**Smith-Glynn-Callaway Medical Building**

**Deviations:**

Based on a reasonable degree of medical certainty, it is my opinion that the physician did not use such care as reasonably prudent healthcare providers practicing in the same field in the same or similar locality would have provided under similar circumstances. It is my opinion that the breach in care caused a lost opportunity for a medical intervention that may have significantly reduced the patient's longterm deficits.

Signed,

Jeremy D. Slater, M.D.

ST JOHN'S PHYSICIANS AND CLINICS
Curriculum Vitae

1.    Date: June, 2000

## PERSONAL

2.    Name: Jeremy D. Slater, M.D.

3.    Home Phone:  (417) 886-5470

4.    Office Phone: (417) 888-5659

3.    Office Address: Smith-Glynn-Callaway Clinic
                       3231 S. National Avenue
                       Springfield, MO   65807

6.    Citizenship:  USA

## HIGHER EDUCATION

7.    Institutional (institution; degree; date conferred):

      1982   Bachelor of Science in Molecular Biophysics and Biochemistry, Yale University;
             New Haven, Connecticut

      1986   Doctorate of Medicine, University of Pittsburgh School of Medicine;
             Pittsburgh, Pennsylvania

8.    Certification, licensure (description; board of agency; dates):

      Licenses:
                       Missouri
                       Registered with D.E.A. (available upon request)
                       Diplomate, American Board of Psychiatry and Neurology, 1993
                       Diplomate, American Board of Clinical Neurophysiology, 1997
                       Diplomate, American Board of Sleep Medicine, 2000

EXPERIENCE

9.   Academic (institution; rank/status; dates):

     86-87        Internship, Medical College of Pennsylvania, Philadelphia, Pennsylvania

     87-90        Neurology Resident, University of Miami School of Medicine, Department of Neurology, Miami, Florida

     89-90        Chief Resident, University of Miami School of Medicine, Department of Neurology, Miami, Florida

     90-91        Fellow in Electrophysiology and Epilepsy, University of Miami School of Medicine, Department of Neurology, Miami, Florida

     91-94        Assistant Professor, University of Miami School of Medicine, Department of Neurology, Miami, Florida

     94-97        Clinical Assistant Professor, University of North Dakota School of Medicine, Department of Neuroscience, Bismarck, North Dakota

TEACHING RESPONSIBILITIES:

     87-90        Third and fourth year medical student instruction during the Neurology Rotation

     89-90        Instruction of first year Neurology residents

     89-90        Supervision of Jackson Memorial Hospital Neurology inpatient service

     89-90        Supervision of Jackson Memorial Hospital Neuro-Medical Intensive Care Unit

     90-94        Interpretation of EEG and evoked potential studies at the Miami Veterans Administration Hospital

     90-94        Instruction of first through third year Neurology residents

     90-94        Supervision of care for Epilepsy Foundation clinic patients

91-94     Rotations as both the inpatient neurology consult attending, and as the inpatient neurology attending

91-present     Supervision of EEG videotelemetry unit and interpretation of EEG videotelemetry studies.

10.    Non-academic (institution; rank/status; dates):

94-97     Staff neurologist and medical director of the clinical neurodiagnostics laboratory, Bismarck, North Dakota

98-present     Staff neurologist, St. John's Physicians & Clinics, Springfield, Missouri

PUBLICATIONS (author(s) (in actual precedence of authorship); title; publisher or journal name; date; page numbers)

11.    BOOKS AND MONOGRAPHS PUBLISHED:

Ramsay RE and Slater JD: Bromides in The Treatment of Epilepsy: Principles and Practice. Edited by Elaine Wyllie, Lea & Febiger, 955-958, 1993.

Wu FY, Slater JD, Ramsay RE and Honig LS: Neural Networks for EEG Diagnosis in Intelligent Engineering Through Artificial Neural Networks. Edited by C. H. Dahli, L.I. Burke and Y.C. Shin, ASME Press, Volume 2:559-564, 1992.

Ramsay RE, Slater JD. Antiepileptic Drugs in Clinical Development in: New Antiepileptic Drug Development: Preclinical and Clinical Aspects. Edited by J.A. French, M.A. Dichter and I.E. Leppik, Elsevier Science Publishers B.V. (In press).

12.    JURIED OR REFEREED JOURNAL ARTICLES AND EXHIBITIONS:

Ramsay RE and JD Slater. Effects of Antiepileptic Drugs on Hormones. Epilepsia, 32 (Suppl 6): S60-S67, 1991.

Ramsay RE, Wilder BJ, Murphy JV, Holmes GL, Uthman B, Slater JD, Morris DD, Shu VS and Pierce MW. Efficacy and Safety of Valproic Acid Versus Phenytoin as Sole Therapy for Newly Diagnosed Primary Generalized Tonic-Clonic Seizures. J Epilepsy, 5:55-60, 1992.

South Florida Healthcare Administrative Forum.  Member 1986 - Present  Offices held: Chairman, Nominating Committee, Board of Directors.

College of Osteopathic Healthcare Executives.  Member
April, 1989 - July, 1990; Chairperson - Membership Committee; Member - Awards Committee.

American Osteopathic Hospital Association.  Board of Trustees, Representative for Division IV, October 1988 - July 1990.

## COMMUNITY ACTIVITIES & MEMBERSHIPS:

Miramar/Pembroke Chamber of Commerce.  Board of Directors from October 1987 - June 1989; July 1992 - July 1993. Secretary, July 1993 - July 1994; Vice Chairman, July 1994 - July 1995; Chairman-Elect, July 1995 - July 1996; Chairman, July, 1996 - Present.

City of Pembroke Pines Police Athletic League (P.A.L.) Board of Directors. April, 1996 - Present.

Family Bank Western Advisory Board.  September 1995 - Present

American Heart Association/Southwest Broward Division.  Vice President, September 1991 -January 1993; Board of Directors, January 1993 - Present.

Speakers Bureau Memorial Hospital/Memorial Hospital West April, 1991 - Present

Embassy Creek Elementary School, School Improvement Team (S.I.T.), Member  October, 1992 to Present.

Junior Achievement Program, Walter C. Young Middle School, Instructor. 1994, 1995, 1996, 1997

American Cancer Society  Board of Directors, August 1992 - August 1996; Grassroots Program, August 1992 - Present.

Broward Economic Development Council, Inc.  Board of Directors, October 1, 1992 - September 30, 1993.

## AWARDS AND HONORS:

Pinnacle Award - Miramar-Pembroke Chamber of Commerce - March, 1998

JCAHO Accreditation with Commendation - January 1997

Up & Comers Award Winner - Price Waterhouse/South Florida Business Journal - September, 1995  Finalist - 1994, 1993 & 1990.

Business Leaders' Award - Industry Appreciation Week, Miramar-Pembroke Chamber of Commerce - September 19, 1995

American Cancer Society's "Rookie of the Year" 1992-1993

First Annual Award for Outstanding Administrative Support in Recognition of the Hospital Healthcare Human Resources Field given by the South Florida Hospital Personnel Directors Association - April 1993

"Best Outpatient Services" Award from South Florida Medical Business for the tri-county area - 1993

**LICENSES:**        Board of Nursing Home Administrators, State of Florida #285-

**REFERENCES:**      References furnished upon request



# Smith-Glynn-Callaway Medical Building

January 4, 2001

Carol P. Lomax
Branton & Hall
737 Travis Park Building
711 Navarro, Suite 737
San Antonio, Texas 78205-1787

Re:   Patient: Candelario DeLeon
      File Number: 9827

Dear Ms. Lomax:

I, Jeremy D. Slater, M.D., am a licensed physician, Board Certified in Neurology, Clinical Neurophysiology and Sleep Medicine. I have reviewed the records of Candelario DeLeon. These include the following:

1. Emergency room records from Columbia Valley Regional Medical Center, dated 12/24/98.
2. Hospital records from the Brownsville Medical Center, dated 12/25/98 through 1/7/99.
3. EMS ambulance activity records from the City of Brownsville, dated 12/24/98 through 1/29/99.

**Case Summary:**

Candelario DeLeon is a 58 year old male with an essentially negative past medical history, who was brought to the Columbia Valley Regional Medical Center emergency room on 12/24/98 by the City of Brownsville EMS ambulance after a motor vehicle accident. The patient was found, sitting in the driver's seat, unrestrained. According to the EMS notes, "Pt. Smelled highly of ETOH and stated he had been drinking but unknown what or how much". A cervical collar was placed and the patient was extricated through the driver's door onto a backboard (10 PM). On route, the patient complained of "numbness from the neck down".

Upon arrival in the emergency room (10:05 PM), the ER physician notes document that the patient is "obviously drunk – awake". Normal exam findings are documented for the heart, lungs and abdomen, with no findings recorded for the neurological examination or



**ST.JOHN'S**
PHYSICIANS & CLINICS

# Smith-Glynn-Callaway Medical Building

extremities. Nursing notes document the absence of CSF or blood in the ear canals, and the absence of Battle's sign, or periorbital ecchymoses. The presence of the cervical collar is noted. The patient received one staple to a forehead laceration and was then discharged to the custody of the police. No cervical spine films were ordered – there is no documentation regarding if or when the collar was removed.

The patient then spent the night in the city jail. Waking the next morning, he complained of being unable to move. When the EMS service arrived, he complained of pain in his arms and numbness throughout his body. At that time, no cervical collar was in evidence. The patient was placed on a backboard, secured with straps and transported to the Brownsville Medical Center emergency room.

Upon arrival in the emergency room, the patient was assessed and underwent X-rays of the cervical spine. Once these were completed, because of clinical suspicion of a cord compression, he received high-dose Solumedrol intravenously, 30 mg/kg. A Foley catheter was placed, and 400 cc of urine drained. Spine X-rays were completed including cervical, thoracic and lumbar, all of which were read as normal. A neurology consultation was obtained. The neurologist, on the basis of the clinical examination, suspected a low cervical cord compression, and ordered an MRI of the cervical spine. This was completed, and demonstrated no hematoma, moderate changes of cervical spondylosis with spinal canal stenosis in the mid to lower cervical spine. Neurosurgical consultation was ordered. A subsequent MRI of the thoracic spine was unremarkable, as was a CT scan of the brain.

Through the remaining hospitalization the patient received supportive therapies, and at the time of discharge to a nursing home, the patient remained quadraparetic, with a T8 sensory level.

**Conclusions:**

It is my professional opinion that the emergency room physician at Columbia Valley Regional Medical Center deviated from the standard of care by failing to complete a neurologic examination on Mr. DeLeon at the time of his initial presentation. The circumstances of the patient's injury, in addition to his complaints to the EMS personnel of numbness from the neck down, are both strongly compelling reasons to assess for possible cervical cord injury. Had he completed a neurological examination at that time, he might have discovered clinical evidence suggesting the presence of a cord compression. Early treatment with high-dose intravenous steroids could have been initiated, possibly reducing the level of longterm neurologic deficit.

Landy HJ, RG Curless, RE Ramsay, J Slater, C Ajmone-Marsan, & RM Quencer. Corpus Callosotomy For Seizures Associated with Band Heterotopia. Epilepsia, 34:70-83, 1993.

Landy HJ, RE Ramsay, JD Slater, RR Casiano, & R Morgan. Vagus Nerve Stimulation for Complex Partial Seizures: Surgical, Technique, Safety, and Efficacy. J of Neurosurgery, 78:26-31, 1993.

Wu FY, Slater JD, Honig LS, Ramsay RE. A Neural Network Design for Event-Related Potential Diagnosis. Comput Biol Med, 23:251-264, 1993

Landy HJ, RE Ramsay, C Ajmone-Marsan, & JD Slater. Incomplete Interhemispheric Fissure and Joint Cingulate Gyrus Interfering with Corpus Callosotomy. J of Neurosurgery. (In press).

Ramsay RE, Uthman B, Augustinsson L., Upton ARM, Naritoku DK, Willis JK, Treig T, Barolat G, Wernicke JF, and the First International Vagus Nerve Stimulation Study Group: JD Slater et al. Vagus Nerve Stimulation (VNS) for Treatment of Partial Seizures: 2. Safety, Side Effects and Tolerability. Epilepsia. (In press).

Slater JD; Morgan R; Ramsay RE; Honig LS; Wu FY. Neural Network Analysis of the P300 Event-Related Potential in Multiple Sclerosis. Electroencephalogr Clin Neurophysiol 1994 Feb; 90 (2): 114-22.

Ben-Menachem E, Hufnagel A, Wilder BJ, Stefan H, Mirza WU, and the First International Vagal Stimulation Study Group: JD Slater et al. Vagal Stimulation as Treatment for Partial Epilepsy: Effect on Seizures in a Controlled Study. (Submitted to Epilepsia).

George RE, Sonnen AEH, Ristanovic RK, Barolat G and the First International Vagal Stimulation Study Group: JD Slater et al. Vagal Stimulation as Treatment for Partial Epilepsy: Safety and Tolerability. (Submitted to Epilepsia.)

Salinsky M, Manon-Espaillat R, Kuzniecky R, Rosenfeld WE and the First International Vagal Stimulation Study Group: JD Slater et al. Vagal Stimulation as Treatment for Partial Epilepsy: Long-Term Effects and Quality of Life. (Submitted to Epilepsia.)

Slater JD; Ramsay RE; Jacobs W; Brown MC. Induction of Pseudoseizures With Intravenous Saline Placebo. Epilepsia 1995 June; 36 (6): 580-5.

Ben-Menachem E; et al; Wernicke JF; Ramsay RE; Stefan H; Treig T; Slater J; Uthman BM; Hammond EJ; Hedner T; Hamberger A. Epilepsy Res 1995 Mar; 20 (3): 221-7.

Case 1:00-cv-00192   Document 75   Filed in TXSD on 12/28/2001   Page 90 of 177

Slater JD, Wu FY, Ramsay RE.  Neural Network Analysis of the P300 Cognitive Evoked Potential in Epilepsy, Multiple Sclerosis and Parkinson's Disease.  Epilepsia, 33 (Suppl 3) : 60, 1992.

Aranguiz, C, Nemire R, Slater JD, Jallad NS, LoPresti J, Ramsay RE.  Idiokinetic Propanolol-Valproate Drug Interaction.  Epilepsia, 33 (Suppl 3) : 102, 1992.

Landy HJ, Ramsay RE, Slater J, Casiano RR, Morgan R.  Vagus Nerve Stimulation for Complex Partial Seizures: Surgical Technique, Safety, and Efficacy.  Accepted for presentation at the Congress of Neurological Surgeons annual meeting, Washington, D.C.,  October 31-November 5, 1992.

Wilder BJ, Slater J, Malon J, Campbell K, Gilmore R, Uthman BM, Perchalski RJ, Ramsay RE.  Parenteral Loading and Maintenance of Phenytoin with Fosphenytoin, a Phenytoin Prodrug.  Epilepsia, 34 (Suppl 2) : 27, 1993.

Ramsay RE, Slater JD, Cox M.  Neurocardiogenic Syncope Successfully Treated with Valproate.  Epilepsia, 34 (Suppl 2) : 86, 1993.

Slater JD, Brown MC, Ramsay RE, Jacobs W.  Intravenous Normal Saline Placebo Induction in Patients with Epilepsy and Pseudoseizures.  Epilepsia, 34 (Suppl 2) :  114-115, 1993.

Slater JD, Wu FY, Ramsay RE.  Neural Network Analysis of the P300 Cognitive Evoked Response In Temporal Lobe Epilepsy.  Epilepsia, 34  (Suppl 2) : 130, 1993.

Jacobs W, Ramsay RE, Slater JD, Brown MC, Nemire RE, Ortiz WR, Ayala R, LoPresti J.  Contribution of Family Patterns of Unsuccessful Medical Treatment of Epilepsy.  Epilepsia, 34 (Suppl 6) : 10, 1993.

Nemire RE, Ortiz WR, Ayala R, Slater JD, Ramsay RE.  The Effectiveness of Clobazam in Refractory Seizures.  Epilepsia, 34 (Suppl 6) :40, 1993.

Brown MC, Slater JD, Ramsay RE, Landy HJ.  Does Discontinuation of Anticonvulsant Medication Obscure Neuropsychological Data in Focal Epilepsy?  Epilepsia, 34 (Suppl 6) : 86, 1993.

Ramsay RE, Slater JD, Aranguiz C, Vega M, Ortiz WR,  Ayala R, Lalama H, Rask C.  Open Treatment With Tiagabine and Conversion to Monotherapy of Patients with Uncontrolled Partial and Generalized Seizures.  Epilepsia, 34 (Suppl 6) : 103, 1993.

Slater JD, Wu FY, Meador KJ, Ramsay RE. Neural Network Analysis of the P300 Event-related Potential in Healthy Subjects in the Drug versus Non-drug State. Epilepsia, 34 (Suppl 6) : 136, 1993.

Ramsay RE, Slater JD, Aranguiz C, Vega M, Ortiz WR, Ayala R, Lalama H, Rask C. Open Treatment With Tiagabine and Conversion to Monotherapy of Patients with Uncontrolled Partial and Generalized Seizures. Epilepsia, 34 (Suppl 6) : 103, 1993.

Slater J, Ramsay E, Barolat G, Rosenfeld W, Willis J. One Year Results of Vagus Nerve Stimulation (VNS) in 82 Refractory Epilepsy Patients. Presented at the XVth World Congress of Neurology, Vancouver, Canada, September 1993.

## Abstracts Under Review:

14.   Other works accepted for publication:

      N/A


## PROFESSIONAL

15.   Funded Research Performed (include all grants received in the last five years, identifying the principal investigator and the amounts and dates of the awards):

      Safety and Efficacy of Three Dose Levels of Tiagabine HCl vs. Placebo as Adjunctive Treatment For Complex Partial Seizures.
      Abbott Laboratories
      Grant Years:          Jan 1992 – Sept 1993
      Total Grant:          $72,875


16.   Editorial Responsibilities:


17.   Professional and Honorary Organizations (member; officer; date):

      Member – American Medical Association
      Member – American Academy of Neurology

# ALEX C. WILLINGHAM, M.D. _____ *Curriculum Vitae*

## Updated 04/10/01

## BUSINESS ADDRESS

South Texas PM&R Group
5101 Medical Drive
San Antonio, Texas 78229   (210) 615-2225

## PERSONAL DATA

DOB:                    8/13/55
BIRTHPLACE:             Amarillo, Texas
MARITAL STATUS:         Married, Judy
CHILDREN:               Clark and Kathryn

## POSTDOCTORATE TRAINING

1983-86        Residency:   New York University Medical Center,
                            New York, New York
                            Rusk Institute of Rehabilitation Medicine
1985-86        Chief Resident
               Department of Physical Medicine and Rehabilitation
               Bellevue Hospital Center
               Rusk Institute of Rehabilitation Medicine

## EDUCATIONAL BACKGROUND

1982-83        Long Island Jewish Medical Center
               (Queens Hospital Center Affiliation)
               Jamaica, New York
               Fifth Pathway Certificate

1982-83        State University of New York at Stony Brook
               School of Medicine Stony Brook, New York
               Fifth Pathway Program (Supervised Clinical Clerkship)

1981   Autonomous University of Guadalajara, School of Medicine Guadalajara, Mexico
               Honors:      Highest Academic Achievement
               Degree:      Medico Cirujano
               Activities:  Assistant Director, Mormon Clinic
                            (Student-operated free clinic)

## EDUCATION (continued)

1977           Texas Tech University
               Lubbock, Texas
               Bachelor of Arts
               Major:       Chemistry with ACS Certification
               Minor:       Math, Biology and German
               Honors:      Dean's List; MortarBoard

Activities:        Solid-State Physical Chemistry Research:
                   Superconductors Determination with Argon Laser

1975              Amarillo College
                  Amarillo, Texas
                  Associate Bachelor of Science
                  Major:       Chemistry
                  Minor:       Math and Biology
                  Honors:      Dean's List

## LICENSURE AND CERTIFICATION

<u>Licensure</u>:   Texas              #H1249        December 1986
                   Arkansas           #R3643        June 1986
                   New York State     #156345       July 1983
<u>Certification</u>: American Board of Physical Medicine and Rehabilitation May 20, 1987, Cert. #2741.

## AFFILIATIONS

Warm Springs Rehabilitation Hospital-San Antonio

Baptist Healthcare System

SW Methodist Hospital

San Antonio Community Hospital

Santa Rosa Northwest

## PROFESSIONAL AFFILIATIONS

American Medical Association

American Academy of Physical Medicine & Rehabilitation

Autonomous University of Guadalajara Alumni Association

Bexar County Medical Society

Texas Medical Association

Association of Academic Physiatrists

## POSITIONS HELD

1988-Present       Medical Director
                   Warm Springs Rehabilitation-San Antonio

1988-Present       Clinical Assistant Professor
                   University of Texas Health Science Center-San Antonio
                   Department of Physical Medicine

| 1988-1993 | President and Partner<br>San Antonio Rehabilitation Associates |
|---|---|
| 1993-Present | President and Partner<br>South Texas PM&R Group, Inc. |
| 1998-Present | Board Member<br>Warm Springs Rehabilitation System |
| 1998- Present | President<br>Rehabilitation Professional Consultants, Inc. |
| 1999-Present | Advanced Curriculum Faculty<br>University of Florida<br>Department of Rehabilitation Counseling and Intelicus |

## ADMINISTRATIVE AND COMMITTEE ASSIGNMENTS

| 1988-Present | Medical Director<br>Warm Springs Rehabilitation Hospital-San Antonio |
|---|---|
| 1990-Present | Texas Medical Association |
| 1997-Present | Chairman, Rehabilitation Section Committee |
| 1993-1994 | Medical Advisory Board - San Antonio Multiple Sclerosis Society |
| 1991 | IntraCorp<br>Designated Speaker for Scientific Education Presentation |

| 1986-1988 | Medical Director<br>Kate Dishman Rehabilitation Center<br>Rehabilitation Service Committee |
| --- | --- |
| 1987-1988 | Medical Director<br>St. Elizabeth Hospital-Based Skilled Nursing Facility |
| 1987-1988 | Medical Director<br>St. Elizabeth Occupational & Physical Rehabilitation Work Conditioning Center |
| 1986-1988 | St. Elizabeth Hospital<br>Beaumont, Texas<br><br>Medical Director<br>Kate Dishman Rehabilitation Center<br>28 bed Dedicated Inpatient Rehabilitation Unit |
| 1984-1985 | Attending Physician<br>Menorah Nursing Home, Inc., Brooklyn, New York |
| 1984-1986 | Attending Physician<br>Menorah Home and Hospital, Brooklyn, New York |

## SCIENTIFIC PAPER PRESENTATIONS

Intrathecal Baclofen Therapy for Spasticity Due to Stroke, published by Medtronic, Inc. 1998.

Radiographic Assessment of Efficacy of Slings in Glenohumeral Subluxation of Hemiplegia. American Academy and Congress of Physical Medicine and Rehabilitation Medicine, (46th Annual Assembly), Boston, Massachusetts.

Bagwell D., Willingham A., Harrell T.  Life care planning:  the interdisciplinary team approach, In *Disability Analysis In Practice*, Kendall/Hunt Publishing Co., Dubuque, Iowa; Dec. 1998: Chapter 1: 1-20.

Pecha MD, Able AC, Barber DB, Willingham AC.  Outcome after spontaneous spinal epidural hematoma in children: Case report and review of the literature.  Arch Phys Med Rehabil 1998; 70: 460-3.

# PRESENTATIONS

Traumatic Brain Injury: Post Acute Continuum.  Presented to the Texas Medical Association, TexMed 2000 Annual Meeting, San Antonio, Texas, May 27, 2000.

Spasticity Management. Presented to Foundation Health Case Management Group. San Antonio, Texas, April 18, 2000.

Rehab/Exercise in the Elderly Presentation, Aging in the Americas: Frontiers of Care, Policy & Research, San Antonio, Texas, February 21-24, 1999

Life Care Planning: Methodology to Enhance Credibility and Reliability: Continuing Education Series for Case Managers, Social Workers, and Insurance Claims Representatives.  Warm Springs Rehabilitation Hospital, San Antonio, Texas, Oct. 1998.

Urodynamics University of Texas Health Science Center at San Antonio, Texas April, 1997.

Team Approaches to Life Care Planning:  Developing a Blueprint for Care following Spinal Cord Injury, Moderator.  Managing the Challenges, Chicago, IL, October 12-14, 1996.

Disabilities and Inpatient Rating Systems, IntraCorp

Stroke Presentation, AARP-San Antonio, Kerrville, Fredericksburg, and San Marcos, Texas.

Rehabilitation Candidacy, Medical Staff Inservice-Del Rio, McAllen, Texas.

Head Injury Rehabilitation, Pan American Presentation-McAllen, Texas.  Featured speaker Texas Head Injury Association.

Primary Care of Persons with Spinal Cord Injury, Featured Speaker Case Manager Society of South Texas, January 22, 2001.

# CONTINUING MEDICAL EDUCATION
## ALEX C. WILLINGHAM, M.D.
### Updated - February 2001

American Academy of Physical Medicine & Rehabilitation, <u>Management of Post-Concussive Syndrome</u>, November, 1992

1 CME hour

American Academy of Physical Medicine & Rehabilitation, <u>CARF Specialty Standards in Med. Rehab. Prog. For 1992 & 1993</u>, November, 1993

1.5 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>The Future of Pain and Disability</u>, November, 1992

3 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>Update on Prevention of Thromboembolism</u>, November, 1992

1 CME hour

American Academy of Physical Medicine & Rehabilitation, <u>Proximal Nerve Studies & Common Shoulder Injuries</u>, November, 1992

1 CME hour

American Academy of Physical Medicine & Rehabilitation, <u>Disability Assessment of the Patient with Pain: Workshop</u>, November, 1992

1 CME hour

American Academy of Physical Medicine & Rehabilitation, <u>Comprehensive Rehabilitation in a Lower Cost Setting</u>, November, 1992

3 CME hours

Academy of Physical Medicine & Rehabilitation, <u>Curing Reflex Sympathetic Dystrophy with a String</u>, November, 1992

1 CME hour

American Academy of Physical Medicine & Rehabilitation, <u>Unique Histologic Concerns for Future Rehab Strategies</u>, November, 1993

1.5 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>Joint Injection Techniques</u>, November, 1993

1 CME hour

American Academy of Physical Medicine & Rehabilitation, <u>Stroke & Neurorehabilitation SIG-Medical Complications</u>, November, 1993

1 CME hour

American Academy of Physical Medicine & Rehabilitation, <u>The Future of Stroke Rehabilitation</u>, November, 1993

3 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>Physiatric Approach to Low Back Pain</u>, November, 1993

3 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>Industrial Rehab Medicine Update:  The Non-cutting Edge</u>, November, 1993

3 CME hours

Physician's Recognition Award of the American Association: The Future of Academic Physiatry, 1993

3 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>Improve Your Practice's Productivity</u>, Business Seminar, May, 1993

9 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>SAE - Practitioners - Pain Rehabilitation</u>, 1994

15 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>SAE - Practitioners - Stroke Rehabilitation</u>, 1994

15 CME hours

Methodist Hospital Monthly Medical Teaching Conference, TNI Journal Club, October, 1994

1 CME hour

Methodist Hospital Monthly Medical Teaching Conference, TNI Journal Club, December, 1994

1 CME hour

Southwest Texas Methodist Hospital & Nix Medical Center, <u>Hyperbaric Medicine</u>, March 3-9, 1996, The Undersea and Hyperbaric Medical Society

56 AMA Category 1 credits

Southwest Texas Methodist Hospital, <u>Intrathecal Therapy in Neurologic Practice</u>, April 19, 1996

1 CME hour

American Academy of Physical Medicine & Rehabilitation Association, <u>SAE - Practitioners - Brain Injury Rehabilitation</u>, 1998

15 CME hours

American Academy of Physical Medicine & Rehabilitation Association, <u>SAE - Practitioners - Pain Rehabilitation</u>, 1998

15 CME hours

Methodist Healthcare System, Neuroscience Grand Rounds - <u>"You're Going to put the Medicine Where?"</u>

1 CME hour

The University of Texas Health Science Center at San Antonio, Continuing Medical Education, "Real World Ethics: Useful Concepts for Everyday Practice"

1AMA CATEGORY 1 credit

American Academy of Physical Medicine & Rehabilitation, <u>From Subpoena to Settlement: Understanding Legal Testimony and Neurolaw Issues</u>,  November, 2000

3 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>Current Concepts in the Evaluation and Management of Post-Traumatic Headaches</u>,  November, 2000

1.5 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>Plenary Session: The Economics of Rehabilitation--The Difference Between Efficiency and Value</u>, November, 2000

0.50 CME hour

American Academy of Physical Medicine & Rehabilitation, <u>The Changing Role of the Medical Director</u>, November 2000

1.5 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>Changing Opposition to Opportunities: Managing the Polarities of Health Care</u>, November 2000

1.5 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>Prospective Payment System and Beyond</u>, November 2000

3 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>Alternative Medications: Uses, Views, and Literature Review</u>, November 2000

1 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>Primary Care of Persons With Spinal Cord Injury</u>, November 2000

3 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>Outcomes Analysis to Determine the Value of Medical Rehabilitation Across the Healthcare Continuum</u>, November 2000

3 CME hours

Los Amigos Research and Education Institute, Journal of Rehabilitation Medicine and Science, February 2001

1 CME hour

## INFORMAL CME CREDITS

<u>Lovenox Treatment for Deep Venous Thrombosis</u> - Dr. Turpie, January 18, 1995

1.5 CME credits

Insurance Corporation of America, <u>In Your Defense</u>, May 4, 1995

2 CME hours

American Academy of Physical Medicine & Rehabilitation, <u>Neuromuscular Disease: Rehabilitation & Electrodiagnosis and Rehabilitation in Joint and Connective Tissue Diseases</u>, 1995

30 CME credits

Texas Medical Association, Impairment Evaluation Under Workers' Compensation, Basic and Advanced Courses, October, 1995

23 AMA PRA hours

5th Annual Arthur E. Grant Lectureship, June 15, 1995, <u>Future of Physical Medicine & Rehabilitation</u>

3 CME credits

<u>Hyperbaric Medicine Team Training</u> - Undersea & Hyperbaric Medical Society, San Antonio, TX, March 3-9, 1996

56 CME credits

<u>Strategies for Physiatric Practice: 1996</u>, University of Texas Health Science Center, San Antonio, TX, June 5, 1996

2 CME credits

7th Annual Arthur E. Grant Lectureship, June 12, 1998, <u>Review of AHCPR Guidelines and the Role of the Physiatrists in Diagnosis and Management of Acute Low Back Pain</u>

2 CME credits

# DEPOSITION SUMMARY – Dr. Alex C. Willingham

| File Opened | Def/ Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 8/5/99 | | Adams, Maria | Alfonso L. Melendez | 97-3047 | Maria G. Adams, et al vs. Marcos Calderon, MD., et al; County Court at Law Number Seven |
| 4/14/00 | | Ashley, Josephine | Pat Maloney | 2000-CI-00172 | Josephine Ashley, et al. Vs. Benson Ingram Park Mazda, et al. |
| 10/26/98 | | Barquin, Martin D. | Pat Maloney, Jr. | 98-CI-06859 | Martin Duran Barquin, et al vs. G.M., et al |
| 11/12/98 | | Berger, Frances | Brin & Brin, P.C. | 96-6037-F | Bruce Berger, individually and as Executor of the Estate of Frances E. Berger v. John D. Halcomb, MD., In the 214th Judicial District Court of Nueces County, TX. |
| 6/9/00 | | Berry, Thelma Joyce | Jack Robinson | 169-CV-6-99 | 6th District Court, Red River County, Texas; Patricia Sheffield v. Gary Neil Carroll and Red River Trucking Company. |
| 6/19/96 | | Bess, Amber | Mueller Law Office | 96-164326-96 | Amber Nicole Bess, a Minor vs All Saints Health System, C. David Braungardt, MD., et al. – In the 96th Judicial District Court of Tarrant County, Texas. |
| 6/22/98 | | Boyd, Roger I. | White, Craig L. | 97-CI-13427 | Julie and Roger Boyd Individually and as Next Friends of Roger Boyd, Jr., a Minor Child vs. Carol E. Wratten, MD in the 224th Judicial District Court of Bexar County, TX. |
| 11/29/99 | | Brown, Derek | Haskins Law Firm | 1999-99068 | Daryl and Tabatha Brown, Indv., et al Vs Dandrea Brooks, MD., et al.; In the 61st Judicial District Court of Harris County, TX. |
| | | Budine, Debra | | | |
| 7/29/99 | | Castillo, Rick | Haskins Law Firm | No. 4336 | Teresa and Rick Castillo, Individually and as Parents and Next Friends of Rick Castillo, Jr., Minor v. Eluid Acevedo, M.D., et al.; In the 49th Judicial District Court of Zapata County, TX. |
| 10/23/98 | | Chavez, Juan P. | Plunkett & Gibson | 97-CI-08398 | Juan Pablo Chavez, et al. V City of San Antonio, et al., 73rd Judicial District Court, Bexar County, TX. |
| 10/5/98 | | Cornwall, Brenda | Edwards, Perry & Haas | 97-61753-2 | Brenda Cornwall vs. Spohn Kleberg Memorial Hospital In its Assumed or Common Name: Spohn Kleberg Memorial Hospital; Raj Sabnani, MD.; Gerardo Trevium, |

# DEPOSITION SUMMARY – Dr. Alex C. Willingham

| File Opened | Def/ Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 3/28/00 | | | | | R.N.; Ben H. Moore, Jr., MD.; Byron Marr, DO.; Nora Frasier; Staff Relief, Inc.; and Wilma Ann Moreslock; In the County Court at Law Number Two Nueces County, TX. |
| 3/28/00 | | Curtis, Terry | Pasqual & Chumbley | 2000-CI-023936 | Terry L. Curtis v. William E. Drew, M.D.; In the 408th Judicial District Court of Bexar County, TX. |
| 5/11/00 | | Davis, William Jerry | Ken Link | 17-173049-98 | William J. Davis and Judith W. Davis v. Harris Methodist Fort Worth et al. |
| 9/08/98 | | Diaz, Melissa | Law Offices of Pat Maloney | 94-CI-00615 | Melissa Diaz, Individually, and as Next Friend of Kirstein Diaz, a Minor et al., vs Wyeth-Ayerst Laboratories Company, et al.; in the 166th Judicial District Court of Bexar County, Texas. |
| 10/13/95 | | Duran, Maria | Mueller Law Office | 95-1917-A | Maria Duran, Remberto Duran, Marisa Duran, Remberto Duran, Jr. and Fernando Duran vs. East Texas medical Centre, Harold B. Clayton, MD., d/b/a American, Brian Kempton, MD., Emcare, Inc. and Emergency Health Services Associates, P. A.; In the 7th Judicial Court of Smith County, TX. |
| 10/23/98 | | Espalin, Autumn Nicole | | 97-10460 | Mark Espalin and Irasema Espalin, Individually and as Next Friend of Autumn Nicole Espalin, A Minor, Plaintiffs, v Children's Medical Center of Dallas, Dr. Steves W. Ring, Dr. Todd Massey, and Dr. Gary Cieslak, Defendants. |
| 6/8/99 | | Flores, Maria | Zavaleta Law Firm | C-802-98-D | Noe Tijerina Individually and as Personal Representative of the Estate of Maria Flores aka Maria Flores De Ojeda, and as Next Friend of Joshua and Jennifer Tijerina, Minor Children & Juan Ojeda, Individually and on Behalf of Juan Miguel Ojeda, Minor Child vs. Samuel Garcia, Jr., MD., McAllen Medical Center, Inc. Jointly and Severally with Lawrence R. Gelman, MD., McAllen Anesthesia Consultants, P.A. nonte Baylar, CRNA, Prakash Palimar, MD., & Rahul K. Challapalli, MD.; In the 206th Judicial District Court of Hidalgo County, TX. |
| 8/7/98 | | Floyd, Articia R. | Talaska Law Firm | 96-44521 | Arthar and Freddie Floyd, Individually vs. Theresa Robinson, MD, Women's Hospital; In the 151st District |

2

# DEPOSITION SUMMARY – Dr. Alex C. Willingham

| File Opened | Def / Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| | | | | | Court of Harris County, TX. |
| 12/11/96 | | Gallo, Crystal | Mueller Law Offices | A-155,470 | Christopher Gallo and Yolanda Mitchell, Individually and as Next Friends For Crystal Gallo, A Minor vs. St. Elizabeth Hospital of Beaumont, St. Elizabeth Clinic, Sisters of Charity of the Incarnate Word, Houston, Texas, Jack Dennis Black, MD, and Barbara Finchut, C.M.M., In the 58th Judicial District Court of Jefferson County, TX. |
| 6/12/00 | | Goggans, Patricia | Jack Robinson, Jr. | 99-543 | Patricia K. Goggans, et vir v. James Stanley Sulser, et al; in the 402nd District Court of Wood County, TX. |
| 4/6/99 | | Gutierrez, Eva | Martha Kott | 99-3-53-224-B | Eva Gutierrez vs. Clyde Walrod, M.D., Emcare Holdings, Inc. and Emcare, Inc., In the 135th District Court of Victoria County, TX. |
| 10/23/00 | | Hale, Madelene | Mueller Law Offices | 00-3375-F | Bo Liu and Jason Hale, Individually and as Legal Guardians and Next Friends of Madeleine An-Mei Hale, a Minor vs. St Paul Medical Center, Elizabeth Frances Enders, R.N., Erika Nicole Estes, R.N. Penelope Ann Maddock, R.N., Larry E. Ward, M.D., in the F-116th District Court of Dallas County, Texas |
| 10/9/97 | | Hernandez, Martin | Law Offices of Tim Maloney | 97-CI-00097 | Hernandez vs. Health Care Administration Co., et al; In the 166th Judicial Court of Bexar County, TX. |
| 2000 | | Hernandez, Michael N. | Boyd Waggoner | 99-04707-L | Michael Nicholas Hernandez, et al v. Balfour Beatty Construction, Inc., et al, State of Texas and Texas Department of Transportation in the 193rd Judicial District Court of Dallas County, TX. |
| 03/27/00 | | Hurst, Frances | Lyons & Rhodes | 99-3317-H | Frances Hurst and Ernest E. Hurst, Sr. vs. Philip J.A. Willman, M.D.; Michael Gieger, M.D.; Brent Hegemeister, M.D.; Columbia/HCA Health Care Corporation D/B/A Doctors Regional Medical Center, and Doctors Regional Medical Center |
| 02/08/01 | | Joaquin, Abdon | Law Offices of Stephen Makouf | DV99-10127 | Abdon Joaquin vs. Bluebonnet Waste Control, Inc., HCB Contractors, Ltd. vs. Managed Comp/Houston General Insurance Company |
| 10/31/97 | | Johns, Jennifer | Mueller Law Offices | 153-167187-96 | Michael D. Johns and Sharon L. Johns, Individually and as Next Friends of Jennifer Lauran Johns, A Minor vs |

Forms\DEPOSITION SUMMARY-ACW                    Updated 06/27/01

3

# DEPOSITION SUMMARY – Dr. Alex C. Willingham

| File Opened | Def/ Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 2000 | | Kawar, Rasha R | Ken Link, Attorney | 236-166418-96 | HCA Health Service of Texas, Inc., D/B/A Columbia North Hills Hospital, Robert H. Hardy, MD.; North Hills Anesthesiology Associates; Frederic J. Hwang, MD, and Frederic J. Hwang, MD P.A.; In the 153rd Judicial District Court of Tarrant County. |
| | | | | | Laila A. Kawar, et al vs. Barnie L. Tabor, MD, et al, In the 236th Judicial District Court of Tarrant County, Texas. |
| 4/30/99 | | Leal, Nicholas | Haskins Law Firm | 86-010180-00-00-G | Rosa Maria Vega and Joe Leal, Individually and as Parents and Next Friends of Nicholas Leal, a Minor vs. Charles Ray Kirkham, M.D., Corpus Christi Women's Clinic, and Columbia Doctors Regional Medical Center. |
| 7/7/99 | | Light, Deborah | Tinsman & Houser | 99-03788 | Deborah Light, et al v. Gary Jones, MD |
| 2/23/00 | | Lott, Derika | Haskins Law Firm | 99-22867 | Felicia Lott and Derrick Lott, Individually and as Parents and Next Friends of Derika Lott, a Minor v. Paul Cook, MD and Tenet Healthcare, Ltd., d/b/a Park Plaza Hospital, In the 133rd Judicial District Court of Harris County, TX. |
| 1/00 | | Martin, Mikayla | Talaska Law Firm | 98-60874 | Bobby Martin and Sabrina Martin, Individually and as Parents and Next Friends of Mikayla Martin, A Minor vs. Marlon White, M.D., Dudley D. Baker, M.D., HNMC, Inc. d/b/a Houston Northwest Medical Center, Dudley D. Baker, IV, M.D. and Marlon D. White M.D., P.A. and Marsha J.B. Pernell, MD; In the 157th Judicial District Court of Harris County, TX. |
| 8/9/99 | | Martinez, Rodrigo | Noteboom & Gray | 141-170634-97 | Rodrigo Martinez vs. Linbeck Construction Corporation; Sundance East Partners, L.P.; Fine Line Diversified Realty, Inc. and HKS, Inc.; In the 141st Judicial District Court of Tarrant County, TX. |
| 9/13/99 | | Moore, Letiah | Talaska Law Firm | 172,792-C | Letty Moore and Robin Moore, Individually and as Next Friend of Letiah Moore vs. Metroplex Health Care Corporation and Ann Baylor MD; In the 169th Judicial District Court of Bell County, TX. |
| 5/15/00 | | Moore, Shannon | Waltman & Grisham | 26294 | Vicki Stacks, as Next Friend of Shannon Moore, A Minor vs. Philip Morris Inc. and Shelly Moore, In the |

Forms\DEPOSITION SUMMARY -ACW                                   Updated 06/27/01

4

# DEPOSITION SUMMARY – Dr. Alex C. Willingham

| File Opened | Def/ Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| | | | | | 249th Judicial district Court of Johnson County, TX. |
| 2/28/00 | | Nelson, John David | Crowley & Douglas | 99-12-17863 | John David Nelson, Individually, and Karen Wallis as Next Friend of Mandy and Kristen Nelson, Minor Children vs. Farmland Mutual Insurance Company, James B. Sullivan, Carlsbad Auto Company, Inc. and Ford Motor Company; In the 286th District Court of Hockley County, Texas. |
| 7/9/99 | | Perez, Roberto C | Plunkett & Gibson, Inc. | 98-CVQ-000492-D3 | Raquel L. Perez, Individually, et al. Vs. Mercy Hospital of Laredo d/b/a Mercy Regional Medical Center and Staff Relief Incorporated, 341st Judicial District Court, Webb County, Texas. |
| 09/07/00 | | Pittman, Madelyn | Pasqual & Chumbley | 6301-D | Barton Paige Pittman and wife, Tama Lynn Pittman, Individually and as Next Friends of Madelyn Jean Pittman, a minor vs. B. Randolph Harrison, MD, Charles Anderson MD, Abilene Regional Medical Center, NC-SCHI, Inc. d/b/a Abilene Regional Medical Center, Quorum Health Group, Inc. d/b/a/ Abilene Regional Medical Center, Galen Hospitals of Texas, Inc. Galten, L.L.C. and Quorum Health Resources, L.L.C., 350th Judicial District Court, Taylor County, Texas |
| 3/30/98 | | Powell, Charles | Mueller Law Offices | 96-9317-1 | Charles Powell, III, A Minor, By and Through his Next Friend, Mary Foust Powell v. Parkland Hospital, et al; In the 162nd Judicial District Court of Dallas County, TX. |
| 11/12/99 | D | Ramos, Elizabeth | Plunkett & Gibson | 98-CVE-00026-D2 | Laura Ramos and Eduardo Ramos, Individually and as Next Friends of Elizabeth A. Ramos, minor Children vs. H.B. Zachary Co. and Felipe Neri Ibarra; In the 111th Judicial District Court in and For Webb County, Texas. |
| 2/18/99 | | Raney, Megan | Haskins Law Firm | | Sandra Hanley and Douglas Raney, Individually and as Parents and Next Friends of Megan Raney, A Minor vs. Lillian M. Abbott, MD, and Columbia Clear Lake Regional Medical Center, In the 151st Judicial District Court, Harris County, Texas |
| 3/23/99 | | Resendez, Jonathan | Haskins Law Firm | 98-3828-F | Jennifer A. Resendez and Larry Resendez, Jr., Individually and as Parents and Next Friends of Jonathan Resendez, Minor, v. Jaime Pena, M.D., Ronald |

Forms\DEPOSITION SUMMARY-ACW                    Updated 06/27/01

# DEPOSITION SUMMARY – Dr. Alex C. Willingham

| File Opened | Def/ Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| | | | | | Woodson, M.D., Corpus Christi Women's Clinic, P.A., and Bay Area Healthcare Group, LTD. D/B/A Columbia Doctors Regional Medical Center; In the 214th Judicial District Court of Nueces County, TX. |
| 11/16/00 | | Rivera, Joshua/ Hernandez, Christian | Whitehurst, Harkness, Ozmun & Archuleta, P.C. | C.A. A00CA308SS | Martha Rivera, Individually and as Next Friend of Joshua Rivera, a Minor; Jesse H. Rivera, Individually; Vidal and Irma Hernandez, Individually and as Next Friends of Christian Hernandez, a Minor, Plaintiffs, V. General Motors Corporation, Defendant In the United States District Court for the Western District of Texas Austin Division |
| 10/19/00 | | Rodriguez, Caitlin | Maloney & Maloney | C2000-507B | DeAna Crow, Individually and on behalf of Caitlin Nicole Rodriguez, a Minor Infant vs. Mary Elizabeth Geldernick, MD and the McKenna Memorial Hospital, Inc. (formerly the New Braunfels Hospital); in the 207th Judicial District Court, Comal County, Texas |
| 8/12/99 | | Rodriguez, Christina | Mueller Law Offices | 96-06-13873-CV | Rodriguez et al. V. Quorum Health, et al: In the 365th District Court of Maverick County, Texas |
| 2/08/99 | | Rodriguez, Justin | The Haskins Law Firm | 97-54323 | Marie A. Rodriguez, Individually, and as Parent and Next Friend of Justin Michael Rodriguez, a Minor vs Jorge Cademel, MD; in the 120th District Court, Harris County, TX. |
| 4/19/99 | | Salas, Christopher | Law Office of Maloney & Campolo | 98-CI-09177 | Christopher A. Salas vs. Michael D's Restaurant San Antonio Inc., d/b/a Wild Zebra The Gentleman's Paradise, In the 37th Judicial District Court of Bexar County, TX. |
| 7/12/99 | | Sammons, Donna | Law Offices of James J. Juneau | 9092 | Donna Sammons, John Sammons III and John Sammons IV, Plaintiffs, vs. Lionel Oscar Garza and Floydada Cooperative Gins, Inc., Defendants, In the 110th Judicial District Court, Floyd County, Texas |
| 10/12/99 | | Sandoval, Miguel | Lederon & Robinson | 96CV0755 | Miguel Sandoval vs. Bridon-American Corp., et al., 10th Judicial Court of Galveston County, TX. |
| 1/4/98 | | Scheele, Brian | Maloney & Maloney | 98-CI-01631 | Brian Scheele and Cindi Scheele v. Steven Murk, MD., and Gary Flanges, MD.; In the 57th Judicial District |

# DEPOSITION SUMMARY – Dr. Alex C. Willingham

| File Opened | Def / Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| | | | | | Court of Bexar County, TX. |
| 1/18/99 | | Selvin, Sunshine | Lyons & Rhodes | 98-CI-18303 | Joseph Edward Selvin and Sunshine Selvin v. E.E. Hood & Sons, Inc. and Bexar County, TX; In the 37th Judicial District Court, Bexar County, TX. |
| 9/18/98 | | Serrano, Stacy | Colbert, Freeman & Stribling | 98-05375 | Stacy Serrano et al v. Healthsound of Austin, Inc.; In the 126th Judicial District Court of Travis County, TX |
| 11/4/99 | | Starck, Charles | Hunt Bonneau Law Firm | No. 55160 | Charles Starck, vs. Tomasz Woloszyn and Medical Center at Terrell; In the District Court of Kaufman, County Texas |
| 4/24/00 | | Stephens, Sherrilyn | Jack K. Robinson | 2:00CV62 | Earl B. Stephens, Individually and as Administrator of the Estate of Mary L. Stephens, and Sherrilyn Stephens v. Inez Joseph Yates and Trism Specialized Carriers, Inc., filed in the United States District Court of the Eastern District of Texas, Marshal Division |
| 06/10/99 | | Stewart, Stephanie | Haskins & Gregan | CIV 97-67 | Tony Stewart, Individually and as Parent, Next Friend and Natural Guardian of Stephanie Stewart, a Minor, and Carolyn Stewart, Individually and as Parent, Next Friend and Natural Guardian of Stephanie Stewart, a Minor v St. Paul Fire and Marine Insurance Company, Reginald Allen Lucas, M.D.; Ralph Wayne Herbert, M.D. and Steven Whaley, M.D. |
| 3/26/99 | | Tsahlares, Michelle | Carpenter & Carpenter, P.C. | 96H1187 | Michelle Tsahlares vs. Mazda Motor Corp., et al.; In the 23rd District Court of Brazoria County, TX. |
| 2/20/99 | | Vaughn, David | Carpenter & Carpenter | 99-24784 | Joe Vaughan, Individually a/n/f David Vaughan and Sarah Vaughan v. Cosco, Inc. and Jeffrey Scott Goff; In the 280th Judicial District Court of Harris County, TX. |
| | | Warnke, Paula | | | |
| 4/6/99 | | Wheatley, Randall | Shollenberger & Januzzi, LLP | 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 | Randall Wheatley v. Lobar Inc. |
| 6/21/01 | | Wilkerson, Kaylynn & Ernest | Charlton Hornsby | D160335 | Wilkerson vs. Spadaccini Trucking in the 136th District Court, Jefferson County |
| 9/13/97 | | Wolf, Jack | Law Offices of George W. Mauze, II | 97-CI-00911 | Jesse & Sharon Wolf, Individually and as Next Friends for Jack Wolf, a minor v. James Paine, MD., et al |

Forms\DEPOSITION SUMMARY-ACW                                                                Updated 06/27/01

# TRIAL SUMMARY – Dr. Alex C. Willingham

| File Opened | Def/ Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 10/20/00 | | Ashcraft, Ruby | George Mauze | 2000 CI 12590 | David Ashcraft et al vs. Marleen Sanchez MD and Steven Fisher MD in Bexar County, Texas |
| 6/16/98 | | Baker, Haley | Haskins Law Firm | CV-97-6789 | Kimberly and Christopher Baker, Individually and as Parents and Next Friend of Haley Baker, A Minor vs. James Tamez, MD. |
| 11/12/98 | | Berger, Frances | Brin & Brin, P.C. | 96-6037-F | Bruce Berger, individually and as Executor of the Estate of Frances E. Berger v. John D. Halcomb, MD.; In the 214th Judicial District Court of Nueces County, TX. |
| 6/22/98 | | Boyd, Roger J. | White, Craig L. | 97-CI-13427 | Julie and Roger Boyd Individually and as Next Friends of Roger Boyd, Jr., a Minor Child vs. Carol E. Wratten, MD in the 224th Judicial District Court of Bexar County, TX |
| 10/13/95 | | Duran, Maria | Mueller Law Office | 95-1917-A | Maria Duran, Remberto Duran, Marisa Duran, Remberto Duran, Jr. and Fernando Duran vs. East Texas medical Centre, Harold B. Clayton, MD., d/b/a Americare, Brian Kempton, MD., Emcare, Inc. and Emergency Health Services Associates, P.A.; In the 7th Judicial Court of Smith County, TX. |
| 1999 | | Hernandez, Michael N. | Boyd Waggoner | 99-04707-L | Michael Nicholas Hernandez, et al v. Balfour Beatty Construction, Inc., et al, State of Texas and Texas Department of Transportation in the193rd Judicial District Court of Dallas County, TX. |
| 8/9/99 | | Martinez, Rodrigo | Nooteboom & Gray | 141-170634-97 | Rodrigo Martinez vs. Linbeck Construction Corporation; Sundance East Partners, L.P.; Fine Line Diversified Realty, Inc. and HKS, Inc.; In the 141st Judicial District Court of Tarrant County, TX |
| 09/13/99 | | Moore, Letah | Talaska Law Firm | 172,792-C | Letty Moore and Robin Moore, in the District Court Individually and as Next Friend of Letiah Moore, vs. Metroplex Health Care Corporation and Ann Baylor, M.D. 159th Judicial District in Bell County, Texas |
| 11/7/00 | | Orsonio, Rae Lene D. | Howie & Sweeney, LLP | 2-00CV36-TJW | Rae Lene Davis Orsonio v. Ford Motor Co., et al |
| 8/12/99 | | Rodriguez, Christina | Mueller Law Offices | 96-06-13873-CV | Rodriguez et al. V. Quorum Health, et al: In the 365th District Court of Maverick County, Texas |

Forms\DEPOSITION SUMMARY-ACW                  Updated  06/27/01

# TRIAL SUMMARY – Dr. Alex C. Willingham

| File Opened | Def / Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 4/19/99 | | Salas, Christopher | Law Office of Maloney & Campolo | 98-CI-09177 | Christopher A. Salas vs. Michael D's Restaurant San Antonio Inc., d/b/a Wild Zebra The Gentleman's Paradise, In the 37th Judicial District Court of Bexar County, TX. |
| 10/15/99 | | Villarreal, Claudio | Lawrence P. Wilson | B-99-0324-C | Cidalia Villarreal, Individually and as next friend of Claudio Villarreal, her son who has a mental disability v. Shannon Medical Center d/b/a Shannon West Texas Memorial Hospital. |
| 9/13/97 | | Wolf, Jack | Law Offices of George W. Mauze, II | 97-CI-00911 | Jesse & Sharon Wolf, Individually and as Next Friends for Jack Wolf, a minor v. James Paine, MD., et al. |

9

# DEPOSITION SUMMARY – Dan M. Bagwell

| File Opened | Def/Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 6/9/00 | | Berry, Thelma Joyce | Jack Robinson | 169-CV-6-99 | 6th District Court, Red River County, Texas; Patricia Sheffield v. Gary Neil Carroll and Red River Trucking Company. |
| | | Black, Anita | Kugle, Byrne & Alworth | | |
| | | Bostic, Megan | Haskins Law Firm | | |
| 01:27/98 | | Boutwell, Charles | Jack Robinson, Jr. | 57,281 | Charles Houston Boutwell and Shalone Rupp, vs. Harrison, Walker and Harper, Inc. in the 354th Judicial District Court of Hunt County, TX. |
| 6/22/98 | | Boyd, Roger J | White, Craig L. | 97-CI-13427 | Julie and Roger Boyd Individually and as Next Friends of Roger Boyd, Jr., a Minor Child vs. Carol E. Wratten, MD in the 224th Judicial District Court of Bexar County, TX. |
| 7/29/99 | | Castillo, Rick | Haskins Law Firm | No. 4336 | Teresa and Rick Castillo, Individually and as Parents and Next Friends of Rick Castillo, Jr., Minor v. Eluid Acevedo, M.D., et al.; In the 49th Judicial District Court of Zapata County, TX. |
| 5/21/97 | | Cooper, Mathew | Talaska Law Firm | 96-21569 | Millie Glenn, Individually, and as Parent and Next Friend of Matthew Cooper, a minor vs. Blanchard Tucker Hollins, MD and Hermann Hospital, In the District Court of Harris County, Texas 189th Judicial District Court |
| 7/15/99 | | Cordill, June Christine | Law Office of Skip Simpson | DV98-4767 | June Christine Cordill, by and through her next friend, James E. Marshall v. Gayle Gutierrez, MD; In the 191st Judicial District Court of Dallas County, Texas |
| 3/28/00 | | Curtis, Terry | Pasqual & Chumbley | 2000-CI-023936 | Terry L. Curtis v. William E. Drew, M.D.; In the 408th Judicial District Court of Bexar County, TX |
| 6/8/99 | | Flores, Maria | Zavaleta Law Firm | C-802-98-D | Noe Tijerina Individually and as Personal Representative of the Estate of Maria Flores AKA Maria Flores De Ojeda, and as Next Friend of Joshua and Jennifer Tijerina, Minor Children & Juan Ojeda, Individually and on Behalf of Juan Miguel Ojeda, Minor Child vs. Samuel Garcia, Jr., MD, McAllen Medical Center, Inc. Jointly and Severally with Lawrence R. Gelman, MD, McAllen |

# DEPOSITION SUMMARY – Dan M. Bagwell

| File Opened | Def/ Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| | | | | | Anesthesia Consultants, P.A. monte Baylor, CRNA, Prakash Palimar, MD, & Rahul K. Challapalli, MD.; In the 206th Judicial District Court of Hidalgo County, TX. |
| 8/7/98 | | Floyd, Articia R. | Talaska Law Firm | 96-44521 | Arthur and Freddie Floyd, Individually vs. Theresa Robinson, MD, Women's Hospital; In the 151st District Court of Harris County, TX. |
| 11/14/94 | D | Garcia, Flor R. | Rodriguez, Colvin & Chaney | 93-03-1354-A | Juan and Alma Alvear, Individually and on Behalf of and as Next Friends of Thelma Alvear, Minor, et al vs. Leonard Electric Products Company, et al, In the 107th Judicial District Court of Cameron County, Texas. |
| 6/12/00 | | Goggans, Patricia | Jack Robinson, Jr. | 99-543 | Patricia K. Goggans, et vir v. James Stanley Subser, et al; in the 402nd District Court of Wood County, Tx. |
| 11/14/94 | D | Guerrero, Genevieve | Rodriguez, Colvin & Chaney | 93-03-1354-A | Juan and Alma Alvear, Individually and on Behalf of and as Next Friends of Thelma Alvear, Minor, et al vs. Leonard Electric Products Company, et al, In the 107th Judicial District Court of Cameron County, Texas. |
| 11/14/94 | D | Gutierrez, Andres Kino | Rodriguez, Colvin & Chaney | 93-03-1354-A | Juan and Alma Alvear, Individually and on Behalf of and as Next Friends of Thelma Alvear, Minor. et al vs. Leonard Electric Products Company, et al, In the 107th Judicial District Court of Cameron County, Texas. |
| 4/6/99 | | Gutierrez, Eva | Martha Kott | 99-3-53-224-B | Eva Gutierrez vs. Clyde Walrod, M.D., Emcare Holdings, Inc. and Emcare, Inc., In the 135th District Court of Victoria County, TX |
| | | Hernandez, Michael N. | Boyd Waggoner | 99-04707-L | Michael Nicholas Hernandez, et al v. Balfour Beatty Construction, Inc., et al, State of Texas and Texas Department of Transportation in the 193rd Judicial District Court of Dallas County, TX. |
| 1995 | | Huffman, Kevin | Haskins Law Firm | | |
| 2/8/01 | | Joaquin, Abdun | Law Offices of Stephen Malouf | DV99-10127 | Abdun Joaquin vs. Bluebonnet Waste Control, Inc. HCB Contractors, Ltd vs. Managed Comp/Houston General Insurance Company |
| 1993 | | Kindle, Robbyn | Pat Moloney | 93-000535 | Robby Kindle a/k/a Robbyn Keys vs. Nolami Hospitals of Texas, Inc. d/b/a Denton Regional Medical Center, J. Hampton Miller, MD., and John F. Dolcombe, MD., T. |

Forms\DEPOSITION SUMMARY-DMB                Updated 06/27/01

2

# DEPOSITION SUMMARY – Dan M. Bagwell

| File Opened | Def / Plnn | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| | | | | | Atturbury, RN., J. Fisher, RN., Evelyn Fischer, RN., C. Medler, RN., L. Sobieski, RN., and Mahlon Freeman, MD., In the 61st Judicial District Court of Harris County TX. |
| 3/3/98 | | Kitchens, Ginger | Pasqual & Chumbley | 96-11-749 | Candice Kitchens, Individually and as Natural Mother and Next Friend of Gingea Kitchens and Darryl Austin, Individually and as Natural Father of Ginger Kitchens, A Minor vs Brownwood Regional Hospital D/B/A Brownwood Regional Medical Center; and F. Michael Schultz, MD, and Brownwood Emergency Physicians, P.L.L.; In the 35th Judicial District Court of Brown County, TX. |
| 7/13/94 | | Lalley, Paul | Kugle, Byrne & Alworth | | Paul Lalley and Linda Lalley, Individually and as Next Friends of Brian Lalley and Sean Lalley, Minors vs. City of San Antonio, by and through its agent, City Public Service Board of San Antonio; Rollins Outdoor Advertising, Inc.; Heritage Creative Outdoor Services, Inc., and Reagan National Advertising, Inc.; In the 45th Judicial District Court of Bexar County, TX |
| | | Leal, Nicholas | Haskins Law Firm | 86-010180-00-00-G | Rosa Maria Vega and Joe Leal, Individually and as Parents and Next Friends of Nicholas Leal, a Minor vs. Charles Ray Kirkham, M.D., Corpus Christi Women's Clinic, and Columbia Doctors Regional Medical Center. |
| 4/1/98 | | Loftis, John | James Keene | 96-CI-12672 | John Loftis v. Carston Weber, Linda Porter, EQR-The Lodge (Texas) Vistas, Inc. D/B/A The Lodge Apartments, Gallagher Bassett Services, Inc. . In the 225th Judicial District Court, Bexar County, TX. |
| 2/23/00 | | Lott, Denka | Haskins Law Firm | 99-22867 | Felicia Lott and Derrick Lott, Individually and as Parents and Next Friends of Denka Lott, a Minor v. Paul Cook, MD and Tenet Healthcare, Ltd., d/b/a Park Plaza Hospital; In the 133rd Judicial District Court of Harris County, TX. |
| 11/14/94 | D | Luiton, Dante | Rodriguez, Colvin & Chaney | 93-03-1354-A | Juan and Alma Alvear, Individually and on Behalf of and as Next Friends of Thelma Alvear, Minor, et al vs. Leonard Electric Products Company, et al, In the 107th Judicial District Court of Cameron County, Texas. |

Updated 06/27/01

3

## DEPOSITION SUMMARY – Dan M. Bagwell

| File Opened | Client | Def/ Plain | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 9/22/99 | Maddox, Ron | | Jack Robinson | 32558 | Ron Bartley Maddox v. Supreme Beef Packers, Inc., In the 6th District Court, Fannin County, Texas |
| 8/9/99 | Martinez, Rodrigo | | Noteboom & Gray | 141-170634-97 | Rodrigo Martinez vs. Linbeck Construction Corporation; Sundance East Partners, L.P.; Fine Line Diversified Realty, Inc. and HKS, Inc.; In the 141st Judicial District Court of Tarrant County, TX. |
| 1995 | Mena, Rolando | | Fidel Rodriguez | | |
| 2/20/98 | Moore, Gaberial | | Haskins Law Firm | 96-166476-96 | Roddria Wilson, Individually, and As Parent and Next Friend of Gaberial Moore, a Minor vs. Gary A. Meyer, D.O., et al; In the Judicial 96th District Court of Tarrant County, Texas |
| 9/13/99 | Moore, Letiah | | Talaska Law Firm | 172,792-C | Letry Moore and Robin Moore, Individually and as Next Friend of Letiah Moore vs. Metroplex Health Care Corporation and Ann Baylor MD.; In the 169th Judicial District Court of Bell County, TX. |
| 5/15/00 | Moore, Shannon | | Waltman & Grisham | 26294 | Stacks v. Philip Morris Companies, Inc., et al; In the 18th District Court of Johnson County, TX. |
| 2/18/99 | Raney, Megan | | Haskins Law Firm | | Sandra Hanley and Douglas Raney, Individually and as Parents and Next Friends of Megan Raney, A Minor vs. Lillian M. Abbot, MD. and Columbia Clear Lake Regional Medical Center, In the 151st Judicial District Court, Harris County, Texas |
| 3/23/99 | Resendez, Jonathan | | Haskins Law Firm | 98-3828-F | Jennifer A. Resendez and Larry Resendez, Jr., Individually and as Parents and Next Friends of Jonathan Resendez, Minor, v. Jaime Pena, M.D., Ronald Woodson, M.D., Corpus Christi Women's Clinic, P.A., and Bay Area Healthcare Group, LTD. D/B/A Columbia Doctors Regional Medical Center, In the 214th Judicial District Court of Nueces County, TX. |
| 4/2/98 | Rice, Christopher | | Haskins Law Firm (Cantey & Hanger, L.L.P.) | 141-157935-95 | Rodney and Gina Rice, individually and as Parents and Next Friends of Christopher Rice, A Minor vs. James Atteberry, MD., Petr Sakovich, MD., and HCA Health Services of Texas, Inc., d/b/a North Hills medical Centr, in the 141st District Court of Tarrant County, Texas. |

Form\DEPOSITION SUMMARY-DMB                              Updated 06/27/01

# DEPOSITION SUMMARY – Dan M. Bagwell

| File Opened | Def / Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 11/16/00 | | Rivera, Joshua/ Hernandez, Christian | Whitehurst, Harkness, Ozmun & Archuleta, P.C. | C.A. A00CA308SS | Martha Rivera, Individually and as Next Friend of Joshua Rivera, a Minor; Jesse H. Rivera, Individually; Vidal and Irma Hernandez, Individually and as Next Friends of Christian Hernandez, a Minor, Plaintiffs, V. General Motors Corporation, Defendant, In the United States District Court for the Western District of Texas Austin Division |
| 11/14/94 | D | Robles, Alexandria | Rodriguez, Colvin & Chaney | 93-03-1354-A | Juan and Alma Alvear, Individually and on Behalf of and as Next Friends of Thelma Alvear, Minor, et al vs. Leonard Electric Products Company, et al, In the 107th Judicial District Court of Cameron County, Texas. |
| 3/7/00 | | Rodriguez, Kimberly | Whitehurst & Harkness, Ozmun & Archuleta | 99-10991 | Mauricio Rodriguez and Maria Alvarado Individually and as Next of Friends of Kimberly Rodriguez, Their Minor Daughter vs. Clark W. Craig, M.D.; Mark Maunder M.D.; Locus & Associates; and Travis County Medical Society Foundation f/k/a Central Texas Medical Foundation; In the 345th Judicial District Court of Travis County, TX. |
| 1/18/99 | | Selvin, Sunshine | Lyons & Rhodes | 93-CI-18303 | Joseph Edward Selvin and Sunshine Selvin v. E.E. Hood & Sons, Inc. and Bexar County, TX; In the 37th Judicial District Court, Bexar County, TX. |
| 4/24/00 | | Stephens, Sherilyn | Jack K. Robinson | 2:00CV62 | Earl B. Stephens, Individually and as Administrator of the Estate of Mary L. Stephens, and Sherilyn Stephens v. Inez Joseph Tates and Tristan Specialized Carriers, Inc., filed in the United States District Court of the Eastern District of Texas, Marshal Division. |
| 06/10/99 | | Stewart, Stephanie | Haskins & Gregan | CIV 97-67 | Tony Stewart, Individually and as Parent, Next Friend and Natural Guardian of Stephanie Stewart, a Minor, and Carolyn Stewart, Individually and as Parent, Next Friend and Natural Guardian of Stephanie Stewart, a Minor v St. Paul Fire and Marine Insurance Company, Reginald Allen Lucas, M.D.; Ralph Wayne Herbert, M.D. and Steven Whaley, M.D. |
| 12/3/97 | | Tenuta, Anthony L. | Ken Link Law Office | 153-167356-97 | Michael and Vivian Tenuta, Individually and as Next Friends of Anthony Leo Tenuta, A Minor vs. Harris Methodist H-E-B and Mark Brennan Reimer, MD.; In the |

5

# DEPOSITION SUMMARY – Dan M. Bagwell

| File Opened | Def / Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 1995 | D | Trevino, Michael | Womble and Spain | | 153rd Judicial District Court of Tarrant County, TX. |
| 3/11/99 | | Turner, Raymond | Kugle Law Firm | 98-05-396 | Raymond Turner and Dale Mikkelson vs. Bright Truck Leasing Corporation, Alcoa Fujikura Ltd., and Wayne West, In the 345th Judicial District Court of Travis County, TX. |
| 8/19/97 | | Vasquez, Bethany | Talaska Law Firm | | |
| 11/14/94 | | Vasquez, Vianca | Rodriguez, Colvin & Chaney | 93-03-1354-A | Juan and Alma Alvear, Individually and on Behalf of and as Next Friends of Thelma Alvear, Minor, et al vs. Leonard Electric Products Company, et al, In the 107th Judicial District Court of Cameron County, Texas. |
| 12/17/98 | | Vitela, Christina J. | Haskins Law Firm | 97-56600 | Christina Johnson-Vitela and Jesus Vitela, Jr., Individually and as Parents and Next Friends of Trini Vitela, Minor v. Enrique Vargas, M.D. and Pasadena Bayshore Hospital, Inc., d/b/a Columbia Bayshore Hospital, In the 129th Judicial District Court of Harris County, Texas. |
| 3/15/00 | | Weger, Michael T. | Shields & Rusk | 342-180401-99 | Michael Todd Weger, individually and as next friend of Austin Weger, a Minor vs. Next Proteins International, a Division of Next Nutrition, Inc.; IFP, Inc. d/b/a Innovative Food Processors; and Daniel R. Duchaine; In the District Court of Tarrant County; 342nd Judicial District; Tarrant County, Texas. |

# TRIAL SUMMARY – Dan M. Bagwell

| File Opened | Def / Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 06/21/01 | | Wilkerson, Ernest & Kaylynn | Charlton Hornsby | D160135 | Wilkerson vs. Spadaccini Trucking in the 136th District Court, Jefferson County |
| 10/20/00 | | Ashcraft, Ruby | George Mauze | 2000 CI 12590 | David Ashcraft et al vs. Marleen Sanchez MD & Steven Fisher MD in Bexar County, Texas |
| 6/16/98 | | Baker, Haley | Haskins Law Firm | CV-97-6789 | Kimberly and Christopher Baker, Individually and as Parents and Next Friend of Haley Baker, A Minor vs. James Tanner, MD. |
| | | Black, Anita | Kugle, Byrne & Alworth | | |
| 6/22/98 | | Boyd, Roger J. | White, Craig L. | 97-CI-13427 | Julie and Roger Boyd Individually and as Next Friends of Roger Boyd, Jr., a Minor Child vs. Carol E. Weitten, MD in the 224th Judicial District Court of Bexar County, TX. |
| 6/8/99 | | Flores, Maria | Zavaleta Law Firm | C-802-98-D | Noe Tijerina Individually and as Personal Representative of the Estate of Maria Flores aka Maria Flores De Ojeda, and as Next Friend of Joshua and Jennifer Tijerina, Minor Children & Juan Ojeda, Individually and on Behalf of Juan Miguel Ojeda, Minor Child vs. Samuel Garcia, Jr., MD, McAllen Medical Center, Inc. Jointly and Severally with Lawrence R. Gelman, MD, McAllen Anesthesia Consultants, P.A. monte Baylor, CRNA, Prakash Palimar, MD. & Rahul K. Chellapalli, MD., In the 206th Judicial District Court of Hidalgo County, TX. |
| 1999 | D | Guerra, Jacquelyn | Rodriguez, Colvin & Chaney | C-4118-97-B | Bruce S. Sperling, et al v. Volkswagen Aktiengesellschaft: Volkswagen of America, Inc., et al; In the 93rd Judicial District Court of Hidalgo County TX. |
| | | Hernandez, Michael N. | Boyd Waggoner | 99-04707-L | Michael Nicholas Hernandez, et al v. Balfour Beatty Construction, Inc., et al, State of Texas and Texas Department of Transportation in the 193rd Judicial District Court of Dallas County, TX. |
| 11/15/94 | D | Jolley, Cole | Luther, Anderson, Cleary & Ruth | | Jolley v. Century, |

Forms\DEPOSITION SUMMARY-DMB                    Updated 06/27/01

# TRIAL SUMMARY – Dan M. Bagwell

| File Opened | Def / Plain | Client | Attorney | Cause No. | Style |
|---|---|---|---|---|---|
| 9/2/98 | | Maddox, Ron | Jack Robinson Law Office | 32558 | Ron Bartley Maddox vs. Supreme Beef Processors, Inc. and Supreme Beef Packers, Inc.; In the 6th Judicial District Court of Fannin County, TX. |
| 11/7/00 | | Orsonio, Rae Lene D. | Howie & Sweeney, LLP | 2-00CV36-TJW | Rae Lene Davis Orsonio v. Ford Motor Co., et al |
| 3/7/00 | | Suggs, Judy | Bradley T. Steele, P.C. | 27,474 | Judy Suggs and Charles Suggs vs. Tracy Duane Henderson, Steve Raulston Logging, East Texas Mack Leasing, Larry Alan Fitch, Arrow Trucking, Dennis Eugene Maze and Builders Transport, Inc. |
| 9/13/97 | | Wolf, Jack | Law Offices of George W. Mauze, II | 97-CI-00911 | Jesse & Sharon Wolf, Individually and as Next Friends for Jack Wolf, a minor v. James Paine, MD., et al. |

Alex C. Willingham, M.D., FAAPMR, · President
Dan M. Bagwell, BSN, RN, CLCP, CCM, CDMS · CEO



## REHABILITATION Professional Consultants Inc.

2829 Babcock Rd., Suite 130
San Antonio, Texas 78229
Voice·(210) 615-7772
Fax·(210) 615-7728

# *LIFE CARE PLAN*

# *AND*

# *COST ANALYSIS*

# *FOR*

# *CANDELARIO DELEON*

**Prepared June 29, 2001**

**Alex Willingham, MD, FAAPMR**

# TABLE OF CONTENTS

I.    LIFE CARE PLAN INTRODUCTION ............................................................ 1

II.    MEDICAL HISTORY ...................................................................................... 2

III.    INTERVIEW & EVALUATION ....................................................................... 4

IV.  DISCUSSION ................................................................................................ 7

V.    RESEARCH AND DATA SOURCES ........................................................... 20

TABLE I.  LIFE CARE PLAN COST ANALYSIS.................................................. 26

TABLE II.  COST ANALYSIS SUMMARY ........................................................... 31

Case 1:00-cv-00192   Document 75   Filed in TXSD on 12/28/2001   Page 120 of 177

# I. LIFE CARE PLAN INTRODUCTION

A life care plan represents a dynamic document based upon standards of practice, comprehensive assessment, and data analysis and research providing an organized and concise plan for current and future medical and medically related goods and services with associated costs for individuals who have sustained catastrophic injury or who have chronic health care needs. The life care planning process utilizes a systematic and logical approach to trace all of the health care needs that can be reasonably projected as the result of a disability to the end of life expectancy. This process requires the coordination and management of information from many sources. Various experts within the field of rehabilitation and case management are often tasked with the development of life care plans. Medical and therapeutic specialists may be consulted and utilized according to their clinical specialty. All past medical, social, psychological, vocational, educational, and rehabilitation data are taken into consideration to the extent that it is available and applicable. Medical literature germane to critical issues in the plan is surveyed to reflect current concepts of care for patients and disease state management. The impact of aging with disability and the progression of disease are reflected. The life care plan provides for services that are needed to prevent or significantly reduce known complications or comorbidity over time. Significant potential complications associated with the principle diagnoses are identified, and the care needs for these complications are projected. The range of services in the geographic area or region and prevailing community costs and standards are utilized as available to provide an analysis of costs. These costs are typically expressed as present day costs derived from reliable data and resources.

The life care plan serves as a guide for family members, case managers and health care providers. It represents a blueprint for anticipated health care and other related needs based upon reasonable medical probability and current concepts of patient care management. The information serves those charged with the fiduciary responsibility to provide for future care. As such, the life care plan is often used by financial professionals whose services are employed to select appropriate investment strategies to preserve funding over the life of the patient.

This life care plan is prepared for Candelario De Leon, a sixty-year-old Hispanic male who suffered a spinal cord compression injury in a motor vehicle collision. He has central cord compression with incomplete quadriparesis, ASIA-D and associated neurogenic bowel, bladder, and pain, spasticity and dysesthesia.

# II. MEDICAL HISTORY

**Review of Medical Records:**

Medical records from Valley Regional Medical Center indicate that Mr. DeLeon was involved in a MVA on 12/24/98.   Records describe him as "obviously drunk"; however, no blood alcohol level was noted in the records reviewed.   He had a ½ centimeter laceration to the mid forehead that was closed with one staple.   No lab tests, x-rays or scans were ordered.   Mr. DeLeon was discharged to the custody of a police officer at 2030 on 12/24/98 and apparently taken to jail.

On 12/25/98, Mr. DeLeon was taken from the City Jail by EMS to Brownsville Medical Center because he could not move his arms or legs.   He was evaluated and found to have sensory loss at the T8 level.   He was catheterized.   X-rays and CT scan of the cervical, thoracic and lumbar spine were normal per report. He was suspected to have spinal cord compression and started on Prednisolone.

A Neurology Consultation was obtained.   Dr. Philip Onghai found upper extremity tenderness on active movement with strength generally in the 3/5 range for all extremities.   Stimulation of the thighs would cause involuntary flexor response in both lower extremities.   Minimal toe movement was noted in the lower extremities.   Sensory level was noted to be approximately T9 with pain sensation more impaired than touch.   Deep tendon reflexes were 1+ in all extremities with mildly up-going toes on the left and equivocal on the right. Abdominal reflex was negative.   Cremasteric flex was present, although decreased, and anal sphincter tone was intact.    A low cervical cord compression was suspected.   A MRI scan was ordered, and a Neurosurgical Consultation was recommended.    No spinal instability was found per Neurosurgical Consultation.    However, MRI of the cervical spine did show a possible C5 cord contusion with no herniated discs or epidural lacerations. MRI of the thoracic spine was normal.   Central cord compression was the final diagnosis.   Physical Therapy was initiated during his hospital stay; however, Mr. De Leon had only improved approximately 25 to 50 percent at the time of his discharge.    During his hospitalization, he developed a urinary tract infection that resolved with antibiotic therapy, as well as, an ileus that resolved with nasogastric and rectal tube insertion.   He was discharged to Valley Grande Manor Nursing Home on 1/6/99.

On 1/8/99, Mr. DeLeon was found to have a discharge from his scrotum and transported back to Brownsville Medical Center for evaluation.   No records

were available for review from this admission.   EMS records dated 1/9/99
indicated that Mr. DeLeon was transferred back to Valley Grande Manor.

# III.  INTERVIEW & EVALUATION

Mr. DeLeon was interviewed and examined on 6/19/01 at Valley Grande Manor in Brownsville, Texas, for the purpose of preparing a life care plan. Present for the evaluation were his children, Mario and Rosalus.

## Social History:

Mr. DeLeon is a 60-year-old widowed Hispanic male. He is 5'8" tall and weighs 203 pounds.  His is bilingual.  He has six children, one son and five daughters.  He is currently a resident patient of Valley Grande Manor as the result of residual impairments and need for personal care services and nursing oversight.  Prior to the accident, Mr. DeLeon was employed and living in an autonomous manner.

## Past Medical/Surgical History:

Negative past medical/surgical history

**Allergies:**   None

## Educational History / Employment History:

Mr. DeLeon has an eight-grade education.  He worked as a welder for the Port of Brownsville prior to his accident.  No prior military experience or other trade or technical training.

## Medications:

Orudis 75mg. bid
Prilosec 20mg. daily
Neurontin 300mg. 2 tabs bid
Flexeril 10mg. bid
Bactrim DS bid
Lasix 20mg. daily
Pamelor 25 mg. hs
Uroqid Acid # 2,   2 tabs bid
Urecholine 50 mg. qid
Lomotil 2.5mg. PRN diarrhea
Tylenol 325 mg. q4h prn temperature greater than 101 or pain

## Current Medical Providers:

| | |
|---|---|
| Dr. Sidig (Internal Medicine) | See every 2 months |
| Dr. Ayala (Wound Center) | Sees every 2 weeks for heel blisters |
| Drs. Gaitan & Pacheco (Urology) | Sees every month |
| Dr. Villalobos (Urologist) | Monthly in-office catheter changes |

Mr. DeLeon reports frequent urinary tract infections with occurrence rate at about five per year.

## Activities of Daily Living:

Mr. DeLeon is able to dress himself with moderate assistance. He is unable to button his buttons, put on his shorts, or don/doff shoes and socks. He can walk 25 to 30 feet "on a good day" with a wheeled walker. He does not have a power chair for community mobility. He uses the facility manual chair although he has difficulty propelling a manual chair.

## Previous Level of Functioning:

Mr. DeLeon was independent in all activities of daily living prior to his accident. He was working as a welder and living in a rented mobile home. He drove his own car.

## Current Level of Functioning:

Mr. DeLeon is currently dependent on others for most of his activities of daily living including bathing, dressing, and toileting. He can ambulate 25 to 30 feet on a good day using a walker for support. He can feed himself with some difficulty using the right hand. He uses an indwelling Foley catheter for incontinence management.

## Physical Exam:

**General:**   Well-nourished, well-developed Hispanic male wearing a bicycle glove on his right hand.

**Skin:**   Normal except for sites on the anterior tibia and heel blisters that are healed.

**HEENT:**     Normocephalic, atraumatic, extraocular muscles intact, bilateral arcus senilis

**Neck:**     Supple without adenopathy.   Mildly decreased range of motion and cervical rotation

**Cardiac:**   Not Assessed

**Thorax:**    Increased anterior-posterior diameter.

**Abdomen:**   Globose without visceromegaly.

**Extremities:**     Decreased motor power, right side weaker than left. Decreased range of motion of the right hand.  Spastic interphalangeals.  Right hand can range to within normal limits passively and to 10 degrees dorsiflexion.  Cannot range interphalangeals to neutral even with facilitation. There is −15 degrees of extension for the right elbow.  There is a Grade II heel decubitus on the right.    Range of motion of the left upper and bilateral lower extremities is within functional limits.   The girth of the right lower extremity is increased with 1+ edema noted.

**Back/Spine:**     Nontender to palpation.   Light touch over trunk shows hyperesthesias.

**Neurological:**     Increased tone to the right lower and right upper extremities.  Mildly increased tone for the left upper and left lower extremities. Increased deep tendon reflexes in all four extremities, greater on right.   No clonus at ankles.  Decreased normal sensation with hyperesthesias beginning at the bilateral deltoids and distal to the trunk and lower extremities.   Light touch from clothing or sheets has an element of pain.

**Functional Review:** Can transfer with modified independence.   Can feed himself with difficulty with the right hand.   Can ambulate with PVC seated walker.   Ability to walk depends on fatigue level of that day.   On a good day, Mr. DeLeon can walk 25 to 30 feet with this device.

**Diagnoses:**        Quadriparesis, ASIA-D (Incomplete)
                      Neurogenic Bladder/Bowel
                      Dysesthesia - Neurogenic Pain

# IV. DISCUSSION

## GENERAL DISCUSSION

As a general rule, the quality of life for individuals with spinal cord injury has greatly improved since World War II. This has been especially true over the past two decades. Statistical data published by the National Spinal Cord Injury Statistical Center continues to reflect improvements in life expectancy and a reduction in the severity and occurrence rates of life threatening co-morbid complications. Improvements in standards of care, adaptive equipment, environmental modification, and legislation benefiting the disabled, have enhanced and enriched the lives of many spinal cord injured individuals and their families.

Mr. DeLeon's physical presentation is consistent with his diagnosis of central cord syndrome and incomplete quadriparesis. Central cord syndrome is often associated with neck hyperextension injuries in older individuals with degenerative changes and spondylosis. It can occur with or without bony fracture. It is an incomplete injury, involving a lesion of the central gray matter and the medial white mater of the cervical spinal cord characterized by clinical weakness that is more severe in the arms than in the legs and is sacral sparing. Neuroanatomically, central cord syndrome is reflected by a central lesion with sparing of the more lateral lumbar and sacral laminations of the corticospinal tracts and spinothalamic tracts. Pathological findings of necrosis in the central spinal cord have been attributed to the sparse vascular supply in this area and to injury mechanics that place the greatest pressures on the center of the cord. The pattern of neurological deficit has traditionally been explained by the claim that the corticospinal tract is somatotopically organized, with fibers supplying upper extremity function lying medially, closer to the area of injury. There is limited evidence to support such organization, however, and other explanations for this syndrome have been suggested. Traumatic central cord syndrome in the upper cervical spine is often referred to as cruciate paralysis thought to result from midline damage to the rostral portion of the pyramidal decussation.

Individuals with central cord syndrome may achieve functional walking with return of motor and sensory power to the lower extremities and trunk; however, the gait may be spastic. These patients have poor recovery of hand function because of the irreversible nature of central grey matter destruction. Individuals with central cord syndrome are often able to regain bowel and bladder function; however, their overall function is limited by upper extremity assistive capacity for gait and activities of daily living.

Spinal cord injury affects many systems of the body both directly and indirectly. The respiratory system is affected by compromised vital capacity, which can affect endurance. When a neurogenic bowel and bladder exists, there is incontinence of urine and feces. In the absence of sensation and intact proprioception, there is significantly heightened risk for decubiti from pressure and other injuries to the musculoskeletal and integumentary system. With dysesthesia, there is often a chronic pain phenomenon associated with neurogenic pain.

It is important that home-based and outpatient rehabilitation follow-up be closely adhered to. Appropriate therapeutic intervention is critical to avoid serious setbacks and compromised health. Strict medical monitoring is vital to minimize the occurrence and severity of common secondary complications. It is believed that through a team approach with therapeutic follow-up and the development of an accommodating environment, Mr. DeLeon should be able to improve his level of functional independence and maintain that level for several years, or at least until such time that the effects of aging with his disability further compromises functional independence.

Mr. DeLeon would benefit from case management assistance to coordinate services, perform quality reviews of the delivery of services, and monitor costs and with rehabilitation programming.

## LONG TERM COMPLICATIONS OF SPINAL CORD INJURY

The spinal cord injured individual faces a host of secondary complications commonly associated with paralysis. Few conditions are as devastating as that of a spinal cord injury, as it has the potential of disrupting every aspect of an individual's life. Potential long-term complications at all levels of injury necessitate comprehensive medical management and care.

### Cardiovascular Complications:

The non-ambulatory spinal cord patient is at risk for phlebitis and pulmonary embolism. In some studies, more than 80% of spinal cord patients were reported to develop deep venous thrombosis. Occurrence rates have ranged from as low as 13% to as high as 100%. Deep venous thrombosis clearly represents a relatively common secondary complication in the spinal cord injured population and warrants careful surveillance and prophylaxis. The risk appears to be greatest during the initial post injury care period. Once

developed, DVT may continue to be problematic and require periods of prophylaxis and monitoring. With chronic changes in the peripheral venous system, the risk of venous pooling and thrombus formation again becomes a concern with aging. It is critical that preventative measures be taken to include the frequent use of anti-embolic hose to preserve the integrity of the peripheral venous system and reduce the risk of DVT and other circulatory complications in later years.

The fact that Mr. DeLeon is able to ambulate using a walker or perhaps Quad cane, will help to reduce his risk of these complications as long as he is encouraged to continue to walk at least for exercise purposes.

In the older patient, the risk of coronary artery disease is significant with added risks associated with spinal cord injury. In the younger patient, life-threatening arrhythmias may occur, particularly in high quadriplegics in such situations as bronchial toilet and postural drainage. Arrhythmia is usually a primary risk within the first six weeks post injury. Spinal cord patients are reported to be at a higher risk for the development of degenerative cardiovascular disease than the non-impaired population, thus care should be taken to monitor routinely, control weight, eliminate cigarette smoking, and other risk factors.

## The Respiratory System:

There is a high incidence of morbidity and mortality from pulmonary complications in both the acute and chronic phases of spinal cord injury. Pulmonary complications, pneumonia in particular, represent the single most common cause of death for persons with SCI at any time. Altered ventilatory function leads to problems with atelectasis, pneumonia and respiratory failure. Older patients and patients with neurological lesions above T12 are most vulnerable to pulmonary problems. Optimal pulmonary management is critical for minimizing risk to serious, life threatening pulmonary complications.

## Urinary Tract Complications:

The loss of normal genitourinary function represents one of the changes occurring in spinal cord injury. Historically, renal failure represented the leading cause of death, although in the United States, improvements in the understanding of this phenomenon, diagnostic investigation, and medical management have decreased mortality related to renal failure. It is today no longer the leading cause of death among spinal cord patients.

For patients with upper motor neuron lesions, detrusor-external sphincter dyssynergia is particularly problematic. Pharmacological agents and surgical approaches may be necessary for management of this complication.

Intermittent catheterization represents the primary choice for chronic urinary drainage. In most cases, this method reduces the incidence of urinary and ureteral reflux. The surgical placement of a suprapubic catheter is another method of incontinence management. This procedure contributes to urine becoming bacteriuric, and renal stone formation is common.

Over time, the neurogenic bladder is expected to change and follow-up urodynamics will need to be performed. For these reasons, very close monitoring of the neurogenic bladder is critical.

Spinal cord injury protocol for the neurogenic bladder in most model programs includes the following:

- Baseline evaluation: Includes history and physical examination, U/A, C&S, IVP, renal ultrasound, 24-hour creatinine clearance or radionuclide scan, urodynamics.

- Annual follow-up evaluation: Includes history and physical examination, U/A, C&S, IVP/cystourethrogram every 2-3 years with renal ultrasound and KUB on intervening years, 24-hour creatinine clearance or radionuclide scan, urodynamics performed at one year and as needed.

- Other individualized tests may be indicated as needed.

Until recently, chronic renal insufficiency with deterioration to end stage renal disease (ESRD) had historically been the most common source of morbidity and mortality in the population with SCI. This had been attributed to chronic pyelonephritis, reflux uropathy, and nephrolithiasis. Death rates on dialysis at one year have been substantially higher for SCI patients compared to non-SCI patients on dialysis (60% vs. 80%). Improvements in diagnostic investigation have reduced the incidence of progressive disease to ESRD for the SCI population. None-the-less, the risk is significant over the non-SCI population (approximately 5 fold) due to inherent complications with urinary tract infection, obstruction, and reflux.

**Gastrointestinal Complications:**

Most spinal cord patients experience little interruption in the gastrointestinal functions of digestion, absorption and excretion. Early in the post spinal cord

injury state, an adynamic ileus typically occurs resulting from paralysis of peristalsis and fecal retention. This is said to result from an atonic state of the whole intestinal tract. Peristalsis usually returns within a few days and ileus is rarely a chronic problem.

Esophageal motility after spinal cord injury has not been widely evaluated. It has been reported in some retrospective studies that gastroesophageal reflux and hiatal hernia were present in more than a third of spinal cord patients in the 20 to 30 year age range. A number of studies suggest that there is an increased risk of gallstone disease after spinal cord injury. Autopsy studies have shown the incidence to be as high as three times those of controls.

Following spinal cord injury, voluntary control of the external sphincter is lacking and spontaneous evacuation of feces becomes a clinical problem. Suppositories, stool softeners, and digital evacuation can usually provide effective bowel elimination and continence through a carefully managed program. Occasional bowel evacuants may be needed. Dietary factors, such as fiber, also play a role in regularity and management of continence.

**Metabolic Changes:**

Energy needs decrease with chronic spinal cord injury, therefore, a reduction in caloric intake is appropriate, along with regular exercise. Morbid weight gain after spinal cord injury can have significant consequences for functional status, skin integrity, and respiratory function.

The level of HDL cholesterol has been found in many studies to be reduced. Athletes with SCI have better lipid indices than do sedentary patients. The standardized mortality ratio for coronary disease is increased in spinal cord patients as compared to normal patients younger than 25. Research to evaluate the relationship of lipid parameters and SCI is currently underway.

Heterotopic ossification (HO) is the formation of new bone in the periarticular soft tissue of patients who have suffered spinal cord injury, brain injury and/or burns. The pathophysiology is somewhat obscure. It presents as a loss of joint range of motion and typically with warmth and edema of the extremity. The hips are most commonly involved. HO does not occur above the spinal cord lesion. The literature suggests a relationship between the severity of spasticity and the occurrence rate of HO. Heterotopic ossification has been reported to occur in 16% to 53% of persons with SCI. The occurrence rates reported among a number of current studies range considerably with most indicating a risk of approximately 20%.

The spinal cord injured person often has disturbances in the body's ability to regulate temperature.   Spinal cord injury impairs the ability of the hypothalamus to direct the periphery.  Therefore, SCI patients tend to adopt the temperature of the environment to a greater degree than non-spinal cord injured individuals.  This is associated with a decrease in information provided by the skin to the thermoregulatory system. The use of cooling vests is common, particularly in warm climates and summer months in most areas. This need is greater among quadriplegics than paraplegics.

Other metabolic problems facing spinal cord patients include hypercalciuria, likely associated with decreased weight bearing and decreased forces applied to bone and muscle.  There may be a relationship between hypercalcemia and increased incidence of heterotopic ossification and renal stones, although this is not yet clear.  Incidence rates for renal stones have been reported to increase from 3% to 4.6% from years one to three post-injury with significantly higher rates for those patients who maintain an indwelling catheter for urinary continence management.

Osteoporosis is common among spinal cord patients and is believed to be directly related to disuse.  Immobility from SCI results in marked changes in bone metabolism. Disuse osteoporosis involves decreased weight bearing through bone and decreased muscular stress upon bone.  Passive weight bearing activities such as tilt table or standing frame exercise result in a decrease in hypercalciuria, but muscle-strengthening exercises appear to have little influence on urinary calcium excretion.  Treatment of osteoporosis, once observed, is usually with calcium replacements and/or bone metabolism regulation.

## Neurological Disorders:

Spasticity is a common problem seen in most upper motor neuron injuries. Spasticity is defined as a velocity-dependent increase in tonic stretch reflexes and exaggerated tendon jerks. It is a neurophysiological condition characterized by hyperactive deep tendon reflexes and increased muscle tone.  Involuntary movements and severely increased resistance to passive movement of joints from muscle hypertonus may interfere with or prevent performance of functional activities.  Spasms may also be very painful.  The incidence of occurrence is reported to be 42.7% between initial discharge and the first anniversary post injury.  Stretching may be all that is needed to manage spasticity or perhaps resolving irritating stimuli that precede spasticity.  When antispastic medication is indicated, baclofen has historically been is the first line of treatment, although tizanidine HCL (Zanaflex) has gained wide recognition as an effective agent with fewer complications. Other

pharmacological agents that may provide benefit include diazepam, Dantrolene, and Clonidine. If oral medications fail, localized problems, such as plantar flexor spasticity, can be treated with motor point blocks or neurectomies. In the case of widespread spasticity, posterior rhizotomies, myelotomy, intrathecal phenol, dorsal column electrical stimulation and intrathecal baclofen can be considered.

Other neurological complications requiring specific intervention include neuropathic pain at or below the level of the lesion and overuse syndromes. Posttraumatic syrinx, a fluid-filled cavity within the spinal cord, can develop after spinal cord injury. Syringomyelia can present as neurological decline and as pain above the level of the injury. MRI is the diagnostic study of choice. With progression, surgical intervention to drain the cyst and prevent re-accumulation is indicated. Mr. DeLeon's risk for syrinx is considered low.

## Integumentary Complications:

Decubiti, or pressure ulcers, are serious concerns for paralyzed patients requiring frequent inspection and preventative measures. They occur almost exclusively over bony prominences. Whether the spinal cord patient sits or lies recumbent, there is unequal pressure over the body areas in contact with the surface. The tissues between the underlying bone and surface have increasing pressures. Blood flow rates fall quickly causing rapid loss of tissue perfusion, hence ischemia. This process can occur in a matter of hours. The paralyzed patient who cannot feel the pain associated with tissue ischemia must be cognizant of the need to relieve pressure throughout the day. For the patient who is not independent with bed and chair mobility or transfers, he/she requires others to perform turning, shifting maneuvers, and possibly inspection. The skin must be kept dry to avoid maceration. Attention must be made to avoid sitting or lying on objects, which can precipitate direct pressure or other injury. Special cushions for sitting and mattresses for extended recumbency have been developed to lessen the pressure on bony prominences. Sheep skin and other materials are often used for heel and foot protection. Treatment of decubitus ulcers, once developed, requires extensive care and may lead to costly hospitalizations, with or without the need for surgical intervention. Numerous studies have been conducted in regard to the incidence of this preventable complication and its economic impact. It has been estimated that from 25% to 85% of all spinal cord patients develop decubitus ulcers. SCI Model Systems follow-up reported 31.7% of SCI patients developed at least one pressure ulcer during system care (for patients admitted within one day since 1973). Mr. DeLeon is currently suffering from heel decubitus requiring close observation and treatment.

Nail changes are common among spinal cord patients. Spinal cord injured patients undergo changes in the appearance of their nails and paronychial tissues. The nails appear thickened, discolored, and separated from the nail bed. The paronychial tissue is frequently inflamed. This necessitates close monitoring and podiatric care.

## Sexual Dysfunction:

Sexual function relies on similar nervous pathways to the bladder and bowel and is altered after spinal cord injury. Treatment of sexual dysfunction in males has focused on restoration of erectile function. Although penile prostheses were the primary available means of treating erectile dysfunction 10 years ago, today there are multiple methods one can utilize to manage impotence. One of these methods involves intracavernous injections of vasoactive drugs into the corpora of the penis. Erections occur within five minutes lasting from one to one and one half hours. Vacuum constriction devices have also been used since 1986 allowing for erection for up to 30 minutes. There are now orally administered pharmacological agents available to spinal cord injured patients such as Viagra that can be taken approximately one hour before anticipated sexual activity. Viagra is not effective for all SCI patients.

None of these methodologies are without complications. There is a high rate of failure and infection with implantable prostheses. Injection therapies have produced side effects to include priapism, ecchymosis, declining erectile quality, dysesthesia, seizures, and intracorporeal fibrosis. Elevation of liver function studies has also been reported with the use of papaverine. Prostaglandin E has been recommended as an alternative to papaverine with reports of being at least as effective and with fewer side effects. Complications of vacuum erections have included ecchymosis and petechiae. Anticoagulation and blood dyscrasias are contraindications, and use for longer than 30 minutes is not advised. There have been reports in early studies of potential cardiac related complications with the use of Viagra necessitating medical follow-up with long-term use.

## Reproduction:

Spinal cord injury results in diminished concentration and motility of sperm, in addition to causing ejaculatory dysfunction. Because of this, assistive techniques aimed at producing ejaculation have been developed to allow males with SCI to father children. Electroejaculation is one technique used to harvest sperm from men with SCI. The procedure is performed in a hospital or clinic setting as anoscopy must be performed before and after ejaculation. Once

produced, the semen is milked from the urethra and the bladder catheterized for any retrograde ejaculate. Electroejaculation has been coupled with artificial insemination and with in vitro fertilization and embryo transfer to produce pregnancies. Although relatively safe, the electroejaculation procedure has been known to cause autonomic dysreflexia.

Reproductive services are not anticipated for Mr. DeLeon due to his age and no plans for additonal children.

### Psychosocial & Vocational Issues:

The aftermath of spinal cord injury commonly results in restrictions of role fulfillment as a worker, student, parent, spouse, citizen, or other status. Sometimes these disadvantages are not due so much to the disability as to societal reactions. The person with spinal cord injury has to cope not just with a changed body image, new ways of doing things, and increased reliance on others for activities of daily living, but also with changes in his or her social roles and interactions. Sometimes the social network of family and friends fails to provide support, or even worse, falls away. Failure of marriage and the dwindling of relationships with friends at work, school, or recreational pursuits add to the burden, thus making adjustment all the more difficult.

The spinal cord injured individual has a better chance of gaining employment following an injury if he or she is a college graduate or if there is return to school for advanced education. Paraplegics are more likely to return to employment or obtain employment following injury than tetraplegics. Follow-up data from the National Spinal Cord Injury Statistical Center suggests that persons with paraplegia are slightly more likely to be employed (13.2%) or to be a homemaker (2.8%) than those with tetraplegia (8.6% and 1.6%, respectively). And, members of minority groups are less likely to be employed. Physical limitations, frequency of related illnesses, and societal reactions to paralysis play a significant role in gaining and maintaining sustained employment. This is also true for progression or advancement within a specific field of work.

There are many factors that influence employability and return to work after a spinal cord injury. A spinal cord injured person who was previously working may not be able to return to the same job if the physical requirements exceed the abilities. Work site accessibility may pose a problem. Modifications to the job are often required. One's level of education and training also impact employability, and job training or retraining is sometimes necessary.

The National SCI Database reports that divorce rates among SCI patients within the first three years post injury are 2.3 times as frequent as would have

been expected on the basis of the United States population statistics.    This research on marriages occurring after SCI found that among persons who were single at the time of injury, significantly fewer marriages occurred in the first three years post injury than would have been expected based on age-and-sex-specific first marriages for the US population.

Suicides among those with SCI have been investigated in a number of studies.    As a percentage of deaths in follow-up years, suicide has been reported at rates typically varying from 5% to 10%, although higher rates have been found, especially in earlier studies and in groups with high risk factors (e.g., substance abuse).    In comparison with the US population as a whole, 1.4% of all deaths are due to suicide.

Advances in rehabilitative processes in recent years have resulted in shorter rehabilitation stays and increased functional abilities upon discharge.    This has been due to a focus on care and management immediately following injury.  However, providers of care have consistently reported need for long-term interventions to enhance social functioning, coping, and adjustment over the long term.

**Latex Allergy:**

Children and adults are at risk of immediate-type allergic reactions to latex-containing products.  Among children and adolescents with SCI, 6 to 18% demonstrate allergy to latex, which necessitates the use of non-latex equipment, a latex free environment (including special equipment for the operating room if surgery planned), and active clinical and laboratory surveillance of patients with SCI.  Individuals and their families and caregivers should be educated about the potential for severe allergic reactions to latex-containing items and the necessity to avoid all latex products.  Individuals either with a history of reaction to latex or with a positive laboratory or skin test should be considered allergic to latex.  Individuals also receive medical alert identification and auto-injectable epinephrine.  If surgery is planned for a latex allergic patient, they should receive H1 and H2 blockers and steroids preoperatively.

## AGING WITH SPINAL CORD INJURY

Changes in survival and injury demographics have resulted in an ever increasing interest in the unique concerns of elderly spinal cord injured persons; those who have survived with spinal cord injury for many decades. Interestingly, although the overall incidence of SCI in the United States has declined over the past two decades, there remains a greater prevalence of individuals with SCI per capita over the same period of time. This is the result of improved survival in the acute care settings and superior long-term care management.

Aging with spinal cord injury has been widely researched in both the United States and the United Kingdom. Researchers at Craig Hospital, a Model Systems Program in Denver, Colorado, have provided data (1991) along with other notable studies that confirm the notion of heightened disability at an earlier age than had been generally expected. With advanced aging and progression of disability, there is an increased reliance upon health services and personal care assistance needs. Despite the effects of disability and aging, recent studies indicated that most spinal cord injured individuals 20 or more years post injury lead remarkably active and meaningful lives.

Over 25% of all individuals with spinal cord injury are now more than 20 years post injury. These individuals have very different goals, perspectives and priorities than those who have sustained recent injury. Health care providers must plan and prepare for changes associated with aging with preventative care strategies considered early on in the management of patients with chronic paralysis.

Some of the more age-specific problems of spinal cord injury include:

- The impact of long-term spasticity as a cause of pain and interference with function;
- Postural difficulties associated with chronic wheelchair dependence;
- Increasing pain over time (central or musculoskeletal in origin);
- Impaired shoulder function – rotator cuff disease or tendinitis;
- Peripheral nerve entrapment (86% of SCI patients after 15 years);
- Diminished strength and associated fatigue;
- Progressive neurological loss of sensation or motor function above base level of paralysis;
- Increased occurrence of skin breakdown and urological dysfunction.

## LIFE EXPECTANCY

Statistical data concerning long-term survival and causes of death associated with spinal cord injury has been gathered for a number of decades. When properly evaluated, this information can provide a basis from which to project life expectancy estimates.

Renal disease accounted for the majority of deaths in spinal cord injury in decades past, and amyloidosis was also frequently seen due to unresolved, recurrent infectious and inflammatory conditions. The causes of death after spinal cord injury now approach those seen in the general population, although many cause-specific mortality rates remain above normal. Although pulmonary complications are now the most common causes of death, the ratio of actual to expected deaths is highest for septicemia. There is also a very high risk for suicide in the spinal cord injured. In one large epidemiological study, unintentional injuries and suicide were cited as the leading causes of death in paraplegia and all spinal cord injured persons under the age of 55 years.

A number of studies have been published over the past 20 years in association with the National Spinal Cord Injury Statistical Center providing SCI statistical data concerning causes of death and survival. The literature clearly reflects that mortality rates have steadily declined since 1973 with a striking trend toward improving survival rates. A person injured between 1989 and 1992 has a lower mortality rate by 42% relative to persons injured between 1973 and 1975.

Life expectancy projections are typically made with specificity to age at the time of injury, current age, neurological category, and for those who have survived the first year post injury, as well as, race and gender. In review of the statistical data collected and published through the National Spinal Cord Injury Collaborative Database as a basis for projecting Mr. DeLeon' life expectancy, residual life expectancy is estimated at 15.9 (16) years. The medical literature also suggests that other factors should be considered in projecting life expectancies, which are more difficult to quantify. More precise projections should be made for specific persons only by matching such characteristics of the individual as the exact neurological level of injury and Frankel grade, age, gender, race, ventilator status, length of post injury survival to date, presence of pre-existing or unrelated concurrent medical conditions, motivation in self-care, and availability of good medical care to the largest possible sample population.

This plan provides for 16 remaining years of life for Mr. DeLeon, representing a reduction of residual average life expectancy by four years. With implementation of an appropriate level of medical, therapeutic, case management and personal care services, it is believed that this represents a realistic yet conservative projection.

## COST PROJECTIONS

An analysis of the projected health care goods and service needs is provided in *TABLE I* of this life care plan (Life Care Cost Analysis). These projections include those recommendations for medical and medically related goods and services which can be reasonably expected to optimize or maintain the patient's functional status and minimize the occurrence and severity of co-morbidity. Where appropriate, these services are CPT code and ICD-9-CM code specific based upon the most recent publications of the *Current Procedural Terminology (American Medical Association)* and the *International Classification of Diseases, Ninth Revision, Clinical Modification (US Dept. of Health and Human Services).* Current cost data specific to the patient's geographic region is utilized to the extent it is available. These projections are presented in specific categories designed to aid economic or financial experts with long term financial planning and resource allocation.

The life care cost analysis provides for the personal care needs and equipment required for Mr. DeLeon to return to a home in outside of a skilled nursing facility as is his desire.

No adjustments have been made within context of this plan for inflation, projected real rates of growth, or present value.

# V. RESEARCH AND DATA SOURCES

## LITERATURE RESEARCH

1. Acute Management of Autonomic Dysreflexia: Adults with Spinal Cord Injury Presenting to Health-Care Facilities. Clinical Practice Guideline: Autonomic Dysreflexia, Consortium for Spinal Cord Medicine, Paralyzed Veterans of America, Feb. 1997.

2. Autonomic Dysreflexia: What You Show Know. Clinical Practice Guideline, Consortium for Spinal Cord Medicine, Paralyzed Veterans of America, Aug. 1997.

3. Bagwell D, Willingham A, et al. Team approach to life care planning: developing a blueprint of care for spinal cord injury. *Presented at the American Congress of Rehabilitation Medicine, 73rd Annual Meeting*; Chicago, IL, October 1996.

4. Bagwell D, Willingham A, Harrell T. Life care planning: the interdisciplinary team approach, In *Disability Analysis In Practice*, Kendall/Hunt Publishing Co., Dubuque, Iowa; Dec. 1999: Chapter 1: 1-20.

5. Braddom R, Buschbacher R, et al. *Physical Medicine & Rehabilitation*. 1st Ed., W. B. Saunders Company, Ch 55, pp 1149-79, 1996.

6. Braddom RL. *Physical Medicine & Rehabilitation*. W.B. Saunders Co. Ch. 55, 1230-1282; 2000.

7. Brown CS, Bryant SG. Major depressive disorders. *Applied Therapeutic: The Clinical Use of Drugs*, 1992, Ed. Vancouver, Washington, Applied Therapeutics, Inc.

8. Carter RE: Respiratory aspects of spinal cord injury management. *Paraplegia* 25:262-266, 1987

9. Cushman LA. Spinal cord injury: 10 and 15 years after. *Paraplegia*, 1992; 30: 690-6.

10. Dearwater SR, Laporte RE, Robertson RJ, et at. Activity in the spinal cord injured patient: An epidemiologic analyses of metabolic parameters. *Med Sci Sports Exerc* 18:541-544, 1986

11. Depression Following Spinal Cord Injury: A Clinical Practice Guideline for Primary Care Physicians. Clinical Practice Guideline: Depression, Consortium for Spinal Cord Medicine, Paralyzed Veterans of America, Aug.1998.

12. Deutch D, Swayer H. A Guide to Rehabilitation. Ahab Press, Inc., Purchase, NY, 1999, Vol 1 and 2; Ch. 7, 7A, 16, 16A.

13. DeVivo MJ, et al. Cause of death during the first 12 years after spinal cord injury. *Archives of Physical Medicine & Rehabilitation*, March 1993; 37.

14. DeVivo MJ, et al. Prevalence of spinal cord injury: a re-estimation employing life table techniques. *Archives of Neurology*, November 1987; 37: 707.

15. DeVivo MJ, Recent trends in mortality and causes of death among persons with spinal cord injury. *Archives of Physical Medicine & Rehabilitation*. 80:1411-1419. 1999

16. DeVivo MJ. Life expectancy and causes of death of persons with spinal cord injuries. *Research Update, Medical Rehabilitation Research and Training Center, UAB*, April 1990

17. DeVivo, MJ, et al. Recent trends in mortality and causes of death among persons with spinal cord injury. *Archives of Physical Medicine & Rehabilitation.* 1999 Nov; 80 (11): 1411-9.

18. DiVivo MJ, Fine PR. Spinal cord injury: Its short-term impact on marital status. *Archives of Physical Medicine & Rehabilitation*. 66:501-504. 1985

19. Donovan WH, Garber SL, Hamilton SM, et al. Pressure ulcers. *In DeLisa JA (ed). Rehabilitation Medicine: Principles and Practice.* Philadelphia, JB Lippincott, 1988, pp 474-491

20. El-Torae I, Chung B. The management of pressure sores. *J Dermatol Surg Oncol* 3:507-511, 1977

21. Frankle, HL, et al. Long-term survival in spinal cord injury: a fifty-year investigation. *Spinal Cord.* 1998 Apr; 36 (4): 266-74.

22. Freyschuss U, Knuttson E. Cardiovascular control in man with transverse cervical cord lesions. *Life Sci* 8:421, 1989

23. Garland DE. Cinical observations on fractures and heterotopic ossification in the spinal cord and traumatic brain injured populations. *Clin Orthop* 233: 86-101, 1988

24. Gore RM, Mintzer RA, Calenoff L. Gastrointestinal complications of spinal cord injury. *Spine* 6:538, 1981

25. Guttman L. Spinal Cord Injuries: Comprehensive Management and Research, ed 2. London, Blackwell Scientific Puplications, 1976

26. Kaplan PE, Rodin W, Gilbert E, et al. Reduction of hypercalciuria in tetraplegia after weight-bearing and strengthening exercises. *Paraplegia* 289-93. 1981

27. Kottke F, Stillwell G, Lehmann J, et al. *Krusen's Handbook of Physical Medicine and Rehabilitation*, 3rd Ed., W.B. Saunders Company, Ch 32, pp 643-669, 1982.

28. Little JW, Mickelsen P, Umlauf R, et al. Lower extremity manifestations of spasticity in chronic spinal cord injury. *Am J Phys Med Rehabil* 70:277-282, 1989

29. Lloyd KL. Long-term follow-up of neurogenic bladder. *PM&R Clinics of North America*, May 1993; 4(2).

30. Maloney F, Means K. Rehabilitation and the Aging Population. *Physical Medicine and Rehabilitation: State of the Art Reviews* 4:1 February 1990;

31. Martinel HL, Mathias CJ, Spalding JMK. Mechanisms of reflex cardiac arrest in tetraplegic patients. *Lancet* 2:46, 1975

32. Maynard FM, Karunas RS, Waring WP III. Epidemiology of spasticity following traumatic spinal cord injury. *Arch Phys Med Rehabil* 71:566-569, 1990

33. McColl, MA, et al.  Expectations of life and health among spinal cord injured adults.
*Spinal Cord.*  1997 Dec; 35(12): 818-28.

34. McMichan JC, Michel L, Westbrook P. Pulmonary function following traumatic quadriplegia. *JAMA* 243:528-531, 1980

35. Mentor R.  Aging with a spinal cord injury.  *Physical Medicine and Rehabilitation: Clinics of North America*  3:4 November 1992

36. Myllynen P, Kammonen M, et al. Deep venous thrombosis and pulmonary embolism in patients with acute spinal cord injury: A comparison with non-spinal cord injured patients immobilized due to spinal fractures. *J Trauma* 25:541, 1985

37. National Center for Health Statistics, *National Vital Statistics Report*, Vol. 47, No. 13, Table 3, Expectation of life at single years of age, by race and sex: United States, 1996, December 24, 1998

38. *Neurogenic Bowel Management in Adults with Spinal Cord Injury.*  Clinical Practice Guidelines, Consortium for Spinal Cord Medicine, Paralyzed Veterans of America., March 1998.

39. Olson D.  Spinal cord injury: a guide to functional outcomes in occupational therapy. *Rehabilitation Institute of Chicago*, Aspen Publications, 1986

40. Olson, L., et al.  On CNS repair and protection strategies:  novel approaches with implications for spinal cord injury and Parkinson's disease.  *Brain Res Brain Res Rev.*  1998 May; 26 (2-3): 302-5.

41. Outcomes following traumatic spinal cord injury: Clinical practice guidelines for health-care professionals. *Consortium for Spinal Cord Medicine*.  Paralyzed Veterans of America, July, 1999.

42. Outcomes following traumatic spinal cord injury: Clinical practice guidelines for health-care professionals. *Consortium for Spinal Cord Medicine*.  Paralyzed Veterans of America, July, 1999.

43. Ozer M, Schmitt J.  Medical complications of spinal cord injury. *Physical Medicine and Rehabilitation: State of the Art Reviews*, August 1987; 1(3): 341-512.

44. Paul S., Barlow J. Neurogenic heterotopic ossification. *NeuroRehabilitation*, 1993; 3 (3): 66-78

45. Physicians Current Procedural Terminology, *American Medical Association*, 1999/2000

46. Pressure Ulcers in Adults: Prediction and Prevention.  Clinical Practice Guideline, Quick Reference Guide for Clinicians, Number 3, U. S. Department of Health and Human Services, AHCPR Pub. No 92-0050, May 1992.

47. Prevention of Thromboembolism in Spinal Cord Injury.   Clinical Practice Guideline, Consortium for Spinal Cord Medicine, Paralyzed Veterans of America, Feb. 1997.

48. Portnow J.   Home health care and rehabilitation.   *Physical Medicine and Rehabilitation: State of the Art Reviews*, August 1988; 2(3).

49. Silver, J.  Life expectancy in traumatic spinal injuries.  *Spinal Cord.* 1998 Nov; 36(11): 804-5.

50. St. Anthony's Illustrated ICD-9-CM CodeBook; Sept. 2000; Vol 1,2,3.

51. Staas W, Ditunno J, et al.  Traumatic spinal cord injury.  *Physical Medicine and Rehabilitation Clinic of North America*, November 1992; 3(4): 699-919.

52. Stover S, DeLisa J, Whiteneck G, et al. *Spinal Cord Injury: clinical outcomes from the model systems*, Aspen Publications, 1995.

53. Stover S, Lloyd K, et al.  Neurogenic bladder.  *Physical Medicine and Rehabilitation Clinic of North America*, May 1993; 4(2): 211-415.

54. Thomas SE, et al.  Measurement of sebum excretion rate and skin temperature above and below the neurological lesions of paraplegic patients.  *British Journal of Dermatology*, 1985; 112: 569-73.

55. Vaidvanathan, S. et al.  A review of the readmissions of patients with tetraplegia to the Regional Spinal Injuries Centre, Southport, United Kingdom, between January 1994 and December 1995. *Spinal Cord.*  1998 Dec; 36(12): 838-46.

56. Ward NG, et al.  The effectiveness of tricyclic antidepressants in the treatment of coexisting pain and depression. *Pain*, 1979; 7: 331

57. Weed, RO. Life Care Planning and Case Management Handbook.  CRC Press LLC. Boca Raton, FL. 1999

58. Whiteneck Charlifue SW, Martinel H, et al. Mortality, morbidity, and psychosocial outcomes of persons spinal cord injured more than 20 years ago. *Paraplegia*. 30:617-630, 1992

59. Whiteneck GG, Charlifue SW, Gerhart KA, et al. Aging with spinal cord injury: Mortality. *Presented at the 53rd Annual Assembly of the American Academy of Physical Medicine and Rehabilitation*, October 27-31, 1991, pp 117-118

60. Yarkony GM, *Spinal cord injury: medical management and rehabilitation.* Rehabilitation Institute of Chicago Procedure Manual. Aspen Publishers, Inc., Gaithersburg, MD, 1994, pp 3-229.

61. Yeo, JD, et al.  Mortality following spinal cord injury. *Spinal Cord.* 1998 May; 36 (5): 329-36.

62. Young RR, Dewaide PJ. Spasticity. 1 & 2. *N Engl J Med* 304:28-33, 96-99, 1981

## COST DATA, REFERENCE SOURCES, & VENDOR SURVEYS

- Ableware
- Accessibility Unlimited
- ACS Technologies, Inc.
- Alamo Mobility
- Alliance For Technology Access
- Apria Healthcare
- Assistance Home Medical
- Gulf Coast Care, Inc.
- APC Home Health
- Crawford & Company Health Care Management
- Drug Topics Redbook - 2000
- Environmental Rehabilitation Consultants
- Columbia Home Care Rio Grande Regional
- Hidalgo Home Health Care
- Omni Home Care
- Optimum Health Care
- Independent Mobility Systems, Inc.
- Inpatient View, 1999; HCIA/Solucient 2000
- Invacare
- Kemper National Services
- Liaison, Inc.
- Quickie Designs/Sunrise Medical
- Mosby's Gen Rx 2000
- National Seating & Mobility
- Nursefinders of Dallas
- Para Driving Aids
- Peiser's Medical Supplies
- Physicians Current Procedural Terminology, American Medical Association, 2000/2001.
- Physicians' Fee Reference 2000 Pricing Program
- Professional Rehabilitation Consultants
- Ricon, Inc.
- Sammons Preston 2001
- Southwest Health Services
- St. Anthony's Illustrated ICD-9-CM Code Book; Sept. 2000; Vol 1,2,3.

- TEAM Rehabilitation
- The Institute for Rehabilitation and Research, TX. Rehabilitation Engineering Center
- Visiting Nurses Association of Texas
- Wheelchairs Plus

## *TABLE I*

## LIFE CARE COST ANALYSIS
### Candelario DeLeon

Date of Report:  06/29/01

Date of Birth: 06/15/41

Current Age: 60 Years

Gender: Male

Etnicity: Hispanic

Diagnosis:   SCI; Quadriparesis  ASIA D;

Neurogenic Bladder and Bowel;

Spasticity; Neurogenic Pain & Dysesthesia;

Normal Residual Life Expectancy: 19.7 (20) Yrs

Projected Residual Life Expectancy: 15.9 (16) Years

| Service/Item | Begin At Age | Duration Years | Frequency per Year | Average Unit Cost | Annual Cost | Life Time Cost |
|---|---|---|---|---|---|---|
| **Outpatient Physician Services** | | | | | | |
| PM&R | 60 | 16 | 3 | $86.62 | $259.86 | $4,157.69 |
| Family Practice/Internist | 60 | 16 | 3 | $83.26 | $249.79 | $3,996.60 |
| Urologist | 60 | 16 | 12 | $76.19 | $914.26 | $14,628.10 |
| Podiatrist | 60 | 16 | 4 | $75.00 | $300.00 | $4,800.00 |
| Other MD Consultation | 60 | 16 | 1 | $190.11 | $190.11 | $3,041.72 |

*Note:  Additional Physician Specialities May Been Seen With Comprehensive Follow-up Evaluations (See Below)*

| Service/Item | Begin At Age | Duration Years | Frequency per Year | Average Unit Cost | Annual Cost | Life Time Cost |
|---|---|---|---|---|---|---|
| **Allied Health Services** | | | | | | |
| Psychotherapy (Individual) | 60 | 2 | 24 | $162.81 | $3,907.36 | $7,814.71 |
| Psychotherapy (Individual) | 62 | 3 | 10 | $162.81 | $1,628.07 | $4,884.20 |
| Physical Therapist (6 months) | 60 | 1 | 78 | $196.75 | $15,346.50 | $15,346.50 |
| Physical Therapist (6 months) | 60 | 1 | 26 | $196.75 | $5,115.50 | $5,115.50 |
| Physical Therapist | 61 | 15 | 1/3 | $2,141.43 | $713.81 | $10,707.14 |
| Occupational Therapist | 60 | 1 | 78 | $168.31 | $13,128.44 | $13,128.44 |
| Occupational Therapist | 61 | 15 | 1/3 | $168.31 | $56.10 | $841.57 |
| Recreational Therapist | 60 | 1 | 12 | $115.00 | $1,380.00 | $1,380.00 |
| Therapeutic Rec. Activity | 60 | 16 | 12 | $90.00 | $1,080.00 | $17,280.00 |
| SCI Driver's Training | 60 | 1 | 1 | $1,200.00 | $1,200.00 | $1,200.00 |
| SCI Driving F/U | 61 | 3 | 1 | $250.00 | $250.00 | $750.00 |
| SCI Driving F/U | 64 | 12 | 1/3 | $250.00 | $83.33 | $1,000.00 |
| Nutritionist | 60 | 1 | 6 | $115.00 | $690.00 | $690.00 |
| Nutritionist | 61 | 15 | 3 | $115.00 | $345.00 | $5,175.00 |
| Medical Case Manager | 60 | 1 | 12 | $400.00 | $4,800.00 | $4,800.00 |
| Medical Case Manager | 61 | 15 | 4 | $400.00 | $1,600.00 | $24,000.00 |

| Service/Item | Begin At Age | Duration Years | Frequency per Year | Average Unit Cost | Annual Cost | Life Time Cost |
|---|---|---|---|---|---|---|
| **Home Care & Essential Services** | | | | | | |
| CHHA (8 Hr./day) | 60 | 10 | 351 | $94.00 | $32,994.00 | $329,940.00 |
| CHHA (24 Hrs./day - illness) | 60 | 10 | 14 | $282.00 | $3,948.00 | $39,480.00 |
| CHHA (16-24 Hrs./day) | 70 | 6 | 335 | $235.00 | $78,725.00 | $472,350.00 |
| CHHA (24 Hrs./day - illness) | 70 | 6 | 30 | $282.00 | $8,460.00 | $50,760.00 |
| Skilled Nursing Visits | 60 | 10 | 52 | $98.50 | $5,122.00 | $51,220.00 |
| Skilled Nursing Visits | 70 | 6 | 82 | $98.50 | $8,077.00 | $48,462.00 |
| Essential Services | 60 | 10 | 52 | $75.00 | $3,900.00 | $39,000.00 |
| Essential Services | 70 | 6 | 52 | $125.00 | $6,500.00 | $39,000.00 |
| **Medication** | | | | | | |
| Multivitamin with Hi C | 60 | 16 | 365 | $0.12 | $43.80 | $700.80 |
| Ducolax Suppository | 60 | 16 | 365 | $0.71 | $259.15 | $4,146.40 |
| Calcium Supplement | 60 | 16 | 365 | $0.16 | $58.40 | $934.40 |
| Fosamax | 70 | 6 | 365 | $1.84 | $671.60 | $4,029.60 |
| Antiinflammatory | 60 | 16 | 365 | $2.45 | $893.79 | $14,300.70 |
| Prilosec | 60 | 16 | 365 | $3.87 | $1,412.55 | $22,600.80 |
| Antispastic (Oral Agent) | 60 | 1 | 365 | $2.81 | $1,025.65 | $1,025.65 |
| Neurontin | 60 | 16 | 365 | $5.04 | $1,839.60 | $29,433.60 |
| Pamelor/Equivalent | 60 | 16 | 365 | $1.50 | $547.50 | $8,760.00 |
| Pneumovax | 60 | 16 | 1/4 | $86.05 | $21.51 | $344.20 |
| Annual Flu Vax | 60 | 16 | 1 | $47.50 | $47.50 | $760.00 |
| Bactrim DS (6 months) | 60 | 1 | 183 | $2.50 | $457.50 | $457.50 |
| Uroqid Acid | 60 | 16 | 365 | $1.00 | $365.00 | $5,840.00 |
| Other Antibiotics | 60 | 16 | 4.5 | $69.99 | $314.96 | $5,039.28 |
| IV Antibiotics | 60 | 16 | 1/3 | $2,991.30 | $997.10 | $15,953.62 |
| Lasix | 60 | 16 | 365 | $0.20 | $73.00 | $1,168.00 |
| Ditropan | 60 | 16 | 365 | $2.38 | $868.70 | $13,899.20 |
| Intrathecal Baclofen | | | | | | |
| Follow-up/Refill | 61 | 15 | 6 | $958.00 | $5,748.00 | $279,927.60 |
| Bronchial Dilator (Neb) | 65 | 11 | 3 | $55.60 | $166.80 | $1,834.80 |
| Other PRN Medication | 60 | 16 | 1 | $250.00 | $250.00 | $4,000.00 |

| Service/Item | Begin At Age | Duration Years | Frequency per Year | Average Unit Cost | Annual Cost | Life Time Cost |
|---|---|---|---|---|---|---|
| **Routine Diagnostics** | | | | | | |
| X-ray (up to 4 views) | 60 | 16 | 1 | $272.10 | $272.10 | $4,353.60 |
| MRI | 60 | 16 | 1/5 | $1,818.54 | $363.71 | $5,819.31 |
| Urodynamics | 60 | 16 | 1/2 | $1,632.60 | $816.30 | $13,060.80 |
| Renal Ultrasound | 60 | 16 | 1 | $448.06 | $448.06 | $7,168.93 |
| Urography (IVP) | 60 | 16 | 1/2 | $339.22 | $169.61 | $2,713.74 |
| Abdominal Flatplate | 60 | 16 | 1 | $121.54 | $121.54 | $1,944.61 |
| Complete Blood Count | 60 | 16 | 3 | $38.09 | $114.28 | $1,828.51 |
| Urinalysis | 60 | 16 | 3 | $24.49 | $73.47 | $1,175.47 |
| Metabolic Panel (Comprehen.) | 60 | 16 | 3 | $60.77 | $182.31 | $2,916.91 |
| Urine C&S | 60 | 16 | 4 | $41.72 | $166.89 | $2,670.21 |
| Cultures (Other) | 60 | 16 | 1.5 | $63.67 | $95.51 | $1,528.11 |
| Sedimentation Rate | 60 | 16 | 2 | $22.68 | $45.35 | $725.60 |
| Creatinine Clearance | 60 | 16 | 2 | $55.33 | $110.65 | $1,770.46 |
| Pulmonary Function Test | 60 | 16 | 1 | $317.45 | $317.45 | $5,079.20 |
| EKG | 60 | 16 | 1 | $75.28 | $75.28 | $1,204.50 |
| Cardiac Stress Test | 60 | 16 | 1 | $356.45 | $356.45 | $5,703.22 |
| Bone Density Studies | 60 | 16 | 1/3 | $662.11 | $220.70 | $3,531.25 |
| **Supplies** | | | | | | |
| Foely Catheters (Latex Free) | 60 | 16 | 18 | $7.09 | $127.62 | $2,041.92 |
| Leg Bag & Tubing | 60 | 16 | 52 | $10.59 | $550.42 | $8,806.72 |
| Nighttime Urinary Drain Bag | 60 | 16 | 52 | $8.77 | $456.04 | $7,296.64 |
| Catheter Kit (Sterile/Specimen) | 60 | 16 | 12 | $5.86 | $70.32 | $1,125.12 |
| Foely Care Kit | 60 | 16 | 26 | $1.92 | $49.92 | $798.72 |
| H2O2 | 60 | 16 | 52 | $1.60 | $83.20 | $1,331.20 |
| Wipes | 60 | 16 | 26 | $9.13 | $237.38 | $3,798.08 |
| Skin Care Products | 60 | 16 | 24 | $35.50 | $852.00 | $13,632.00 |
| Gloves, Nonlatex (Sterile) | 60 | 16 | 5 | $33.75 | $168.75 | $2,700.00 |
| Gloves Nonlatex (Clean) | 60 | 16 | 52 | $8.78 | $456.56 | $7,304.96 |
| Linen Savers | 60 | 16 | 365 | $1.95 | $711.75 | $11,388.00 |
| Dressing Aids | 60 | 16 | 1 | $75.00 | $75.00 | $1,200.00 |
| **Equipment** | | | | | | |
| Specialty Bed (Powered) | 60 | 16 | 1/10 | $2,195.00 | $219.50 | $3,512.00 |
| Adapted Manual Wheelchair | 60 | 16 | 1/6 | $4,295.00 | $715.83 | $11,453.33 |
| Power Chair (Joy Stick Cntrl) | 60 | 16 | 1/5 | $13,500.00 | $2,700.00 | $43,200.00 |
| W/C Maintenance | 60 | 16 | 1 | $350.00 | $350.00 | $5,600.00 |
| W/C Cushions (2) | 60 | 16 | 2/3 | $425.00 | $283.33 | $4,533.33 |
| Wheeled Walker | 60 | 16 | 1/5 | $639.00 | $127.80 | $2,044.80 |

| Service/Item | Begin At Age | Duration Years | Frequency per Year | Average Unit Cost | Annual Cost | Life Time Cost |
|---|---|---|---|---|---|---|
| Battery | 60 | 16 | 1 | $159.00 | $159.00 | $2,544.00 |
| Battery Charger | 60 | 16 | 1/7 | $279.00 | $39.86 | $637.71 |
| Quad Cane | 60 | 16 | 1/5 | $65.00 | $13.00 | $208.00 |
| Exercise Mat | 60 | 16 | 1/5 | $60.00 | $12.00 | $192.00 |
| Bath/Shower Chair | 60 | 16 | 1/7 | $102.95 | $14.71 | $235.31 |
| Raised Toilet Seat (Locking) | 60 | 16 | 1/5 | $61.95 | $12.39 | $198.24 |
| Travel Bath Bench | 60 | 16 | 1/7 | $68.95 | $9.85 | $157.60 |
| Built-Up Utensils (Set) | 60 | 16 | 2/5 | $39.00 | $15.60 | $249.60 |
| Universal Cuff | 60 | 16 | 2 | $28.50 | $57.00 | $912.00 |
| Resting Splints (PM Use) Pair | 60 | 16 | 2 | $27.95 | $55.90 | $894.40 |
| ADL Aids (Reachers/Other) | 60 | 16 | 1 | $250.00 | $250.00 | $4,000.00 |
| Handicap Clothing | 60 | 16 | 1 | $500.00 | $500.00 | $8,000.00 |
| Blood Pressure Kit | 60 | 16 | 1/5 | $70.00 | $14.00 | $224.00 |
| Electronic Thermometer | 60 | 16 | 1/3 | $29.00 | $9.67 | $154.67 |
| Probe Covers | 60 | 16 | 12 | $10.00 | $120.00 | $1,920.00 |
| Other Equip. Maint. | 60 | 16 | 1 | $250.00 | $250.00 | $4,000.00 |
| Nebulizer | 60 | 16 | 1/5 | $330.75 | $66.15 | $1,058.40 |
| Nebulizer Kits | 60 | 16 | 3 | $3.75 | $11.25 | $180.00 |

## Home & Vehicular Modifications

| Service/Item | Begin At Age | Duration Years | Frequency per Year | Average Unit Cost | Annual Cost | Life Time Cost |
|---|---|---|---|---|---|---|
| Home Modifications | 60 | 1 | 1 | $50,000.00 | $50,000.00 | $50,000.00 |
| Vehicular Modifications | 60 | 16 | 1/7 | $21,000.00 | $3,000.00 | $48,000.00 |
| Maintenance (Home Modification) | 60 | 16 | 1 | $500.00 | $500.00 | $8,000.00 |
| Maintenance (Auto Modification) | 60 | 16 | 1 | $400.00 | $400.00 | $6,400.00 |

## Inpatient/Acute Care Services

| Service/Item | Begin At Age | Duration Years | Frequency per Year | Average Unit Cost | Annual Cost | Life Time Cost |
|---|---|---|---|---|---|---|
| IT Baclofen (Trial & Implant) | 61 | 1 | 1 | $20,543.00 | $20,543.00 | $20,543.00 |
| Pump Replacement | 65 | 11 | 1/4 | $15,515.00 | $3,878.75 | $173,380.13 |
| Comprehensive Evals. | 60 | 16 | 1/2 | $12,132.63 | $6,066.32 | $97,061.06 |
| Urosepsis/Complicated UTI | 60 | 16 | 1/7 | $41,383.37 | $5,911.91 | $94,590.57 |
| Respiratory Infection | 60 | 16 | 1/16 | $19,453.54 | $1,215.85 | $19,453.54 |
| Decubiti (non-operative) | 60 | 16 | 1/7 | $13,962.33 | $1,994.62 | $31,913.89 |
| Decubiti (Operative) | 60 | 16 | 1/10 | $34,847.38 | $3,484.74 | $55,755.81 |

*Includes Hospitalization, Physican & Allied Health Professional Fees*

| Service/Item | Begin At Age | Duration Years | Frequency per Year | Average Unit Cost | Annual Cost | Life Time Cost |
|---|---|---|---|---|---|---|
| **Potential Care Needs** | | | | | | |
| Urinary Stones | 60 | 16 | 1/10 | $26,144.71 | $2,614.47 | $41,831.54 |
| Psychiatrist | 60 | 2 | 12 | $195.91 | $2,350.94 | $4,701.89 |
| Psychiatrist | 62 | 8 | 4 | $195.91 | $783.65 | $6,269.18 |
| Inpatient Psychiatric | 60 | 1 | 1 | $12,454.98 | $12,454.98 | $12,454.98 |
| Urinary Diversion | 60 | 1 | 1 | $46,213.81 | $46,213.81 | $46,213.81 |

## *TABLE II*

## COST ANALYSIS SUMMARY

### Candelario DeLeon

| SERVICE/ITEM | LIFE TIME COST TOTALS | PERCENT OF TOTAL |
|---|---|---|
| Outpatient Physician Services | $30,624.10 | 1.25% |
| Allied Health Services | $114,113.04 | 4.65% |
| Home Care & Essential Services | $1,070,212.00 | 43.58% |
| Medication | $415,156.15 | 16.90% |
| Routine Diagnostics | $63,194.44 | 2.57% |
| Supplies | $61,423.36 | 2.50% |
| Equipment | $96,109.40 | 3.91% |
| Home & Vehicular Modifications | $112,400.00 | 4.58% |
| Inpatient/Acute Care Services | $492,697.99 | 20.06% |
| **GRAND TOTAL** | **$2,455,930.49** | **100.00%** |
| *Potential Care Needs* | *$111,471.40* | |

# EXHIBIT 2

.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CANDELARIO DE LEON. | § | COMPLAINT FOR DAMAGES FOR VIOLATIONS |
| | § | OF CIVIL RIGHTS UNDER COLOR OF STATE |
| Plaintiff. | § | LAW (42 U.S.C. §§ 1983) |
| | § | |
| VS. | § | CIVIL ACTION NO. CV-B-00-192 |
| | § | |
| CITY OF BROWNSVILLE. TEXAS. ET AL.. | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S FIRST SUPPLEMENTAL DESIGNATION OF EXPERT WITNESSES

TO THE HONORABLE UNITED STATES DISTRICT COURT.

NOW COMES Plaintiff in the above styled and numbered cause of action. and pursuant to

the Court's Scheduling Order. files designates his expert witnesses as follows:

1.    Jose Luis Ayola. M.D
      500 Paredes Line Road. Suite 4
      Brownsville. Texas 78520
      (956) 456-4119
      *Dr. Ayola has treated and continues to treat plaintiff Candelario DeLeon as a result of
      injuries sustained in the incident occurring on or after December 24, 1998. He may be called
      to testify regarding plaintiff's injuries and damages. He may be called to testify regarding
      the reasonableness and necessity of past and future medical treatment rendered and to be
      rendered to plaintiff as a result of subject incident. He or his custodian of records may also
      be called to testify regarding the authenticity of his business records.*

2.    Dan Bagwell. R.N.
      Rehabilitation Professional Consultants. Inc.
      5101 Medical Drive
      San Antonio. Texas 78229
      (210) 615-7772
      *Mr. Bagwell is a nurse retained by plaintiff. who specializes in the preparation of life care
      plans. He will assist Dr. Willingham in the preparation of a life care plan for Candelario
      De Leon. He will assess the activities of daily living and medical needs of Candelario De
      Leon for the rest of his life expectancy. The Life Care Plan compiled by Alex C. Willingham.
      M.D. and Dan Bagwell was previously provided. The curriculums vitae and fee schedule of
      Alex C. Willingham and Dan Bagwell have also been provided. Publications by this expert*

*are contained in his curriculum vitae. A list of deposition and trial testimony for the past four years was previously provided*

3.      James L. Branton. P.C
        Branton & Hall. P C.
        One Riverwalk Place. Suite 1700
        700 N. St. Mary's Street
        San Antonio. Texas 78205
        (210) 224-4474
        *Plaintiff's attorney who may be called to testify regarding the reasonableness and necessity of attorneys' fees incurred by plaintiff as a result of the negligence of defendants.*

4.      Agents. employees. representatives.
        healthcare providers and
        custodian of records of
        Brownsville Medical Center
        1048 West Jefferson Street
        Brownsville. Texas 78520
        (956) 544-1400
        *These witnesses may be called to testify regarding the injuries and damages sustained by plaintiff as a result of subject incident  They may also be called to testify regarding the reasonableness and necessity of treatment rendered and to be rendered to plaintiff in the future as a result of injuries sustained in subject incident  They may also be called to testify regarding the authenticity of their business records*

5.      Agents. employees. representatives.
        officers. and custodian of records of
        City of Brownsville
        Brownsville Police Department
        600 East Jackson Street
        Brownsville. Texas
        (956) 548-7000
        *These witnesses may be called to testify regarding their knowledge of subject incident and the injuries and damages resulting therefrom.  They may also be called to testify regarding the authenticity of their business records, including photographs, videotapes, and all other evidence created by or for this agency as a result of the detainment and arrest of Candelario De Leon.*

-2-

6.      Agents, employees, representatives,
        healthcare providers and
        custodian of records of
        City of Brownsville E.M.S.
        954 East Madison Street
        Brownsville, Texas 78520
        (956) 541-9491
        *Provided emergency medical treatment to plaintiff. These witnesses may be called to testify
        regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity
        of their business records, and the reasonableness and necessity of treatment rendered.*

7.      Agents, employees, representatives,
        healthcare providers and
        custodian of records of
        Columbia Valley Regional Medical Center
        now referred to as Valley Regional Medical Center
        100 A. E. Alton Gloor
        Brownsville, Texas
        (956) 350-7000
        *These witnesses may be called to testify regarding treatment rendered to Candelario De
        Leon while a patient at their facility   They may also be called to testify regarding the
        authenticity of their business records and the reasonableness and necessity of treatment
        rendered*

8.      Joao Dovale, M.D
        1102 West Trenton Road
        Edinburg, Texas
        *Defendant who provided treatment to plaintiff while a patient at Columbia Valley Regional
        Medical Center who will be called to testify regarding that treatment.*

9.      Jesus Dovalina
        Dovalina & Fernandez, P.C.
        P.O. Drawer 1209
        Del Rio, Texas 78840
        (956) 774-5252
        *Attorney who may be called to testify regarding the reasonableness and necessity of
        attorneys' fees incurred by plaintiff as a result of the negligence of defendants*

10.     S. Fonseca, EMT
        City of Brownsville E.M.S.
        954 East Madison Street
        Brownsville, Texas 78520
        (956) 541-9491

*Provided emergency medical treatment to plaintiff. This witness may be called to testify regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity of business records, and the reasonableness and necessity of treatment rendered.*

11.  Luis Gayton, M.D
     2137 East 22nd Street
     Brownsville, Texas 78520
     (956) 548-7400
     *Dr. Gayton has treated and continues to treat plaintiff Candelario DeLeon as a result of injuries sustained in the incident occurring on or after December 24, 1998. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

12.  James C. Garnott, Ph.D., Forensic Toxicologist
     16031 Oak Grove
     San Antonio, Texas 78255
     (210) 695-9520
     *Dr. Garriott is a forensic toxicologist retained by plaintiff to testify as to the blood alcohol level of Candelario De Leon at the time of subject incident and the effects the alcohol would have on his physical and mental capacity. His report was previously provided. His curriculum vitae and fee schedule have been provided. Publications for the past ten years by this expert are contained in his curriculum vitae. A list of depositions and trial testimony for the past four years will be supplemented.*

13   James Henson, EMT
     City of Brownsville E.M.S.
     954 East Madison Street
     Brownsville, Texas 78520
     (956) 541-9491
     *Provided emergency medical treatment to plaintiff. This witness may be called to testify regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity of business records, and the reasonableness and necessity of treatment rendered.*

14.  Agents, representatives, employees and
     custodian of records of
     Internal Revenue Service
     Austin, Texas
     (exact address & phone unknown)
     *These witnesses may be called to testify regarding the authenticity of tax records relating to plaintiff*

-4-

15. Victor Leal, M.D
    30 North Park Place
    Brownsville, Texas 78520
    (956) 542-9118
    *Dr Leal has treated and continues to treat plaintiff Candelario DeLeon as a result of injuries sustained in the incident occurring on or after December 24, 1998 He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

16. Carol P. Lomax
    Branton & Hall, P.C.
    One Riverwalk Place, Suite 1700
    700 N. St. Mary's Street
    San Antonio, Texas 78205
    (210) 224-4474
    *Plaintiff's attorney who may be called to testify regarding the reasonableness and necessity of attorneys' fees incurred by plaintiff as a result of the negligence of defendants.*

17. G Mendoza, E.M.T
    City of Brownsville E.M.S.
    954 East Madison Street
    Brownsville, Texas 78520
    (956) 541-9491
    *Provided emergency medical treatment to plaintiff This witness may be called to testify regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity of business records and the reasonableness and necessity of treatment rendered.*

18. Nagarjun Narra, M.D.
    Brownsville Medical Center
    1048 West Jefferson Street
    Brownsville, Texas 78528
    (956) 544-1400
    *Dr Narra diagnosed and treated plaintiff Candelario DeLeon for his spinal cord injuries. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

19      Philip Onghai, M.D.
        Brownsville Medical Center
        1048 West Jefferson Street
        Brownsville, Texas 78520
        (956) 544-1400
        *or*
        Medical Billing Services
        302 Kings Highway, Suite 210
        Brownsville, Texas 78521
        (956) 982-0400
        *Dr. Onghai diagnosed and treated plaintiff Candelario DeLeon for his spinal cord injuries.*
        *He may be called to testify regarding plaintiff's injuries and damages. He may be called to*
        *testify regarding the reasonableness and necessity of past and future medical treatment*
        *rendered and to be rendered to plaintiff as a result of subject incident. He or his custodian*
        *of records may also be called to testify regarding the authenticity of his business records.*

20.     Officer Alex Ortiz
        c/o Brownsville Police Department
        600 East Jackson Street
        Brownsville, Texas 78520
        (830) 548-7000
        *This officer was one of the investigating and or arresting officers involved in the detainment*
        *and arrest of plaintiff. He may be called to testify regarding the scene of the accident,*
        *injuries and damages resulting therefrom, the detainment, transfer and treatment of plaintiff*
        *while under detainment by the City of Brownsville. He may also be called to testify*
        *regarding the authenticity of business records, photographs and other demonstrative*
        *evidence originated a result of subject incident.*

21.     Nick Peters, M.D.
        2300 Marie Curie Road
        Garland, Texas 75042
        (972) 562-8541
        *Dr. Peters is a board certified Emergency Medicine physician retained by plaintiffs to review*
        *the medical treatment provided to Candelario De Leon while a patient at Columbia Valley*
        *Regional Medical Center. His mental impressions and opinions are contained in his report*
        *of November 10, 2000, previously attached. His curriculum vitae and fee schedule has been*
        *attached. Lists of publications for the past ten years and testimony, whether by deposition*
        *or trial for the past four years, have been requested and will be supplemented.*

22.     Chief Beningo Reyna
        c/o Brownsville Police Department
        600 East Jackson Street
        Brownsville, Texas 78520
        (956) 548-7000
        *Chief Reyna may be called to testify regarding the facts and circumstances relevant to subject incident and the polices of the police department in handling detainees who are injured. He may also be called to testify regarding the authenticity of business records, photographs and other demonstrative evidence originated by or for defendants as a result of subject incident.*

23.     Commander Albert Rodriguez
        11017 Crossland
        Austin, Texas 78726
        (512) 424-2218
        *Commander Rodriguez is Director of Training for the Texas Department of Public Safety and has been retained as an expert to testify regarding the police officers' actions during the arrest and detainment of Candelario De Leon beginning on December 24, 1998. His mental impressions and opinions are contained in his report which has been provided. His curriculum vitae has also been provided. Lists of his publications of the last ten years and testimony at deposition and trial for the past four years have been ordered and will be supplemented upon receipt.*

24.     P. Rojas, EMT
        City of Brownsville E.M.S.
        954 East Madison Street
        Brownsville, Texas 78520
        (956) 541-9491
        *Provided emergency medical treatment to plaintiff. This witness may be called to testify regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity of business records, and the reasonableness and necessity of treatment rendered.*

25.     Rey Rosat, EMT
        City of Brownsville E.M.S.
        954 East Madison Street
        Brownsville, Texas 78520
        (956) 541-9491
        *Provided emergency medical treatment to plaintiff. This witness may be called to testify regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity of business records, and the reasonableness and necessity of treatment rendered.*

26.     Zeff Ross, FACHE
        10213 Capri Street
        Cooper City, Florida 33026-4637
        (954) 433-7199
        *Mr Ross is a retained expert who is a certified healthcare executive and Fellow in the American College of Healthcare Executives. He is currently the Administrator of a hospital in Florida. Mr Ross will be called to testify regarding hospital policies and procedures to ensure healthcare providers meet the standard of care in the treatment of its patients. His curriculum vitae and fee schedule have been provided. His report has also been provided. He will testify regarding the care and treatment rendered by Columbia Valley Regional Medical Center. He may also testify regarding Stat Physicians and the hospital's policies and procedures for selecting and hiring physicians. His fee schedule has been provided. His list of testimony for the past four years is attached.*

27.     Homayon Sidiq, M.D
        2137 East 22nd Street
        Brownsville, Texas 78521
        (956) 548-7400
        *Dr Sidiq diagnosed and treated and continues to treat plaintiff Candelario DeLeon for his spinal cord injuries. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

28.     Jeremy Slater, M.D
        St. John's Physicians & Clinics
        3231 South National Avenue
        Springfield, Missouri 65807-7396
        (417) 883-7422
        *Dr Slater is a Board Certified Neurologist retained by plaintiffs. His mental impressions and opinions are contained in his report previously provided. His curriculum vitae and fee schedule have also been provided. Lists of his publications for the past ten years and testimony, by deposition and at trial for the past four years, have been ordered and will be supplemented.*

29.     Khalid R. Solija, M.D.
        109 East Price Road
        Brownsville, Texas 78520
        (956) 546-5237
        *Dr Solija has treated and continues to treat plaintiff Candelario DeLeon as a result of injuries sustained in the incident occurring on or after December 24, 1998. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding*

*the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records*

30.    Andre S. Torres, Jr.
       c/o Brownsville Police Department
       600 East Jackson Street
       Brownsville, Texas 78520
       (830) 548-7000
       *This officer was one of the investigating and/or arresting officers involved in the detainment and arrest of plaintiff. He may be called to testify regarding the scene of the accident, injuries and damages resulting therefrom, the detainment, transfer and treatment of plaintiff while under detainment by the City of Brownsville. He may also be called to testify regarding the authenticity of business records, photographs and other demonstrative evidence originated by or for defendants as a result of subject incident*

31.    Maria C. Uribe, M.D.
       Brownsville Medical Center
       1048 West Jefferson Street
       Brownsville, Texas 78528
       (956) 544-1400
       *Dr. Uribe diagnosed and treated plaintiff Candelario DeLeon for his spinal cord injuries. She may be called to testify regarding plaintiff's injuries and damages. She may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. She or her custodian of records may also be called to testify regarding the authenticity of his business records.*

32.    Anant Utturkar, M.D.
       Brownsville Medical Center
       1048 West Jefferson Street
       Brownsville, Texas 78528
       (956) 544-1400
       *Dr. Utturkar diagnosed and treated plaintiff Candelario DeLeon for his spinal cord injuries. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

33.  Agents, employees, representatives,
     healthcare providers and
     custodian of records of
     Valley Grande Manor Nursing Home
     901 Wild Rose Lane
     Brownsville, Texas 78520
     (956) 546-4568
     *These witnesses may be called to testify regarding the care required by plaintiff Candelario De Leon as a result of injuries he sustained in subject incident. They may also be called to testify regarding the reasonableness and necessity of treatment rendered and to be rendered in the future plaintiff. They may be called to testify regarding the authenticity of their business records*

34.  Jose Luis Villalobos, M.D.
     864 Central Boulevard
     Brownsville, Texas 78520
     (956) 546-3595
     *Dr. Villalobos has treated and continues to treat plaintiff Candelario DeLeon as a result of injuries sustained in the incident occurring on or after December 24, 1998. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the reasonableness and necessity of past and future medical treatment rendered and to be rendered to plaintiff as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records*

35.  Alex C. Willingham, M.D.
     Rehabilitation Professional Consultants, Inc.
     5101 Medical Drive
     San Antonio, Texas 78229
     (210) 615-7772
     *Dr. Willingham is a Physical Medicine and Rehabilitation physician, retained by plaintiff to prepare a Life Care Plan for Candelario De Leon. He has assessed the activities of daily living and medical needs of Candelario De Leon for the rest of his life expectancy. His report, curriculum vitae and fee schedule have been provided. Publications for the past ten years by this expert are contained in his curriculum vitae. A list of depositions and trial testimony for the past four years has also been provided*

Plaintiff reserves the right to call all expert witnesses previously and subsequently designated by all parties to this lawsuit.

Respectfully submitted,

By: _____
CAROL P. LOMAX
State Bar No. 12509100
Federal I.D. No. 13464
BRANTON & HALL, P.C.
One Riverwalk Place, Suite 1700
700 North St. Mary's Street
San Antonio, Texas 78205
(210) 224-4474
(210) 224-1928 (Fax)

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been forwarded by certified mail return receipt requested, on this ___ day of _____, 2001, to:

Ryan Henry
Eileen M. Leeds
WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, Texas 78521

ATTORNEYS FOR DEFENDANTS,
CITY OF BROWNSVILLE, TEXAS and
BENIGNO REYNA IN HIS OFFICIAL
CAPACITY AS CHIEF OF POLICE
FOR THE CITY OF BROWNSVILLE


Tyler Scheuerman
UZICK & ONCKEN, P.C.
8200 IH 10 West, Suite 208
San Antonio, Texas 78230
ATTORNEYS FOR DEFENDANTS,
STAT PHYSICIANS, P.A. and
JOAO DOVALE, M.D.


William Gault
Paul Fourt
BRIN & BRIN, P.C.
1325 Palm Blvd., Suite A
Brownsville, Texas 78520
ATTORNEYS FOR DEFENDANTS
COLUMBIA VALLEY HEALTHCARE
SYSTEM, L.P. D/B/A VALLEY
REGIONAL MEDICAL CENTER AND
HCA-THE HEALTHCARE COMPANY

CAROL P. LOMAX

-12-

Zeff Ross, FACHE
10213 Capri St.
Cooper City, FL   33026-4637

## PAST CASES

Bruce Rosenberg, DO vs. Universal Medical Center
Expert for the Defense
Deposed: April 2, 1993

Atkins vs. Universal Medical Center
Expert for the Defense
Deposed: September 8, 1994

Alicia M. Dromgoole vs. Doctors Hospital of Laredo and Hector Hermandez
Expert for the Defense
Deposed: May 3, 1995
Testified: December 14, 1995

Marie Arnette and Reginald D. Arnette vs. Timothy G. Day, M.D.et al.,
  Angelia Michelle Davidson and Charles Wayne Davidson vs. Timothy G. Day, M.D. et al.,
  Charles Bentley et al. vs McKowen, et. al.
Expert for the Plaintiff
Deposed: January 13, 1997

Richard Barringer vs. Baptist Healthcare of Oklahoma, Inc. d/b/a Blackwell Regional Hospital
Expert for the Plaintiff
Deposed: October 1, 1997

Morgan vs. Wiregrass Hospital and Nursing Home and Quorum Healthcare, Jeff Sheppard, Dr.
Arnold and Dr. John Martin
Expert for the Plaintiff
Deposed: November 16, 1998

Lorene Wallace vs. Baptist Memorial Healthcare Corporation
Expert for the Plaintiff
Deposed, June 14, 1999

Darlene Doty vs. Columbia HCA Healthcare d/b/a Columbia Southwest Regional Medical
Center
Expert for the Plaintiff
Deposed: September 30, 1999
Videotape Deposition: January 26, 2000

Zeff Ross, FACHE
10213 Capri St.
Cooper City, FL   33026-4637

---

## PAST CASES (Cont.)

Ben Farbstein, Esq.
Domestic Case
Broward County, Florida
Testimony: January 28, 2000

Lawrence Carter vs. Rolling, M.D., et. al.
Expert for the Plaintiff
Deposed: August 23, 1999
Testimony: January 31, 2000

Pamela J. Ghormley vs. Luis Barandiaran, M.D.,
   Judith E. Holt, CRNA & Bay Area Healthcare Group, LTD
   d/b/a Columbia Bay Area Medical Center
Expert for the Plaintiff
Deposed: December 27, 2000

Jesus Urdiales vs. Peggy Robinson, CRNA & Mercy Regional Medical Center, Texas
Expert for the Plaintiff
Deposed: January 15, 2001

8/22/01

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CANDELARIO DE LEON, | § | |
| | § | COMPLAINT FOR DAMAGES FOR VIOLATIONS |
| Plaintiff, | § | OF CIVIL RIGHTS UNDER COLOR OF STATE |
| | § | LAW (42 U.S.C. §§ 1983) |
| VS. | § | |
| | § | CIVIL ACTION NO. CV-B-00-192 |
| CITY OF BROWNSVILLE, TEXAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S OBJECTIONS AND ANSWERS TO DEFENDANT COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P. D/B/A VALLEY REGIONAL MEDICAL CENTER'S INTERROGATORIES

TO:    COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P. D/B/A VALLEY REGIONAL MEDICAL CENTER, by and through their attorneys of record, William Gault and Paul Fourt, BRIN & BRIN, P.C., 1235Palm Blvd., Suite A, Brownsville, Texas 78520

COMES NOW Plaintiff CANDELARIO DE LEON and  pursuant to FED. R. CIV. P. 33,

serves the following Answers to Interrogatories propounded by Defendant, COLUMBIA VALLEY

HEALTHCARE SYSTEM, L.P. D/B/A VALLEY REGIONAL MEDICAL CENTER.

Respectfully submitted,

By: _____
CAROL P. LOMAX
State Bar No. 12509100
Federal I.D. No. 13464
BRANTON & HALL, P.C.
One Riverwalk Place, Suite 1700
700 North St. Mary's Street
San Antonio, Texas 78205
(210) 224-4474
(210) 224-1928 (Fax)

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been forwarded by certified mail return receipt requested, on this 22nd day of June , 2001, to:

**REGULAR MAIL**      Ryan Henry
                    WILLETTE & GUERRA, L.L.P.
                    International Plaza, Suite 460
                    Brownsville, Texas 78521

                    ATTORNEYS FOR DEFENDANTS,
                    CITY OF BROWNSVILLE AND
                    CHIEF OF POLICE, BENINGO REYNA


**REGULAR MAIL**      Tyler Scheuerman
                    UZICK & ONCKEN, P.C.
                    8200 IH 10 West, Suite 208
                    San Antonio, Texas 78230

                    ATTORNEYS FOR DEFENDANTS,
                    STAT PHYSICIANS, P.A. and
                    JOAO DOVALE, M.D.


**CERTIFIED MAIL**    William Gault
                    Paul Fourt
                    BRIN & BRIN, P.C.
                    1325 Palm Blvd., Suite A
                    Brownsville, Texas 78520

                    ATTORNEYS FOR DEFENDANTS
                    COLUMBIA VALLEY HEALTHCARE
                    SYSTEM, L.P. D/B/A VALLEY
                    REGIONAL MEDICAL CENTER AND
                    HCA-THE HEALTHCARE COMPANY

                                    CAROL P. LOMAX

G:\WPFILES\FILES CLT'D\DEL9827\DISC\CVHSANS ROG

## PLAINTIFF'S OBJECTIONS AND ANSWERS TO INTERROGATORIES

### INTERROGATORY NO. 1:

Please state your name, address, phone number, date of birth, social security number, drivers license number and state of issuance.

### ANSWER:

| | |
|---|---|
| Name: | Candelario Valentin De Leon |
| Address: | Valley Grande Manor Nursing Home |
| | 901 Wild Rose Lane |
| | Brownsville, Texas 78520 |
| Phone: | (956) 546-4568 |
| DOB: | June 15, 1941 |
| SS#: | 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 |
| TDL#: | 11804985 - issued by State of Texas, now expired |

### INTERROGATORY NO. 2:

State your specific legal contentions as to how this Defendant is liable to Plaintiff and the factual basis for those claims.

### ANSWER:

Plaintiff objects to Interrogatory No. 2 to the extent that this interrogatory asks the Plaintiff to express legal conclusions and contentions. Without waiving this objection, Defendant held itself out to the community in general, and to Plaintiff to have competent healthcare providers and adequate facilities. Defendant hospital represented that its employees were its agents and thereby caused Plaintiff to justifiably rely upon their care and skills. Defendant is liable to Plaintiff for the harm caused by the lack of care or skill of its employees appearing to be servants or agents. Defendant hospital created the appearance that the employees were agents of the hospital and would provide medical care. Defendant represented that its medical care providers were skilled, competent and duly licensed to provide medical care, creating agency by estoppel.

Defendant hospital is vicariously liable for the negligent acts of its employees who were acting in the course and scope of their employment at the time of subject incident. Defendant exerted actual control and authority as well as the right to control the activities of its employees.

Defendant, by and through its actual and ostensible agents, employees, vice principals and borrowed servants and independent contractors, failed to provide the care that a prudent hospital of the same or similar level would provide. Defendant failed to ensure a neurological examination was performed on Candelario De Leon at the time of his arrival to the hospital, despite his informing the physician that he could not feel his arms and legs and could not stand. Defendant, by and through

-3-

its employees and borrowed servants, failed to follow appropriate policies and procedures with regard to the assessment and treatment of emergency room patients presenting with circumstances and complaints strongly suggestive of the necessity to assess a possible spinal cord injury. Defendant, by and through its agents, employees and borrowed servants, failed to provide appropriate personnel to carry out the policies and procedures of the emergency room. Defendant failed to provide adequate care and treatment to Plaintiff, causing him to sustain serious, debilitating injuries, resulting in Plaintiff remaining a quadriplegic for the remainder of his lifetime.

Please also refer to Plaintiff's pleadings on file herein.


## INTERROGATORY NO. 3:

State the specific legal contentions as to how this Defendant claimed liability proximately caused any injuries and the factual basis for those claims.

## ANSWER:

See objection and Answer to Interrogatory No.2 which are incorporated by reference.


## INTERROGATORY NO. 4:

State your specific legal contentions as to how you claim this Defendant is liable for the acts of the co-defendants and the factual basis for those claims.


## ANSWER:

See objection and Answer to Interrogatory No. 2 which are incorporated by reference. Further, Defendant hired Dr. Dovale, M.D., as a contract employee for the medical center where the treatment was rendered without adequate reference checks and evaluating of his ability to serve as an Emergency Room physician..


## INTERROGATORY NO. 5:

State your specific legal contentions as to how Co-Defendants are liable to Plaintiff and the factual basis for those claims.

## ANSWER:

Please refer to objection and Answer to Interrogatory No. 2 which are incorporated by reference.

## INTERROGATORY NO. 6:

If you are contending that this Defendant is liable to Plaintiff with regards to the treatment provided in connection with the incident made the basis of this suit, describe in what way the treatment was deficient, specify the source or authority for any written standard of care which was allegedly violated, and state how you contend this Defendant varied from the customary standard of care in connection with the medical treatment provided.

## ANSWER:

Plaintiff objects to Interrogatory No. 6 to the extent that it asks him to express medical opinions which are contained in his medical records. Please also refer to objection and Answer to Interrogatory No. 2 which are incorporated by reference.

## INTERROGATORY NO. 7:

For the past (10) years, state the name, address, and telephone number of each doctor, chiropractor, psychologist, psychiatrist, counselor or clergyman or other healer who has examined or treated you for any injury, sickness or stress, mental or physical, and also state the nature of each injury and the sickness treated by each doctor, chiropractor, psychologist psychiatrist, counselor or clergyman, or other healer.

## ANSWER:

Plaintiff objects to Interrogatory No. 7 in that it is overly broad, burdensome and global. Subject to that objection and without waiving same, Plaintiff will provide Defendant the names of those healthcare providers whom he has seen in the past five (5) years with respect to injuries suffered in the accident made the basis of this lawsuit.

As a result of injuries sustained in subject incident, plaintiff has been treated by the following healthcare providers:

1.      Jose Luis Ayola, M.D.
        500 Paredes Line Road, Suite 4
        Brownsville, Texas 78520
        (956) 456-4119


2.      Brownsville Medical Center
        1048 West Jefferson Street
        Brownsville, Texas 78520
        (956) 544-1400

-5-

3.    City of Brownsville E.M.S.
      954 East Madison Street
      Brownsville, Texas 78520
      (956) 541-9491

4.    Joao Dovale, M.D.
      1102 West Trenton Road
      Edinburg, Texas

5.    Luis Gayton, M.D.
      2137 East 22nd Street
      Brownsville, Texas 78520
      (956) 548-7400

6.    Victor Leal, M.D.
      30 North Park Place
      Brownsville, Texas 78520
      (956) 542-9118

7.    Nagarjun Narra, M.D.
      Brownsville Medical Center
      1048 West Jefferson Street
      Brownsville, Texas 78528
      (956) 544-1400

8.    Philip Onghai, M.D.
      Brownsville Medical Center
      1048 West Jefferson Street
      Brownsville, Texas 78520
      (956) 544-1400
      Homayon Sidiq, M.D.
      2137 East 22nd Street
      Brownsville, Texas 78521
      (956) 548-7400

9.    Khalid R. Solija, M.D.
      109 East Price Road
      Brownsville, Texas 78520
      (956) 546-5237

10.   Maria C. Uribe, M.D.
      Brownsville Medical Center
      1048 West Jefferson Street
      Brownsville, Texas 78528
      (956) 544-1400

11.   Anant Utturkar, M.D.
      Brownsville Medical Center
      1048 West Jefferson Street
      Brownsville, Texas 78528
      (956) 544-1400

12.   Valley Grande Manor Nursing Home
      901 Wild Rose Lane
      Brownsville, Texas 78520
      (956) 546-4568

13.   Jose Luis Villalobos, M.D.
      864 Central Boulevard
      Brownsville, Texas 78520
      (956) 546-3595

## INTERROGATORY NO. 8:

State the hospital name, address and telephone number, date of admission and reason for each of your past hospitalizations, if any.

## ANSWER:

Plaintiff objects to Interrogatory No. 8 in that it is overly broad, global and burdensome. Subject to this objection and without waiving same, Plaintiff will and has provided in Answer to Interrogatory No. 7 the names of healthcare providers and hospitals which are related to the injuries suffered in the accident made the basis of this lawsuit.

## INTERROGATORY NO. 9:

Regarding your employment for the last 7 years at any time, please state the name, complete address and telephone number of your employer or past employers, your rate of pay and average weekly wage and the length of time and dates employed.

## ANSWER:

Plaintiff has been unemployed since December 25, 1998, as a result of injuries he sustained in

-7-

subject incident. Plaintiff was doing piece work as a welder earning $80.00 per day for Pete Hurley prior to this incident. Prior to working for Mr. Hurley, Plaintiff was employed by Gulf Port Services in Brownsville and Mexico, earning $6.40 per hour, working approximately 50-60 hours per week. Plaintiff earned time and a half for hours over 40. He was employed by Gulf Port Services for the time period of 1994-1997. Plaintiff was employed from 1976-1994 for Itapsco earning $750.00 per week. During this time period, Itapsco was formerly referred to Dixixub, Kimling, Stote, and then Itapsco. This company was out of Brownsville.

## INTERROGATORY NO. 10:

If, with any entity you have entered into any type of settlement agreement, loan agreement, agreement (or conducting of trail herein), which affects or limits the financial liability or entitlements of any party in this case, please describe such agreement in detail. NOTE: The Term "party" includes the liability or indemnity insurance carrier for any named party to this cause.

## ANSWER:

None.

## INTERROGATORY NO. 11:

As to each element of damages which you are claiming or expect to claim in this case, state the amount of money which you contend it would take, if paid in case [sic], to reasonably and fairly compensate each plaintiff.

## ANSWER:

Plaintiff objects to Interrogatory No. 11 to the extent it requires him to make a statement in terms of dollars and cents as to the amount sued for on general damages and to itemize that. Subject to an objection and without waiving same, with respect to the amount of general damages, Plaintiff would refer Defendant to Plaintiff's Original Complaint.

## INTERROGATORY NO. 12:

Please state completely and fully all statements, declarations or admissions allegedly made by the party propounding these interrogatories, or any purported agent, servant or employee of such party, which you might attempt to make known to the judge or jury in the trial of this lawsuit, the location or locations where the statement or statements were made, the name, address and telephone number of the person or persons in whose presence such statement or statements were made and whether you or anyone acting on your behalf obtained statements in any form from any person who claims to be able to testify to the statement or statements made.

**ANSWER:**

Plaintiff objects to the overly broad and burdensome nature of this interrogatory in that it is more appropriate subject matter for deposition. Without waiving this objection, discovery is in its infancy and this will be supplemented by either providing this information by supplementation this Interrogatory, or by deposition testimony.

**INTERROGATORY NO. 13:**

Please list every expense which you have or will incurred [sic] which is based on the claims in this suit.

**ANSWER:**

Plaintiff objects to this Interrogatory to the extent he is not required to itemize elements of special damages. Without waiving this objection, Plaintiff has incurred extensive medical and nursing home expenses as a result of subject incident. Plaintiff currently resides in Valley Grande Manor Nursing Home in Brownsville, Texas, and continues to see numerous physicians on a regular basis. His expenses are ongoing.

**INTERROGATORY NO. 14:**

Excluding the instant suit, if you have been a party to a lawsuit or criminal complaint or information or have ever filed a claim before, please state the Court the suit was filed and the cause number and style of this suit the nature of the case.

**ANSWER:**

None prior to this lawsuit.

**INTERROGATORY NO. 15:**

Identify any and all liens or subrogation interest filed, presented or known to Plaintiff or Plaintiff's agents or attorneys arising from or concerning any health care, medical care, nursing care, or hospital care afforded to Plaintiff that is related to the occurrence made the basis of this suit. In answer this interrogatory, please identify the name and address of each lienholder or the person or entity claiming a subrogation interest, together with the monetary amount claimed and if filed or record, the office and county of recording. Your answer to this interrogatory should identify all lienholders and subrogation claimants together with all local, state and federal governmental agencies asserting subrogation status, including medicare or medicaid and any hospital liens and the amount of those liens.

**ANSWER:**

Medicare and Medicaid are assisting Plaintiff with his medical and nursing home needs. These expenses are ongoing.


**INTERROGATORY NO. 16:**

Please state any and all input you or anyone acting on your behalf had in the decision to transport you to Valley Regional Medical Center on December 24, 1998 after your automobile accident. If you did not have any input, please state who did.

**ANSWER:**

None.

**INTERROGATORY NO. 17:**

Please state your legal and factual basis for claiming that this Defendant is grossly negligent or liable for punitive damages.

**ANSWER:**

Plaintiff objects to Interrogatory No. 17 to the extent that this Interrogatory asks Plaintiff to express legal conclusions and contentions. Without waiving these objections, please refer to Plaintiff's pleadings on file herein.


**INTERROGATORY NO. 18:**

As to each consulting expert witness whose work has been reviewed by a testifying expert, provide the name, address and telephone number of such expert, what opinions related to this case, such expert has communicated to your testifying experts and the expert's qualifications.

**ANSWER:**

The healthcare providers as disclosed in Answer to Interrogatory No. 7 may be considered consulting experts. The Answer to Interrogatory No. 7 is incorporated by reference. The only opinion they have expressed to testifying experts would be contained in their medical records.

-10-

STATE OF TEXAS §

COUNTY OF BEXAR §

BEFORE ME, the undersigned authority, on this day personally appeared CANDELARIO *and Maria De Leon* DE LEON, who, after having been duly sworn, stated that the above and foregoing answers to interrogatories are true and correct.

X X *Maria D. De Leon*
CANDELARIO DE LEON

SWORN TO AND SUBSCRIBED before me by the said CANDELARIO DE LEON on this *and Maria De Leon* 22nd day of _June_ , 2001, to certify which, witness my hand and seal of office.

*Phyllis A Burke*
NOTARY PUBLIC, STATE OF TEXAS

PHYLLLIS A. BURKE
MY COMMISSION EXPIRES
September 8, 2002

My commission expires: _____

* *Candelario De Leon signed by "X" Maria De Leon then signed for him.*

PHYLLLIS A. BURKE
MY COMMISSION EXPIRES
September 8, 2002