IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 4 2004

Michael N. Milby.
Clerk of Court

| | | |
|---|---|---|
| CANDELARIO De LEON, | § | |
| | § | COMPLAINT FOR DAMAGES FOR VIOLATIONS |
| Plaintiff, | § | OF CIVIL RIGHTS UNDER COLOR OF STATE |
| | § | LAW (42 U.S.C. §§ 1983) |
| VS. | § | |
| | § | CIVIL ACTION NO. CV-B-00-192 |
| CITY OF BROWNSVILLE, TEXAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S SECOND SUPPLEMENTAL DESIGNATION OF EXPERT WITNESSES**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Plaintiff in the above styled and numbered cause of action, and pursuant to the Court's Scheduling Order, files his Second Supplemental Designation of Expert Witnesses as follows:

1.  Jose Luis Ayola, M.D.
    500 Paredes Line Road, Suite 4
    Brownsville, Texas 78520
    (956) 456-4119
    *Dr. Ayola has treated and continues to treat plaintiff Candelario DeLeon as a result of injuries sustained in the incident occurring on or after December 24, 1998. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the necessity of past and future medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

2.  Dan Bagwell, R.N.
    Rehabilitation Professional Consultants, Inc.
    5101 Medical Drive
    San Antonio, Texas 78229
    (210) 615-7772
    *Mr. Bagwell is a nurse who specializes in the preparation of life care plans. He will assist Dr. Willingham in the preparation of a life care plan for Candelario De Leon. He will assess the activities of daily living and medical needs of Candelario De Leon for the rest of his life expectancy. The Life Care Plan compiled by Alex C. Willingham, M.D. and Dan Bagwell was previously provided. The curriculums vitae and fee schedule of Alex C.*

*Willingham and Dan Bagwell have also been provided. Publications by this expert are contained in his curriculum vitae. A list of deposition and trial testimony for the past four years was previously provided.*

3.    Agents, employees, representatives,
       healthcare providers and
       custodian of records of
       Brownsville Medical Center
       1048 West Jefferson Street
       Brownsville, Texas 78520
       (956) 544-1400
       *These witnesses may be called to testify regarding the injuries and damages sustained by plaintiff as a result of subject incident. They may be called to testify regarding the necessity of past and future medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident. They may also be called to testify regarding the authenticity of their business records.*

4.    Agents, employees, representatives,
       healthcare providers and
       custodian of records of
       City of Brownsville E.M.S.
       954 East Madison Street
       Brownsville, Texas 78520
       (956) 541-9491
       *Provided emergency medical treatment to plaintiff. These witnesses may be called to testify regarding the necessity of past and future medical treatment rendered and to be rendered to plaintiff and the reasonableness of the expenses as a result of subject incident.*

5.    Agents, employees, representatives,
       healthcare providers and
       custodian of records of
       Columbia Valley Regional Medical Center
       now referred to as Valley Regional Medical Center
       100 A. E. Alton Gloor
       Brownsville, Texas
       (956) 350-7000
       *These witnesses may be called to testify regarding treatment rendered to Candelario De Leon while a patient at their facility. They may also be called to testify regarding the authenticity of their business records and may be called to testify regarding the necessity of past and future medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident.*

6.  Joao Dovale, M.D.
    1102 West Trenton Road
    Edinburg, Texas
    *Defendant who provided treatment to plaintiff while a patient at Columbia Valley Regional Medical Center who will be called to testify regarding that treatment.*

7.  S. Fonseca, EMT
    City of Brownsville E.M.S.
    954 East Madison Street
    Brownsville, Texas 78520
    (956) 541-9491
    *Provided emergency medical treatment to plaintiff. This witness may be called to testify regarding the reasonableness and necessity of medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident.*

8.  Luis Gayton, M.D.
    2137 East 22nd Street
    Brownsville, Texas 78520
    (956) 548-7400
    *Dr. Gayton has treated and continues to treat plaintiff Candelario DeLeon as a result of injuries sustained in the incident occurring on or after December 24, 1998. He may be called to testify regarding the necessity of past and future medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

9.  James C. Garriott, Ph.D., Forensic Toxicologist
    16031 Oak Grove
    San Antonio, Texas 78255
    (210) 695-9520
    *Dr. Garriott is a forensic toxicologist retained by plaintiff to testify as to the blood alcohol level of Candelario De Leon at the time of subject incident and the effects the alcohol would have on his physical and mental capacity. His report was previously provided. His curriculum vitae and fee schedule have been provided. Publications for the past ten years by this expert are contained in his curriculum vitae. A list of depositions and trial testimony for the past four years is attached.*

10. James Henson, EMT
    City of Brownsville E.M.S.
    954 East Madison Street
    Brownsville, Texas 78520
    (956) 541-9491

*Provided emergency medical treatment to plaintiff. This witness may be called to testify regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity of business records, and may be called to testify regarding the necessity of medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident.*

11.    Agents, representatives, employees and
       custodian of records of
       Internal Revenue Service
       Austin, Texas
       (exact address & phone unknown)
       *These witnesses may be called to testify regarding the authenticity of tax records relating to plaintiff.*

12.    Victor Leal, M.D.
       30 North Park Place
       Brownsville, Texas 78520
       (956) 542-9118
       *Dr. Leal has treated and continues to treat plaintiff Candelario DeLeon as a result of injuries sustained in the incident occurring on or after December 24, 1998. He may be called to testify regarding the necessity of past and future medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

13.    G. Mendoza, E.M.T.
       City of Brownsville E.M.S.
       954 East Madison Street
       Brownsville, Texas 78520
       (956) 541-9491
       *Provided emergency medical treatment to plaintiff. This witness may be called to testify regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity of business records, and may be called to testify regarding the necessity medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident.*

14.    Nagarjun Narra, M.D.
       Brownsville Medical Center
       1048 West Jefferson Street
       Brownsville, Texas 78528
       (956) 544-1400
       *Dr. Narra diagnosed and treated plaintiff Candelario DeLeon for his spinal cord injuries. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the necessity of past and future medical treatment rendered to plaintiff and*

*the reasonableness of the expenses as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

15.    Philip Onghai, M.D.
       Brownsville Medical Center
       1048 West Jefferson Street
       Brownsville, Texas 78520
       (956) 544-1400
       *or*
       Medical Billing Services
       302 Kings Highway, Suite 210
       Brownsville, Texas 78521
       (956) 982-0400
       *Dr. Onghai diagnosed and treated plaintiff Candelario DeLeon for his spinal cord injuries. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the necessity of past and future medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

16.    Officer Alex Ortiz
       c/o Brownsville Police Department
       600 East Jackson Street
       Brownsville, Texas 78520
       (830) 548-7000
       *This officer was one of the investigating and/or arresting officers involved in the detainment and arrest of plaintiff. He may be called to testify regarding the scene of the accident, injuries and damages resulting therefrom, the detainment, transfer and treatment of plaintiff while under detainment by the City of Brownsville. He may also be called to testify regarding the authenticity of business records, photographs and other demonstrative evidence originated a result of subject incident.*

17.    Nick Peters, M.D.
       2300 Marie Curie Road
       Garland, Texas 75042
       (972) 562-8541
       *Dr. Peters is a board certified Emergency Medicine physician retained by plaintiffs to review the medical treatment provided to Candelario De Leon while a patient at Columbia Valley Regional Medical Center. His mental impressions and opinions are contained in his report of February 8, 2004, attached hereto. His curriculum vitae as previously provided contains a list of his publications. His fee schedule was previously provided. A list of deposition and trial testimony for the past four years has been requested and will be provided as soon as possible. For further response, please refer to the oral deposition testimony of Dr. Peters.*

18.   Chief Beningo Reyna
      c/o Brownsville Police Department
      600 East Jackson Street
      Brownsville, Texas 78520
      (956) 548-7000
      *Chief Reyna may be called to testify regarding the facts and circumstances relevant to subject incident and the polices of the police department in handling detainees who are injured. He may also be called to testify regarding the authenticity of business records, photographs and other demonstrative evidence originated by or for defendants as a result of subject incident.*

19.   Commander Albert Rodriguez
      11017 Crossland
      Austin, Texas 78726
      (512) 424-2218
      *Commander Rodriguez is Director of Training for the Texas Department of Public Safety and has been retained as an expert to testify regarding the police officers' actions during the arrest and detainment of Candelario De Leon beginning on December 24, 1998. His mental impressions and opinions are contained in his report which has been provided. His curriculum vitae containing trial testimony and list of publications has been provided.*

20.   P. Rojas, EMT
      City of Brownsville E.M.S.
      954 East Madison Street
      Brownsville, Texas 78520
      (956) 541-9491
      *Provided emergency medical treatment to plaintiff. This witness may be called to testify regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity of business records, and may be called to testify regarding the necessity of medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident.*

21.   Rey Rosat, EMT
      City of Brownsville E.M.S.
      954 East Madison Street
      Brownsville, Texas 78520
      (956) 541-9491
      *Provided emergency medical treatment to plaintiff. This witness may be called to testify regarding treatment provided to plaintiff, injuries and damages he sustained, the authenticity of business records, and may be called to testify regarding the necessity of medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident.*

-6-

22.  Zeff Ross, FACHE
     10213 Capri Street
     Cooper City, Florida 33026-4637
     (954) 433-7199
     *Mr. Ross is a retained expert who is a certified healthcare executive and Fellow in the American College of Healthcare Executives. He is currently the Administrator of a hospital in Florida. Mr. Ross will be called to testify regarding hospital policies and procedures to ensure healthcare providers meet the standard of care in the treatment of its patients. He will testify regarding the care and treatment rendered by Columbia Valley Regional Medical Center. He may also testify regarding Stat Physicians and the hospital's policies and procedures for selecting and hiring physicians. His mental impressions and opinions are contained in his report of February 28, 2003, attached hereto. His curriculum vitae as previously provided contains a list of his publications. His fee schedule was previously provided. A list of deposition and trial testimony for the past four years has been requested and will be provided as soon as possible. For further response, please refer to his oral deposition testimony.*

23.  Homayon Sidiq, M.D.
     2137 East 22nd Street
     Brownsville, Texas 78521
     (956) 548-7400
     *Dr. Sidiq diagnosed and treated and continues to treat plaintiff Candelario DeLeon for his spinal cord injuries. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the necessity of past and future medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

24.  Jeremy Slater, M.D.
     St. John's Physicians & Clinics
     3231 South National Avenue
     Springfield, Missouri 65807-7396
     (417) 883-7422
     *Dr. Slater is a Board Certified Neurologist retained by plaintiffs. His mental impressions and opinions are contained in his report of March 10, 2003, attached hereto. His curriculum vitae as previously provided contains a list of his publications. His fee schedule was previously provided. A list of deposition and trial testimony for the past four years has been requested and will be provided as soon as possible. For further response, please refer to the oral deposition testimony of Dr. Slater.*

25.  Khalid R. Solija, M.D.
     109 East Price Road
     Brownsville, Texas 78520

(956) 546-5237

*Dr. Solija has treated and continues to treat plaintiff Candelario DeLeon as a result of injuries sustained in the incident occurring on or after December 24, 1998. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the necessity of past and future medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

26.   Andre S. Torres, Jr.
      c/o Brownsville Police Department
      600 East Jackson Street
      Brownsville, Texas 78520
      (830) 548-7000
      *This officer was one of the investigating and/or arresting officers involved in the detainment and arrest of plaintiff. He may be called to testify regarding the scene of the accident, injuries and damages resulting therefrom, the detainment, transfer and treatment of plaintiff while under detainment by the City of Brownsville. He may also be called to testify regarding the authenticity of business records, photographs and other demonstrative evidence originated by or for defendants as a result of subject incident.*

27.   Maria C. Uribe, M.D.
      Brownsville Medical Center
      1048 West Jefferson Street
      Brownsville, Texas 78528
      (956) 544-1400
      *Dr. Uribe diagnosed and treated plaintiff Candelario DeLeon for his spinal cord injuries. She may be called to testify regarding plaintiff's injuries and damages. She may be called to testify regarding the necessity of past and future medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident. She or her custodian of records may also be called to testify regarding the authenticity of his business records.*

28.   Anant Utturkar, M.D.
      Brownsville Medical Center
      1048 West Jefferson Street
      Brownsville, Texas 78528
      (956) 544-1400
      *Dr. Utturkar diagnosed and treated plaintiff Candelario DeLeon for his spinal cord injuries. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the necessity of past and future medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

-8-

29.    Agents, employees, representatives,
healthcare providers and
custodian of records of
Valley Grande Manor Nursing Home
901 Wild Rose Lane
Brownsville, Texas 78520
(956) 546-4568
*These witnesses may be called to testify regarding the care required by plaintiff Candelario De Leon as a result of injuries he sustained in subject incident. They may be called to testify regarding the necessity of past and future medical treatment rendered and to be rendered to plaintiff and the reasonableness of the expenses as a result of subject incident. They may be called to testify regarding the authenticity of their business records.*

30.    Jose Luis Villalobos, M.D.
864 Central Boulevard
Brownsville, Texas 78520
(956) 546-3595
*Dr. Villalobos has treated and continues to treat plaintiff Candelario DeLeon as a result of injuries sustained in the incident occurring on or after December 24, 1998. He may be called to testify regarding plaintiff's injuries and damages. He may be called to testify regarding the necessity of past and future medical treatment rendered to plaintiff and the reasonableness of the expenses as a result of subject incident. He or his custodian of records may also be called to testify regarding the authenticity of his business records.*

31.    Alex C. Willingham, M.D.
Rehabilitation Professional Consultants, Inc.
5101 Medical Drive
San Antonio, Texas 78229
(210) 615-7772
*Dr. Willingham is a Physical Medicine and Rehabilitation physician, retained by plaintiff to prepare a Life Care Plan for Candelario De Leon. He has assessed the activities of daily living and medical needs of Candelario De Leon for the rest of his life expectancy. His report, curriculum vitae and fee schedule have been provided. Publications for the past ten years by this expert are contained in his curriculum vitae. A list of depositions and trial testimony for the past four years has also been provided.*

Plaintiff reserves the right to call all expert witnesses previously and subsequently designated

by all parties to this lawsuit.

Zeff Ross, FACHE
10213 Capri St.
Cooper City, FL   33026-4637

February 28, 2003

Ms. Carol P. Lomax
Branton & Hall
One Riverwalk Place
700 N. St. Mary's St., Ste. #1700
San Antonio, TX   78205

RE:  Candelario De Leon

Dear Ms. Lomax:

I, Zeff Ross, am a Certified Healthcare Executive and Fellow in the American College of Healthcare Executives and I am currently the Administrator of Memorial Hospital West in Florida.  My Curriculum Vitae is attached to this report, which further details my qualifications. With regard to the above referenced matter, I have reviewed the following information:

- Texas Peace Officer's Report of the accident - December 24, 1998
- The Medical Records of Columbia Valley Regional Medical Center
- The Medical Records of Brownsville Medical Center
- The City of Brownsville EMS Reports
- The Report of Nick Peters, M.D.
- The Report of Jeremy Slater, M.D.

Mr. Candelario De Leon is a 57 year old male who was brought to the Columbia Valley Regional Medical Center emergency department on December 24, 1998 by the City of Brownsville EMS ambulance after a motor vehicle accident.  According to the ambulance report, the patient was found sitting on the driver's seat of a small red car which had sustained moderate damage to the front end.  The EMS notes states, "Per patient, he was the driver, unrestrained with no loss of consciousness."  The narrative notes from EMS indicate "Patient smelled highly of alcohol and stated he had been drinking but unknown what or how much".  The patient was alert and oriented x 1, possibly due to alcohol.  The patient received neck spine immobilization, was extricated and placed on a backboard and while on route to the hospital, the patient complained of numbness from the neck down.  The emergency department record indicates that the ER physician documented that the patient was "obviously drunk - awake and alert".  The examination findings documented for the eyes, heart, lung and abdomen were normal with no findings recorded for the

Ms. Carol P. Lomax
February 28, 2003

-2-

neurological examination or extremities. The patient received one staple to a forehead laceration and was then discharged to the custody of the police. No further testing, including cervical spine x-rays, CT or MRI were performed. The patient then spent the night in the city jail. The following morning, the patient was brought to Brownsville Medical Center complaining of the inability to move. According to the Ambulance Activity Report dated December 25, 1998 back pain was suspected with the patient complaining of the pain to arms and numbness throughout the body. Patient stated he was unable to walk due to the numbness in his body. He was transported to Brownsville Medical Center for further evaluation and under the History and Physical examination, it was noted that the patient was apparently in a motor vehicle accident last night at 9:00 p.m. The patient was brought in this morning from jail as he was complaining of the inability to move. He spent all night on the cold, concrete floor complaining of pain to his back. Patient states he was unable to get out of his car and felt numb since last night, that he "can't move legs". Patient had a c-collar applied, put onto the backboard, x-rays were performed, and when the patient returned from x-ray, it was noted that the c-collar was off per the x-ray technician and then reapplied. Later that day an MRI was also performed.

According to the consultant's notes, it was noted that immediately after the accident, the patient complained of having numbness in both extremities. He was seen at Valley Regional Medical Center and was incarcerated afterwards for drunk driving. During the whole night, the patient complained of decreased movements of his lower extremities and on waking up this morning, felt more weakness, including the upper extremities. The patient was sent to Brownsville Medical Center from jail to be evaluated. Spinal x-rays were performed including cervical, thoracic, lumbar and all reported normal by the radiologist. The neurologist requested a neurosurgical consult and an MRI was also performed.

The standard of care for Columbia Valley Regional Medical Center would have been to perform a complete neuro exam on Mr. DeLeon at the time of his initial presentation to their facility. It should be noted that according to the Joint Commission on Accreditation of Healthcare Organizations (JCAHO), Assessment of Patients, August 1997, Page PE-1, "The goal of the patient assessment function is to determine what kind of care is required to meet a patient's initial needs." The intent of the Standards regarding assessment (Page PE-6) is such that "When a patient enters the hospital service, staff members first need to find out the reason why the patient was admitted. The initial assessment takes into account the patient's immediate and emergent needs and considers those needs broadly. This initial assessment helps staff determine what care the patient needs as well as any further assessments. The information gathered at the first patient contact may indicate that the patient needs a broader or more detailed assessment."

Ms. Carol P. Lomax
February 28, 2003

-3-

It is my opinion, as an expert in hospital administration and after reviewing the information previously noted, as well the Joint Commission on Accreditation of Healthcare Organizations (JCAHO) Comprehensive Accreditation Manual for Hospitals; The Official Handbook, and based on a reasonable degree of hospital administrative certainty, that Columbia Valley Regional Medical Center deviated from the standard of care by failing to provide for a complete neurological examination on Mr. De Leon at the time of his initial presentation to their facility. The mechanism of injury indicated a high index of suspicion for the type of injury he received. In addition, the EMS personnel noting the patient's complaints of numbness from the neck down were relatively clear indications to not only fully assess the patient for possible cervical cord injury, but as well to consider activating a trauma alert, which according to the hospital's definition, is a "potentially life threatening injury with vital signs presently stable." However, this was not done and as such, the possibility of early treatment of his injuries, which could have decreased any long term neurological deficit, was lost.

Based on a reasonable degree of hospital administrative certainty, it is my opinion that the hospital did not implement such policy and procedures as any reasonably prudent facility would have done under similar circumstances.

I reserve the right to review additional emergency department/trauma policies and procedures, as well as medical staff bylaws and rules and regulations to help further formulate my opinion in the future.

Should you require additional information or have questions regarding any of the above, please feel free to contact me.

Sincerely,

Zeff Ross, FACHE

ZR/laf

# Zeff Ross, FACHE

10213 Capri Street
Cooper City, Florida  33026-4637
(954) 433-2525 (Home)
(954) 433-7199 (Work)

**EXPERIENCE:**

**April 1991     ADMINISTRATOR**
**- Present     Memorial Hospital West (236 Beds), Pembroke Pines, Florida**

Major Accomplishments include:

**I.   Development & Operations:**

. Planned for, operating and managing the hospital since its inception.  (Opened with 100 beds.)

. Coordinated recruitment activities for management staff and over 300 employees in preparation of opening. Implemented orientation and guest relations programs for all staff.  Expanded staff to over 1,500 FTE's.

. Operated the hospital from opening day without using any agency nurses.

. Implemented patient-focused care by incorporating Patient Assistant Liaisons (PALS) to help provide increased continuity of care to patients with crosstraining of many employees; implemented open visitation hours for patients.

. Successfully implemented and continually support the Memorial 21st Century Excellence Program for total quality management.

. Recently completed the 2002 Joint Commission on Accreditation of Healthcare Organizations Survey receiving a grid score of 97 and a full three year accreditation.

. Proactively implemented a reengineering program to cost effectively meet the challenges of the future in providing quality care with high patient satisfaction.

. Implemented the following new services/programs: diagnostic cardiac catheterization;  invitro fertilization; diabetes center; Neonatal ICU Level II;  child care program through an affiliation with the City of Pembroke Pines; cable television via satellite dishes; ambulatory surgical facility; fitness & rehab center; comprehensive cancer center; a parking garage and a women's center.

. Purchased the medical office building located on the hospital's campus.  Successfully increased the occupancy rate from 83% to 100%.  Built an additional medical office building, and preleased it 100%.

. Implemented activities to secure additional medical office space offsite from the campus of Memorial Hospital West in an effort to integrate primary care offices with the hospital.

Zeff Ross
Resume                                                                                                      Page 2

- Participated in the development, implementation and operation of the Memorial Integrated Healthcare System (IPA's), Medical Management Services Organization (MSO), and Physician Hospital Organization (PHO). Also participated in closing the MSO!

- Completed the first Employee Opinion Survey of Memorial Hospital West after two years of operation with Administration receiving high accolades from the employees for our commitment to quality patient care, to the employees, to the volunteers, and to the community. Continue performing these every other year.

- Established a community network providing educational seminars, health screenings, and community health fairs; Partner in Education with local schools, member of civic and community organizations.

- Exceeded the operating budget each year with regard to number of admissions, births, surgeries, patient revenues, payor mix, outpatient procedures, emergency department visits, and excess of revenues over expenses. Exceeded established fiscal objectives each year by greater than 20%/yr. for initial four years of operation, and by 15%/yr. for next six years.

## II.  Medical Staff Organization:

- Development of the medical staff organization, committee structure and credentialing activities.

- Developed, with medical staff input, the initial medical staff bylaws, rules and regulations, individual department rules and regulations, as well as the specified health professional rules and regulations.

- Implemented critical pathways developed by the medical staff and created new programs for the medical staff to help reduce resource consumption (i.e., dissemination of reimbursement and cost information as compared to other physicians in the same specialty with the same DRG's).

- Recruitment of primary and specialty medical staff to the hospital. Increased medical staff membership from the initial 461 physicians to over 700 physicians in the third year, and greater than 850 currently on staff. Developed a physician orientation book for new physician members of the Medical Staff.

## III.  Construction:

- Participated in the coordination efforts to ensure construction of the 100-bed facility was completed on time and within budget.

- Completed five year master site facility plan and began implementation of Phase I building activities (totaling $20 million dollars) which includes: the expansion of the outpatient, emergency, maternity, laboratory and pharmacy departments and the construction of a Same Day Surgery Center, helistop, fitness & rehabilitation center, a 16-bed observation unit, a radiation therapy center, and a women's center. Implemented new 10 year master site facility plan and completed Phase I building activities (totaling $35 million dollars) which includes: the building of a Comprehensive Cancer Center, a parking garage (1,412 spots), and three additional patient floors. Began implementation of next phase (totalling $30 million) including expansion of the emergency department, surgical services, imaging services and relocating the helistop.

Zeff Ross
Resume                                                                                          Page 3
_____

| July 1985 | Humana, Inc., 500 West Main Street, Louisville |
| - April 1991 | Kentucky  40201 |

| July 1990 | **EXECUTIVE DIRECTOR** |
| - April 1991 | Humana Hospital - Palm Beaches (250 Beds), West Palm Beach, Florida |

Accomplishments at this 250 bed short-term acute care hospital with 88 psychiatric beds, included:
.   Recruited both solo and specialty group practitioners to the hospital's market area.
.   Reduced annual operating expenses by $250K and payroll expenses by $400K without adverse impact on operations.
.   Coordinated $3.5M renovation project. Initiated building of a medical office building on the hospital campus.
.   Significantly increased patient satisfaction response through the initiation of product line management and patient relations program.

| October 1987 | **EXECUTIVE DIRECTOR** |
| - July 1990 | Humana Hospital - South Broward (256 Beds), Hollywood, Florida |

Accomplishments included:
.   Formulated and implemented short and long range strategic plans and objectives which resulted in increased market share and maximized margin; implemented board of trustees self-evaluation measurement survey.
.   Obtained $1.5M additional revenue as a result of innovative changes to reimbursement systems.
.   Increased gross revenue by $700K through business cooperation with private practitioners.
.   Exceeded established fiscal objectives by more than 35%.
.   Increased patient census by 20% with a decrease of 12% in the length of stay.

| August 1986 | **ASSOCIATE EXECUTIVE DIRECTOR** |
| - October 1987 | Humana Hospital - Biscayne (458 Beds), Miami, Florida |

| January 1986 | **ASSOCIATE EXECUTIVE DIRECTOR** |
| - August 1986 | Humana Hospital - South Broward (256 Beds), Hollywood, Florida |

| April 1985 | **ASSISTANT EXECUTIVE DIRECTOR** |
| - January 1986 | Humana Hospital - Biscayne (458 Beds), Miami, Florida |

| July 1984 | **ASSISTANT EXECUTIVE DIRECTOR** |
| - March 1985 | Humana Hospital - Cypress (273 Beds), Pompano Beach, Florida |

| May 1980 | **ADMINISTRATOR** |
| - April 1984 | AMBULATORY CARE SERVICES (286 Beds), The Jamaica Hospital, Jamaica, New York |

Responsibilities included Outpatient, Emergency, and Paramedic Ambulance Department, Family Practice Center (including a resident training program for ten (10) family practitioners) and Walk-In Clinic. These areas handled 70K patient visits and 7,500 ambulance calls per year. Accomplishments included grants administration, labor relations and union negotiations, design and administrative coordination of expansion program, and various certificate of need applications.

Zeff Ross
Resume                                                                                                    Page 4

| | |
|---|---|
| December 1978<br>- May 1980 | **COORDINATOR, AMBULATORY CARE**<br>**Greater New York Hospital Association**<br>**New York, New York** |

## EDUCATION:

June 1979   Master of Business Administration (MBA) specializing in Health Care Administration
City University of New York, Bernard M. Baruch College/The Mount Sinai School of Medicine, New
York, New York

June 1977   Bachelor of Science - Psychology
Magna Cum Laude
City University of New York, Brooklyn College, Brooklyn, New York

## CONSULTING ACTIVITIES:

**Consultant**
- October, 1993 - Present
Technical Advisory Service for Attorneys
1166 DeKalb Pike
Blue Bell, PA   19422

- April, 1993 - Present
American Medical Forensic Specialists
2640 Telegraph Ave.
Berkley, CA   94704-3322

**Adjunct Professor**
- September 1987 - August 1989
St. Thomas University, Miami, FL
Graduate Program in Health Management

    . Instructed classes in medical care
    organization hospital and hospital
    administration.

- August 1985 - December 1985
Florida International University, Miami, FL

    . Conducted administrative intern
    preceptorships for graduate students
    & instructed classes in facility
    organizational management.

## PROFESSIONAL MEMBERSHIPS:

- American College of Healthcare Executives, FACHE (1997);   Member 1985 - 1997.
- American Hospital Association. Member 1979 - Present.
- Broward Hospital Association. Member since October, 1987. Offices held: Secretary/Treasurer, Chairperson.
- South Florida Healthcare Administrative Forum.   Member 1986 - Present.   Offices held: Chairman,
Nominating Committee, Board of Directors.
- College of Osteopathic Healthcare Executives.   Member
April, 1989 - July, 1990; Chairperson - Membership Committee; Member - Awards Committee.
- American Osteopathic Hospital Association.   Board of Trustees, Representative for Division IV, October 1988
- July 1990.
- Temple Beth Ahm, Board Member, 1999 – 2001.
- American Red Magen David For Israel (ARMDI), Board Member, November 2002 – Present.
- June, 1998.   Practicum Preceptor for Tufts University School of Medicine MD/MBA in Health Management
Program.

Zeff Ross
Resume                                                                                                       Page 5

- June 1999 – December 1999. Preceptor, Florida International University, School of Healthcare Administration, Graduate Program.
- June 2001 – June 2002. Associate, The John Hopkins University, Bloomberg School of Public Health, Master of Health Science in Health Finance & Management Program.

## COMMUNITY ACTIVITIES & MEMBERSHIPS:

- Miramar/Pembroke Chamber of Commerce. Board of Directors from October 1987 - June 1989; July 1992 - July 1993. Secretary, July 1993 - July 1994; Vice Chairman, July 1994 - July 1995; Chairman-Elect, July 1995 - July 1996; Chairman, July, 1996 - July, 1997; Immediate Past Chairman, July 1997 - July 1998.
- City of Pembroke Pines Police Athletic League (P.A.L.) Board of Directors. April, 1996 - Present.
- Republic Bank aka Family Bank Western Advisory Board. September 1995 - Present
- American Heart Association/Southwest Broward Division. Vice President, September 1991 - January 1993; Board of Directors, January 1993 - Present.
- Speakers Bureau Memorial Hospital/Memorial Hospital West April, 1991 - Present.
- Embassy Creek Elementary School, School Improvement Team (S.I.T.), Member October, 1992 to June, 2000.
- Junior Achievement Program, Walter C. Young Middle School, Instructor. 1994, 1995, 1996, 1997. Pioneer Middle School - 1999.
- American Cancer Society. Board of Directors, August 1992 - August 1996; Grassroots Program, August 1992 - Present.
- Broward Economic Development Council, Inc. Board of Directors, October 1, 1992 - September 30, 1993.

## AWARDS AND HONORS:

- "Best Hospital for Pediatric Emergency Care", Broward County, Kids' Crown Awards, South Florida Parenting Magazine, 2002
- "Best Place to Give Birth", Broward County, Kids' Crown Awards, South Florida Parenting Magazine, 2002
- "Best Hospital Administrator Award", Florida Medical Business, 2001
- "Excellence in Healthcare Awards", The South Florida Business Journal, 2001
- "Best Hospital/Maternity", South Florida Parenting Magazine, 2001
- "Best Rehabilitative Services Award", Florida Medical Business, 2000
- "Best Hospital/Maternity", South Florida Parenting Magazine, 2000
- "Best Hospital Quick ER", South Florida Parenting Magazine, 2000
- "Best Run Hospital Award", Annual Florida Medical Business Healthcare Awards, 1999
- "100 Top Hospitals: Regional Benchmarks for Success", HCIA/The Health Network, December 1999
- "Corporate Elite", Healthcare Administration, South Florida Business Journal, 1999
- "Family Friendly Employer", South Florida Parenting Magazine, 1999
- "Family Friendly Employer", South Florida Parenting Magazine, 1998
- "Best Maternity Hospital, Best Hospital Women's Center, Best Hospital Maternity Classes and Best Labor & Delivery Nursing", Florida Baby Magazine, 1998
- "Best Hospital in Broward for Maternity", South Florida Parenting Magazine, 1998
- "South Florida's Top Hospitals and Best Gym-Fitness & Rehabilitation Center", Miami Metro Magazine, 1998
- "Pinnacle Award", Miramar-Pembroke Chamber of Commerce, March, 1998
- JCAHO Accreditation with Commendation", January, 1997
- "Up & Comers Award" Winner, Price Waterhouse/South Florida Business Journal – September, 1995. Finalist – 1994, 1993 & 1990.
- "Business Leaders' Award", Industry Appreciation Week, Miramar-Pembroke Chamber of Commerce, 1995

Zeff Ross
Resume

- "Rookie of the Year", American Cancer Society, 1992-1993.
- First Annual Award for Outstanding Administrative Support in Recognition of the Hospital Healthcare Human Resources Field given by the South Florida Hospital Personnel Directors Association – April, 1993
- "Best Outpatient Services", South Florida Medical Business for the tri-county area, 1993.

**LICENSES:**     Board of Nursing Home Administrators, State of Florida #2850.

**REFERENCES:**     References furnished upon request.

# *Nick Peters, MD FACEP*
## *7600 Beechnut*
### *Houston, Texas 77074*

February 8, 2004

Tom Crosley
Branton & Hall
One Riverwalk Place, Suite 1700
700 N. St. Mary's Street
San Antonio, Texas 78205

Dear Mr. Crosley,

      Upon your request I Nick Peters, MD a licensed practicing physician board certified in Emergency Medicine have reviewed the medical records of Mr. DeLeon. Specifically, I have reviewed the records of two different emergency department visits, for December 24, 1998 and December 25, 1998, as well as hospital records. My opinions herein are based upon my education, training, experience, and knowledge of the care and diagnosis of spinal cord injuries and Emergency Medicine.

I received my Doctor of Medicine degree from Creighton University School of Medicine in Omaha, Nebraska, in 1991. I did an internship and began a residency in Emergency Medicine at UCLA King/Drew Medical Center, Los Angeles, California from 1991 to 1993. I finished my residency in Emergency Medicine at the University of Arizona, in Tucson Arizona from 1993-1994. I practiced Emergency Medicine at Baylor Medical Center at Garland since successfully completing my Residency until December 2003. In January 2004 I began my practice at Memorial Herman Southwest Hospital as the Medical Director of Emergency Medicine. As part of my daily practice I evaluate patients with suspected spinal cord injures.

Mr. DeLeon was a 57 year old male involved in a motor vehicle collision the evening of December 24, 1998. Paramedics found him unable to get out of the car. The paramedics placed him in spinal precautions including a cervical spine collar, head immobilization and strapped to a back board. On arrival the Emergency Department at Columbia Valley Regional Medical Center it was reported the patient complained of numbness from the neck down. On the Conditions of Admission form from the hospital was printed "Pt. unable to sign due to medical condition", instead of Mr. DeLeon's signature. Dr. Joao Dovale examined the patient and stapled a facial laceration. The patient was taken off spinal precautions and Dr. Dovale noted the patient was "obviously drunk". The patient was discharged from the emergency department to police custody to go to jail after approximately 30 minutes. On the discharge paperwork instead of Mr. DeLeon's signature was printed, "pt. can't sign".

On December 25, 1998 Mr. DeLeon was brought to Brownsville Medical Center Emergency Department with "back pain", "numbness in body" and "can't move legs". Paramedics brought him from the jail. After multiple x-rays were performed including cervical, dorsal and lumbar spine CT and MRI a diagnosis of "acute spinal cord injury", "cervical cord compression" was made. The patient was admitted for further care and

page 2 of 2

evaluation of his quadriplegia.

After my review of the records available, I believe the medical care rendered to Mr. DeLeon fell below minimal standards. The incidences and reasons form my opinion are as follows:

On the first Emergency Department encounter the patient was removed from spinal precautions prematurely. The standard of care to remove a patient from spinal precautions require a patient to be awake, alert with no distracting injuries and no mind altering substances in the patients system. With these conditions met the physician can assess spinal stability after a careful normal neurological and spinal exam, often including x-rays and occasionally special studies or consulting opinions. In my opinion Dr. Dovale did not follow standard of care by not performing a neurological examination or spinal exam. Also the patient had a mind altering substance in his system as noted by Dr. Dovale as being "obviously drunk". No x-rays were done to even attempt to find the cause of the patient's compliant of numbness. The patient was prematurely discharged from the Emergency Department. With spinal cord injuries the early use of steroids is needed for treatment. By the time the patient's condition was diagnosed a day later steroid treatment would have limited benefit. In my opinion these deviations from the standards of care and failure to treat are the major contributing causes of Mr. DeLeon's spinal cord Injury.

In summary, it is my professional opinion the care for Mr. DeLeon fell substantially below the standards of care at the Emergency Department at Columbia Valley Regional Medical Center. Reasonable care would have protected the spinal cord from further injury. As a result of these breaches in the standard of medical care Mr. DeLeon did not have the opportunity to minimize or even possibly eliminate any long term paralysis, and other sequela.

Please do not hesitate to contact me if there are additional records for review or if there are additional questions which need to be addressed.

Sincerely,

Nick Peters, MD



## ST. JOHN'S
**SMITH-GLYNN-CALLAWAY
MEDICAL BUILDING**

March 10, 2003

Carol P. Lomax
Branton & Hall
737 Travis Park Building
711 Navarro, Suite 737
San Antonio, Texas, 78205-1787

   Re: Patient: Candelario DeLeon
     File Number: 9827

I, Jeremy D. Slater, M.D., am a licensed physician, Board Certified in Neurology, Clinical Neurophysiology, and Sleep Medicine. I received my M.D. from the University of Pittsburgh in 1986, completed my medical internship at the Medical College of Pennsylvania in Philadelphia in 1987, completed my neurology residency at the University of Miami in 1990, and completed my fellowship in clinical neurophysiology in 1991. As part of my training and in the subsequent years as a general neurologist, I have been involved in the care of numerous patients with spinal cord injuries, both acutely and during rehabilitation. I have interacted with emergency room physicians related to such cases on occasions too numerous to count, and from this can give an opinion of what I, as a treating neurologist, would expect from an emergency room physician as standard of care for a possible spinal cord injury.

Case Summary:

Candelario DeLeon is a 58 year old male with essentially negative past medical history, who was brought to the Columbia Valley Regional Medical Center emergency room on 12/24/98 by the City of Brownsville EMS ambulance after a motor vehicle accident. The patient was found, sitting in the driver's seat, unrestrained. According to the EMS notes, "Pt. Smelled highly of ETOH and stated he had been drinking but unknown what or how much". A cervical collar was placed and the patient was extricated through the driver's door onto a backboard (10PM). On route, the patient complained of "numbness from the neck down".

Upon arrival in the emergency room (10:05 PM), the ER physician, Joao Dovale, M.D., notes document that the patient is "obviously drunk – awake". Normal exam findings are documented for the heart, lungs and abdomen, with no findings recorded for the neurological examination or extremities. Nursing notes document the absence of CSF or blood in the ear canals, and the absence of Battle's sign, or periobital ecchymoses. The presence of the cervical collar is noted. The patient received one staple to a forehead

3231 SOUTH NATIONAL AVENUE ■ SPRINGFIELD, MO 65807-7396
**417-883-7422** ph

A member of the Sisters of Mercy Health System



**ST. JOHN'S**
SMITH-GLYNN-CALLAWAY
MEDICAL BUILDING

laceration and was then discharged to the custody of the police. No cervical spine films were ordered – there is no documentation regarding if or when the collar was removed. The patient then spent the night in the city jail. Waking the next morning, he complained of being unable to move. When the EMS service arrived, he complained of pain in his arms and numbness throughout his body. At that time, no cervical collar was in evidence. The patient was placed on a backboard, secured with straps, and transported to the Brownsville Medical Center emergency room.

Upon arrival in the emergency room, the patient was assessed and underwent X-rays of the cervical spine. Once these were completed, because of clinical suspicion of a cord compression, he received high-dose Solumedrol intravenously, 30 mg/kg. A Foley catheter was placed and 400 cc of urine drained. Spine X-rays were completed including cervical, thoracic and lumbar, all of which were read as normal. A neurology consultation was obtained. The neurologist, on the basis of the clinical examination, suspected a low cervical cord compression, and ordered a MRI of the cervical spine. This was completed, and demonstrated no hematoma, moderate changes of cervical spondylosis with spinal canal stenosis in the mid to lower cervical spine. Neurosurgical consultation was ordered. A subsequent MRI of the thoracic spine was unremarkable, as was a CT scan of the brain.

Through the remaining hospitalization the patient received supportive therapies, and at the time of discharge to a nursing home, the patient remained quadraparetic, with a T8 sensory level.

Conclusions:

The standard of care for a possible cervical spinal cord injury includes the placement of a stabilizing cervical collar, generally by the EMS personnel. The removal of this collar generally takes place only after a set of X-rays are taken of the cervical spine to make sure there is no instability that could result in spinal cord injury. A neurological examination to assess for the presence of dysfunction that might be due to a cord injury is required. If the examination reveals such evidence, an emergent MRI of the cord is completed, unless such a study is simply unavailable, in which case a myelogram and post-myelogram CT could be done. The standard treatment is the use of high-dose intravenous steroids to reduce the occurrence of long term neurologic deficit.

The treating emergency room physician, Joao Dovale, M.D., in this case failed to complete a neurologic examination on Mr. DeLeon at the time of his initial presentation. The circumstances of the patient's injury, in addition to his complaints to the EMS personnel of numbness from the neck down, are both strongly compelling reasons to assess for possible cervical cord injury. Cervical spine X-rays were not ordered, no MRI was done, and no steroids were given. The strongest indication that these measures are

3231 SOUTH NATIONAL AVENUE ■ SPRINGFIELD, MO 65807-7396
417-883-7422 ph.

A member of the Sisters of Mercy Health System



**ST. JOHN'S**
**SMITH-GLYNN-CALLAWAY**
**MEDICAL BUILDING**

the standard of care for possible cervical cord injury is that when the patient was taken to the Brownsville Medical Center emergency room the following day, these are exactly the steps that were taken. The literature regarding intervention with intravenous steroids indicates the earlier they are given, the more likely they are to be effective. By violating the standard of care, the steroids were delayed many hours. Following the standard of care would likely have resulted in a better outcome, possibly with no residual neurologic deficit.

Deviations:

Based on a reasonable degree of medical certainty, it is my opinion that the physician did not use such care as reasonably prudent healthcare providers practicing in the same field in the same or similar locality would have provided under similar circumstances. Signed,


Jeremy D. Slater, M.D.

3231 SOUTH NATIONAL AVENUE ■ SPRINGFIELD, MO 65807-7396
**417-883-7422** ph.

A member of the Sisters of Mercy Health System