United States District Court
Southern District of Texas
FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

JUN 0 4 2004

Michael N. Milby
Clerk of Court

| | |
|---|---|
| **CANDELARIO DE LEON** | § |
| | § |
| **VS.** | § |
| | § **CIVIL ACTION NO. CV-B-00-192** |
| | § **(JURY REQUESTED)** |
| | § |
| **CITY OF BROWNSVILLE,** | § |
| **TEXAS, ET AL** | § |

## DEFENDANT COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P. D/B/A VALLEY REGIONAL MEDICAL CENTER'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND FOR SANCTIONS

TO THE HONORABLE DISTRICT JUDGE:

COMES NOW, Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center, one of the Defendants in the above entitled and numbered cause, and makes and files this, its Reply to Plaintiff's Response to Defendant's Motion to Dismiss and for Sanctions and would respectfully show the Court as follows:

I.

## MOTION TO DISMISS

A. PLAINTIFF'S EXPERT DR. SLATER HAS NEVER EXPRESSED OPINIONS CRITICAL OF THIS DEFENDANT

The only opinions that have been expressed in the reports by Dr. Slater, Plaintiff's expert, were critical of the Co-Defendant and not this Defendant. Nothing in his report can be construed to be critical of this Defendant. Furthermore, at his deposition, he expressed no opinions of this Defendant and stated that his only liability opinions were critical of the Co-Defendant.

B.  DR. PETERS HAS NOT EXPRESSED CRITICISMS OF THIS DEFENDANT IN HIS REPORTS OR HIS AFFIDAVIT

Federal Rule of Civil Procedure 26(E)(2)(B) requires an expert to provide a report that contains a complete statement of all of his opinions to be expressed and the basis and reasons therefore.  Two reports and one affidavit of Dr. Peters, the Plaintiff's Emergency Medicine expert, were provided to this Defendant through discovery from the Plaintiff's attorneys.  See Exhibit A, page 113, lines 13 – 22.  Dr. Peters stated that in his two reports and one affidavit that he expressed no criticisms of the Defendant hospital. See Exhibit A, page 82, line 24 - page 83, line 4.  Dr. Peters acknowledged that he had never expressed any criticisms of the hospital before the day of his deposition.  See Exhibit A, page 206, line 2 - page 207, line 19.  Dr. Peters went further to testify that he had never commented as to the standard of care for the hospital in any of his reports.  See Exhibit A, page 217, lines 13-22.  At no time before his deposition had Dr. Peters ever said how the nurses had failed to meet the standard of care.  See Exhibit A, page 217, line 23 - page 218, line 1.  Dr. Peters also never testified that nurses' failure to meet the standard of care caused any injury to the Plaintiff.  See Exhibit A, page 218, lines 2-6.  Clearly, the Plaintiff had never disclosed any expert criticisms from Dr. Peters that were critical of the hospital before his deposition 9 days ago.

Dr. Peters stated that he did not know what governed the practice of nursing and he has not reviewed any documents that governed the practice of nursing, including the Texas Nursing Practice Act.  See Exhibit A, page 131, line 8 - page 133, line 16.  The practice of Registered Nurses (like the one that saw the Plaintiff at Valley Regional Medical Center) is governed by Section 301.001 et. seq. of the Texas Occupations Code.  Registered Nurses (sometimes called Professional Nurses in the Code) are governed by the Nursing Practice Act found at that section.  Section 301.002(2) sets forth what is covered in professional nursing and what is not covered,

including medical diagnosis and prescribing therapeutic or corrective measures. Section 301.151 gives the Board of Nurse Examiners the authority to adopt rules to regulate the practice of nursing and to establish standards of professional conduct for nurses. Section 301.251 requires a person to be a licensed nurse before practicing or offering to practice professional nursing. Clearly, Dr. Peters is not qualified to testify as to the nursing standard of care. He has not read the Nursing Practice Act and was totally unfamiliar with it.

## C. MR. ROSS HAS NEVER BEEN QUALIFIED TO EXPRESS OPINIONS AS TO A NURSE'S STANDARD OF CARE, CAUSATION OR DAMAGES

Mr. Ross is a lay person and does not have any medical training, expertise, degrees or licenses to either practice medicine or nursing. See Exhibit 9 to this Defendant's Motion for Sanctions, to Dismiss and for Summary Judgment. Mr. Ross would not be qualified to testify as to the nursing standard of care nor would he be qualified to testify as to any element of causation or medical damages.

## D. NO COMPETENT EVIDENCE HAS BEEN PRODUCED AGAINST THIS DEFENDANT

One of the purposes of Article 4590i is to decrease the costs of health care liability claims and assure that awards are rationally related to actual damages. See Article 4590i §1.02. One of the reasons for the Article 4590i expert-report requirements is to deter frivolous claims. *American Transitional Care Center of Texas, Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex. 2001). Furthermore, the Texas Legislature had "determined that failing to timely file an expert report, or filing a report that does not evidence a good-faith effort to comply with the definition of an expert report, means that the claim is either frivolous, or at best has been brought prematurely." *Id.* In that same spirit, a party in this litigation is subject to sanctions under FRCP 11 if that party's allegations do not have evidentiary support or are frivolous.

In Plaintiff's response, he contends that Article 4590i §13.01 is merely a state procedural

rule. Yet, as mentioned above, Article 4590i speaks to a substantive state policy that does not conflict with FRCP 11. And "where the state rule reflects a substantive state policy not in conflict with the plain meaning of the federal rule, then the state rule is the rule of decision and should be applied under the terms of the *Erie* doctrine. *Exxon Corp. v. Burglin,* 42 F.3d 948, 950 (5th Cir. 1995); *Poindexter v. Bonsukan,* 145 F.Supp.2d 800, 803 (E.D. Tex. 2001). As such, the substantive policy of Article 4590i does not conflict with FRCP 11 and therefore this Court should apply Article 4590i §13.01 to this case.

Plaintiff has not provided any expert report from any competent and qualified witness that make specific complaints about the hospital or nurse's standard of care in which the witness is qualified to express those opinions. Furthermore, none of the reports that have been provided by Plaintiff's experts discuss how the hospital or its nurses caused any injury to the patient and what specific injury was caused. As such, whether couched in terms of Article 4590i, section 13 of Texas Revised Civil Statutes or Rule 11 of the Federal Rules of Civil Procedure, Plaintiff has not made a good-faith effort to present experts and their report pursuant to Rule 26 FRCP that demonstrate that this case has merit against the Hospital Defendant.

E. NO WAIVER

This Defendant has not waived any complaint about the insufficiency of Plaintiff's expert reports. On March 2, 2001, the Court granted Plaintiff's Motion for Leave to File it Second Amended Complaint. See Court's Docket Entry 22. This Defendant filed its Answer to Plaintiff's Second Amended Complaint on May 2, 2001. See Court's Docket Entry 37. On September 24, 2001, this Defendant filed its Motion to Dismiss the first time. See Court's Docket Entry 66. The Court did not rule and on February 11, 2002, this Court ordered a stay on all proceedings as to Co-Defendant Dr. Dovale and STAT Physicians, P.A. See Court's Docket

Entry 88. On February 15, 2002, this Court further ordered that all proceedings to be stayed against all Defendants. See Court's Docket Entry 89. On November 17, 2003, this Court lifted the stay of proceedings in this case. See Court's Docket Entry 97. Defendant tried diligently to get Plaintiff's experts depositions and was thwarted in doing so. Defendant then refilled its Motion to Dismiss. Plaintiff has provided no authority that this Defendant's actions constitute a waiver.

## II.

## MOTION FOR SANCTIONS

Plaintiff has simply given no excuse for not providing Dr. Peters for his deposition on January 27, 2004 or March 22, 2004. The witness was available for his previous deposition settings. See Exhibit A, page 111, line 20 - page 112, line 5. Plaintiff's counsel likewise simply gives no reasons why they did not produce Dr. Slater for depositions on February 12, 2004 and March 24, 2004 as agreed to. See Exhibit B, page 106, line19 - page 107, line 3. Concerning the May 4 deposition setting for Dr. Peters and the May 5 deposition setting for Dr. Slater, the undersigned counsel notified the Plaintiff's attorney on April 21, 2004 that if they want to get the deposition reset, they would need to seek a Court ruling. See the April 21, 2004 letter in Exhibit 4 to Defendant's Motion for Sanctions, to Dismiss and for Summary Judgment. Instead, Plaintiff's counsel waited until the day before the deposition to file a motion to quash and received a Court ruling that same day denying its motion.

WHEREFORE, PREMISES CONSIDERED, Defendant Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center prays that this Court grant its Motion to Dismiss and Motion for Sanctions and for such other and further relief, at law or in equity, to which Defendant may show justly entitled.

Respectfully submitted,

By: _____
William Gault
Federal I.D. No. 14685
State Bar No. 07765050
Michael Quintana
Fed. ID No. 33291
State Bar No. 24037314
Brin & Brin, P.C.
1325 Palm Blvd., Suite A
Brownsville, Texas 78520
(956) 544-7110
(956) 544-0607 Telecopier

Of Counsel:

Brin & Brin, P.C.
1325 Palm Blvd., Suite A
Brownsville, Texas 78520
(956) 544-7110
(956) 544-0607 Telecopier
ATTORNEYS FOR DEFENDANT
COLUMBIA VALLEY HEALTHCARE
SYSTEM, L.P. D/B/A VALLEY
REGIONAL MEDICAL CENTER

## CERTIFICATE OF SERVICE

This is to certify that the above and foregoing instrument has been forwarded to counsel as indicated below on this the 4th day of June, 2004.

Thomas Crosley                          **VIA CM/RRR 7002 0460 0000 6426 4252**
Branton & Hall, P.C.
One Riverwalk Place, Suite 1700
700 N. St. Mary's St.
San Antonio, Texas 78205

Michael Cowen                           **VIA CMRRR 7002 0460 0000 6426 4269**
Law Offices of Michael R. Cowen
520 E. Levee
Brownsville, TX 78520

DELEON/VRMC: MTN-DISMISS-03                                      PAGE 6

Steven M. Gonzalez
Gerald Castillo
Gonzalez, Gaytan, Garza & Castillo, L.L.P
1317 E. Quebec Avenue
McAllen, Texas 78503

**VIA REGULAR MAIL**

William Gault

Page 1

1              FOR THE SOUTHERN DISTRICT OF TEXAS
                       BROWNSVILLE DIVISION
2

     CANDELARIO DE LEON          )
3                                )
     VS.                         )    CIVIL ACTION NO. CV-B-00-192
4                                )
     COLUMBIA VALLEY HEALTHCARE)    (JURY REQUESTED)
5    SYSTEM, L.P. D/B/A VALLEY )
     REGIONAL MEDICAL CENTER,   )
6    JOAO DOVALE, MD. AND STAT )
     PHYSICIANS, P.A.            )
7

8

         **************************************************
9               VIDEOTAPED ORAL DEPOSITION OF
10              NICK PAUL PETERS, M.D., FACEP
11                      MAY 26, 2004
12       **************************************************
13

14         VIDEOTAPED ORAL DEPOSITION OF NICK PAUL PETERS,
15   M.D., FACEP, produced as a witness at the instance of the
16   Plaintiff, and duly sworn, was taken in the above-style
17   and numbered cause on the 26th day of May, 2004, from
18   8:49 a.m to 2:22 p.m., before Mary Abbott Burkes, CSR, in
19   and for the State of Texas, recorded by machine
20   shorthand, at the law offices of Worldwide Court
21   Reporters, Inc., 3000 Weslayan, Suite 235, Houston, Texas
22   77027, pursuant to the Federal Rules of Civil Procedure
23   and the provisions stated on the record or attached
24   hereto; that the deposition shall be read and signed
25   before any notary public.

Page 7

1          THE VIDEOGRAPHER:  Today is Wednesday, May

2    26th, 2004.  The time is 8:49 a.m.  We're now on the

3    record.

4               NICK PAUL PETERS, MD, FACEP,

5    having been duly sworn, was examined and testified as

6    follows:

7                         EXAMINATION

8    QUESTIONS BY MR. CROSLEY:

9        Q.   Good morning.  Please state your name for the

10   record.

11       A.   Nick Paul Peters.

12       Q.   And what is your profession?

13       A.   I'm an emergency medicine physician.

14               (Peters Exhibit No. 1 was marked.)

15       Q.   I'm handing you what I've marked as Exhibit

16   No. 1 to your deposition this morning.  Can you tell us

17   what that document is?

18       A.   It's my curriculum vitae, which is like a

19   resume.

20       Q.   Okay.  Is it current?

21       A.   Yes, it is.

22       Q.   Can you describe for us your educational

23   background?

24       A.   I have an undergraduate degree in biology, and I

25   have my medical degree from Creighton University.  I did

1    A.    Yeah, I've not signed anything for him.

2    Q.    Okay.  Has he talked to you about giving another

3    affidavit in this case or another statement in this case?

4    A.    Yes, he has.

5    Q.    What has he talked to you about that?

6    A.    He said after I get a chance to review the

7    depositions, that he may ask me to come up with another

8    affidavit.

9    Q.    Concerning what?

10    A.    Concerning the issues of -- the issues of the --

11    of what Mr. De Leon had stated and involving the

12    interactions with the nurse, the hospital and the

13    paramedics.

14    Q.    When did y'all have this discussion?

15    A.    I think, if I remember correctly, we had a brief

16    phone discussion a few days ago that he was going to get

17    me some more information and would want me to look at it.

18    And then yesterday when we talked, he says after I -- I

19    look at the information, that he wanted to talk to me

20    again to see what my opinions would be.

21    Q.    When are y'all going to have this next

22    conversation?

23    A.    We don't have anything planned.

24    Q.    Okay.  I guess what I'm getting at is:  You've

25    already given two reports and one sworn affidavit, right?

1    A.    Yes.

2    Q.    In none of those you have criticisms of Valley

3 Regional Medical Center; is that correct?

4    A.    Yes.

5    Q.    Okay.  From reading Dr. Dovale's deposition, you

6 did not know whether or not he knew of numbness from the

7 neck down as a complaint from Mr. De Leon, right?

8    A.    Well, from reading his definition, he says he

9 does -- he did not know about it.

10    Q.    Okay.  And -- but then from reading  Mr.

11 De Leon's deposition, he said he told everyone about it?

12    A.    He made the statement, "I told everybody."

13    Q.    Okay.  And, of course -- and so now, in

14 everything you've reviewed in the case, you have evidence

15 that -- that that information was transmitted to the

16 doctor?

17    A.    I -- at this point -- at this time I -- I --

18 I don't know if I can say I have evidence that the

19 information was transmitted to a doctor.

20    Q.    Well, you have a sworn deposition, right?

21    A.    From?

22    Q.    Mr. De Leon.

23    A.    The -- and there again, I want to go back and

24 before I do an affidavit, make sure I get the details

25 right.  But my impression from what I -- when I read

1    what Mr. De Leon has said in his statements.

2         Q.    Okay.   You -- you've -- I noticed one of the

3    exhibits to your deposition is a deposition notice.

4         A.    Somewhere in there, yeah.

5         Q.    Okay.   Have you just gotten one notice for your

6    deposition?

7         A.    I've -- I think whatever one I brought here is

8    the one I had.

9         Q.    Have you been sent other deposition notices

10   other than the January 27th, 2004?

11        A.    I don't think I re- -- I did not receive one for

12   this month.   I -- I think this is the -- the only one I

13   have.

14        Q.    You're talking about Exhibit No. 3, I believe?

15   Is it 3, No. 3?   That's the same thing, right?

16        A.    I think it's the same thing.

17        Q.    You can look at it.   Take your time.

18        A.    Yeah, it looks like it's the same thing.

19        Q.    Okay.

20        A.    It's a copy of it.

21        Q.    Has -- as far as you know, has your deposition

22   been scheduled any other time?

23        A.    Yeah.   It was scheduled, oh, two or -- I think

24   two other times.

25        Q.    Have you ever cancelled these because of your

Page 112

1    unavailability?

2        A.    No.

3        Q.    Okay.  So each time it's been scheduled, it's --
4    was based on your schedule being free?

5        A.    Yes.

6        Q.    Okay.  Now, you also produced us a list of where
7    you gave us -- where you gave expert reports or testimony
8    in two other cases, right?

9        A.    Yes.

10       Q.    How many other cases have you been engaged?

11       A.    These are the only ones I've been engaged in as
12   an expert witness.

13       Q.    The two on your paper here?  Let's see.  Let's
14   look at that.

15       A.    Yeah.

16       Q.    It's right here, Exhibit No. 5.  Those two?

17       A.    Yes.  And then the -- our -- the one we have
18   today.

19       Q.    This case today.  Okay.  Have you authored
20   any -- any type of material in the field that you're
21   testifying in today?

22       A.    The -- nothing specifically directly here.  I
23   have in the back of my C.V. what I have authored, but
24   it's nothing specific to what we're talking about today.

25       Q.    Okay.  And -- and have you produced the income

Page 113

1    that you've received as an expert witness over the last

2    ten years?

3       A.    I don't have that with me.  It's -- there again,

4    I have that, my financial records, in my storage.  It's

5    not a significant amount compared to my income.  But if

6    that was very important to you, I could get it for you.

7       Q.    And that's something -- you have a C.P.A. do

8    your taxes, I assume, right?

9       A.    Yeah.

10      Q.    And that's something that's available to the

11   C.P.A.?

12      A.    I could get it through him.

13      Q.    Let's see.  We've gone through three -- I guess

14   two reports and one affidavit that you've given, and

15   there are no other reports or affidavits that you've done

16   up to this point; is that right?

17      A.    Um --

18      Q.    In this case.  I'm sorry.  In this case.  I

19   apologize.

20      A.    In this case, yeah.  What we've gone through

21   today is, from the best of my memory, is everything I've

22   done.

23      Q.    You've not seen any photographs?

24      A.    No, I've not seen any photographs.

25      Q.    You don't have any -- do you have any notes on

Page 131

1     Q.    What is your definition of "negligence"?

2     A.    I would say my definition would be not doing

3     something that is needed to be done.

4     Q.    Okay.  And that's -- you -- you use that

5     definition when you've used that term in your reports or

6     in this case; is that correct?

7     A.    Yes.

8     Q.    Now, what governs the practice of nurses?

9     A.    What governs the practice of nurses?

10     Q.    Yes, sir.

11     A.    Kind of a broad question.  I would say the

12     standards of the nursing industry and -- that they're

13     teaching, and things like that.

14     Q.    Can you tell me the name of those?

15     A.    Of their -- I don't know the nursing

16     organizations.

17     Q.    Okay.  Have you reviewed any of those?

18     A.    Not -- not the organizational level, no.

19     Q.    Okay.  Have you reviewed any standards for

20     nurses?

21     A.    I have within hospital facilities, in particular

22     hospitals.

23     Q.    You're talking about policies and procedures?

24     A.    Policy, procedures, guidelines, things of that

25     nature.

1    Q.    Right.  Which you've not done in this case?

2    A.    Not for this case.

3    Q.    Are there any other standards that govern

4  nurses' practice?

5    A.    I mean, it's standards you get with health

6  professionals, you know, the standards of what's in their

7  community, the state, in the nation; and based on the

8  education, the -- and whatever happen -- specialties they

9  happen to be working in.

10    Q.    What are the state standards for the practice of

11  nursing?

12    A.    I mean, you're talking very broad here.  We're

13  talking answers that come in big, thick binder books.  So

14  it's difficult for me to answer your question.

15    Q.    Do you know the names of any of those?

16    A.    No, I can't name them.

17    Q.    And you have not reviewed any of those; is that

18  correct?

19    A.    Not at that level, no.

20    Q.    Well, at what -- other than your hospitals, you

21  have not reviewed any nursing standards; is that correct?

22    A.    Not beyond the hospitals I've worked at.

23    Q.    Okay.  And you -- you have not cited any of the

24  hospitals' standards where you've worked at in -- in this

25  case; is that correct?

1    A.    I've not referred to them.

2    Q.    Okay.  You're not going to testify as to the

3  Nurse Practice Act; is that correct?

4    A.    I'm -- I can't define, or I'm not familiar with

5  the Nurse Practice Act.

6    Q.    You're not familiar with it?

7    A.    No.

8    Q.    Okay.  Let me ask -- we had a double negative.

9  Is it true -- is it correct to say that you're not

10  familiar with the Nurse Practice Act?

11    A.    I am not familiar with the Nurse Practice Act.

12    Q.    Okay.  Thank you.  And you don't plan on

13  testifying to the jury concerning the Nurse Practice Act?

14    A.    I have no knowledge of it right now.

15    Q.    Okay.

16    A.    So I can't say any comment on it.

17    Q.    Okay.  This is the second deposition you've

18  given?

19    A.    Yes.

20    Q.    And have you testified at trial?

21    A.    No.

22    Q.    Okay.  Let me read something to you.  If the

23  jury hears this:  "Despite plaintiff's pleas, he was

24  handcuffed, dragged into the police unit, allowing his

25  head to flop onto the floor of the back of -- of the unit

Page 206

1    break from standard in your procedures.

2        Q.    (By Mr. Gault)   That brings up a good point.  If

3    the rule says -- let me show you what one particular rule

4    says.

5            MR. GAULT:   Let's just mark this as Exhibit

6    No. 18.

7            (Peters Exhibit No. 18 was marked.)

8        Q.    (By Mr. Gault)   If a rule says on expert

9    disclosure -- if you could just read the blue part of

10   that rule.

11           Have you read that, Doctor?

12       A.    Yeah, I did just now.

13       Q.    Okay.   If the rule says the report -- it talks

14   about disclosure of expert testimony.  You saw that part

15   of it, right?

16       A.    Yes.

17       Q.    "The report shall contain a complete statement

18   of all opinions to be expressed and the basis and reason

19   therefor; the data or other information considered by the

20   witness in forming the opinions," and then it goes on.

21   But did I read that correctly?

22       A.    Yes.

23       Q.    Okay.   You've given two reports and an

24   affidavit; is that correct?

25       A.    Yes.

Page 207

1    Q.    In none of those three documents did you make
2    any statement that you had ever reviewed any hospital
3    policies or procedures, did you?
4    A.    I do not mention any hospital policies or
5    procedures in those.
6    Q.    Okay.   Your three previous reports -- that's two
7    reports and an affidavit -- were complete and accurate;
8    is that correct?
9    A.    Complete and accurate as I can make it at the
10   time --
11   Q.    Sure.   And in none of them did you have any
12   criticisms of the hospital in regard to their treatment
13   of Mr. De Leon.   Is that a fair statement?
14   A.    Yes, it is.
15   Q.    Okay.   The first time anyone knew of any
16   criticism you might have of the hospital treatment of
17   Mr. De Leon was today during your deposition; is that
18   correct?
19   A.    Yes.
20   Q.    Okay.   Now, do you think that's fair?
21   A.    By the information -- the further information I
22   was getting, I've gotten in the last few days.   So I
23   guess the only other way to have handled it was to delay
24   the deposition again.
25   Q.    Do you have any idea how long Mr. Crosley had

1      Q.   Okay.  All right.  Now, let me talk to you about

2   another -- what's required in a report.  If a -- if a --

3   a particular report requires at that you put in an

4   applicable standard of care in the manner in which the

5   provider failed to meet the standard of care, and the

6   causal relationship between that failure and the injury,

7   is it a fair statement that you have not included any of

8   that in your two reports or your affidavit as far as

9   Valley Regional is concerned?

10          MR. CROSLEY:   Object to the predicate being

11   improper.

12      A.   I'm sorry.  What was your premise with this?

13      Q.   (By Mr. Gault)  Yes, sir.  In none of your three

14   reports that you've done in this case did you include an

15   applicable standard of care for Valley Regional.  Is that

16   a correct statement?

17      A.   An applicable standard of care, I assume that

18   means what I'm -- you're saying the comments on their

19   standard of care?

20      Q.   Yes, sir.

21      A.   Okay.  I did not make comments on their standard

22   of care.

23      Q.   Okay.  You also did not include in any of your

24   three reports how the nurse failed to meet that standard

25   of care; is that correct?

Page 218

1      A.    That is correct.

2      Q.    And you also did not include in any of your

3   three reports the cause -- causation analysis as to the

4   nurse's failure to meet the standard of care, how that

5   caused an injury.  Is that a fair statement?

6      A.    That's true.

7      Q.    All right.  Now, some of the other things you

8   covered at the break, you were shown some -- some

9   hospital guidelines; is that correct?

10     A.    Yes.

11     Q.    Were you shown all of the hospital guidelines

12  that Valley Regional has produced in this case?

13     A.    No.  There was -- I think there were more than

14  the few pages that I saw.

15     Q.    Were you only shown the ones that you talked

16  about with Mr. Crosley, or were you shown some other

17  ones?

18     A.    I think I was shown less than what we talked

19  about when we came back in the room.

20     Q.    Okay.  So some of them in your testimony here,

21  you saw them for first time as you were testifying?

22     A.    Yes.

23     Q.    Okay.  So, in other words, if we produced, gosh,

24  15, 20, or so, policies and procedures, you haven't seen

25  all them, have you?

Page 1

1              FOR THE SOUTHERN DISTRICT OF TEXAS
                     BROWNSVILLE DIVISION
2

     CANDELARIO DE LEON            )
3                                  )
     VS.                           )  CIVIL ACTION NO. CV-B-00-192
4                                  )
     COLUMBIA VALLEY HEALTHCARE)    (JURY REQUESTED)
5    SYSTEM, L.P. D/B/A VALLEY )
     REGIONAL MEDICAL CENTER,  )
6    JOAO DOVALE, MD. AND STAT )
     PHYSICIANS, P.A.          )
7

8

        **************************************************
9              VIDEOTAPED ORAL DEPOSITION OF
10              JEREMY DANIEL SLATER, M.D.
11                   MAY 26, 2004
12      **************************************************
13

14         VIDEOTAPED ORAL DEPOSITION OF JEREMY DANIEL
15    SLATER, M.D., produced as a witness at the instance of
16    the Plaintiff, and duly sworn, was taken in the
17    above-style and numbered cause on the 26th day of May,
18    2004, from 3:49 a.m to 5:27 p.m., before Mary Abbott
19    Burkes, CSR, in and for the State of Texas, recorded by
20    machine shorthand, at the law offices of Worldwide Court
21    Reporters, Inc., 3000 Weslayan, Suite 235, Houston,
22    Texas 77027, pursuant to the Federal Rules of Civil
23    Procedure and the provisions stated on the record or
24    attached hereto; that the deposition shall be read and
25    signed before any notary public.



Page 6

1                    (Slater Exhibit No. 1 was marked.)

2                    THE VIDEOGRAPHER:  Today is Wednesday, May

3    26th, 2004.  The time is 3:20 p.m.  We're now on the

4    record.

5                              EXAMINATION

6    BY MR. CROSLEY:

7         Q.    Please state your name.

8         A.    Jeremy Daniel Slater.

9         Q.    And what is your profession?

10        A.    I'm a physician.

11        Q.    I'm handing you what we've marked as Exhibit

12   No. 1 to your deposition.  Is that a true and correct

13   copy of your curriculum vitae?

14        A.    Yes, sir.

15        Q.    Does it outline your educational background,

16   your work experience, and your articles that you've

17   authored?

18        A.    Yes, sir.

19        Q.    Tell the jury, do you have a medical specialty?

20        A.    Yes, I do.  I specialize in neurology as well

21   as sleep medicine.

22        Q.    What is neurology?

23        A.    Neurology is the study of the central and

24   peripheral nervous system and the diseases that affect

25   those areas.

1    A.    I -- I don't -- I haven't seen any advertising,

2  but as a company, I'm sure they probably do.

3    Q.    Did you bring -- other than that document, did

4  you bring any medical texts, articles, publications

5  which support your opinions relating to this particular

6  case which have been subjected to peer review and

7  publication?

8    A.    No, I haven't.

9    Q.    When did you get ready for this deposition?

10   A.    This particular deposition?

11   Q.    Yes, sir.

12   A.    On and off over the last several weeks.

13   Q.    In going through your documents, I noted

14  that -- I didn't see any notices of deposition.  Do you

15  know if your ex- -- your wit- -- sorry.  Your -- your

16  deposition has been set before?  That was a terrible

17  question and I'm very tired, but I'm going to say it

18  again.

19             Do you know whether or not your deposition

20  has been agreed to and set before today?

21   A.    In other words, was there a prior date that I

22  was --

23   Q.    That would be a better question, and, yeah.

24   A.    I think there was.  I don't remember the

25  specifics of it, but I remember being contacted.  I

Page 107

1    leave all of that scheduling up to my secretary, and she

2    says, "You're doing such and such on such and such a

3    date.  No, it's been rescheduled," that sort of thing.

4        Q.   Do you recall getting a deposition notice in

5    this case for earlier this month?

6        A.   I don't recall it, but that -- it's entirely

7    possible.

8        Q.   Wouldn't it have made it to the file if you

9    would have received the deposition notice?

10       A.   If that was something that I was supposed to

11   keep and bring with me, I apologize.  I don't

12   normally -- once I've got the date in my calendar,

13   I don't normally han- -- hang on to stuff like that.

14       Q.   So, in your other cases where you've testified,

15   you didn't hang on to the deposition notices and the

16   accompanying subpoenas?

17       A.   Not usually.

18       Q.   The case in Oklahoma City that you testified

19   in, who retained you?

20       A.   Well, I worked for -- I was working for AMFS,

21   but if you're talking about which law firm, I -- I can't

22   remember.  But AF- -- AMFS will have that on record.

23       Q.   Wasn't that just last year?

24       A.   Yes.

25       Q.   And you testified in trial?