United States District Court
Southern District of Texas
FILED

SEP 15 2004

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| CANDELARIO DE LEON | § |
| | § |
| VS. | § |
| | § CIVIL ACTION NO. CV-B-00-192 |
| | § (JURY REQUESTED) |
| | § |
| CITY OF BROWNSVILLE, | § |
| TEXAS, ET AL | § |

### DEFENDANT COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P. D/B/A VALLEY REGIONAL MEDICAL CENTER'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EXPERTS

TO THE HONORABLE DISTRICT JUDGE:

COMES NOW, Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center, one of the Defendants in the above entitled and numbered cause, and makes and files this, its Reply to Plaintiff's Response to Defendant's Motion to Exclude Experts and would respectfully show the Court as follows:

I.

### BACKGROUND

On December 24, 1998, Plaintiff was driving a car that ran into the rear end of another car. Brownsville police officers arrived at the scene and were going to arrest Plaintiff for driving while intoxicated after he obtained medical treatment. The Plaintiff was taken by ambulance to Valley Regional Medical Center for medical treatment. In route, the EMS assessed the Plaintiff as having a possible laceration to his left forehead. At one point, he made no complaints of injury and later complained of numbness from his neck down. The EMS noted that they would reassess him. They did not ever change their assessment of him as having only a possible laceration to his left forehead. When the patient arrived at Valley Regional Medical Center, his only complaint was a cut to his forehead that was 1/5 inch long. Co-Defendant Dr. Dovale

treated him for his laceration after doing an examination of him. The Plaintiff was released into police custody and taken to the Brownsville City jail.

The Plaintiff initially filed this lawsuit against the City of Brownsville and a number of police officers. The Plaintiff has claimed in his sworn testimony that the police officers threw him into their police car with his neck hanging off the seat, drove him to the police station, dropped him as they were carrying him into the police station and after booking him, dropped him from a standing position to the concrete floor of the drunk tank. The lawsuit against the City of Brownsville and the police officers was dismissed because the Plaintiff could not set out the required proof to prove his USC § 1983 allegations.

After initially filing suit against the City of Brownsville and the police officers, the Plaintiff added medical malpractice claims against Dr. Dovale and his employer, STAT Physicians, and also against this Hospital Defendant and another corporate entity. The Plaintiff has alleged that he had neurological damage from the car accident. The Defendants have defended this case in that the Plaintiff showed no signs or symptoms of neurological damage while he was the patient at Valley Regional Medical Center nor any signs or symptoms of any type of neurological damage that would demonstrate any further treatment to the patient. The Plaintiff has settled his lawsuit against Dr. Dovale and STAT Physicians and non-suited the HCA entity. The remaining case only concerns the Plaintiff's claims against the Hospital Defendant.

This Defendant's motion to exclude Plaintiff's expert witnesses is based on the fact that the Plaintiff's expert doctors did not make any complaints in their reports that the nurses or hospital employees breached the standard of care, nor did they set out their standard of care. The Plaintiff's expert doctors criticized medical treatments that could have been done to the Plaintiff

that are beyond the scope of nursing. Only Dr. Dovale could prescribe the medications that Plaintiff say should have been prescribed and only Dr. Dovale could admit the patient to the hospital, discharge him or clear him from spinal precautions. Plaintiff has not shown that any complaint that he has specifically against the Defendant hospital is relevant to the treatment of the Plaintiff that was below the standard of care or that it caused any further injury to the Plaintiff. Plaintiff's medical experts have, by their own reports and testimony limited their testimony to the Co-Defendant, Dr. Dovale who has settled. Plaintiff has not put forth any causative evidence that the Hospital Defendant's negligence, if any, caused any harm to the Plaintiff and Plaintiff's expert testimony against the hospital does not rise to the level of scientific evidence needed to proceed with a medical malpractice case against this Defendant.

## II.

## DR. SLATER

Dr. Slater limited his opinions on standard of care and breach of the standard of care to Dr. Dovale's actions or omissions. See Exhibit B to Plaintiff's Response which is Dr. Slater's report and Plaintiff's Exhibit C which is Dr. Slater's deposition page 6-20.

Concerning the causation issues, the Plaintiff's only theory is that Dr. Dovale should have administered steroids to the Plaintiff while he was in the emergency room at Valley Regional Medical Center. Dr. Slater has stated that he is not familiar with the studies concerning the administration of steroids. Dr. Slater has acknowledged that not only can he not quantify any benefit that the administration of steroids would have had, medical science has questioned whether or not there is any benefit from steroid administration and the benefit is not a generally accepted scientific principle in the scientific community. See Exhibit C to Plaintiff's Response, p. 42 l. 23 – p. 46 l. 19 and p.104 l. 2-11. Clearly, not only can this expert's theory not be tested,

the theory is not generally accepted in the scientific community and he is not familiar with the peer-reviewed publications or the error rate or the standards of controls in his methodology. Dr. Slater's opinions are the type of opinions that should be excluded in a Daubert challenge.

Dr. Slater has also admitted that the administration of steroids is the decision of a neurosurgeon, not a neurologist like himself and as to whether or not the steroids could have benefited the patient, Dr. Slater's own experience was that a neurosurgeon would have that information. See Exhibit C to Plaintiff's Response, p. 46 l. 21 – p. 47 l. 25 and p. 48 l. 14-25.

Dr. Slater himself has not written any articles on this subject. See Exhibit C to Plaintiff's Response, p. 31, l. 8-12, p. 105 l. 19- 22.

Clearly, Dr. Slater is expressing scientific opinions that have been the subject of extensive studies and extensive literature in the scientific community. Since Dr. Slater's opinions on the standard of care and breach of the standard of care are related only to Dr. Dovale and the Plaintiff has settled with Dr. Dovale, those issues are moot as to this Defendant. However, one of the elements that the Plaintiff must prove in this case is that the negligence proximately caused the injury. While his negligence opinions are related to a settled party, the Plaintiff must still address the causation opinions. Dr. Slater himself has acknowledged that medical science has not been settled on the issue of the administration of steroids, he does not administer them, and he is not familiar with the medical literature surrounding this issue. Clearly, his personal opinions and opinions based on his experience would be highly speculative in this situation.

### III.

### MR. ZEFF ROSS

Exhibit I to Plaintiff's Response is a sworn affidavit of Mr. Ross that contains statements in two different paragraphs on the second page of the affidavit that state that the hospital's

negligence proximately caused the Plaintiff's injuries. This was an exhibit to Plaintiff Response to Defendant's First Motion for Summary Judgment that was filed in 2001. Now, Plaintiff argues on page 6 and 7 of Plaintiff's most recent Response that Mr. Ross is qualified to testify, yet Plaintiff concedes that the expert is not qualified to testify as to causation issues. Mr. Ross has already sworn in an affidavit to causation issues and Plaintiff has filed the affidavit previously to defeat this Defendant's prior Motion for Summary Judgment. Mr. Ross himself now acknowledges that he would not testify concerning causation in this case. See Exhibit J to Plaintiff's Response, p. 99 l. 8 - p. 101 l. 15, p.105 l. 23 - p. 106 l. 1, p.106 l.11-22, p. 107 l.5-9. Mr. Ross agreed that it would be inappropriate to use his affidavit to show medical causation as he is incapable of testifying to that. See Exhibit J to Plaintiff's Response, p. 132, l. 23 – p. 133, l. 11.

Mr. Ross himself withdrew his opinions that a trauma code should have been called. Exhibit J to Plaintiff's Response, p. 65 l. 18 - p. 67 l. 12. Mr. Ross also withdrew his opinions in his affidavit that no neurological exam had been performed. Exhibit J to Plaintiff's Response, p. 84 l. 4 – p. 87 l. 3. Mr. Ross also testified that he would not testify concerning the standard of care of nursing practice and he had not reviewed any of the policies and procedures of the Defendant and he would have no information concerning the violation of the policies and procedures. Exhibit J to Plaintiff's Response, p. 97 l. 10 - p. 98 l. 11, p. 120 l. 19 - p.122 l. 5 . He has also never seen either the Texas Nurse Practice Act or the Texas Medical Practice Act. Exhibit J to Plaintiff's Response, p.100 l. 23 - p. 101 l.3.

Mr. Ross acknowledged that he had no information concerning whether or not the nurse advocated with the doctor on the discharge of the patient. Exhibit J to Plaintiff's Response, p. 98 l. 12 - p. 99 l. 7.

Mr. Ross acknowledged that he cannot qualify his opinions under most or all of the Daubert factors. Exhibit J to Plaintiff's Response, p. 67 l. 17 - p. 69 l. 11, p. 20 l. 16-25, p. 54 l. 3 - p. 56 l. 14, p. 138 l. 13 - p. 139 l. 19.

Mr. Ross also now disavows the source material he used for his standard of care opinions, the Joint Commission on Accreditation of Health Care Organizations Manual. See Exhibit J of Plaintiff's Response, p. 132 l. 10-18. As such, Mr. Ross should be disqualified from testifying as an expert witness in this case.

IV.

## DR. PETERS

Dr. Peters expressed no complaints of the Defendant hospital is in his reports or his affidavit. See Exhibit F to Plaintiff's Response, p. 205 l. 11-15, p. 206 l. 23 – p. 207, l. 14, p. 82 l. 24 – p. 85 l. 4, p. 63 l. 24 – p. 64 l. 2. No one knew of any of Dr. Peters' criticisms of the hospital until the day of his deposition. See Exhibit F to Plaintiff's Response, p. 207 l. 15-19.

On the day his deposition was taken in this case and more than three years after the case was filed, Dr. Peters' only criticism is that if the Plaintiff told the nurse about his complaint of numbness in the neck and if the nurse did not pass that to the emergency room doctor, the hospital would be negligent. Plaintiff's own evidence that they have filed and rely on in their response to Defendant's Motion for Summary Judgment completely answers this expert's criticism. Exhibit A to Plaintiff's response to this Defendant's Motion for Summary Judgment is the affidavit of the Plaintiff himself. In paragraph 2 of his affidavit, the Plaintiff states that he told everyone that treated him that he was paralyzed and that he was numb. Plaintiff is using this evidence in an attempt to defeat this Defendant's Motion for Summary Judgment. They should not now be allowed to take a position that the evidence is contradictory to this evidence.

Dr. Peters himself has testified that if Mr. De Leon stated that he was paralyzed or numb to Dr. Dovale, then he would have no criticisms of the hospital. See Exhibit F to Plaintiff's Response, p. 46 l. 3-13, p. 48 l. 24 and p. 85 l. 13 -15. Dr. Peters further states that whether or not the Plaintiff complained of numbness, it was up to Dr. Dovale to determine whether or not the patient had a complaint of numbness and he had an independent duty to do so. See Exhibit F of Plaintiff's Response, p. 100 l. 15-20. Since the doctor has his own independent duty to determine whether or not the patient had a complaint of numbness, the nurse's actions are irrelevant.

Dr. Peters acknowledges that he does not know what governs the standard of practice of nurses and he is not familiar with the Texas Nurse Practice Act. See Exhibit F of Plaintiff's Response, p. 132, l. 3 – p. 133 l. 16. Dr. Peters made no comments in his expert reports about the Hospital's standard of care and he never said how the nurse fell below the standard of care. See Exhibit F of Plaintiff's Response, p. 217 l. 13 – p. 218 l. 1. Dr. Peters acknowledges that he does not meet the minimum qualifications to testify as an expert witness against the nurse in this case. See Exhibit F of Plaintiff's Response, p. 195 l. 1 – p. 197 l. 9. Dr. Peters has used a definition of negligence that clearly is an incorrect statement of law. See Exhibit F of Plaintiff's Response, p. 131 l. 1-3.

Dr. Peters is an emergency medicine doctor who only treats patients in the emergency room. His practice is to see and treat patients and if they need to be admitted or seen by a specialist, he would call in those specialists. Dr. Peters only initiates treatment and does not follow patients on their long-term treatment. See Exhibit F of Plaintiff's Response, p. 37 l. 24 – p. 41 l. 7. Dr. Peters has acknowledged that specialists would be the best ones to testify as to the patient's injuries in this case. See Exhibit F of Plaintiff's Response, p. 70 l. 17 – p. 73 l. 11. Dr.

Peters did not even attempt to make an analysis in his reports of how the nurse falling below the standard of care caused any harm to the Plaintiff. See Exhibit F of Plaintiff's Response, p. 218 l. 2-6. As such, Dr. Peters would be disqualified from testifying as to the causation aspects of this case and his testimony and that respect would be unreliable.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that upon hearing of Defendant's motion, that Plaintiff's experts be disqualified and stricken and for such other and further relief, at law or in equity, to which this Defendant may justly show itself entitled to receive.

Respectfully submitted,

By: _____
William Gault
Federal I.D. No. 14685
State Bar No. 07765050
Michael Quintana
Fed. ID No. 33291
State Bar No. 24037314
Brin & Brin, P.C.
1325 Palm Blvd., Suite A
Brownsville, Texas 78520
(956) 544-7110
(956) 544-0607 Telecopier

Of Counsel:

Brin & Brin, P.C.
1325 Palm Blvd., Suite A
Brownsville, Texas 78520
(956) 544-7110
(956) 544-0607 Telecopier
ATTORNEYS FOR DEFENDANT
COLUMBIA VALLEY HEALTHCARE
SYSTEM, L.P. D/B/A VALLEY
REGIONAL MEDICAL CENTER

## CERTIFICATE OF SERVICE

This is to certify that the above and foregoing instrument has been forwarded to counsel as indicated below on this the 15th day of September, 2004.

Thomas Crosley  
Branton & Hall, P.C.  
One Riverwalk Place, Suite 1700  
700 N. St. Mary's St.  
San Antonio, Texas 78205

**VIA CMRRR 7004 1160 0001 4080 0129**

Steven M. Gonzalez  
Gerald Castillo  
Gonzalez, Gaytan, Garza & Castillo, L.L.P  
1317 E. Quebec Avenue  
McAllen, Texas 78503

**VIA REGULAR MAIL**

Mr. Michael Cowen  
520 E. Levee  
Brownsville, Texas 78520

**VIA REGULAR MAIL**

_____  
William Gault