```
BROWN?    LE MEDICAL CENTER              IRS# X  34630
FINAL 01/09/99   DALLAS
                 75267-6877              956 544 1400   MIC  13

DE LEON,CANDELARIO   3871215  UA I 454662544   12/25/98   1/06/99
                                                8:56AM    5:04PM

                             87121   454662544   SIDIQ HOMAYON

CANDELARIO DE LEON
140 E. 10TH. ST.       MEDICAID (PENDING)   454662544
BROWNSVILLE   TX 78520                                  6/05/41


         * * * DEPARTMENT SUMMARY * * *

    EMERGENCY ROOM                         ====    425.60
    RESPIRATORY THERAPY                    ====  2,768.30
    CARDIOLOGY                             ====    206.10
    PHYSICAL THERAPY                       ====  2,315.40
    IMAGING-RADIOLOGY-DIAG                 ====  2,412.50
    IMAGING-CT SCAN                        ====  4,176.30
    MAGNETIC RESONANCE IMAG                ====  3,574.80
    LABORATORY-PRIMARY                     ====  4,425.65
    PHARMACY NON-INJECTABLES               ====    463.10
    PHARMACY-INJECTABLES                   ====  5,801.60
    IV & IRRIGATING SOLUTION               ====  2,749.30
    PHARMACY CLINICAL SERV                 ====    530.20
    CENTRAL STORES/EQUIP                   ====  2,854.30
      6 DAYS MED/SP                        ====  2,100.00
      3 DAYS TELEMET                       ====  1,440.00
      3 DAYS ICU                           ====  2,175.00




                                               38,418.15
```

§ 32.002    HUMAN, PROTECTIVE & REGULATORY SERVICES
Title 2

**Cross References**

Code Construction Act, see V.T.C.A., Government Code § 311.001 et seq.
Construction of V.T.C.A., Human Resources Code, see V.T.C.A., Human Resources Code § 1.002.

**Library References**

Social Security and Public Welfare ⬅241, 241.55, 241.60.
WESTLAW Topic No. 356A.
C.J.S. Social Security and Public Welfare §§ 126, 132.

Texts and Treatises
59 Texas Jur 3d, Pub Aid & Welf § 17.

## § 32.003. Definitions

In this chapter:

(1) "Board" means the Health and Human Services Commission or the governing body of an agency operating part of the medical assistance program, as appropriate.

(2) "Commissioner" means the Health and Human Services Commission or the commissioner or executive director of an agency operating part of the medical assistance program, as appropriate.

(3) "Department" means the Health and Human Services Commission or an agency operating part of the medical assistance program, as appropriate.

(4) "Medical assistance" includes all of the health care and related services and benefits authorized or provided under federal law for needy individuals of this state.

Acts 1979, 66th Leg., p. 2349, ch. 842, art. 1, § 1, eff. Sept. 1, 1979. Amended by Acts 1995, 74th Leg., ch. 6, § 2, eff. March 23, 1995.

**Historical and Statutory Notes**

Prior Laws:
Acts 1967, 60th Leg., p. 310, ch. 151, § 2.
Vernon's Ann.Civ.St. art. 695j–1, § 2.

**Library References**

Social Security and Public Welfare ⬅241, 241.55, 241.60.
WESTLAW Topic No. 356A.
C.J.S. Social Security and Public Welfare §§ 126, 132.

Texts and Treatises
59 Texas Jur 3d, Pub Aid & Welf § 17.

**United States Code Annotated**

Medical assistance defined, see 42 U.S.C.A. § 1396d.

[Sections 32.004 to 32.020 reserved for expansion]



[1] Repealed, see now V.T.C.A., Occupations Code § 502.001 et seq.

### Historical and Statutory Notes

Sections 4 and 5 of the 1993 amendatory act provide:

"Sec. 4. If before implementing Subsection (f) or (g), Section 32.027, Human Resources Code, as added by this Act, the Health and Human Services Commission determines that a waiver or authorization from a federal agency is necessary for implementation, the commission shall request the waiver or authorization and may authorize a delay in implementing that provision until the waiver or authorization is granted.

"Sec. 5. The Health and Human Services Commission and the Texas Department of Health may contract with other state agencies to implement Title XIX of the Social Security Act (42 U.S.C. Section 1396 et seq.) to the same extent as granted to the Texas Department of Human Services under Section 32.023, Human Resources Code."

Section 2 of Acts 1999, 76th Leg., ch. 930 provides:

"If before implementing any provision of this Act a state agency determines that a waiver or authorization from a federal agency is necessary for implementation of that provision, the agency affected by the provision shall request the waiver or authorization and may delay implementing that provision until the waiver or authorization is granted."

**Prior Laws:**

Acts 1967, 60th Leg., p. 312, ch. 151, § 5;
§ 5-A added by Acts 1973, 63rd Leg., p. 1343, ch. 508, § 1.
Vernon's Ann.Civ.St. art. 695j-1, §§ 5, 5-A.

### Cross References

Podiatrists, scope of practice, see V.T.C.A., Health & Safety Code § 241.102.

### Library References

Social Security and Public Welfare ⇐241, 241.60.
WESTLAW Topic No. 356A.
C.J.S. Social Security and Public Welfare §§ 126, 137 to 138.

**Texts and Treatises**

59 Texas Jur 3d, Pub Aid & Welf § 13.

### United States Code Annotated

State medical assistance plans, requirement individual may obtain assistance from any eligible provider, see 42 U.S.C.A. § 1396a.

### United States Supreme Court

Revocation of authority of nursing home to be Medicaid provider, no right of residents to hearing, see O'Bannon v. Town Court Nursing Center, U.S.Pa.1980, 100 S.Ct. 2467, 447 U.S. 773, 65 L.Ed.2d 506, on remand 626 F.2d 1114.

### § 32.028. Fees, Charges, and Rates

(a) The department shall adopt reasonable rules and standards governing the determination of fees, charges, and rates for medical assistance payments

(b) The fee, charge, or rate for a professional service is the usual and customary fee, charge, or rate that prevails in the community.

(c) The fee, charge, or rate for other medical assistance is the usual and customary fee, charge, or rate that prevails in the community unless the payment is limited by state or federal law.

(d) The department in its adoption of reasonable rules and standards governing the determination of rates paid for inpatient hospital services on a prospective payment basis shall:

(1) assure that the payment rates are reasonable and adequate to meet the costs incurred by the hospital in rendering services to Medicaid recipients;

(2) assure that the prospective payment methodology for hospital services sets the hospital-specific standardized amount at a minimum level of $1,600; and

(3) assure that the adjustment in payment rates for hospital services furnished by disproportionate share hospitals takes into account the essential role of rural hospitals in providing access to hospital services to medically indigent persons in rural areas of the state.

(e) The department in its adoption of reasonable rules and standards governing the determination of rates paid for services provided by a federally qualified health center, as defined by 42 U.S.C. Section 1396d($l$)(2)(B), shall assure that a center is reimbursed for 100 percent of reasonable costs incurred by the center in rendering services to Medicaid recipients.

(f) The department in its adoption of reasonable rules and standards governing the determination of rates paid for services provided by a rural health clinic, as defined by 42 U.S.C. Section 1396d($l$)(1), shall assure that a clinic is reimbursed for 100 percent of reasonable costs incurred by the clinic in rendering services to Medicaid recipients.

Acts 1979, 66th Leg., p. 2351, ch. 842, art. 1, § 1, eff. Sept. 1, 1979. Amended by Acts 1989, 71st Leg., ch. 1219, § 2, eff. Sept. 1, 1989; Acts 1999, 76th Leg., ch. 1411, § 1.16, eff. Sept. 1, 1999.

### Historical and Statutory Notes

**Prior Laws:**
Acts 1967, 60th Leg., p. 313, ch. 151, § 6.
Vernon's Ann.Civ.St. art. 695j–1, § 6.

### Cross References

Administrative procedure and practice, see V.T.C.A., Health & Safety Code § 241.102.

### Library References

Social Security and Public Welfare ⚖=241, 241.66, 241.90.
WESTLAW Topic No. 356A.
C.J.S. Social Security and Public Welfare §§ 126, 134, 137 to 138.

**Texts and Treatises**
59 Texas Jur 3d, Pub Aid & Welf § 19.

## § 32.0281. Rules and Notice Relating to Payment Rates

(a) The department shall by rule describe the process used to determine payment rates for medical assistance and shall notify providers, consumers, the Legislative Budget Board, and the governor's office for budget and planning of that process.

(b) The department shall adopt rules relating to payment rates that include:

(1) a description of the process used to determine payment rates;

complaint processing systems, and any other process or system required by the contract.

(d) The department may delay enrollment of medical assistance recipients in a managed care plan if the review reveals that the managed care organization is not prepared to meet its contractual obligations.

Added by Acts 1997, 75th Leg., ch. 692, § 1, eff. June 17, 1997. Renumbered from § 32.043 by Acts 1999, 76th Leg., ch. 62, § 19.01(75), eff. Sept. 1, 1999.

### Historical and Statutory Notes

Sections 2 and 3 of Acts 1997, 75th Leg., ch. 692, provide:

"Sec. 2. (a) As part of the routine monitoring responsibilities of the Health and Human Services Commission, the commission shall evaluate the STAR+PLUS Medicaid managed care long-term care pilot project, including:

"(1) consumer, family, and provider satisfaction with the project;

"(2) funding, regulatory, and statutory adjustments needed to improve the project; and

"(3) the overall quality of care provided by the project compared to the quality of care provided by the traditional fee-for-service Medicaid long-term care program.

"(b) Not later than January 1, 1999, the Health and Human Services Commission shall submit a report relating to the evaluation to the governor, lieutenant governor, the speaker of the house of representatives, the Senate Health and Human Services Committee, and the House Public Health Committee.

"Sec. 3. This Act applies only to a contract with a managed care organization that the Health and Human Services Commission or an agency authorized by the commission enters into or renews on or after the effective date of this Act. A contract with a managed care organization that the Health and Human Services Commission or an agency authorized by the commission enters into or renews before the effective date of this Act is governed by the law as it existed immediately before that date, and that law is continued in effect for that purpose."

### Library References

Social Security and Public Welfare ⟲241, 241.66.
WESTLAW Topic No. 356A.

C.J.S. Social Security and Public Welfare §§ 126, 137 to 138.

### § 32.050. Dual Medicaid and Medicare Coverage

(a) At least annually the department shall identify each individual receiving medical assistance under the medical assistance program who is eligible to receive similar assistance under the Medicare program.

(b) The department shall analyze claims submitted for payment for a service provided under the medical assistance program to an individual identified under Subsection (a) to ensure that payment is sought first under the Medicare program to the extent allowed by law.

(c) For an ambulance service provided to an individual who is eligible under the medical assistance program and Medicare, the medical assistance program shall pay the Medicare deductibles and coinsurance.

Added by Acts 1997, 75th Leg., ch. 1153, § 1.03(a), eff. June 20, 1997. Amended by Acts 1999, 76th Leg., ch. 710, § 1. Renumbered from § 32.043 by Acts 1999, 76th Leg., ch. 62, § 19.01(76), eff. Sept. 1, 1999.

#### Historical and Statutory Notes

Sections 2 and 3 of Acts 1999, 76th Leg., ch. 710 provide:

"Sec. 2. This Act takes effect September 1, 1999, and applies only to a medical assistance payment for ambulance services that are provided on or after the effective date of this Act.

"Sec. 3. If before implementing Section 32.043(c), Human Resources Code, as added by this Act, the Health and Human Services Commission determines that a waiver or authorization from a federal agency is necessary for implementation, the commission shall request the waiver or authorization and may authorize a delay in implementing that provision until the waiver or authorization is granted."

#### Library References

Social Security and Public Welfare ⚖241, 241.91.
WESTLAW Topic No. 356A.

C.J.S. Social Security and Public Welfare §§ 126, 134.

### § 32.051. Misdirected Billing

To the extent authorized by federal law, the department shall develop a procedure for the state to:

(1) match claims for payment for medical assistance provided under the medical assistance program against data available from other entities, including the Veterans Administration and nursing facilities, to determine alternative responsibility for payment of the claims; and

(2) ensure that the appropriate entity bears the cost of a claim.

Added by Acts 1997, 75th Leg., ch. 1153, § 1.03(a), eff. June 20, 1997. Renumbered from § 32.044 by Acts 1999, 76th Leg., ch. 62, § 19.01(77), eff. Sept. 1, 1999.

#### Library References

Social Security and Public Welfare ⚖241, 241.70.
WESTLAW Topic No. 356A.

C.J.S. Social Security and Public Welfare §§ 126, 137 to 138.

### § 32.052. Waiver Programs for Children With Disabilities or Special Health Care Needs

(a) This section applies to services under the medical assistance program provided to children younger than 23 years of age with disabilities or special health care needs under a waiver granted under Section 1915(c) of the federal Social Security Act (42 U.S.C. Section 1396n(c)).

(b) In this section, "permanency planning" means a philosophy and planning process designed to achieve family support through the facilitation of a permanent living arrangement that has as its primary feature an enduring and nurturing parental relationship.

(c) In developing and providing services subject to this section, the department shall:

(1) fully assess a child at the time the child applies for assistance to determine all appropriate services for the child under the medical assistance program, including both waiver and nonwaiver services;

```
[Code of Federal Regulations]
[Title 12, Volume 1]
[Revised as of January 1, 2003]
From the U.S. Government Printing Office via GPO Access
[CITE: 42CFR489.20]
```

[Page 935-937]

TITLE 42--PUBLIC HEALTH

CHAPTER IV--CENTERS FOR MEDICARE & MEDICAID SERVICES, DEPARTMENT OF HEALTH AND HUMAN SERVICES--(Continued)

PART 489--PROVIDER AGREEMENTS AND SUPPLIER APPROVAL--Table of Contents

Subpart B--Essentials of Provider Agreements

Sec. 489.20 Basic commitments.

   The provider agrees to the following:
   (a) To limit its charges to beneficiaries and to other individuals on their behalf, in accordance with provisions of subpart C of this part.
   (b) To comply with the requirements of subpart D of this part for the return or other disposition of any amounts incorrectly collected from a beneficiary or any other person in his or her behalf.
   (c) To comply with the requirements of Sec. 420.203 of this chapter when it hires certain former employees of intermediaries.
   (d) In the case of a hospital or a CAH that furnishes services to Medicare beneficiaries, either to furnish directly or to make arrangements (as defined in Sec. 409.3 of this chapter) for all Medicare-covered services to inpatients and outpatients of a hospital or a CAH except the following:
   (1) Physicians' services that meet the criteria of Sec. 415.102(a) of this chapter for payment on a reasonable charge basis.
   (2) Physician assistant services, as defined in section 1861(s)(2)(K)(i) of the Act, that are furnished after December 31, 1990.
   (3) Nurse practitioner and clinical nurse specialist services, as defined in section 1861(s)(2)(K)(ii) of the Act.
   (4) Certified nurse-midwife services, as defined in section 1861(ff) of the Act, that are furnished after December 31, 1990.
   (5) Qualified psychologist services, as defined in section 1861(ii) of the Act, that are furnished after December 31, 1990.
   (6) Services of an anesthetist, as defined in Sec. 410.69 of this chapter.
   (e) In the case of a hospital or CAH that furnishes inpatient hospital services or inpatient CAH services for which payment may be made under Medicare, to maintain an agreement with a QIO for that organization to review the admissions, quality, appropriateness, and diagnostic information related to those inpatient services. The requirement of this paragraph (e) applies only if, for the area in which the hospital or CAH is located, there is a QIO that has a contract with CMS under part B of title XI of the Act.
   (f) To maintain a system that, during the admission process, identifies any primary payers other than Medicare, so that incorrect billing and Medicare overpayments can be prevented.
   (g) To bill other primary payers before Medicare.
   (h) If the provider receives payment for the same services from Medicare and another payer that is primary to Medicare, to reimburse



Medicare any overpaid amount within 60 days.

(i) If the provider receives, from a payer that is primary to Medicare, a payment that is reduced because the provider failed to file a proper claim--

(1) To bill Medicare for an amount no greater than would have been payable as secondary payment if the primary insurer's payment had been based on a proper claim; and

(2) To charge the beneficiary only: (i) The amount it would have been entitled to charge if it had filed a proper claim and received payment based on such a claim; and

(ii) An amount equal to any third party payment reduction attributable to failure to file a proper claim, but only if the provider can show that--

(A) It failed to file a proper claim solely because the beneficiary, for any reason other than mental or physical incapacity, failed to give the provider the necessary information; or

(B) The beneficiary, who was responsible for filing a proper claim, failed to do so for any reason other than mental or physical incapacity.

(j) In the State of Oregon, because of a court decision, and in the absence of

[[Page 936]]

a reversal on appeal or a statutory clarification overturning the decision, hospitals may bill liability insurers first. However, if the liability insurer does not pay ``promptly'', as defined in Sec. 411.50 of this chapter, the hospital must withdraw its claim or lien and bill Medicare for covered services.

(k) In the case of home health agencies that provide home health services to Medicare beneficiaries under subpart E of part 409 and subpart C f part 410 of this chapter, to offer to furnish catheters, catheter supplies, ostomy bags, and supplies related to ostomy care to any individual who requires them as part of their furnishing of home health services.

(l) In the case of a hospital as defined in Sec. 489.24(b) to comply with Sec. 489.24.

(m) In the case of a hospital as defined in Sec. 489.24(b), to report to CMS or the State survey agency any time it has reason to believe it may have received an individual who has been transferred in an unstable emergency medical condition from another hospital in violation of the requirements of Sec. 489.24(d).

(n) In the case of inpatient hospital services, to participate in any health plan contracted for under 10 U.S.C. 1079 or 1086 or 38 U.S.C. 613, in accordance with Sec. 489.25.

(o) In the case of inpatient hospital services, to admit veterans whose admission has been authorized under 38 U.S.C. 603, in accordance with Sec. 489.26.

(p) To comply with Sec. 489.27 of this part concerning notification of Medicare beneficiaries of their rights associated with the termination of Medicare services.

(q) In the case of a hospital as defined in Sec. 489.24(b)--

(1) To post conspicuously in any emergency department or in a place or places likely to be noticed by all individuals entering the emergency department, as well as those individuals waiting for examination and treatment in areas other than traditional emergency departments (that is, entrance, admitting area, waiting room, treatment area), a sign (in a form specified by the Secretary) specifying rights of individuals under Section 1867 of the Act with respect to examination and treatment for emergency medical conditions and women in labor; and

(2) To post conspicuously (in a form specified by the Secretary)

information indicating whether or not the hospital or rural primary care hospital participates in the Medicaid program under a State plan approved under title XIX.

(r) In the case of a hospital as defined in Sec. 489.24(b) (including both the transferring and receiving hospitals), to maintain--

(1) Medical and other records related to individuals transferred to or from the hospital for a period of 5 years from the date of the transfer;

(2) A list of physicians who are on call for duty after the initial examination to provide treatment necessary to stabilize an individual with an emergency medical condition; and

(3) A central log on each individual who comes to the emergency department, as defined in Sec. 489.24(b), seeking assistance and whether he or she refused treatment, was refused treatment, or whether he or she was transferred, admitted and treated, stabilized and transferred, or discharged.

(s) In the case of an SNF, either to furnish directly or make arrangements (as defined in Sec. 409.3 of this chapter) for all Medicare-covered services furnished to a resident (as defined in Sec. 411.15(p)(3) of this chapter) of the SNF, except the following:

(1) Physicians' services that meet the criteria of Sec. 415.102(a) of this chapter for payment on a fee schedule basis.

(2) Services performed under a physician's supervision by a physician assistant who meets the applicable definition in section 1861(aa)(5) of the Act.

(3) Services performed by a nurse practitioner or clinical nurse specialist who meets the applicable definition in section 1861(aa)(5) of the Act and is working in collaboration (as defined in section 1861(aa)(6) of the Act) with a physician.

(4) Services performed by a certified nurse-midwife, as defined in section 1861(gg) of the Act.

(5) Services performed by a qualified psychologist, as defined in section 1861(ii) of the Act.

(6) Services performed by a certified registered nurse anesthetist, as defined in section 1861(bb) of the Act.

[[Page 937]]

(7) Dialysis services and supplies, as defined in section 1861(s)(2)(F) of the Act, and those ambulance services that are furnished in conjunction with them.

(8) Erythropoietin (EPO) for dialysis patients, as defined in section 1861(s)(2)(O) of the Act.

(9) Hospice care, as defined in section 1861(dd) of the Act.

(10) An ambulance trip that initially conveys an individual to the SNF to be admitted as a resident, or that conveys an individual from the SNF in connection with one of the circumstances specified in Sec. 411.15(p)(3)(i) through (p)(3)(iv) of this chapter as ending the individual's status as an SNF resident.

(11) The transportation costs of electrocardiogram equipment (HCPCS code R0076), but only with respect to those electrocardiogram test services furnished during 1998.

(12) Those chemotherapy items identified, as of July 1, 1999, by HCPCS codes J9000-J9020; J9040-J9151; J9170-J9185; J9200-J9201; J9206-J9208; J9211; J9230-J9245; and J9265-J9600; and, as of January 1, 2004, by HCPCS codes A9522 and A9523.

(13) Those chemotherapy administration services identified, as of July 1, 1999, by HCPCS codes 36260-36262; 36489; 36530-36535; 36640; 36823; and 96405-96542.

(14) Those radioisotope services identified, as of July 1, 1999, by

HCPCS codes 79030-79440.

(15) Those customized prosthetic devices (including artificial limbs and their components) identified, as of July 1, 1999, by HCPCS codes L5050-L5340; L5500-L5611; L5613-L5986; L5988; L6050-L6370; L6400-6880; L6920-L7274; and L7362-L7366, which are delivered for a resident's use during a stay in the SNF and intended to be used by the resident after discharge from the SNF.

[45 FR 22937, Apr. 4, 1980, as amended at 48 FR 39837, Sept. 1, 1983; 49 FR 323, Jan. 3, 1984; 54 FR 41747, Oct. 11, 1989; 57 FR 36018, Aug. 12, 1992; 58 FR 30677, May 26, 1993; 59 FR 32120, June 22, 1994; 60 FR 63189, Dec. 8, 1995; 62 FR 46037, Aug. 29, 1997; 63 FR 26312, May 12, 1998; 65 FR 18548, Apr. 7, 2000; 65 FR 46796, July 31, 2000; 66 FR 39601, July 31, 2001; 68 FR 16669, Apr. 4, 2003; 68 FR 43942, July 25, 2003; 68 FR 46072, Aug. 4, 2003]

Effective Date Note: At 59 FR 32120, June 22, 1994, in Sec. 489.**20**, paragraphs (l) through (r) were added. Paragraphs (m), (r)(2) and (r)(3) contain information collection and recordkeeping requirements and will not become effective until approved by the Office of Management and Budget.

[Code of Federal Regulations]
[Title 12, Volume 1]
[Revised as of January 1, 2003]
From the U.S. Government Printing Office via GPO Access
[CITE: **42CFR489.21**]

[Page 937-938]

TITLE 42--PUBLIC HEALTH

CHAPTER IV--CENTERS FOR MEDICARE & MEDICAID SERVICES, DEPARTMENT OF HEALTH AND HUMAN SERVICES--(Continued)

PART 489--PROVIDER AGREEMENTS AND SUPPLIER APPROVAL--Table of Contents

Subpart B--Essentials of Provider Agreements

Sec. 489.21 Specific limitations on charges.

Except as specified in subpart C of this part, the provider agrees not to charge a beneficiary for any of the following:
  (a) Services for which the beneficiary is entitled to have payment made under Medicare.
  (b) Services for which the beneficiary would be entitled to have payment made if the provider--
    (1) Had in its files the required certification and recertification by a physician relating to the services furnished to the beneficiary;
    (2) Had furnished the information required by the intermediary in order to determine the amount due the provider on behalf of the individual for the period with respect to which payment is to be made or any prior period;
    (3) Had complied with the provisions requiring timely utilization review of long stay cases so that a limitation on days of service has not been imposed under section 1866(d) of the Act (see subpart K of part 405 and part 482 of this chapter for utilization review requirements); and
    (4) Had obtained, from the beneficiary or a person acting on his or her behalf, a written request for payment to be made to the provider, and had properly filed that request. (If the beneficiary or person on his or her behalf refuses to execute a written request, the provider may charge the beneficiary for all services furnished to him or her.)
  (c) Inpatient hospital services furnished to a beneficiary who exhausted his or her Part A benefits, if CMS reimburses the provider for those services.
  (d) Custodial care and services not reasonable and necessary for the diagnosis or treatment of illness or injury, if--
    (1) The beneficiary was without fault in incurring the expenses; and
    (2) The determination that payment was incorrect was not made until after the third year following the year in which the payment notice was sent to the beneficiary.

[[Page 938]]

  (e) Inpatient hospital services for which a beneficiary would be entitled to have payment made under Part A of Medicare but for a denial or reduction in payments under regulations at Sec. 412.48 of this chapter or under section 1886(f) of the Act.
  (f) Items and services furnished to a hospital inpatient (other than physicians' services as described in Sec. 415.102(a) of this chapter or the services of an anesthetist as described in Sec. 405.553(b)(4) of

this chapter) for which Medicare payment would be made if furnished by the hospital or by other providers or suppliers under arrangements made with them by the hospital. For this purpose, a charge by another provider or supplier for such an item or service is treated as a charge by the hospital for the item or service, and is also prohibited.

    (g) [Reserved]

    (h) Items and services (other than those described in Sec.Sec. 489.20(s)(1) through (15)) required to be furnished under Sec. 489.20(s) to a resident of an SNF (defined in Sec. 411.15(p) of this chapter), for which Medicare payment would be made if furnished by the SNF or by other providers or suppliers under arrangements made with them by the SNF. For this purpose, a charge by another provider or supplier for such an item or service is treated as a charge by the SNF for the item or service, and is also prohibited.

[49 FR 324, Jan. 3, 1984, as amended at 51 FR 22052, June 17, 1986; 52 FR 27765, July 23, 1987; 60 FR 63189, Dec. 8, 1995; 64 FR 41683, July 30, 1999; 65 FR 46796, July 31, 2000; 65 FR 62646, Oct. 19, 2000; 66 FR 39601, July 31, 2001]

[Code of Federal Regulations]
[Title 12, Volume 1]
[Revised as of January 1, 2003]
From the U.S. Government Printing Office via GPO Access
[CITE: **42CFR489.30**]

[Page 950]

TITLE 42--PUBLIC HEALTH

CHAPTER IV--CENTERS FOR MEDICARE & MEDICAID SERVICES, DEPARTMENT OF
HEALTH AND HUMAN SERVICES--(Continued)

PART 489--PROVIDER AGREEMENTS AND SUPPLIER APPROVAL--Table of Contents

Subpart C--Allowable Charges

Sec. 489.30  Allowable charges: Deductibles and coinsurance.


    (a) Part A deductible and coinsurance. The provider may charge the
beneficiary or other person on his or her behalf:
    (1) The amount of the inpatient hospital deductible or, if less, the
actual charges for the services;
    (2) The amount of inpatient hospital coinsurance applicable for each
day the individual is furnished inpatient hospital services after the
60th day, during a benefit period; and
    (3) The posthospital SNF care coinsurance amount.
    (4) In the case of durable medical equipment (DME) furnished as a
home health service, 20 percent of the customary charge for the service.
    (b) Part B deductible and coinsurance. (1) The basic allowable
charges are the $75 deductible and 20 percent of the customary (insofar
as reasonable) charges in excess of that deductible.
    (2) For hospital outpatient services, the allowable deductible
charges depend on whether the hospital can determine the beneficiary's
deductible status.
    (i) If the hospital is unable to determine the deductible status, it
may charge the beneficiary its full customary charges up to $75.
    (ii) If the beneficiary provides official information as to
deductible status, the hospital may charge only the unmet portion of the
deductible.
    (3) In either of the cases discussed in paragraph (b)(2) of this
section, the hospital is required to file with the intermediary, on a
form prescribed by CMS, information as to the services, charges, and
amounts collected.
    (4) The intermediary must reimburse the beneficiary if reimbursement
is authorized and credit the expenses to the beneficiary's deductible if
the deductible has not yet been met.
    (5) In the case of DME furnished as a home health service under
Medicare Part B, the coinsurance is 20 percent of the customary (insofar
as reasonable) charge for the services, with the following exception: If
the DME is used DME purchased by or on behalf of the beneficiary at a
price at least 25 percent less than the reasonable charge for comparable
new equipment, no coinsurance is required.

[45 FR 22937, Apr. 4, 1980, as amended at 51 FR 41350, Nov. 14, 1986]

```
[Code of Federal Regulations]
[Title 12, Volume 1]
[Revised as of January 1, 2003]
From the U.S. Government Printing Office via GPO Access
[CITE: 42CFR489.30]
```

[Page 950]

TITLE 42--PUBLIC HEALTH

CHAPTER IV--CENTERS FOR MEDICARE & MEDICAID SERVICES, DEPARTMENT OF
HEALTH AND HUMAN SERVICES--(Continued)

PART 489--PROVIDER AGREEMENTS AND SUPPLIER APPROVAL--Table of Contents

Subpart C--Allowable Charges

Sec. 489.30  Allowable charges: Deductibles and coinsurance.

   (a) Part A deductible and coinsurance. The provider may charge the
beneficiary or other person on his or her behalf:
   (1) The amount of the inpatient hospital deductible or, if less, the
actual charges for the services;
   (2) The amount of inpatient hospital coinsurance applicable for each
day the individual is furnished inpatient hospital services after the
60th day, during a benefit period; and
   (3) The posthospital SNF care coinsurance amount.
   (4) In the case of durable medical equipment (DME) furnished as a
home health service, 20 percent of the customary charge for the service.
   (b) Part B deductible and coinsurance. (1) The basic allowable
charges are the $75 deductible and 20 percent of the customary (insofar
as reasonable) charges in excess of that deductible.
   (2) For hospital outpatient services, the allowable deductible
charges depend on whether the hospital can determine the beneficiary's
deductible status.
   (i) If the hospital is unable to determine the deductible status, it
may charge the beneficiary its full customary charges up to $75.
   (ii) If the beneficiary provides official information as to
deductible status, the hospital may charge only the unmet portion of the
deductible.
   (3) In either of the cases discussed in paragraph (b)(2) of this
section, the hospital is required to file with the intermediary, on a
form prescribed by CMS, information as to the services, charges, and
amounts collected.
   (4) The intermediary must reimburse the beneficiary if reimbursement
is authorized and credit the expenses to the beneficiary's deductible if
the deductible has not yet been met.
   (5) In the case of DME furnished as a home health service under
Medicare Part B, the coinsurance is 20 percent of the customary (insofar
as reasonable) charge for the services, with the following exception: If
the DME is used DME purchased by or on behalf of the beneficiary at a
price at least 25 percent less than the reasonable charge for comparable
new equipment, no coinsurance is required.

[45 FR 22937, Apr. 4, 1980, as amended at 51 FR 41350, Nov. 14, 1986]

4-4-80
Vol. 45—No. 67
BOOK 1:
PAGES
22873-23196
BOOK 2
PAGES
23197-23400

Book 1 of 2 Books
Friday, April 4, 1980

APR 1 ? 1980

U. S. Documents

# federal register

## Highlights

Los Angeles Briefing on How To Use the Federal Register—See details on "What It Is and How to Use It" workshops on April 14, 15, and 16, in Reader Aids section in this issue.

Briefings on How To Use the Federal Register—For details on briefings in Washington, D.C.; Los Angeles, Calif.; Boston, Mass.; New York, N.Y.; Salt Lake City, Utah; Seattle, Wash.; and Chicago, Ill.; see announcement in this Reader Aids section at the end of this issue.

22994 / 23400  **Taxes** Treasury/IRS provides temporary excise tax regulations and requests comments relating to the windfall profit tax on domestic crude oil; comments by 6-3-80 (2 documents) (Part XI of this issue)

22889  **Credit Restraint Program** FRS requires banking institutions to make monthly reports; effective 3-28-80

22885  **Loan Interest Rates** NCUA releases ruling which allows credit unions to charge up to 15% per year on unpaid balance inclusive of all finance charges; effective 3-31-80

22875  **Vietnam Era Veterans** VA proposes rules providing authority for the furnishing of readjustment counseling and/or related mental health services; comments by 5-5-80

CONTINUED INSIDE



(1) Any existing plan of correction.
(2) Any expiration date.
(3) Compliance with applicable health and safety standards.
(4) Compliance with the ownership and financial interest disclosure requirements of §§ 455.104 and 455.105 of this chapter.
(5) Compliance with civil rights requirements set forth in 45 CFR Parts 80, 84, and 90.
(6) Compliance with any additional requirements imposed by the Medicaid agency.

C. A new Part 489 is added, to read as follows:

## PART 489—PROVIDER AGREEMENTS UNDER MEDICARE

### Subpart A—General Provisions

Sec.
489.1 Statutory basis.
489.2 Scope.
489.3 Definition.
489.10 Basic requirements.
489.11 Acceptance of a provider as a participant.
489.12 Decision to deny an agreement.
489.13 Effective date of agreement.
489.15 Time limits on agreements with skilled nursing facilities (SNFs).
489.16 Nonrenewal of agreements with SNFs.
489.18 Change of ownership or leasing: Effect on provider agreement.

### Subpart B—Essentials of provider Agreements

489.20 Basic commitments.
489.21 Specific limitations on charges.
489.22 Special provisions applicable to prepayment requirements.

### Subpart C—Allowable Charges

489.30 Allowable charges: Deductible, coinsurance, and copayment.
489.31 Allowable charges: Blood.
489.32 Allowable costs: Noncovered and partially covered services.
489.35 Notice to intermediary.

### Subpart D—Handling of Incorrect Collections

489.40 Definition of incorrect collection.
489.41 Timing and methods of handling.
489.42 Payment of offset amounts to beneficiary or other person.

### Subpart E—Withholding of Payment, Termination of Agreement and Reinstatement after Termination

489.50 Withholding of payment for failure to make timely utilization review.
489.52 Termination by the provider.
489.53 Termination by HCFA.
489.55 Exceptions to effective date of termination.
489.57 Reinstatement after termination.

Authority: Sec. 1102 of the Social Security Act (42 U.S.C. 1302).

## PART 489—PROVIDER AGREEMENTS

### Subpart A—General Provisions

§ 489.1 Statutory basis.

This part implements section 1866 of the Social Security Act. Section 1866 specifies the terms of provider agreements and the providers that may enter into such agreements. The following other sections of that Act are also pertinent:
(a) Section 1861 defines the services covered under Medicare and the providers that may be reimbursed for furnishing those services.
(b) Section 1864 provides for the use of State survey agencies to ascertain whether certain entities meet the conditions of participation.
(c) Section 1871 authorizes the Secretary to prescribe regulations for the administration of the Medicare program.

§ 489.2 Scope of part.

(a) Subpart A of this part sets forth the basic requirements for submittal and acceptance of a provider agreement under Medicare. Subpart B of the part specifies the basic commitments and limitations that the provider must agree to as part of an agreement to provide services. Subpart C specifies the limitations on allowable charges to beneficiaries for deductibles, coinsurance, copayments, and services that must be paid for by the provider agreement. Subpart D of this part specifies how incorrect collections are to be handled.
(b) The following providers are subject to the provisions of this part:
(1) Hospitals.
(2) Skilled nursing facilities (SNFs).
(3) Home health agencies (HHAs).
(4) Clinics, rehabilitation agencies, and public health agencies.
(c) Those listed in paragraph (b)(4) of this section may enter into provider agreements only for furnishing outpatient physical therapy and speech pathology services.

§ 489.3 Definition.

"Provider agreement" means an agreement between HCFA and one of the providers specified in § 489.2(b) to provide services to Medicare beneficiaries and to be reimbursed on a reasonable cost basis.

§ 489.10 Basic requirements.

(a) Any of the providers specified in § 489.2 may request participation in Medicare. In order to be accepted, it must meet—
(1) The conditions of participation set forth elsewhere in this chapter; and

(2) The civil rights requirements specified in 45 CFR Parts 80, 84, and 90.
(b) The State survey agency will ascertain whether the provider meets the conditions of participation and make its recommendation to HCFA.

§ 489.11 Acceptance of a provider as a participant.

(a) Action by HCFA. If HCFA determines that the provider meets the requirements, it will send the provider—
(1) Written notice of that determination; and
(2) Two copies of the provider agreement.
(b) Action by provider. If the provider wishes to participate, it must return both copies of the agreement, duly signed by an authorized official, to HCFA, together with a written statement indicating whether it has been adjudged insolvent or bankrupt in any State or Federal court, or whether any insolvency or bankruptcy actions are pending.
(c) Notice of acceptance. If HCFA accepts the agreement, it will return one copy to the provider with a written notice that—
(1) Indicates the dates on which it was signed by the provider's representative and accepted by HCFA;
(2) Specifies the effective date of the agreement; and
(3) If the agreement is with a SNF, indicates the term of the agreement.

§ 489.12 Decision to deny an agreement.

(a) Reasons for denial.—HCFA may refuse to enter into or renew an agreement for any of the following reasons:
(1) Principals of the provider have been convicted of fraud (see § 420.204 of this chapter).
(2) The provider has failed to disclose ownership and control interests in accordance with § 420.205 of this chapter.
(3) The provider has been adjudged bankrupt or insolvent.
(b) Effect of bankruptcy or insolvency. (1) HCFA will not enter into an agreement with a provider that has been adjudged insolvent or bankrupt under appropriate State or Federal law, or against which there is pending a court proceeding to make a judgment concerning this matter. The reason for denial is that the provider is unable to give satisfactory assurances of compliance with the requirements of title XVIII of the Act.
(2) If a provider who is participating and receiving payments under Medicare is subsequently adjudged insolvent or bankrupt by a court of competent jurisdiction, HCFA will not terminate its participation in the program because of

that financial condition. However, the intermediary will adjust payments to the provider (as specified in § 405.454(k) of this chapter) to preclude overpayments.

(c) *Compliance with civil rights requirements.* HCFA will not enter into a provider agreement if the provider fails to comply with civil rights requirements set forth in 45 CFR Parts 80, 84, and 90.

§ 489.13 Effective date of agreement.

(a) *All Federal requirements are met on the date of the survey.* The agreement will be effective on the date the onsite survey is completed (or on the day following the expiration date of a current agreement) if, on the date of the survey, the provider meets all Federal health and safety standards, and any other requirements imposed by HCFA.

(b) *All Federal requirements are not met on the date of the survey.* If the provider fails to meet any of the requirements specified in paragraph (a) of this section, the agreement will be effective on the earlier of the following dates:

(1) The date on which the provider meets all requirements.

(2) The date on which the provider submits a correction plan acceptable to HCFA or an approvable waiver request, or both.

§ 489.15 Time limits on agreements with skilled nursing facilities (SNFs).

(a) *Basic limitation.* An agreement with a SNF must be for a specified term, determined by HCFA in accordance with paragraphs (b) and (c) of this section.

(b) *SNF in full compliance.* If the SNF is in full compliance with the conditions of participation specified elsewhere in this chapter, the term must be 12 calendar months.

(c) *SNF not in full compliance*—(1) *Alternatives.* A SNF that is not in full compliance may be issued a restricted agreement or a conditional agreement.

(2) *Restricted agreement.* This agreement must:
(i) Specify a date by which corrections must be made;
(ii) End no later than the 60th day following the date specified for correction of deficiencies; and
(iii) Be for a term that, including the 60-day period, is 12 months or less.

(3) *Conditional agreement.* This agreement must:
(i) Be for 12 months;
(ii) Specify a date for correction of deficiencies that is no later than the end of the 10th month; and
(iii) Provide for automatic cancellation on the 60th day following the date specified for correction, unless HCFA determines that all deficiencies have been corrected or the SNF has made substantial effort and progress and has submitted an acceptable revised correction plan.

(d) *Extension of the agreement.* An agreement may be extended for 60 days if—

(1) HCFA determines the extension will not jeopardize the health and safety of beneficiaries; and

(2) The extension is needed—
(i) To prevent irreparable harm to the SNF or hardship to the beneficiaries receiving services from the SNF; or
(ii) To enable HCFA to determine whether the SNF is in compliance with the conditions of participation.

§ 489.16 Nonrenewal of agreements with SNFs.

(a) *No automatic renewal.* Except as provided in § 489.13(a), the term of an agreement may not be extended. The agreement shall terminate at the close of the last day of its specified term and will not be automatically renewable from term to term.

(b) *Notice of nonrenewal.* (1) If HCFA decides not to renew an agreement with a SNF, it will notify the SNF at least 30 days, and the public at least 15 days, before the end of the term.

(2) The notice will include the basis for the determination, the effective date for the termination of the existing agreement, and the applicability of the termination to the SNF.

(c) *Right to hearing.* If there is a nonrenewal of an agreement based on conditions described in § 489.53, a determination that the facility does not qualify as a provider for a reasonable period immediately following the end of the current agreement.

(2) The facility has a right to a hearing as provided in Part 498, Subpart D of this chapter.

§ 489.18 Change of ownership; effect on provider agreement.

(a) *What constitutes change of ownership*—(1) *Partnership.* In the case of a partnership, the removal, addition, or substitution of a partner, unless the partners expressly agree otherwise, as permitted by applicable State law, constitutes change of ownership.

(2) *Unincorporated sole proprietorship.* Transfer of title and property to another party constitutes change of ownership.

(3) *Corporation.* The merger of the provider corporation into another corporation, or the consolidation of two or more corporations, resulting in the creation of a new corporation constitutes change of ownership. Transfer of corporate stock or the merger of another corporation into the provider corporation does not constitute change of ownership.

(4) *Leasing.* The lease of all or part of a provider facility constitutes change of ownership of the leased portion.

(b) *Notice to HCFA.* A provider who is contemplating or negotiating a change of ownership must notify HCFA.

(c) *Assignment of agreement.* When there is a change of ownership as specified in paragraph (a) of this section, the existing provider agreement will automatically be assigned to the new owner.

(d) *Conditions that apply to assigned agreements.* An assigned agreement is subject to all applicable statutes and regulations and to the terms and conditions under which it was originally issued including, but not limited to, the following:

(1) Any existing plan of correction.
(2) Any expiration date.
(3) Compliance with applicable health and safety standards.
(4) Compliance with the ownership and financial interest disclosure requirements of Part 420, Subpart C, of this chapter.
(5) Compliance with civil rights requirements set forth in 45 CFR Parts 80, 84, and 90.

(e) *Effect of leasing.* The provider agreement will be assigned to the lessee only to the extent of the leased portion of the facility.

Subpart B—Essentials of Provider Agreements

§ 489.20 Basic commitments.

The provider agrees—
(a) To limit its charges to beneficiaries and to other individuals on their behalf in accordance with provisions of Subpart C of this part;
(b) To comply with the requirements of Subpart D of this part for the return or other disposition of any amounts incorrectly collected from a beneficiary or any other person in his or her behalf.
(c) To comply with the requirements of § 420.206 of this chapter when it hires certain former employees of intermediaries.

§ 489.21 Specific limitations on charges.

Except as specified in Subpart C of this part, the provider agrees not to charge a beneficiary—

(a) For services for which the beneficiary is entitled to have payment made under Medicare.

(b) For services for which the beneficiary would be entitled to have payment made if the provider had complied with the following requirements:

(1) Had in its files the required certification and recertification by a physician relating to the services furnished to the beneficiary;

(2) Had furnished such information as the intermediary found necessary in order to determine the amount due the provider on behalf of the individual for the period with respect to which payment is to be made or any prior periods;

(3) Had complied with the provisions requiring timely utilization review of long stay cases so that a limitation on days of service has not been imposed under section 1866(d) of the Act (see Part 405, Subparts J and K for utilization review requirements); and

(4) Had obtained, from the beneficiary or a person acting on his or her behalf, a written request for payment to be made to the provider, and had properly filed that request. If the beneficiary or person on his or her behalf refuses to execute a written request, the provider may charge the beneficiary for all services furnished to him or her.

(c) For inpatient hospital services furnished to a beneficiary who exhausted his or her Part A benefits, if HCFA reimburses the provider for those services.

(d) For custodial care and for services not reasonable and necessary for the diagnosis or treatment of illness or injury, if:

(1) The beneficiary was without fault in incurring the expenses; and

(2) The determination that payment was incorrect was not made until after the third year following the year in which the payment notice was sent to the beneficiary.

§ 489.22 Special provisions applicable to prepayment requirements.

(a) A provider may not require an individual entitled to hospital insurance benefits to prepay in part or in whole for inpatient services as a condition of admittance as an inpatient, except where it is clear upon admission that payment under Medicare, Part A cannot be made.

(b) A provider may not deny covered inpatient services to an individual entitled to have payment made for those services on the ground of inability or failure to pay a requested amount at or before admission.

(c) A provider may not evict, or threaten to evict, an individual for inability to pay a deductible or a coinsurance amount required under Medicare.

(d) A provider may not charge an individual for (1) its agreement to admit or readmit the individual on some specified future date for covered inpatient services; or (2) for failure to remain an inpatient for any agreed-upon length of time or for failure to give advance notice of departure from the provider's facilities.

Subpart C—Allowable Charges

§ 489.30 Allowable charges: Deductible, coinsurance, and copayment.

(a) *Part A deductible and coinsurance.* The provider may charge the beneficiary or other person on his or her behalf:

(1) The amount of the inpatient hospital deductible or, if less, the actual charges for the services.

(2) The amount of inpatient hospital coinsurance applicable for each day the individual is furnished inpatient hospital services after the 60th day, during a benefit period; and

(3) The posthospital extended care services coinsurance amount.

(b) *Part B deductible and copayment.* (1) The basic allowable charges are the $60 deductible and 20 percent of the reasonable charges in excess of that deductible.

(2) For hospital outpatient services, the allowable deductible charges depend on whether the hospital can determine the beneficiary's deductible status.

(i) If the hospital is unable to determine the deductible status, it may charge the beneficiary its full charges up to $60.

(ii) If the beneficiary provides information as to deductible status, the hospital may charge only the portion of the deductible not met.

(3) In either of the cases covered by paragraph (b)(2) of this section, the hospital is required to file, with the intermediary, on a form prescribed by HCFA, information as to the charges and amounts collected.

(4) The intermediary must refund the beneficiary if reimbursement is authorized and credit the expense to the beneficiary's deductible if the deductible has not yet been met.

§ 489.31 Allowable charges: Blood.

(a) *Part A deductible.* A provider may charge the beneficiary (or other person on his or her behalf) for the first three pints of blood, or units of packed red blood cells furnished during a benefit period. Charges are subject to the following conditions:

(1) They may not exceed the provider's customary charges.

(2) No charge may be made for any whole blood or packed red cells that are replaced, pint for pint, or unit for unit, by or on behalf of the beneficiary.

(b) *Part B deductible.* (1) A provider may charge a beneficiary (or other person on his or her behalf) for the first pints of whole blood or units of packed red cells furnished during a benefit period, even though a part A blood deductible has been charged during that same period.

(2) The charges are subject to the limitations specified in paragraph (a) of this section.

(c) *Excess charges.* If the charge exceeds the cost to the provider, that excess will be deducted from any Medicare payments due the provider.

§ 489.32 Allowable charges: Noncovered and partially covered services.

(a) *Services requested by beneficiary.* If services furnished at the request of a beneficiary (or his or her representative) are more expensive than, or in excess of, services covered under Medicare—

(1) A provider may charge the beneficiary an amount that does not exceed the difference between—

(i) The provider's customary charges for the services furnished; and

(ii) The provider's customary charges for the kinds and amounts of services covered under Medicare.

(2) A provider may not charge for services unless they have been requested by the beneficiary (or his or her representative), nor require a beneficiary to request services as a condition of admission.

(3) To avoid misunderstanding, the provider must inform any beneficiary who requests a service for which payment will be made that there will be a specified charge for that service.

(b) [unreadable] by the provider. For special provisions that apply when a provider customarily furnishes more expensive services, see § 489.20 of this chapter.

[unreadable paragraph] The provider must inform its beneficiary of any amounts collected from the beneficiary or from other persons on his or her behalf.

Subpart D—Handling of Incorrect Collections

§ 489.40 Definition of incorrect collection.

(a) As used in this subpart, "incorrect collections" means any amounts collected from a beneficiary (or someone on his or her behalf) that are not authorized under Subpart C of this part.

(b) A payment properly made to a provider by an individual not considered entitled to Medicare benefits will be deemed to be an "incorrect collection" when the individual is found to be retroactively entitled to benefits.

**§ 489.41 Timing and methods of handling.**

(a) *Refund.* Prompt refund to the beneficiary or other person is the preferred method of handling incorrect collections.

(b) *Setting aside.* If the provider cannot refund within 60 days from the date on the notice of incorrect collection, it must set aside an amount equal to the amount incorrectly collected, in a separate account identified as to the individual to whom the payment is due. This amount incorrectly collected must be carried on the provider's records in this manner until final disposition is made in accordance with the applicable State law.

(c) *Notice to, and action by, intermediary.* (1) The provider must notify the intermediary of the refund or setting aside required under paragraphs (a) and (b) of this section.

(2) If the provider fails to refund or set aside the required amounts, they may be offset against amounts otherwise due the provider.

**§ 489.42 Payment of offset amounts to beneficiary or other person.**

(a) In order to carry out the commitment to refund amounts incorrectly collected, HCFA may determine that amounts offset in accordance with § 489.41 are to be paid directly to the beneficiary or other person from whom the provider received the incorrect collection, if—

(1) HCFA finds that the provider has failed, following written request, to refund the amount of the incorrect collection to the beneficiary or other person; and

(2) The provider agreement has been terminated in accordance with the provisions of Subpart E of this part.

(b) Before making a determination to make payment under paragraph (a) of this section, HCFA will give written notice to the provider (1) explaining that an incorrect collection was made and the amount; (2) requesting the provider to refund the incorrect collection to the beneficiary or other person; and (3) advising of HCFA's intention to make a determination under paragraph (a) of this section.

(c) The notice will afford an authorized official of the provider an opportunity to submit, within 20 days from the date on the notice, written statement or evidence with respect to the incorrect collection and/or offset amounts. HCFA will consider any written statement or evidence in making a determination.

(d) Payment to a beneficiary or other person under the provisions of paragraph (a) of this section: (1) Will not exceed the amount of the incorrect collection; and (2) May be considered as payment made to the provider.

**Subpart E—Withholding of Payment, Termination of Agreement and Reinstatement After Termination**

**§ 489.50 Withholding of payment for failure to make timely utilization review.**

(a) If HCFA finds that there is a substantial failure to make timely utilization review of long-stay cases in a hospital or skilled nursing facility, HCFA may determine that no payment shall be made for inpatient hospital services (including inpatient tuberculosis hospital services and inpatient psychiatric hospital services) or for posthospital extended care services furnished an individual after the 20th day of a continuing period of such services.

(b) Before making a determination to withhold payment, HCFA will notify the provider of its intention and will afford the institution or agency an opportunity for a hearing.

(c) The withholding of payment becomes effective as of the date specified in the determination and will apply to services furnished to individuals admitted after that date.

(d) The withholding will continue in effect until HCFA finds that—

(1) The reason for the withholding has been removed; and

(2) There is reasonable assurance it will not recur.

**§ 489.51 Termination by the provider.**

(a) *Notice to HCFA.* (1) A provider that wishes to terminate its agreement must send HCFA written notice of its intent.

(2) The notice may state the date of termination which must be the first day of a month.

(b) *Termination date.* (1) If the notice does not specify a date, or the date is not acceptable to HCFA, HCFA may set a date that will not be more than 6 months from the date on the provider's notice of intent.

(2) HCFA may accept a termination date that is less than 6 months after the date on the provider's notice if it determines that to do so would not unduly disrupt services to the community or otherwise interfere with the effective and efficient administration of the Medicare program.

(3) A cessation of business is deemed to be a termination by the provider, effective with the date on which it stopped providing services to the community.

(c) *Public notice.* (1) The provider must give notice to the public at least 15 days before the effective date of termination.

(2) The notice must be published in one or more local newspapers and must—

(i) Specify the termination date; and

(ii) Explain to what extent services may continue after that date, in accordance with the exceptions set forth in § 489.55.

**§ 489.53 Termination by HCFA.**

(a) *Cause for termination.* HCFA may terminate an agreement if it determines that any of the failings listed in this paragraph (a) is attributable to the provider.

(1) It is not complying substantially with the provisions of title XVIII and the applicable regulations of this chapter or with the provisions of the agreement.

(2) It places restrictions on the persons it will accept for treatment and it fails either to exempt Medicare beneficiaries from those restrictions or to apply them to Medicare beneficiaries the same as to all other persons seeking care.

(3) It no longer meets the appropriate conditions of participation set forth elsewhere in this chapter.

(4) It fails to furnish information that HCFA finds necessary for a determination as to whether payments are or were due under Medicare and the amounts due.

(5) It refuses to permit examination of fiscal or other records by, or on behalf of HCFA, as necessary for verification of information furnished as a basis for payment under Medicare.

(6) It has knowingly and willfully made, or caused to be made, any false statement or representation of a material fact for use in an application or claim for payment under Medicare.

(7) It has submitted, or caused to be submitted, requests for payment under Medicare of amounts for items and services substantially in excess of the costs incurred by such provider for providing such items and services.

(8) It has furnished items or services which HCFA has determined to be substantially in excess of the needs of individuals or of a quality that fails to meet professionally recognized standards of health care. (See § 420.101 of this chapter.) HCFA will not terminate a provider agreement under this clause if it has waived a disallowance with respect to the services in question on the grounds that the provider and the beneficiary could not reasonably be expected to know that payment would not be made. (See section 1879(a) of the Act (42 U.S.C. 1395pp(a).))

(9) It failed to furnish information on business transactions as required in § 420.205 of this chapter.

(10) It failed at the time the agreement was entered into or renewed to disclose information on convicted individuals as required in § 420.204 of this chapter.

(11) It failed to furnish ownership information as required in § 420.206 of this chapter.

(12) It failed to comply with civil rights requirements set forth in 45 CFR Parts 80, 84, and 90.

(b) *Notice of termination.* (1) HCFA will give the provider notice of termination at least 15 days before the effective date of termination of the agreement. (2) HCFA will concurrently give notice of termination to the public. (3) The notice will state the reasons for, and the effective date of, the termination, and explain to what extent services may continue after that date, in accordance with the exceptions set forth in § 489.55.

(c) *Appeal by the provider.* A provider may appeal a termination of its agreement by HCFA, in accordance with Subpart O of Part 405 of this chapter. The termination of a provider agreement on grounds specified in paragraph (a)(6), (a)(7), or (a)(8) of this section is subject to the additional procedures specified in § 420.102 of this chapter.

§ 489.55 Exceptions to effective date of termination.

(a) In the case of inpatient hospital services (including inpatient tuberculosis hospital services and inpatient psychiatric hospital services), or posthospital extended care services furnished to a beneficiary who was admitted before the effective date of termination except that payment may be made for up to 30 days after the date of termination.

(b) In the case of home health services furnished under a plan established before the effective date, payment may be made for services furnished through the end of the calendar year in which termination is effective.

§ 489.57 Reinstatement after termination.

When an agreement has been terminated in accordance with the provisions of this subpart, HCFA will not accept a new agreement from that provider unless the following conditions are met.

(a) HCFA finds that the reason for termination of the previous agreement has been removed and there is reasonable assurance that it will not recur.

(b) HCFA finds that the provider has fulfilled, or has made satisfactory arrangements to fulfill, all of the statutory and regulatory responsibilities of its previous agreement.

(Secs. 1102 and 1866 of the Social Security Act (42 U.S.C. 1302 and 1395cc).)

(Catalog of Federal Domestic Assistance Programs No. 13.714, Medical Assistance Programs; 13.773, Medicare—Hospital Insurance 13.774, Medicare—Supplementary Medical Insurance)

Dated: December 28, 1979.

Leonard D. Schaeffer,
*Administrator, Health Care Financing Administration.*

Approved: March 6, 1980.

Nathan J. Stark,
*Acting Secretary.*

[FR Doc. 80-10090 Filed 4-3-80; 8:45 am]
BILLING CODE 4110-35-M

---

FEDERAL EMERGENCY MANAGEMENT AGENCY

44 CFR Part 64

[Docket No. FEMA 5786]

List of Communities Eligible for the Sale of National Flood Insurance

AGENCY: Federal Insurance Administration, FEMA.

ACTION: Final rule.

SUMMARY: This rule lists communities participating in the National Flood Insurance Program (NFIP). These communities have applied to the program and have agreed to enact certain flood plain management measures. The communities' participation in the program authorizes the sale of flood insurance to owners of property located in the communities listed.

EFFECTIVE DATES: The date listed in the fifth column of the table.

ADDRESSES: Flood insurance policies for property located in the communities listed can be obtained from any licensed property insurance agent or broker serving the eligible community, or from the National Flood Insurance Program (NFIP) at P.O. Box 34294, Bethesda, Maryland 20034, Phone: (800) 638-6620.

FOR FURTHER INFORMATION CONTACT:
Mr. Richard Krimm, National Flood Insurance Program, (202) 755-5581 or Toll Free Line 800-424-8872, Room 5270, 451 Seventh Street, SW., Washington, DC 20410.

SUPPLEMENTARY INFORMATION: The National Flood Insurance Program (NFIP), enables property owners to purchase flood insurance at rates made reasonable through a Federal subsidy. In return, communities agree to adopt and administer local flood plain management measures aimed at protecting lives and new construction from future flooding. Since the communities on the attached list have recently entered the NFIP, subsidized flood insurance is now available for property in the community.

In addition, the Federal Insurance Administrator has identified the special flood hazard areas in some of these communities by publishing a Flood Hazard Boundary Map. The date of the publication, if one has been published, is indicated in the sixth column of the table. In the communities listed where a flood map has been published, Section 102(a) of the Flood Disaster Protection Act of 1973, as amended, requires the purchase of flood insurance as a condition of Federal or federally related financial assistance for acquisition or construction of buildings in the special flood hazard area shown on the map.

The Federal Insurance Administrator finds that delayed effective dates would be contrary to the public interest. The Administrator also finds that notice and public procedure under 5 U.S.C. 553 (b) are impracticable and unnecessary.

In each entry, a complete chronology of effective dates appears for each listed community. The entry reads as follows:

Section 64.6 is amended by adding in alphabetical sequence new entries to the table.

PART 64—LIST OF COMMUNITIES ELIGIBLE FOR THE SALE OF NATIONAL FLOOD INSURANCE

§ 64.6 List of eligible communities

| State | County | Location | Community No. | Effective dates of authorization/cancellation of sale of flood insurance in community | Special flood hazard area identified |
|---|---|---|---|---|---|
| Arkansas | Chicot | Eudora, city of | 050270 | Mar. 4, 1980, suspension withdrawn | Mar. 1, 1974 and Oct. 18, 1978 |
| Do | Pulaski | Little Rock, city of | 050181 | do | Feb. 21, 1974 and Mar. 1, 1974 |
| California | Sonoma | Healdsburg, city of | 060378 | do | Mar. 1, 1974 and Apr. 18, 1976 |
| Connecticut | Litchfield | Kent, town of | 090149 | do | Jan. 3, 1975 and May 21, 1976 |
| Georgia | Gwinnett | Lilburn, city of | 130109 | do | June 7, 1974 and Feb. 8, 1976 |
| Do | Richmond | Unincorporated areas | 130190A | do | Oct. 24, 1975 |
| Idaho | Ada | Eagle, city of | 160050 | do | Dec. 7, 1973 and July 29, 1976 |