

United States District Court
Southern District of Texas
ENTERED
OCT 27 2004
Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| CANDELARIO DE LEON § | |
| § | |
| v.  § | CIVIL ACTION NO. CV-B-00-192 |
| § | |
| COLUMBIA VALLEY HEALTHCARE § | |
| SYSTEM, L.P. D/B/A VALLEY § | |
| REGIONAL MEDICAL CENTER, § | |
| JOAO DOVALE, M.D. § | |
| AND STAT PHYSICIANS, P.A. § | |

## ORDER

BE IT NOW REMEMBERED, that on October 27, 2004, the Court considered Defendant, Columbia Valley Healthcare System's ("Columbia"), Motion for Summary Judgement, Motion to Dismiss, and Motion to Strike Exhibit E to Plaintiff's Response; Plaintiff's Motion to Supplement Summary Judgment; and Defendant's Motion for Leave to File Response to Plaintiff's Sur-Reply, [Dkt. Nos. 115-2, 115-3, 119, 120 & 128] and the responses and replies thereto. The Court **DENIES** Columbia's motion for summary judgment, **DENIES** Columbia's motion to dismiss, and **DENIES** Defendant's Motion to Strike Exhibit E to Plaintiff's Response [Dkt. Nos. 115-1, 115-2 & 120]. The Court **GRANTS** Plaintiff's Motion to Supplement and Defendant's Motion for Leave to File Response [Dkt. Nos. 119 & 128]. Additional pending motions, including Defendant's Motion for Sanctions, Motions In Limine, and Motions to Exclude Evidence will be determined in a separate order [Dkt. Nos. 131, 132, & 154].

### I. Factual and Procedural Background

Plaintiff, Candelario De Leon ("Plaintiff" or "De Leon"), brings this medical negligence case against Valley Regional Medical Center pursuant to the Texas Medical Liability and Insurance Improvement Act. *See* Tex. Rev. Civ. Stat. Ann. art. 4590i, § 4.01 (Vernon Supp. 2000). Originally, Plaintiff's action included federal claims against the City of Brownsville and a state negligence claim against an individual doctor. The

City of Brownsville has been dismissed from the lawsuit, and the parties have filed a Notice of Settlement involving the parties Stat Physicians and Dr. Dovale. Only Defendant Columbia Valley Healthcare System, L.P., d/b/a Valley Regional Medical Center ("Columbia") remains as a defendant in this law suit.

The Court exercises its supplemental jurisdiction over the remaining state claim after Plaintiff advised the Court that new state statutory reforms cap non-economic damages on healthcare liability claims, and thus any dismissal would potentially prejudice the Plaintiff. *See* 28 U.S.C. § 1367(a); Tex. Civ. Prac. & Rem. Code § 74.301 (West 2004).

On December 24, 1998, in Brownsville, Texas, Plaintiff was involved in a car accident and sustained injuries, which included a laceration on his forehead. Due to the circumstances of the accident and the smell of alcohol on his breath, De Leon was arrested for driving while intoxicated. Because De Leon was experiencing numbness from the neck down and was unable to move his legs, paramedics placed a cervical collar on him, removed him from the vehicle, and placed him on a backboard.[1] Paramedics then transported him to the Valley Regional Medical Center ("VRMC"). EMS records reflect that while en route to the hospital, De Leon complained of numbness from the neck down.

Upon arrival at the emergency room, Harold Wright, a nurse in the emergency room, examined De Leon. It is undisputed that nurse Harold Wright was an employee of the hospital and was acting within the scope of his employment. De Leon told Nurse Wright that he was numb and could not move. Neither Nurse Wright nor the ER doctor who later examined De Leon, Dr. Joao Dovale, performed tests at that time to determine whether De Leon could move his arms and legs. Later in the evening on December 24, 1998, Dr. Dovale discharged De Leon without the precautionary cervical collar and spinal backboard that accompanied Plaintiff when he was admitted to VRMC. Upon his discharge from the hospital, Plaintiff remained in police custody overnight. De

---

[1] EMS records state there was "Manual C-spine movement restriction," and the patient was "extricated through driver's door onto back board." *See* Pl's Response, Ex. B (City of Brownsville EMS Ambulance Activity Report).

Leon later developed post-traumatic swelling and injury to his spinal cord that resulted in him becoming a quadriplegic.

Columbia requests the following relief from this Court: 1) dismissal of the action due to De Leon's failure to file expert reports in compliance with the Texas Medical Liability and Insurance Improvement Act, Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01; and 2) summary judgment in favor of Defendant Columbia based on the argument that Plaintiff has failed to produce competent evidence as to Columbia's negligence, which proximately caused De Leon's injuries.

## II. Dismissal

Columbia moves to dismiss the suit based upon De Leon's failure to provide expert reports in accordance with the Texas Medical Liability and Insurance Improvement Act. *See* Tex. Rev. Civ. Stat. Ann. art. 4590i § 13.01. This statue requires claimants in medical malpractice suits to furnish to the physician defendants expert reports and curriculum vitae for each expert listed in the report within 90 and 180 days respectively of filing suit. *Id.* §§ 13.01(a), (d). If a plaintiff fails to provide the necessary disclosures within the specified time period, or fails to provide certain required information, the Court is required to dismiss the action with sanctions imposed against the offending plaintiff. *Id.* § 13.01(e). There is, however, a good faith exception to the mandatory dismissal. *Id.* § 13.01(g). Columbia contends that De Leon has not filed these expert reports and that the suit should therefore be dismissed. De Leon argues in response that the purely procedural aspects of Article 4590i do not apply in federal court, and thus he was not required to comply with the disclosure requirements of this law.

Because the only remaining claims are state law claims, the Court will apply state substantive law and federal procedural law. *See Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938). In the one case directly on point, a court in the Eastern District of Texas stated that the precise issue is "whether a state statute designed to curb medical malpractice claims through expert witness disclosure requirements collides with a federal rule of civil procedure." *Poindexter v. Bonsukan*, 145 F.Supp.2d 800, 805 (E.D. Tex. 2001). In

*Poindexter*, the district court agreed with De Leon's position here and held that the disclosure requirements in Article 4590i §§ 13.01(a), (d) were procedural and as such did not apply in federal court. *See id.* at 803. Furthermore, Texas courts have acknowledged that § 13.01 provides merely procedural rules. *See, e.g., Broom v. MacMaster*, 992 S.W.2d 659, 663 (Tex. App. – Dallas 1999, no pet.). Thus, De Leon is not required to file expert reports in accordance with Article 4590i § 13.01, and the Federal Rules of Civil Procedure apply to expert disclosures and sanctions related to any failure to disclose. Columbia's motion to dismiss on this basis is **DENIED**.

### III. Summary Judgment Standard

Summary Judgment shall be granted if the record, taken as a whole, "together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual controversies, if any exist, are resolved in favor of the nonmoving party. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). *See also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). The party making a summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery documents that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case"). *See also Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999). Although the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," *Celotex Corp.*, 477 U.S. at 323, the party "need not negate the elements of the nonmovant's case." *Little*, 37 F.3d at 1075 (citing *Celotex,* 477 U.S. at 323).

If the moving party meets this burden, the non-movant then must designate specific facts, beyond the pleadings, showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Little*, 37 F.3d at 1071 (citing *Celotex*, 477 U.S. at 325). "Unsubstantiated assertions" or "mere allegations or denials" will not adequately cast doubt on material facts at issue. *See id.* (citing *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *see also* Fed.

R. Civ. P. 56(e). Likewise, the nonmovant must present more than a mere "scintilla" of evidence. *See Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994). The evidence must be viewed in the light most favorable to the nonmovant. *See Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228 (5th Cir. 2003); *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000). Summary Judgment should be granted "when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." *Little*, 37 F.3d at 1071.

## IV. Summary Judgment Analysis

### A. Arguments

Columbia argues in its motion for summary judgment that De Leon has presented no competent evidence that the hospital was negligent or that the hospital's negligence proximately caused De Leon's injuries.[2] Specifically, Columbia asserts that De Leon's expert witnesses are not qualified to testify as to whether the care given by Columbia, by and through its nursing staff, proximately caused De Leon's injuries. More specifically, Columbia contends that De Leon's expert, Zeff Ross, is not qualified to testify whether Columbia's trauma policies and procedures were followed in treating De Leon because Mr. Ross is a hospital administrator and not a medical doctor. Columbia also challenges the content of the testimony of Dr. Nick Peters, arguing there is no evidence that Columbia itself was negligent.

In response, De Leon argues that Dr. Peters' testimony "clearly" indicates that Columbia provided negligent care when Dr. Peters testified that the nurse who

---

[2]Columbia also argues the acts of a former co-defendant, Dr. Dovale, cannot be attributed to Columbia because Dr. Dovale was an independent contractor, and Plaintiff has produced no evidence supporting an ostensible agency claim. Although Plaintiff included a claim for liability based on an ostensible agency theory in his Third Amended Complaint, subsequent filings make it clear that Plaintiff no longer intends to pursue this claim. See Joint Pretrial Order, p. 3, ¶ 5.A.1 & 5.A.2. (referencing Plaintiff's claims against Defendant with no mention of an ostensible agency claim). Furthermore, Plaintiff agreed in the Joint Pretrial Order that Dr. Dovale was an independent contractor and not Defendant's employee. Finally, Plaintiff provides no response to Defendant's Motion for Summary Judgment on the ostensible agency claim, lending additional support to the conclusion that Plaintiff has now abandoned that claim against the hospital.

examined De Leon was required by the standard of care to inform Dr. Dovale that De Leon complained of numbness from the neck down.[3] Further, De Leon states that Dr. Dovale answered "yes" in his deposition when asked whether if he had "been told that [De Leon] was unable to get out of the car because he said he couldn't feel anything below his neck, [he] would have treated [De Leon] differently."[4] Dr. Dovale also was asked whether the different treatment would have involved an x-ray and CT scan. To this question Dr. Dovale answered, "Yes. If I was given the privilege of that information, yes."[5] Finally, De Leon offers the testimony of Dr. Jeremy Slater who testified that De Leon's injuries would not have been as severe if he had received appropriate care on December 24 when he first presented to Valley Regional Hospital.[6]

Columbia specifically responds to Plaintiff's statement that the testimony of Dr. Slater "constitutes clear, uncontroverted evidence that employees and/or agents of Valley Regional Medical Center were negligent." Columbia argues Dr. Slater does not comment on any negligence or wrong-doing on the part of hospital employees –i.e. the nursing staff. Instead, Columbia states that the excerpts Plaintiff provides of Dr. Slater's testimony address only the care Dr. Dovale provided, and the testimony does not address the care of the nursing staff and the Defendant. The Court generally agrees with the Defendant. Dr. Slater's statement that Plaintiff's injuries would have been "less than they currently are" was spoken in the context of administering steroids to reduce tissue swelling as it relates to the standard of care for Dr. Dovale.[7] Only if the statements are reviewed in isolation, can Plaintiff claim this excerpt from Dr. Slater's

---

[3] Dr. Peters stated in his deposition, "[t]he patient's deposition, [sic] he stated he did tell the nurse and hospital staff that he was numb from the neck down. So it's the nurse's responsibility to place that in the chart and inform the physician." Pl's Supplemental Response to Def's Motion for Summary Judgment, Exh.F, at pp. 16-17 (Depo. of Dr. Peters) [Dkt. No. 122]; see also Pl's Response, at p. 3 & Ex. E (affidavit of Dr. Peters) [Dkt. No. 119].

[4] See Pl's Response, Ex. D, at 80-81(Depo. of Dr. Dovale).

[5] See id.

[6] See Pl's Supplemental Response, Ex. G, at pp. 16-17 (Depo. of Dr. Jeremy Slater).

[7] See id., Ex. G, at pp. 17-18.

deposition is evidence of the hospital's, or nursing staff's, breach of the standard of care. In reaching its decision regarding Defendant's Motion for Summary Judgment, therefore, the Court considers only evidence presented that addresses the alleged negligence of the hospital. On this, Plaintiff has presented evidence from Dr. Peters concerning the standard of care of the nursing staff relating to the nursing staff's failure to transmit information to Dr. Dovale, the ER physician.

B. Legal Analysis

In order to recover in a medical malpractice case the Plaintiff must prove: "'1) a duty requiring the [defendant] to conform to a certain standard of conduct; 2) the applicable standard of care and its breach; 3) injury; and 4) a reasonably close causal connection between the breach of that standard of care and the harm.'" Garza v. Dr. Phillip Levin, 769 S.W.2d 644, 645 (Tex. App. –Corpus Christi [13th Dist.] 1989) (quoting Pinckley v. Dr. Francisco Gallegos, M.D., P.A., 740 S.W.2d 529, 531 (Tex. App. –San Antonio 1987, writ denied)). Therefore, it is not enough that Plaintiff present summary judgment evidence that the nursing staff at the hospital breached a duty by violating the relevant standard of care, and that the Plaintiff sustained an injury. Plaintiff must also prove by a preponderance of the evidence that the negligent act proximately caused the injury. See Kramer v. Lewisville Mem'l Hosp., 858 S.W.2d 397, 400 (Tex. 1993); see also Hilzendager v. Methodist Hosp., 596 S.W.2d 284, 287 (Tex. App. –Houston [1st Dist.] 1980). "In order to be a proximate cause of the harm, the alleged negligence must have been a substantial factor in bringing about the harm, and without which negligence the harm would not have occurred." Sisters of St. Joseph of Tex., Inc. v. Cheek, 61 S.W.3d 32, 35 (Tex. App. –Amarillo 2001). Moreover, Plaintiff cannot prove proximate cause by mere presumption. See id. (citing Bowen v. East Texas Hosp. Foundation, 400 S.W.2d 843 (Tex. Civ. App. 1966, writ ref. n.r.e.). It is not enough to present expert evidence showing the injury might have occurred from negligence and other causes. Kieswetter v. Center of Pavilion Hosp., 662 S.W.2d 24, at *9 (Tex. App. –Houston [1st Dist.] 1983). Plaintiff need not, however, prove legal causation by a medical certainty. But, Plaintiff must "show at least a reasonable probability that his [injury] was *caused* by such negligence." Id. (emphasis in original) (citing Parker v.

*Employers Mutual Liability Ins. Co. of Wisconsin*, 440 S.W.2d 43, 46 (Tex. 1969)).

For example, in *Lenger v. Physician's General Hosp., Inc.*, the Texas Supreme Court affirmed the trial court's instructed verdict in favor of a hospital where a nurse mistakenly allowed a post-op patient to eat solid food, and he developed severe complications thereafter. 455 S.W.2d 703, 704 (Tex. 1970). The patient in *Lenger* suffered from a complication that could have been caused by the solid food or by other factors. Furthermore, even though the consumption of solid food, caused by the nurse's error, made certain complications more likely, there were three other reasonable possible causes of the medical complication, which negated the existence of a traceable chain of causation from the solid food to the complication.

"Where the proof discloses that a given result may have occurred by reason of more than one proximate cause, and the jury can do no more than guess or speculate as to which was, in fact, the efficient cause, the submission of such choice to the jury has been consistently condemned by" the courts. *Id.* at 706. Furthermore, "expert testimony that the event is a possible cause of the condition cannot ordinarily be treated as evidence of reasonable medical probability except when in the absence of other reasonable causal explanations, it becomes more likely than not that the condition did result from the event." *Id.*

In this case, Plaintiff's experts discuss the standard of care of the nurses and state this standard may have been breached when nurses did not inform Dr. Dovale of Plaintiff's complaints of numbness in his lower extremities. Plaintiff provides Dr. Peters's deposition testimony in which he addresses the hospital's conduct:

> Q. Okay. I'd like to turn your attention now to the conduct of the hospital and its employees. Did –do you have an opinion as to whether the hospital employees, and specifically Nurse Wright, fell below the standard of care in his treatment of Mr. De Leon?
> A. Yes.
> Q. And assuming that Mr. De Leon communicated to Nurse Wright that he felt numb–
> A. Uh-huh.
> Q. –below the neck or that he felt paralyzed or that he felt that he could not move his extremities, what did the standard of care require of Nurse Wright?
> . . .

> A. The – the patient's deposition, [sic] he stated he did tell the nurse and the hospital staff that he was numb from the neck down. So it's the nurse's responsibility to place that in the chart and inform the physician.
> Q. Okay. And do you recall from Dr. Dovale's deposition that he says nobody told him the patient had complained of numbness below the neck?
> A. Yes.
> Q. And, had the doctor been told by the nurse that the patient was complaining of numbness below the neck, what would you then expect, in reasonable medical probability to occur?
> A. With that, I would expect the patient to be kept in the spinal precautions and a complete neurological evaluation, spinal examination done, exam and evaluation done, and also supporting x-ray studies and repeat examinations to see how things are changing or not changing, and if the patient persists with those complaints, a neurological or neurosurgical consultation.

Pl's Supplemental Response, at Ex. F, pp. 16-17. Dr. Peters goes on to conclude that the nurse violated the standard of care when he did not clearly communicate the patient's complaints of numbness to the treating ER physician, and that this negligence was a cause contributing to the Mr. De Leon's injuries and damages. *See id.* at pp. 17-18.

Plaintiff's evidence above references the fact that nurses never told Dr. Dovale of the patient's complaints about numbness. Plaintiff's evidence does not state that Dr. Dovale did not independently learn of the patient's numbness or conduct an independent assessment. Plaintiff has presented evidence that De Leon asked Dr. Dovale why he felt paralyzed. In De Leon's affidavit, he states, "I told everyone who treated me that I was paralyzed and could not move–that I was 'numb' and could not feel my arms or legs." Pl's Response, Ex. A (affidavit). Plaintiff further states in his deposition that he asked everyone why he was paralyzed. *See id.* (deposition at pp. 50-51). Moreover, there is no fact issue on whether the nurses or doctors, including Dr. Dovale, asked Plaintiff about his numbness because the evidence is uncontroverted that they did not. *Compare* Pl's Response, Ex. A, Affidavit ("no one asked me about my numbness or tingling in my extremities") *with* Pl's Response, Ex.D (Dr. Dovale's Deposition, at pp. 39, stating he never asked Plaintiff if he felt numbness in his extremities). Dr. Dovale testified, however, that he did not ask Plaintiff if he felt numbness because he stated "I pinched Mr. De Leon's legs and he withdrew the legs,

9

which means he can feel me pinching him, he can feel pain." Plaintiff, however, states in his affidavit that neither the nurses nor the doctor examined whether Plaintiff could move his arms or legs. *See* Pl's Response, Ex. A (Pl's Deposition, at pp. 50-51).

> Dr. Dovale further testified in the following question/answer exchange:
>
> Q. If you had known that Mr. De Leon was complaining of numbness from the neck down while he was being transported by EMS to your hospital, would you have done anything differently?
> . . .
> A. No, because I base my –my treatment and my –my handling of the case by what I see and what I find when I examine the patient, and I didn't have any indication that he was numb; that he had any numbness.
> . . .
> Q. If there was a suspicion in your mind that the patient did have numbness below the neck following an MVA, what is your normal course of treating that patient?
> A. If the patient demonstrates to me that he is numb, I will proceed with a much more sophisticated neurological workup.

Pl's Response, Ex. D (Deposition of Dr. Dovale, at pp. 40-41).

Although Dr. Dovale states he conducts his own examination and that knowledge that Plaintiff had complained of numbness while he was transported by EMS would not change his handling of the case, he also provided the following testimony:

> Q. And you assumed the reason they had to remove him from the car was because he was drunk, correct?
> A. Probably he didn't want to get out of the car.
> Q. And that was one of the assumptions you made when you were treating him at that time, correct?
> A. Yes.
> Q. If instead you had been told that he was unable to get out of the car because he said he couldn't feel anything below his neck, would you have treated him differently?
> A. Yes.
> Q. And, that would have been an x-ray and CT scan?
> A. Yes. If I was given the privilege of that information, yes.

Pl's Response, Ex. D (Dr. Dovale's Depo. at pp. 80-81). Although the evidence is uncontroverted that the nurse(s) did not inform Dr. Dovale that Plaintiff had complained of numbness, Plaintiff has presented no evidence addressing whether the nurses who examined Plaintiff saw the EMS report or knew how EMS had removed Plaintiff from

10

the car at the scene of the accident. Plaintiff not only claims that the hospital was negligent because the nurses failed to transmit information to Dr. Dovale, he also claims the hospital was negligent because hospital policy was breached when the EMS report was not attached to Plaintiff's ER records and transmitted to Dr. Dovale.

Taking the facts and evidence in the light most favorable to De Leon, there is competent summary judgment evidence that Columbia was negligent in providing care to De Leon and that Columbia's negligence was a proximate cause of De Leon's injuries. The Court cannot, therefore, determine there is no material issue of fact, and it accordingly **DENIES** Columbia's Motion for Summary Judgment.

### V. Defendant's Motion to Strike Exhibit E to Plaintiff's Response

Defendant requests this Court to strike Exhibit E, which is the affidavit of Dr. Nick Peters, attached to Plaintiff's Response to Defendant's Motion for Summary Judgment. *See* Pl's Response, Ex. E [Dkt. No. 119]. Defendant argues Dr. Peters is not qualified to testify regarding the nursing standard of care because section 301.251 of the Texas Occupations Code, which governs the standards for professional nurses, "requires a person to be a licensed nurse before practicing or offering to practice professional nursing." Def's Reply, at p. 3. Defendant argues Dr. Peters "only practices as an emergency medicine doctor," and "[h]e is not a neurologist or neurosurgeon." Defendant's arguments are unpersuasive and ignore case law that explicitly holds an expert need not be a nurse to testify regarding the nursing standard of care. Moreover, a doctor is not automatically disqualified from testifying regarding the nursing standard of care simply because he/she is not a nurse. Finally, there is no language in the Texas Occupational Code that limits those who testify as experts concerning the nursing standard of care.

Dr. Peters is a licensed practicing physician who specializes in emergency medicine. Dr. Peters states in his affidavit: "My understanding is that Mr. De Leon told the nurse involved in his care that he was numb below the neck and that he could not move. If this is true, then the standard of care required the hospital staff, including Nurse Wright, to communicate this to Dr. Dovale and take appropriate steps to insure that the spine injury precautions were followed for Mr. De Leon." Pl's Response, Ex. E.

Dr. Peters additionally provides statements in his affidavit concerning the hospital's protocol, which "requires that the EMS records be attached to the ER record and provided to the ER doctor at the time of the treatment." *Id.*

Although Dr. Peters is not a practicing nurse, he is an ER doctor providing his expert opinion in this affidavit on the standard of care nurses are required to use in an *emergency room setting*. The standard of care on which he commented applied narrowly to the nurse's communication, or lack thereof, of information to a doctor who provided follow-up care to the Plaintiff. Courts in Texas have determined that physicians are not barred from providing expert testimony as to the nursing standards of care in medical malpractice cases. *See, e.g., Hall v. Huff*, 957 S.W.2d 90, 100 (Tex. App.–Texarkana 1997) (citing *Webb v. Jorns*, 488 S.W.2d 407 (Tex. 1972)). In the present case, Defendant attempts to broaden the scope of Dr. Peters' testimony. However, Plaintiff did not offer the affidavit as an opinion on a neurological diagnosis or a standard of care peculiar to the particular field of neurology. Rather, the standard of care Dr. Peters discussed in his affidavit applies to any physician or health care provider who treats a patient in an emergency room who complains of certain symptoms. The fact that Dr. Peters is not a neurologist is irrelevant. Dr. Peters commented upon the standard of care that requires nurses to impart and provide certain information to a doctor who later assesses a patient. *See Cresthaven Nursing Residence v. Freeman*, 134 S.W.3d 214, 235 (Tex. App.–Amarillo 2003). Thus, Dr. Peters is qualified to provide expert testimony on the nursing standards of care in the emergency room setting pertaining to a nurse's duty to stabilize patients complaining of numbness and transmit certain information to doctors that later tend to emergency room patients.[8]

The Court **DENIES** Defendant's Motion to Strike Plaintiff's Exhibit E.

---

[8] The Court notes that it addresses Defendant's Motion to Strike Plaintiff's Exhibit E. The Court has not ruled broadly that Dr. Peters is, or would be, qualified to testify on all matters concerning nursing standards of care.

## VI. Conclusion

For the foregoing reasons, the Court **DENIES** Columbia's motion for summary judgment, **DENIES** Columbia's motion to dismiss, and **DENIES** Defendant's Motion to Strike Exhibit E to Plaintiff's Response [Dkt. Nos. 115-2, 115-3 & 120]. The Court **GRANTS** Plaintiff's Motion to Supplement and Defendant's Motion for Leave to File Response [Dkt. Nos. 119 & 128].

DONE at Brownsville, Texas, this 27th day of October, 2004.

_____
Hilda G. Tagle
United States District Judge